```
                    IN THE UNITED STATES BANKRUPTCY COURT
                      FOR THE DISTRICT OF DELAWARE


IN RE:                          )       Case No. 08-13141(KJC)
                                )
                                )
TRIBUNE COMPANY                 )       Chapter 11
                                )
                                )       Courtroom 5
                                )       824 Market Street
             Debtors.           )       Wilmington, Delaware
                                )
                                )       April 13, 2011
                                )       10:00 a.m.


                         TRANSCRIPT OF PROCEEDINGS
              BEFORE THE HONORABLE JUDGE KEVIN J. CAREY
                    UNITED STATES BANKRUPTCY JUDGE


APPEARANCES:

For Debtors:                    Sidley Austin, LLP
                                BY: JAMES CONLAN, ESQ.
                                BY: BRYAN KRAKAUER, ESQ.
                                BY: KEN KANSA, ESQ.
                                BY: KEVIN LANTRY, ESQ.
                                One South Dearborn
                                Chicago, IL 60603
                                (312) 853-7000


                                Cole, Schotz, Meisel, Forman
                                & Leonard, P.A.
                                BY: NORMAN PERNICK, ESQ.
                                500 Delaware Ave., Ste. 1410
                                Wilmington, DE 19801
                                (302) 652-3131


ECRO:                           AL LUGANO

Transcription Service:          DIAZ DATA SERVICES
                                331 Schuylkill Street
                                Harrisburg, Pennsylvania 17110
                                (717) 233-6664
                                www.diazdata.com


Proceedings recorded by electronic sound recording;
transcript produced by transcription service
```

D.I. 8655
4/14/2011

```
APPEARANCES:
(Continued)

For Oaktree & Angelo Gordon:    Young Conaway Stargatt &
                                Taylor
                                BY: BLAKE CLEARY, ESQ.
                                BY: ROBERT BRADY, ESQ.
                                The Brandywine Building
                                1000 West Street, 17th Floor
                                Wilmington, DE 19801
                                (302) 571-6600


                                Dewey & LeBeouf
                                BY: JOSHUA MESTER, ESQ.
                                BY: JAMES JOHNSTON, ESQ.
                                333 S. Grand Ave., Ste. 2600
                                Los Angeles, CA  90071-1530
                                (213) 621-6021


For Merrill Lynch:              Potter Anderson & Carroon, LLP
                                BY: LAURIE SILVERSTEIN, ESQ.
                                BY: R. STEPHEN MCNEILL, ESQ.
                                Hercules Plaza
                                1313 North Market Street
                                6th Floor
                                Wilmington, DE  19801
                                (302) 984-6033


For Barclays:                   DLA Piper
                                BY: MICHELLE MARINO, ESQ.
                                1251 Avenue of the Americas
                                New York, NY  10020-1104
                                (212) 335-4500


For Barclays & Waterstone
Capital Management:             Latham & Watkins, LLP
                                BY: JASON SANJANA, ESQ.
                                885 Third Avenue
                                New York, NY  10022-4834
                                (212) 906-4587
```

APPEARANCES:
(Continued)

For U. S. Trustee:                United States Trustee
                                  BY: DAVID KLAUDER, ESQ.
                                  BY: PAT TINKER, ESQ.
                                  844 King Street, Ste. 2207
                                  Wilmington, DE  19801
                                  (302) 573-6491

For JP Morgan:                    Davis Polk & Wardwell
                                  BY: ELLIOT MOSKOWITZ, ESQ
                                  BY: DAMIEN SCHAIBLE, ESQ.
                                  BY: MICHAEL RUSSANO, ESQ.
                                  BY: ELI VONNEGUT, ESQ.
                                  450 Lexington Avenue
                                  New York, NY 10017
                                  (212) 450-4000

                                  Richards Layton & Finger
                                  BY: ROBERT STEARN, ESQ.
                                  BY: DREW SLOAN, ESQ.
                                  One Rodney Square
                                  920 North King Street
                                  Wilmington, DE  19801
                                  (302) 651-7700

For Wilmington Trust:             Brown Rudnick
                                  BY: MARTIN SIEGEL, ESQ.
                                  BY: ROBERT STARK, ESQ.
                                  185 Asylum Street
                                  Hartford, CT  06103
                                  (860)509-6519

                                  Sullivan Hazeltine Allinson,
                                  LLC
                                  BY: WILLIAM HAZELTINE, ESQ.
                                  4 East 8th Street, Suite 400
                                  Wilmington, DE  19801
                                  (302) 4268-8191

```
APPEARANCES:
(Continued)

For Official Committee
of Unsecured Creditors:          Landis, Rath & Cobb
                                 BY: DANIEL B. RATH, ESQ.
                                 BY: ADAM G. LANDIS, ESQ.
                                 919 Market Street, Suite 1800
                                 Wilmington, DE 19801
                                 (302) 467-4400

                                 Chadbourne & Parke, LLP
                                 BY: DAVID LEMAY, ESQ.
                                 BY: HOWARD SEIFE, ESQ.
                                 BY: JAMES STENGER, ESQ.
                                 BY: DOUGLAS DEUTSCH, ESQ.
                                 BY: THOMAS MCCORMACK, ESQ.
                                 BY: ANDREW ROSENBLATT, ESQ.
                                 BY: MARC ASHLEY, ESQ.
                                 30 Rockefeller Plaza
                                 New York, NY 10112
                                 (212) 408-5100

                                 Zuckerman Spaeder
                                 BY: JAMES SOTTILE, ESQ.
                                 BY: ANDREW GOLDFARB, ESQ.
                                 1800 M Street, NW
                                 Suite 1000
                                 Washington, DC 20036
                                 (202) 778-1800

For Great Banc:                  Womble Carlyle
                                 BY: THOMAS M. HORAN, ESQ.
                                 222 Delaware Avenue, Ste. 1501
                                 Wilmington, DE  19801
                                 (302) 252-4339

                                 K & L Gates, LLP
                                 BY: JEFFREY RICH, ESQ.
                                 599 Lexington Avenue
                                 New York, NY  10022-7615
```

APPEARANCES:
(Continued)

For DBTCA:                          McCarter & English
                                    BY: KATHARINE MAYER, ESQ.
                                    405 N. King Street, 8th Fl.
                                    Wilmington, DE  19801
                                    (302) 984-6312


For Aurelius:                       Akin Gump Strauss Hauer & Feld
                                    BY: DANIEL GOLDEN, ESQ.
                                    BY: PHIL DUBLIN, ESQ.
                                    BY: ABID QUERSHI, ESQ.
                                    One Bryant Park
                                    New York, NY 10036
                                    (212) 872-1000


                                    Ashby & Geddes
                                    BY: WILLIAM BOWDEN, ESQ.
                                    500 Delaware Avenue
                                    Wilmington, DE  19809
                                    (302) 654-1888

For U.S. Department of
Labor:                              U.S. Department of Labor
                                    BY: LEONARD GEARSON, ESQ.
                                    200 Constitution Ave., NW
                                    Washington, DC  20210

For SuttonBrook Capital
Management:                         Schulte Roth & Zabel, LLP
                                    BY: LAWRENCE V. GELBER, ESQ.
                                    919 Third Avenue
                                    New York, NY  10022
                                    (212) 756-2460


                                    Klehr Harrison Harvy
                                    Branzburg, LLP
                                    BY: MICHAEL W. YURKEWICZ, ESQ.
                                    919 Market St., Ste. 1000
                                    Wilmington, DE  19801-3062
                                    (302) 552-5519

```
APPEARANCES:
(Continued)

For Tribune:                Tribune Company
                            BY: DON LIEBENTRITT, ESQ.
                            435 North Michigan Avenue
                            Chicago, IL  60611
                            (312) 222-9100

For Brigade Capital
Management:                 Loizides, PA
                            BY: CHRIS LOIZIDES, ESQ.
                            1225 King Street, Suite 800
                            Wilmington, DE  19801
                            (302) 654-0248

For Robert McCormick Foundation
Tribune Foundation &
Cantiguy Foundation:        Duane Morris
                            BY: RICHARD W. RILEY, ESQ.
                            222 Delaware Ave., Ste. 1600
                            Wilmington, DE  19801-1659
                            (302) 657-4928

                            Katten Muchin Rosenman, LLP
                            BY: DAVID BOHAN, ESQ.
                            525 West Monroe St.
                            Chicago, Il  60661-3693
                            (312)902-5566

For Zell & EGI - TRB:       Jenner & Block
                            BY: DAVID BRADFORD, ESQ.
                            BY: CATHY STEEGE, ESQ.
                            BY: DAVID CARICKHOFF, ESQ.
                            353 North Clark Street
                            Chicago, Il  60654-3456
                            (312) 923-2952

For Crone Kenney:           Shaw Gussis
                            BY: ALLEN GUON, ESQ.
                            321 N. Clark St., Ste. 800
                            Chicago, IL  60654
                            (312) 541-0151
```

```
APPEARANCES:
(Continued)

For Timothy Knight:          A. M. Saccullo Legal, LLC
                             BY: ANTHONY M. SACCULLO, ESQ.
                             27 Crimson King Drive
                             Bear, DE  19701
                             (302) 836-8877

                             Hannafan & Hannafan, Ltd.
                             BY: BLAKE HANNAFAN, ESQ.
                             One East Waker Dr., Ste. 2800
                             Chicago, IL  60601
                             (312) 527-0055

For Certain Officers &
Directors:                   Grippo & Elden
                             BY: JOHN McCAMBRIDGE, ESQ.
                             BY: GEORGE DOUGHERTY, ESQ.
                             111 S. Wacker Drive
                             Chicago, Il  60606
                             (312) 704-7700

                             Connolly Bove Lodge & Hutz LLP
                             BY: JEFFREY WISLER, ESQ.
                             The Nemours Building
                             10007 North Orange Street
                             Wilmington, DE 19899
                             (302) 888-6258

TELEPHONIC APPEARANCES:

For SuttonBrook Capital:     SuttonBrook Capital
                             Management, LP
                             BY: CAROL L. BALE, ESQ.
                             (212) 588-6640

For Bank of America:         O'Melveny & Myers
                             BY: DANIEL SHAMAH, ESQ.
                             (212) 326-2138

                             Bank of America
                             BY: ESTHER CHUNG, ESQ.
                             (646) 855-6705
```

```
TELEPHONIC APPEARANCES:
(Continued)

For Official Committee of
Unsecured Creditors:              Chadbourne & Park, LLP
                                  BY: MARC ROITMAN, ESQ.
                                  (212)408-5271
                                  BY: JESSICA MARRERO, ESQ.
                                  (212) 408-5100
                                  BY: FRANCISCO VASQUEZ, ESQ.
                                  (212) 408-5111

                                  Zuckerman & Spaeder, LLP
                                  BY: GRAEM BUSH, ESQ.
                                  BY: ANDREW GOLDFARB, ESQ.
                                  BY: JAMES SOTTILE, ESQ.
                                  BY: ANDREW CARIDAS, ESQ.
                                  (202) 778-1800

                                  Landis Rath & Cobb, LLP
                                  BY: MATTHEW B. MCGUIRE, ESQ
                                  (302) 467-4431

For Brigade Capital
Management:                       Brigade Capital Management
                                  BY: NEIL LOSQUADRO
                                  (212) 745- 9758

                                  Stutman Treister & Glatt
                                  BY: ISAAC PACHULSKI, ESQ.
                                  (310) 228-5655

For Citibank:                     Paul Weiss Rifkind Wharton
                                  BY: KIRA DAVIS, ESQ.
                                  (212) 373-3000
                                  BY: ANDREW GORDON, ESQ.
                                  (212)373-3543
                                  BY: ANDREW LEVY, ESQ.
                                  (202)223-7328
                                  BY: SHANNON PENNOCK, ESQ.
                                  (212) 373-3000
                                  BY: ELIZABETH MCCOLM, ESQ.
                                  (212) 373-3000
```

```
TELEPHONIC APPEARANCES:
(Continued)

For Anna Kalenchits:          Anna Kalenchits
                              (212)723-1808


For Tribune:                  Sidley Austin
                              BY: GREG DEMO, ESQ.
                              (312) 853-7758
                              BY: JANET HENDERSON, ESQ.
                              BY: COLLEEN KENNEY, ESQ.
                              (312) 853-2931
                              BY: BRETT MYRICK, ESQ.
                              (312) 853-1049
                              BY: DENNIS TWOOMEY, ESQ.
                              (312) 853-7824
                              BY: PATRICK WACKERLY, ESQ.
                              (312) 853-7000


                              Tribune Company
                              BY: MICHAEL D. ONEAL, ESQ.
                              (312) 222-3490
                              BY: GARY WEITMAN, ESQ.
                              (312) 222-3394
                              BY: DAVE ELDERSVELD, ESQ.
                              (312) 222-4707
For Former Special Committee
Of Tribune's Board of
Directors:                    Skadden Arps Slate Meagher &
                              Flom
                              BY: NICK CAMPANARIO, ESQ.
                              (312) 407-0974


For Aurelius Capital
Management:                   Aurelius Capital Management LP
                              BY: MATTHEW A. ZLOTO, ESQ.
                              (646) 445-6518


                              Akin Gump Strauss Hauer & Feld
                              BY: SHAYA ROCHESTER, ESQ.
                              (212) 872-1076
                              BY: DAVID ZENSKY, ESQ.
                              (212) 309-6000
```

```
TELEPHONIC APPEARANCES:
(Continued)

For Partner Fund Management:   Vinson & Elkins, LLP
                               BY: LANCE A. MULHERN, ESQ.
                               (212) 237-0184

For JP Morgan Chase Bank:      Davis Polk & Wardwell, LLP
                               BY: PETER KIM, ESQ.
                               (212) 450-3028

                               JP Morgan Chase Bank, NA
                               BY: SHACHAR MINKOVE, ESQ.
                               (212) 834-7174

For Barclays:                  Mayer & Brown, LLP
                               BY: AMIT K. TREHAN, ESQ.
                               (212) 506-1717
                               BY: JEAN-MARIE ATAMIAN, ESQ
                               (212) 506-2678
                               BY: MICHAEL L. SIMES, ESQ.
                               (212) 506-2607
                               BY: BEN WILSON, ESQ.
                               (212) 412-7642

                               Latham & Watkins, LLP
                               BY: JASON B. SANJANA, ESQ.
                               (212) 906-4587

For Eos Partners:              Eos Partners
                               BY: MIKE J. SCHOTT, ESQ.
                               (212) 593-4046

For Merrill Lynch:             Kaye Scholer, LLP
                               BY: MADLYN G. PRIMOFF, ESQ.
                               (212) 836-7042
                               BY: JONATHAN AGUDELO, ESQ.
                               (212) 836-8369
                               BY: JANE PARVER, ESQ.
                               (212 836-8510

For DK Partners:               DK Partners
                               BY: EPHRAIM DIAMOND, ESQ.
                               (646) 282-5841
```

```
TELEPHONIC APPEARANCES:
(Continued)

For Monarch Alternative
Capital, LP:                       Monarch Alternative Capital
                                   BY: ROBERT G. BURNS, ESQ.
                                   (212) 554-1768
For Kramer Levin:                  Kramer Levin, Naftalis &
                                   Frankel, LLP
                                   BY: DAVID E. BLABEY, JR.,ESQ.
                                   (212) 715-9100
                                   BY: JORDAN KAYE, ESQ.
                                   (212) 715-9489


For CitiGroup:                     Paul Weiss Rifkind Wharton &
                                   Garrison
                                   BY: AMY DEITERICH, ESQ.
                                   (212) 373-3688


For Nomura Securities:             Nomura Securities
                                   BY: ARTHUR KAVALIS, ESQ.
                                   (212) 667-2370


For Great Banc Trust Co.:          Morgan Lewis & Brockius, LLP
                                   BY: DEBORAH S. DAVIDSON, ESQ.
                                   (215) 552-6900


For Interested Party:              Schulte Roth & Zabel, LLP
                                   BY: KAREN S. PARK, ESQ.
                                   (212) 756-2036


For EGI-TRB:                       Jenner & Block, LLP
                                   BY: ANDREW VAIL, ESQ.
                                   (312) 840-8688
For Credit Agreement
Lenders:                           Angelo Gordon & Company, LP
                                   BY: GAVIN BAIERA, ESQ.
                                   (212) 692-0217


                                   Wilmer Cutler Pickering Hale &
                                   Dorr
                                   BY: MICHELLE GOLDIS, ESQ.
                                   (212) 295-6329
                                   BY: ANDREW GOLDMAN, ESQ.
                                   (212) 230-8836
```

```
TELEPHONIC APPEARANCES:
(Continued)

For Mina Faltas:               Viking Global Investors
                               BY: MINA FALTAS, ESQ.
                               (212) 672-7011
For Chandler Bigelow:          Sperling & Slater
                               BY: STEVEN C. FLORSHEIM, ESQ.
                               BY: CLAIRE P. MURPHY, ESQ.
                               (312)641-3200


For Goldman Sachs & Co.:       Goldman Sachs & Company
                               BY: SCOTT BYNUM, ESQ.
                               (212) 902-8060
                               BY: LEXI FALLON, ESQ.
                               (212) 902-0791


For Matthew Frank:             Alvarez & Marsal, Inc.
                               BY: MATTHEW FRANK
                               (312)371-9955
                               BY: BRIAN WHITTMAN, ESQ.
                               (312) 601-4227


For Wells Fargo:               White & Case
                               BY: SCOTT GREISSMAN, ESQ.
                               (212) 819-8567


For Law Debenture Trust:       Kasowitz Benson Torres &
                               Friedman
                               BY: SHERON KORPUS, ESQ.
                               (212)506-1700
                               BY: CHRISTINE MONTENEGRO, ESQ.
                               (212)506-1715
                               BY: DAVID ROSNER, ESQ.
                               (212)506-1726
For Oaktree Capital
Management:                    Oaktree Capital Management
                               BY: EDGAR LEE
                               (213) 830-6415


For Canyon Partners:           Canyon Partners
                               BY: CHANEY M. SHEFFIELD
                               (310) 272-1062
```

```
TELEPHONIC APPEARANCES:
(Continued)

For One East Partners:        One East Partners
                              BY: SINA TOUSSI
                              (212) 230-4510

For Robert R. McCormick
Foundation &
Cantigny Foundation:          Katten Muchin Rosenman, LLP
                              BY: JOHN SIEGER, ESQ.
                              (312) 902-5294

For Macquarie Capital (USA):  Macquarie Capital (USA)
                              BY: RUSHABH VORA
                              (212) 231-6311

For Cooperstown Capital
Management:                   Cooperstown Capital Management
                              BY: PEETER COURI, ESQ.
                              (203)552-6900

For Serengeti Asset
Management:                   Serengeti Asset Management
                              BY: NICHOLAS HEILBUT, ESQ.
                              (212) 466-2167

For Pryor Cashman, LLP:       Pryor Cashman, LLP
                              BY: TINA MOSS, ESQ.
                              (212) 326-0421

For Contrarian Capital
Management:                   Contrarian Capital Management
                              BY: JOSHUA TRUMP, ESQ.
                              (203) 862-8299

For Smith Management:         Smith Management
                              BY: JENNIFER WILD, ESQ.
                              (212) 418-6877

For Great Bank Trust Co.:     Morgan Lewis & Bockius, LLP
                              BY: MENACHEM ZELMANOVITZ, ESQ.
                              (212) 309-6000
```

```
 1   WILMINGTON, DELAWARE, WEDNESDAY, APRIL 13, 2011, 10:09 A.M.
 2               THE CLERK:  Be seated, please.
 3               THE COURT:  Good morning, everyone.
 4               ALL:  Good morning, Your Honor.
 5               MR. LANTRY:  Good morning, Your Honor.  Kevin
 6   Lantry on behalf of the debtors.
 7               Your Honor, we have circulated to all the third
 8   party objectors the schedule which is largely like we
 9   proposed and presented to you yesterday.  There have been a
10   few additional changes.  If I may approach with that revised
11   schedule and a red line?
12               THE COURT:  That'd be great.
13               MR. LANTRY:  Your Honor, just a couple of
14   housekeeping things.  We have tried through what both of the
15   plan proponents filed a large chart on Friday indicating
16   what has been resolved and what has not been resolved, as
17   well as, notices that went out to all the third party
18   objectors either by email or fax or overnight on Friday as
19   well.  We think we have identified everyone who's been
20   resolved so that they don't need to be here.  There's always
21   the chance that something fell through the cracks.
22               So what we would suggest having distributed this
23   list is if someone is here for something that has been they
24   think resolved or otherwise that isn't on this list, that
25   they try to see the applicable plan proponents during the
```

1   first break and talk about it.  I think that's easier than

2   anything else interrupting.

3              THE COURT:  All right, I think that's fine.

4              MR. LANTRY:  In addition, Your Honor, we have

5   found as of last night in terms of the changes that are on

6   this list that the Department of Labor's objection to the

7   noteholders' plan has been resolved so we move that forward

8   since it was an objection to both plans.  So that's one of

9   the changes you see there.

10             In addition, Your Honor, the PHONES priority and

11  amount, the parties raising that issue, it is pertinent to

12  both plans, it's not really objection to both plans.  We

13  have been hearing from Wilmington Trust that he believes

14  from chatting with him it may be a very quick administrative

15  matter.  So we might be able to take care of that early.  I

16  don't know if it really is, but they have at least asked to

17  go to the front of the line. I'm not sure we want to grant

18  that because if everyone wanted to go the front of the line

19  to get out of here, but I promised that I would at least

20  raise that with you before we started with the agenda.

21  Right now it's put toward the end of the day.

22             THE COURT:  Well, I'm curious about how it could

23  be characterized as a quick administrative matter.  And if

24  someone wants to speak to that briefly, I will hear it.

25             MR. YURKEWICZ:  Good morning, Your Honor.

1    Michael Yurkewicz with Klehr, Harrison, Harvey, Branzburg &

2    Ellers on behalf of Suttonbrook Capital Management.  With me

3    today is Mr. Larry Gelber of Schulte Roth & Zabel.  He has

4    been admitted pro hoc in this case.  I ask that he be heard

5    on this matter.

6                    THE COURT:  Okay.

7                    MR. GELBER:  Good morning, Your Honor.  Lawrence

8    Gelber of Schulte, Roth & Zabel.

9                    I apologize, sitting in the back I couldn't hear

10   what the issue was that you had raised that you wanted to

11   have addressed.

12                    THE COURT:  Well --

13   (Laughter)

14                    THE COURT:  Mr. Lantry indicated that there was

15   an issue concerning the PHONES which parties wished me

16   address ahead of that which had been proposed by the parties

17   in the nature of a quick administrative matter and I'm

18   curious about what that might be.

19                    MR. GELBER:  Oh, I'm sorry.  This is a

20   continuation.  We had a hearing back in January on the

21   amount on the estimation of the PHONES claims based on the

22   motion of Wilmington Trust.  We didn't know -- Your Honor

23   entered an order at that time saying it would be taken up at

24   the confirmation hearing or in the context of the

25   confirmation hearing and we just didn't know how Your Honor

1   wanted to deal with that.

2          THE COURT:  Were you here yesterday?

3          MR. GELBER:  No I was not.

4          THE COURT:  You should have been.  And I answered

5   that question.  Let's go back to the agenda.

6          MR. GELBER:  Okay.  Thank you, Your Honor.

7          MR. LANTRY:  Thank you, Your Honor, for that

8   clarification.

9          I would only say one other thing in terms of this

10  will progress today.  We would ask that each of the

11  objectors try to articulate all of their individual

12  objections at once so that they will complete their

13  presentation.  To the extent then the various plan

14  proponents have a response, we would generally have the DCL

15  plan proponents' response go first and then the noteholder

16  plan, if they have something additional to say in response

17  to those objections.  When there are multiple objectors on a

18  peer issue, for example, as we get down into the list,

19  objections to the creditors' trust or objections to the bar

20  order, we thought it would be better for each of those

21  objectors to articulate their issues in a non-duplicative

22  way.  And when that's completed, then the plan proponents

23  get up and respond.

24         I think that's the most efficient way to do it,

25  but I just thought I would put that out there as what we

1  have tentatively thought would be the most organized way of

2  doing this.

3          THE COURT:  Does anyone have  contrary view?

4  (No audible response.)

5          THE COURT:  I hear no response.

6          MR. LANTRY:  In addition, Your Honor, just so you

7  know, although of the issues have to go through your head in

8  the end, we have divided our labors and many of us will be

9  getting up on behalf of the plan proponents and articulating

10 different points.  Hopefully, we will have orchestrated that

11 in advance, but I just wanted you to know that a number of

12 us have divided the labor and so it will be articulated by a

13 variety of different parties --

14         THE COURT:  All right.

15         MR. LANTRY:  -- but I think we know who that will

16 be.

17         THE COURT:  That's fine.  I just ask that counsel

18 remember to identify themselves for the record as they come

19 up to address each individual objection or response.

20         MR. LANTRY:  With that, Your Honor, the first

21 individual objection is by Kevin Millen.  I don't know if

22 he's here in the courtroom.

23         THE COURT:  Let me ask for the record.  Mr.

24 Millen are you present in the courtroom or on the telephone?

25         MR. LANTRY:  Your Honor, I would ask that my

1  partner, Ken Kansa just briefly articulate the objection for

2  you in his -- Mr. Millen's absence.

3             THE COURT:  Okay.

4             MR. KANSA:  Good morning, Your Honor.  Ken Kansa

5  of Sidley Austin on behalf of the debtors.

6             The first objection as Mr. Lantry noted is the

7  objection of Kevin Millen confirmation.  Your Honor,

8  although the pleading has been styled as an objection to

9  both the responsive statements, the disclosure, and the plan

10 of reorganization, the objection articulates no cognizable

11 or substantive objection to confirmation of the debtor

12 committee lender plan.  The pleading is a near verbatim

13 reworking of the prior pleadings that have been filed by Mr.

14 Millen in which he seeks allowance of an alleged defamation

15 claim relating to a 1998 article that was published in the

16 Hartford Current.  Those claims were disallowed by this

17 Court pursuant to an order entered on June 14 of last year

18 at Docket Number 4775.  There has been no appeal so that

19 order disallowing those claims has long become final.

20            There was also a similar pleading filed by Mr.

21 Millen seeking administrative relief that was disallowed by

22 this Court on September 13 of last year on a similar basis

23 to what we would ask the Court to deny the instant pleading

24 for.  Namely, there was not an articulation by Mr. Millen in

25 the pleading of any basis on which the Court could grant the

1    relief requested.  For that reason here, we ask that this

2    confirmation objection to the extent that it's taken as such

3    be denied, Your Honor.

4            THE COURT:  Does anyone else wish to be heard in

5    connection with this objection?

6    (No audible response.)

7            THE COURT:  All right.  This objection is

8    overruled.

9            MR. KANSA:  Thank you, Your Honor.

10           MR. LANTRY:  The next objection, Your Honor is

11   the Department of Labor and that is an objection just now to

12   the DCL plan.

13           MR. GERSON:  Good morning, Your Honor, Leonard

14   Gerson.  I'm appearing for the United States Department of

15   Labor.

16           As Mr. Lantry stated at the beginning of this

17   hearing, an agreement has been reached between the

18   Department and the noteholders essentially to put off the

19   resolution of the issue of whether the Secretary's claims

20   are subject to 501(b) to a time after confirmation and

21   instead treat those claims as disputed claims.

22           There's language that we've agreed on which in

23   substance that we've agreed upon will be added to the

24   confirmation order.  I'd like to read it into the record,

25   please.

```
 1              THE COURT:  Go ahead.

 2              MR. GERSON:  Notwithstanding anything to the

 3    contrary set forth in the noteholder plan or this

 4    confirmation order, the claim filed by the United States

 5    Department of Labor against Tribune Company (the DOL claim)

 6    shall be treated as a disputed other parent claim, which

 7    claims ultimate priority and amount shall be determined by a

 8    final order, unless otherwise agreed to by the parties at a

 9    time in the briefing schedule to be agreed upon by the

10    parties.  The disputed claim reserve provided the noteholder

11    plan is deemed sufficient to allow for the satisfaction of

12    all disputed claims, including the DOL claim in whatever

13    amount it is ultimately allowed.  Such reserve is deemed

14    sufficient to rebut any claim that the appeal of any order

15    disallowing the DOL claim is mooted as a result of the

16    noteholder plan becoming effective.

17              THE COURT:  Thank you.

18              MR. GERSON:  That's the end of the language, Your

19    Honor.

20              THE COURT:  All right.

21              MR. GERSON:  Now with respect to our objection to

22    the DCL plan.

23              Congress gave the Secretary of Labor the role of

24    protecting a worker the time in plan from exploitation.

25    That fundamental goal of ERISA is being undermined by the
```

1    DCL plans' subordination of the Secretary's claim.   Under

2    the DCL plan, the Secretary's claims under ERISA will be

3    paid nothing.

4              There are many reasons why a failure to provide

5    any recovery on those claims should be denied, but the

6    fundamental failure is the DCL plan proponents ignoring the

7    difference between claims under ERISA and the claims of

8    ordinary investors.   501(b) of the Bankruptcy Code as the

9    Court is aware is directed at preventing investors from

10   darning the cloaks of predators if their investment goes

11   south.

12             In contrast, the Secretary's claims arise from

13   violations by the Tribune and the trustee that it appointed,

14   Great Banc, for a violation of their fiduciary duties under

15   ERISA.   If the claims were based on the Tribune's

16   misrepresentations to the ESOP in connection with the sale

17   of the Tribune stock to the ESOP, the Secretary understands

18   that those claims would be property subordinated under

19   501(b).   But ERISA interposes a fiduciary between a plan's

20   investment decisions and those decisions.   Our claim arises

21   from the violation of the ESOP's fiduciary, its trustee, the

22   Great Banc.

23             In leaning on ERISA, Courts are careful to

24   distinguish the claims of shareholders from the claims

25   arising from violations of ERISA.   For example, in *Martin v.*

1    *Fallon*, it was a situation where basically the -- a company

2    was despoiled by the actions of its management who also to

3    some extent were fiduciaries and professionals who assisted

4    them.  The District Court -- the Secretary brought an action

5    against them.  The District Court found the fiduciaries and

6    the corporate managers liable for violations of ERISA.  The

7    Circuit Court reversed in part.  It ruled you had to -- even

8    though the ERISA plan at issue in that case was an ESOP so

9    as -- so the ESOP was damaged by the actions taken by the

10   corporate managers because they were shareholders.  So as to

11   the extent the corporation was injured, so was the ESOP.

12           With respect to ERISA claims, it was necessary to

13   distinguish what claims were being brought under ERISA and

14   what claims the defendants were liable because of their

15   mismanagement of the corporations which would be claims of

16   shareholders.  To the extent that the District Court's

17   findings of liability with respect to the ERISA claims

18   involved violations of fiduciary duties, the Circuit Court

19   upheld the District Court's findings.  To the extent the

20   District Court's ruling found the defendants liable under

21   ERISA for actions involving corporate mismanagement, the

22   Circuit Court reversed.  And we believe those same

23   principles are applicable in this case.

24           We understand that 501(b) arguably is not limited

25   to cases involving securities fraud, but is recognized by

1  the Third Circuit there are limits to the 501(b) scope.

2  It's sometimes argued that 501(b) has remedial purpose and

3  because it's remedial, it should be broadly construed.  But

4  ERISA also is a remedial statute.  In fact, that fact is --

5  Congress stated that fact explicitly in *29 USC 1001*.  ERISA

6  explicitly states that its passage was critical to the

7  wellbeing of millions of workers and their dependents.

8  Congress also made their concern for ERISA plan participants

9  evident of the Bankruptcy Code itself when it provided

10 priority for failures by employers to make their

11 contributions to ERISA plans.

12         So it would seem strange that on one hand

13 Congress would provide a priority under the Bankruptcy Code

14 for contributions to ERISA plans, but at the same time wish

15 to subordinate other ERISA plans.  That lack of congruity is

16 also reflected in the treatment of what would be the

17 treatment of the tax claims in this case under Section 4975.

18 Section 4975 imposes a penalty upon breaches upon prohibited

19 transactions under Section 406 of ERISA.  But before that

20 penalty is imposed, it gives the Department of Labor the

21 opportunity to work out corrective measures with the

22 violators.  If the plans are made whole, there's no penalty

23 imposed.  If our ERISA claims are subordinated, then the tax

24 claims which ordinarily would be subordinated to the claims

25 under ERISA if there was corrective action taken, would

1   instead be superior to our ERISA claims.  It's the

2   Secretary's belief that that simply doesn't make any sense.

3           Ultimately, what the Third Circuit stated was

4   that in order to understand the scope of ERISA and the scope

5   of the claims it covers, one had to examine its -- ERISA's -

6   - I'm sorry, Section 501(b) legislative history.  And that

7   history has essentially been universally recognized as

8   arising from the article by Professors Slain and Kripke

9   which was used by the Bankruptcy Law Commission and

10  ultimately by Congress in enacting 501(b).

11          Slain and Kripke and Congress recognized there

12  were two critical corrections that made subordination under

13  501(b) required.  First, they didn't want to see the equity

14  cushion provided by investors eroded by having the

15  investor's claims becoming claims of creditors because that

16  equity cushion was supposed to be there to protect

17  creditors.  That protection would be eliminated if those

18  investors then could darn the cloaks of creditors.  But as

19  the Court is aware, that's not what happened in the leverage

20  stock transaction of the Tribune.  The equity cushion was

21  virtually wiped out by the buyback of shareholder stock and

22  instead as was evident from the examiner's report, what the

23  creditors in the leverage buyout were relying upon was not

24  any equity cushion that might be provided by the ESOP, but

25  instead, the tax advantages that would be derived from the -

1   - having an ESOP structure for the Tribune.  So

2   subordinating the Secretary's claims to protect any equity

3   cushion is simply not a rational in this case.

4           Similarly, the other major purpose of

5   subordinating claims was belief by Congress that investors

6   had assumed the risk of corporate insolvency rather than

7   creditors.  And thus it would be unfair to impose upon

8   creditors that risk that investors had chosen to take.

9   However, in this case, it is clear that the lenders knew --

10  were very well aware of the risks that were involved with

11  the potential insolvency.

12          I mean, that's really the crux of the debate

13  going on between the noteholder plan and the DCL plan as the

14  extent to which those claims should be settled.  In

15  contrast, the workers were given no choice.  The ESOP was

16  imposed upon them as opposed to the 401K plan which they

17  previously provided retirement benefits for them.  So that

18  alternative reason for providing or subordinating claims

19  under 501(b) also is irrelevant with respect to the facts in

20  this case.

21          In addition, as the Court is aware, 501(b) is

22  directed at claims arising from the purchase and sale of

23  securities.  There was -- as everyone involved in this case

24  knows, this -- the ESOP leverage transaction was viewed as a

25  two step process.  As part of the first step, the ESOP

1    purchased the Tribune's shares.  The second step involved a

2    merger of a wholly owned ESOP subsidiary and the Tribune.

3    That Great Banc, the Tribune's trustee could have decided

4    not to go forward with that merger independent of the

5    purchase of stock that had been made.  The ESOP transaction

6    still would have involved some kind of loss for the ESOP

7    because the stock they purchased obviously wasn't worth $250

8    million, but the value of that stock was greatly diminished

9    by going through with the merger transaction.  And of which

10   ultimately led to the insolvency of the debtors.

11          So -- and the Tribune appointed Great Banc as the

12   ESOP's trustee.  Because of that appointment, it too, was --

13   Tribune also was a fiduciary to the ESOP.  As a fiduciary,

14   it had an obligation to disclose to the -- to Great Banc any

15   information that was relevant to the decisions that Great

16   Banc might make in connection with its duty as trustee.  As

17   the Court is aware from the examiner's report, offices of

18   the Tribune failed to disclose critical information about

19   the likely insolvency of the Tribune if Step 2 went forward.

20   As far as the secretary is aware, that information also was

21   not imparted to Great Banc.  And under the law, the

22   knowledge of a company's offices are inputted to the

23   corporation.

24          So by failing to disclose that critical

25   information to Great Banc and failing to take any action to

1   prevent Great Banc from going through with the merger, the

2   Tribune violated its obligations under Section 404 of the --

3   of ERISA for acting with prudence, loyalty, and also its

4   obligations under Section 405 of ERISA to seek to remedy any

5   violations of a co-fiduciary that it becomes aware.

6        In addition to subordinating the Secretary's

7   claims against the Tribune, the DCL plan also seeks to

8   subordinate the Secretary's claims against the Tribune

9   subsidiaries.  They don't even attempt to argue that Section

10  501(b) is applicable to that subordination which it is

11  clearly not even if 501(b) applied in this case,

12  appropriately applied in this case to the Secretary's claims

13  which we don't believe is the case.  With respect to our

14  claims against the subsidiary, it would only subordinate

15  those claims to the claims of other creditors of the

16  subsidiary, not to claims against the parent company.

17       501(b) also requires that if a claim is

18  subordinated under 501(b), the subordination go no further

19  than treating claims of common stock, claims of equity

20  interests and the subordinated claims on par.  That's not

21  what the DCL plan does.  It leaves equity interest in the

22  subsidiaries unimpaired while it pays nothing on the

23  Secretary's ERISA claims.

24       In their responsive papers, the debtors have

25  argued that it's okay to leave the equity interests

1    unimpaired while paying nothing on the claims against -- the

2    Secretary's claims against the subsidiaries because those

3    would be "extra costs that would be incurred unnecessarily."

4    But the fact that additional costs might be incurred is no

5    basis to override Congress' explicit direction in 501(b)

6    that subordinated claims and claims of equity holders be

7    treated on par.

8         The case that the DCL proponents rely upon *Ian*

9    *Media* involved an objector who is described by the Court as

10   simply an obstructionist and not even a party of interest, a

11   characterization that certainly can't be applied to the

12   Secretary's claims.  More importantly, the Court in *Ian*

13   *Media* also stated that to the extent that any value was

14   being allocated to the equity interests as a result of

15   causing them -- leaving them unimpaired, that that was

16   appropriate under the gift doctrine.  As the Court is aware,

17   the gift doctrine allows secured creditors to if they

18   choose, to give some of the distributions they would

19   otherwise be entitled to lower priority creditors

20   essentially in order to get a plan confirmed.

21        THE COURT:  Maybe not in the Second Circuit

22   anymore.

23        MR. GERSON:  I haven't read that case, Your

24   Honor.

25        THE COURT:  We'll see how it falls out.

1          MR. GERSON:  But what's critical in this case is

2     that the senior lenders are giving some of the distributions

3     that otherwise might be entitled to not -- their allocating

4     it to other classes not as a gift, but in order to get some

5     real relief.  They're getting a release.  That's what the

6     DCL plan is all about.  So the gift doctrine is inapplicable

7     to this case.

8          It's -- the fact that value is being allocated is

9     also reflected in the fact that with respect to the non-

10    guarantor subsidiary debtors, there are cash payments being

11    made by the senior lenders to those non-debtors.  If there

12    was no value being allocated, there would be no reason to

13    pay -- make any payments to those non-guarantor debtors.

14          In addition, the definition of securities

15    litigation claims in the debtors -- in the DCL plan is not

16    limited to claims subordinated under 501(b), but it includes

17    -- the definition includes any claims under ERISA.  That's

18    not a legal basis for subordinating a claim under the

19    Bankruptcy Code.  I don't know if the DCL proponents have

20    any basis to subordinate any claims other than Section

21    501(b), but they haven't stated that.  And the definition of

22    securities litigation claims needs to be amended to reflect

23    the fact that it's limited to claims under Section 501(b)

24    which the Secretary understands is the issue before the

25    Court, but not simply claims under ERISA.  And the

1    definition has additional breath that, you know, is not

2    particularly decipherable.

3              The Secretary objected to the exculpation

4    provision in the DCL plan.  The DCL plan proponents have

5    modified the exculpation provision to limit it to post-

6    petition actions rather than encompassing the pre-petition

7    actions as their initial plan provided.  But there are

8    significant defects that remain.

9              First, the exculpation provision covers not only

10   officers of the -- not only covers people involved in the

11   formulation of the plan, the debtors and their

12   professionals, or the committee and its professionals, it

13   covers related persons whose broad definition includes

14   present or former employees, and similarly broad scope

15   including people not in -- I know of no ruling that allows

16   the definition of, you know, of an exculpation provision to

17   include non-debtor parties to that extent who haven't been

18   involved in the formulation of the plan.

19             And that's a second significant problem with the

20   exculpation provision.  It's not limited to actions taken in

21   the formulating of a plan, it extends to all post-petition

22   operations of the debtors.  That's not the appropriate scope

23   of an exculpation provision.  Exculpation provisions are

24   supposed to protect individuals involved in the formulation

25   of Chapter 11 plans so they don't have to worry about being

 1    sued sometime later.  And so they can have -- they're free

 2    to exercise their judgment to the best extent possible.

 3              Another essential objection we had to the

 4    exculpation provision was that it violates ERISA because it

 5    eliminates -- it would free from liability actions for

 6    negligence or any other claims that didn't arise from either

 7    gross negligence or willful misconduct.  I guess the major

 8    support for the exculpation provision in the DCL plan was

 9    the Third Circuit's *PWS* opinion.  But in *PWS*, that was

10    before 2005 when the Bankruptcy Code was enacted -- I'm

11    sorry, was amended.

12              THE COURT:  I knew what you meant.

13              MR. GERSON:  Thank you, Your Honor.

14              THE COURT:  I was there at enactment, I remember.

15    (Laughter)

16              MR. GERSON:  To specifically provide that Chapter

17    11 debtors, trustees, would they have the obligation for

18    administering ERISA plans.  The opinion in *PWS* was premised

19    on the fact that the freedom of liability -- the limitations

20    in liability it was providing was no greater than what was

21    ordinarily provided to creditor's committees under 1103.

22    But it didn't have the opportunity to consider the effect of

23    ERISA with respect to that exculpation provision because

24    that then was not an obligation of the debtors and Chapter 7

25    trustees.

1          THE COURT:  Well let me ask you this.  How would

2     you describe the interplay between ERISA and the Bankruptcy

3     Code?  Is there merely tension?  Is there conflict?  Is

4     there ambiguity in the Bankruptcy Code's language?  How

5     would you articulate that dynamic?

6          MR. GERSON:  Generally or just with respect to

7     the Secretary's claims in this case?

8          THE COURT:  I would say the latter.

9     (Laughter)

10          MR. GERSON:  Well I think by requiring a Court to

11     look to the legislative history in order to determine the

12     scope of 501(b), it -- there's -- you know, there's a

13     recognition that the language in 501(b) is not crystal

14     clear, but --

15          THE COURT:  Well, typically, Courts look to

16     legislative history when they determine -- well they do it

17     in two instances.  One, when they determine the language of

18     the statute may not be clear.  And/or to support a view that

19     they've reached that the language is clear and here's why.

20     So despite admonitions that Courts in cases in which the

21     statute is clear shouldn't delve too deeply into legislative

22     history, it seems they do so anyway.

23          MR. GERSON:  That's -- I think that's a correct

24     observation, Your Honor.  I guess the problem that the

25     tension that arises, the difficulty is a difficulty that

1    arises in frequently in non-bankruptcy situations where a

2    Court is -- where there's an overlapping of facts and the

3    Court's are required to distinguish well, what's a violation

4    of ERISA.  And what's the violation of the shareholder's

5    rights?  And when the shareholders are -- is an ERISA plan,

6    the -- you know, the analysis can sometimes get complicated.

7              So and that's why -- but I think there's a clear

8    way of looking at it by determining well what actions were

9    corporate actions to which the ESOP might have suffered

10   because there were shareholders and what did they suffer?

11   What -- because of violations of ESOP fiduciaries which

12   include the Tribune.  But in this case, I don't think when

13   the claims get -- if, in fact, we get over the hurdle of the

14   plan and we analyze the claims, they become disputed claims,

15   then the Court will be in a position where it's going to

16   have to make that distinction as to what was a claim for

17   fiduciary breach and what was simply a claim for corporate

18   mismanagement that the ESOP suffered.  But the blanket

19   provision in the DCL plan which simply subordinates all

20   ERISA claims to 501(b), doesn't provide -- doesn't allow for

21   the necessary analysis.

22             THE COURT:  All right, Mr. Gerson, you need to

23   wrap up.

24             MR. GERSON:  That's a wrap, Your Honor, thank

25   you.

1              THE COURT:  All right, thank you.

2              MR. KRAKAUER:  Good morning, Your Honor.  Bryan

3    Krakauer on behalf of the debtors.  I'll be addressing the

4    objection to the -- of the Department of Labor.

5              Let me start out by saying the issues raised by

6    the DOL are pertinent to both the DCL plan and the

7    noteholder plan.  Although the objection to the noteholder

8    plan has now been resolved, they've resolved it by pushing

9    the issue of subordination to a later date if the noteholder

10   plan is confirmed, but it's still very much an issue in both

11   plans as to the proper treatment of the DCL claim.  The DCL

12   has asserted unliquidated claims against both the Tribune

13   parent and the subsidiaries.  And although the claims are

14   unliquidated in their face, they indicate in discussions

15   that they may assert very large claims of potentially

16   hundreds of millions of dollars.

17             All these claims arise by their own admission

18   from the Tribune's ESOP and what they assert are purported

19   violations of ERISA.  The claims themselves if it was ever

20   got to the merits are very much disputed, but today is not

21   the time to talk about that.  The issue is in our plan is

22   even if they were determined to be allowed claims, whether

23   they're properly subordinated under 501.

24             Both plans classify ERISA claims relating to the

25   ESOP as securities claims which are subordinated pursuant to

1    501(b).   The DCL plan defines securities litigation claims

2    and then provides that securities litigation claims are

3    extinguished are -- because they're subordinated, there was

4    nothing there for them and, therefore, they're extinguished.

5    The noteholder plan also contains a definition of

6    subordinated securities claims which defines to include

7    ERISA claims.   And provides that if a claim is found to be a

8    subordinated securities claim, that it does receive nothing.

9    The one difference is the DCL plan specifically refers to

10   the Department of Labor claim, whereas the noteholder plan

11   just refers to claims based on ERISA.

12          The DCL plan does provide that the claims are

13   extinguished.   The purpose is so that the debtor can emerge

14   without the overhang of this claim.   Pursuant to the DCL

15   plan, claims at the parent are paid north of 30 cents on the

16   dollar and claims against the subs are essentially paid in

17   full.   So having a large unliquidated claim that's still to

18   be litigated is a significant overhang.

19          And as far as what the Department of Labor claims

20   consist of, they all arise from the Tribune common stock

21   acquired by the ESOP in the leverage ESOP transaction.   The

22   Tribune stock is the only asset of the ESOP.   The ESOP

23   acquired the stock by issuing a non-recourse note to Tribune

24   which was payable through yearly contributions by Tribune to

25   the ESOP which are applied against the note balance.   The

1   DOL asserts that the ESOP's acquisition of that stock

2   violated ERISA.  The DCL also asserts that various other

3   actions or inactions including as they've said the

4   consummation of Step 2 of the leverage ESOP transaction

5   reduced the value of that ESOP stock and also violated

6   ERISA.

7           But the common nexus for the DOL claims are

8   they're all based upon the stock, the Tribune stock.

9   They're all based upon either the acquisition of that stock

10  or on losses relating to that stock.  And essentially what

11  the DOL is trying to do is assert a claim to recover for

12  losses related to that stock or claims based on the

13  acquisition of that stock.

14          501(b) provides for the subordination of claims

15  among other things, arising from the purchase or sale of the

16  security of the debtor.  The debtor here, the Tribune or an

17  affiliate of the debtor.  So it would apply to claims

18  against the subs because the Tribune is an affiliate of

19  those debtors as well.  And the remedy under 501(b) is that

20  such claims shall be treated as subordinated.  And in the

21  case of common stock like we have here, they're at the same

22  priority as the common stock of Tribune.  So they're treated

23  as at the end of the priority chain.  And there's nothing

24  here for common stock of the Tribune in this plan.

25          The Third Circuit's decision in *Telegroup* is the

1   leading decision quite obviously in this circuit.  And it

2   rejected the theory advocated by the DOL here that 501(b) is

3   narrowly limited to claims arising solely from securities

4   laws or other illegality in connection with the stocks

5   issuance and not anything after issuance.  The Third Circuit

6   found that the claims subject to 501(b) extend to claims

7   which have a nexus with a debtors' common stock that arise

8   either connection with the acquisition of the stock or which

9   afterwards arise in connection with actions or inactions

10  after the acquisition of the stock.  And particularly, the

11  Court noted that 501(b) subordinates claims due to a decline

12  in the value of that stock that occurs after acquisition.

13  And the nexus test under 501(b) according to *Telegroup* is

14  whether the claims would exist but for the claimant's

15  purchase of the stock.  The claimant here being the ESOP.

16          The view that 501 must be applied broadly to

17  claims based on asserted debtor wrong which resulted in a --

18  any claims based on asserted debtor wrong which is based --

19  resulted in diminution, excuse me, diminished equity value

20  is not also limited at the Third Circuit.  It's been

21  followed consistently by every Court of Appeals that's

22  looked at this issue.  The Second Circuit in *Med Diversified*

23  has a case.  The Fifth Circuit in *Seaquist* has a case.  The

24  Tenth Circuit in *Geneva Steel* has a case.  And the Ninth

25  Circuit has addressed the issue and come to the same

1    conclusion in *Beta Comp.*

2             There is no Court of Appeals which has agreed

3    with the DOL in terms of the limitation that they're arguing

4    for under 501.  And the *Telegroup* standard is clearly

5    satisfied here.  All of the claims relate to the ESOP

6    Tribune stock acquisition and actions after that acquisition

7    that had some effect on the stock.  That's what is at issue

8    in connection with the DOL claims.

9             The DOL's argument that ERISA claims are

10   different and are not subject to subordination under 501 is

11   simply wrong.  There is no case out there that has held or

12   even suggested that.  *Telegroup* --

13            THE COURT:  Is there any case out there that

14   subordinated a government claim?

15            MR. KRAKAUER:  Yes.  There's a case called

16   *Lantico* which is at cited in our brief at *116BR 141 Eastern*

17   *District of Missouri.*  Specifically, the DOL was a party to

18   that case.  It came in and asserted an ERISA claim based on

19   a violation, an ERISA violation of an ESOP and the Court

20   found that its claim was subordinated.  It's directly on

21   point.

22            You also have in addition to the general finding

23   of *Telegroup*, you have cases like *Enron* which dealt with

24   KERP's and 401k's and found that those claims were all

25   subordinated, as well as, stock options for employees.  You

1   have *Med Diversified* which found with respect to employee

2   compensation agreement claims which is essentially what

3   we're also talking about here that those were subordinated.

4          THE COURT:  In a decision that I rendered in

5   *Touch America*, I discussed both *Telegroup* and *Enron.*  Is

6   there anything in my decision that would weigh against the

7   debtors' position here?

8          MR. KRAKAUER:  I haven't found anything in your

9   decision which weighs against our position.  I found there

10  are certainly things in your decision which are directly

11  pertinent, I believe, and weigh against the DOL position.

12  Among other things, in *Touch America*, you found that 501 is

13  not limited by who is holding the claim.  And the issue

14  there, if you recall, was the claimant's argued that 501 was

15  limited to shareholders asserting claims.  And that was also

16  a -- these were claims that were asserted for

17  indemnification and contribution.  And they were based on

18  ERISA violations in connection with an ESOP.  And the D's

19  and O's came in said we're not shareholders, we're not

20  covered by 501.

21          And this Court looked at *Telegroup* and the

22  principles of *Telegroup*.  I remember you looked *Enron* as

23  well and said that's not the way the statute is intended.

24  That's not what other Courts have found.  And that, indeed,

25  you looked to the nature of the claim whether it arises from

1    stock and in essence whether it's an attempt to recover for

2    lost value of the stock or for some impropriety based on the

3    acquisition of the stock.  And if it is, then it's covered

4    by 501.  That's what you indicated was the proper result in

5    *Touch America* and I think it's exactly right.  It's

6    consistent with all the other cases out there.

7              Your Honor, the point about subsidiaries I also

8    want to address is that subordination and extinguishment of

9    the claims against the subsidiaries in this case is also

10   absolutely required.  Mr. Gerson from the DOL was wrong when

11   he said that we don't -- haven't argued that 501(b) is

12   applicable.  501(b) is applicable.  And as I recited at the

13   beginning of this argument, 501(b) applies to claims based

14   on the stock of an affiliate.  And here any claims that the

15   DOL has against subsidiaries apart from the other reasons

16   why we would dispute them, we would say even if they had

17   claims, they're based again on ESOP's dealings, ESOP's

18   acquisition and ownership of the Tribune stock and that's

19   the stock of an affiliate.

20             And what 501(b) then says is if you have a claim

21   based on that security and the damages associated with that

22   security, then that claim is subordinated to the same level

23   as such security here, the common stock of the parent.  So

24   under 501, you have a very straightforward reading the test,

25   of the text of the statute which says that those claims are

1    simply subordinated to the same level as common stock of the

2    parent company.

3            The one case they cite and I'll -- I'm going to

4    probably butcher the name, but Lesby and Hauck [ph] -- let

5    me look it up, L&H.

6            MR. GERSON:  Lerner and Hasbith [ph].

7            MR. KRAKAUER:  Lerner and Hasbith, thank you.

8    Which dealt with an issue of claims against a subsidiary and

9    whether they were, in fact, subordinated to those -- the

10   parent claims.  It was very different.  There the party had

11   independent dealings with the subsidiary.  Alleged that the

12   subsidiary independent of any issue related to the stock or

13   damage to the stock had damaged it.  And the Court simply

14   found that those independent claims didn't follow the stock.

15   That's not the situation here.  Here, the whole nexus is

16   what the ESOP did at the parent and what happened with the

17   stock.  So that does not apply.

18           Second, the issue, the next issue is how do you

19   treat -- even if you didn't have 501(b) which is dispositive

20   is there any issue with respect to keeping the equity of the

21   subs owned by the parent in this situation?  Does that

22   somehow violate some absolute priority rule?  And the case

23   law is that it does not.  *Ian Media* which is a case we cited

24   is right on point.  It doesn't depend upon the gifting

25   argument.  There is a footnote where Judge Pack in *Ian Media*

1   says by the way, I could if I wanted also to justify this on

2   gifted.  And as you point out with the recent Second Circuit

3   ruling, at least in the Second Circuit that's more of an

4   issue, but that's not the basis of his holding. That was

5   just an alternative saying that he could find that on that

6   basis as well.

7          The basis of his holding as he says you look at

8   whether or not you have a creditor who is recovering

9   something additional by virtue of keeping the equity in

10  place.  And if you're using the stock of the subs to provide

11  something to a creditor that is violative of the absolute

12  priority rule, that's one thing.  But if you're keeping the

13  stock in place because your purpose is that it reduces cost,

14  it avoids the unnecessary cost and hassle frankly of

15  reorganizing and starting with all new entities and doing a

16  mirror structure with, you know, spending all the lawyer

17  time and I think we've had enough lawyer time in this case

18  trying to recreate the debtor subsidiary structure and

19  you're doing it as a matter of convenience to keep an

20  existing structure in place because it's an efficient one,

21  that is perfectly fine and that not a violative of the

22  absolute priority rule.

23          And here, that's all that's happening.  You have

24  merely a situation where the administrative structure of the

25  various entities is being kept in place because it's an

1   efficient structure.  It's not to provide additional value

2   to any other -- to any peer core party.  It's just to keep

3   these entities in place rather than going to the cost of

4   creating new ones and mirroring it.  What you could do is

5   just be very -- is just an additional cost and expense to do

6   it.  So when you look to the purpose of it, *Ian Media* makes

7   clear that that -- you are not violating the absolute

8   priority rule.

9           And then finally, this can also be justified

10  based on simply new value.  I mean, there is money coming

11  out of the Tribune parent that's going off that's going to

12  pay for claims against subsidiaries.  There's also value

13  coming from the senior lenders that's going to creditors of

14  the subsidiaries and that's all new value and it's perfectly

15  standard and appropriate.  It doesn't have anything to do

16  with gifting to provide that in return for that new value

17  given, that the stock is kept by the parent.

18          So I don't believe there's any issue with regard

19  on three different points with regard to keeping those

20  equity interests in place.  And it's not violative of

21  anything and it's perfectly appropriate to subordinate the

22  claims against the subs as well.

23          Then I should I also point out that 501(b) is not

24  a discretionary statute.  If it applies, then the

25  subordination is mandatory.  And there's a number of cases

1   that said that. There's one that came out as recently as
2   January 19 of this year called *Deep Marine* which is a
3   decision by the Bankruptcy Court in Texas and it says
4   exactly that, if 501(b) applies, it has to be applied.
5           So in sum, this is a clear case under a whole
6   range of rulings that these claims must be subordinated and
7   they're -- and they are entitled to subordination under
8   501(b).  And there's really no case law out there to the
9   contrary.  All the cases are consistent.  All the Circuit
10  Courts including the Third Circuit have viewed 501(b) very
11  expansively.  And when you get to what all those cases say
12  in terms of its purpose is this a situation where somebody
13  is trying to in essence get a recovery on account of the
14  diminished value of stock?  That is what this is about and
15  there's no real dispute about that and 501(b) applies and
16  subordination is appropriate.
17          Then the final point is with regard to
18  exculpation.  The provision as Mr. Gerson has pointed out,
19  we did make clear as was originally intended, but we now
20  make absolutely clear, it's only intended to apply to post-
21  petition conduct.  The provision with regard to estate
22  fiduciaries which is what the DOL is looking at in terms of
23  officers and employees of the debtor which is where they're
24  focused on is consistent with what we've done.  Is
25  consistent with what the Court found appropriate in *PWS*.

1   That's what we based on this provision on.

2          And Mr. Gerson is incorrect in saying that *PWS*

3   only dealt with the proposal -- proposing a plan.  The

4   language in -- that was approved in *PWS* said it was

5   appropriate to have an exculpation that was relating to and

6   arising out of the Chapter 11 cases.  For basically all

7   conduct relating to and arising out of the Chapter 11 cases

8   by estate fiduciaries.  And that's what the provision we

9   have here does provide.

10         Now Mr. Gerson had said that he believes that

11  ERISA provides -- it's a different standard in that it is

12  not legally appropriate or not legally allowed to change

13  that standard in this exculpation.  We disagree with that,

14  but what we've done with the exculpation is provide that it

15  applies only to the extent legally permissible.  So to the

16  extent that there is an argument is that it is simply

17  unlawful to change the ERISA standard and the exculpation

18  can't do that as a matter of law, that's -- the argument's

19  still there because we're -- we've made the exculpation

20  subject to it being legally permissible.  So the Court does

21  not have to find that issue today.

22         Your Honor, I think I've tried to keep this short

23  and to the point just to summarize what our view is.  But

24  this is an important issue for allowing the debtor under

25  whatever plan to emerge unencumbered by this claim.  It

```
 1   could be a very substantial claim if it's not subordinated
 2   and it's very important so I wanted to make sure you
 3   addressed it.
 4            THE COURT:  All right, thank you.
 5            MR. KRAKAUER:  Thank you.
 6            THE COURT:  Mr. Gerson, keep your seat.  And the
 7   reason is that I think if we go to rebuttal on these
 8   objections, we will just never get done.
 9            MR. DUBLIN:  Your Honor, if I may just for one
10   minute.  Phil Dublin, Akin Gump for Aurelius and the other
11   noteholder plan proponents.
12            I'd just like to correct something that Mr.
13   Krakauer said on the record just so that everybody is clear.
14   He made the statement that the noteholder plan like the DCL
15   plan, does not provide for any recovery to subordinated
16   creditors.  The way our plan operates is that we have trust
17   interests for creditors that are entitled to receive an
18   initial distribution like subordinated creditors who have to
19   turn over anything they would receive or are just not
20   entitled to receive anything until senior creditors are paid
21   in full.  So based on the success of the LBO related causes
22   of action, we would expect that subordinated creditors may
23   actually receive a recovery in our cases.          I also
24   question whether based on the modifications that have been
25   made to the debtor, committee, lender plan where the now
```

1    have -- are not releasing the intentional fraud claims or

2    any claims against the Step 1 shareholders other than

3    certain small dollar denomination ones, whether now you may

4    actually come in in their litigation trust causes of action

5    that would likewise be able to flow to subordinated

6    creditors.  Thank you, Your Honor.

7                MR. JOHNSTON:  Your Honor, Jim Johnston of Dewey

8    & LeBoeuf on behalf of Oaktree and Angelo Gordon.

9                I just wanted to make one observation based on

10   something that we heard for the first time this morning.  So

11   I wasn't able to convey my comments to Mr. Krakauer.  And it

12   relates to the apparent resolution of the DOL objections to

13   the noteholder plan.  As I understood what was read into the

14   record, those objections are resolved by essentially

15   agreeing to kick down the road the dispute over

16   subordination of the DOL claim against Tribune Company with

17   the implication being that all of the claims of the DOL

18   against the subsidiaries go away.              I wanted to

19   point out that that essentially drives home one of the

20   points that we make which is that there is no their, their

21   with respect to DOL claims against the subsidiaries.  To the

22   extent that there's any claim whatsoever that the DOL

23   asserts, it is subordinated.  But more importantly, it's a

24   claim against Tribune, the entity with the ESOP.  The entity

25   whose stock is at issue.  And I think by agreeing to get rid

1  of the claims against the subsidiaries in the context of the

2  noteholder plan, it really affirms the point that there is

3  no legitimate claim by the DOL against the Tribune

4  subsidiaries.  Thank you.

5         THE COURT:  Thank you.  All right.  Shall we turn

6  to Great Banc?

7         MR. GERSON:  Your Honor, may I be heard one

8  minute?

9         THE COURT:  I'll tell you what, Mr. Gerson, let's

10 do this.  Let me -- and I --

11        MR. GERSON:  Literally one minute.

12        THE COURT:  I may regret this later, but what I

13 may do is permit the objectors to make post hearing

14 submissions, okay?  And I'll deal with that at the end of

15 the day today.  But I really -- I want to be able to get

16 through these things today.

17        MR. GERSON:  Thank you.

18        THE COURT:  Okay.

19        MR. RICH:  Good morning, Your Honor.  My name is

20 Jeffrey Rich.  I'm from the firm of K&L Gates and we

21 represent Great Banc as trustee of the ESOP.

22        Your Honor, I'll try and be brief.  You've heard

23 -- as you know that the plan provides that securities

24 litigation claims will be extinguished, not subordinated.

25 That is the words of the plan that the DCL proponents have

1    put forth.

2           Without conceding whether or not Great Banc has a

3    securities litigation claim because obviously that is

4    something for another day, Great Banc's objection

5    essentially is that if it is a 501(b) claim by virtue of the

6    statute it has to be subordinated, not extinguished.  It may

7    be economically the case that it is remote or extremely

8    remote or maybe even impossible that there will ever be a

9    distribution to subordinated creditors under the DCL plan,

10   but that is not a fact as of today.  And 501(b) does not say

11   these claims are extinguished, it says these claims are

12   subordinated.  So all that Great Banc is asking is that that

13   section of the plan be revised to say that instead of these

14   claims being extinguished, they are subordinated.  And then

15   that really is the argument, Your Honor.

16           THE COURT:  Thank you.

17           MR. KRAKAUER:  Your Honor, again, Bryan Krakauer

18   for the debtors.  I'll make this brief.

19           First, I do apologize to Mr. Dublin.  He's

20   correct about what their plan provides.

21           Here, the subordination under the code is to the

22   same level as common stock.  There's been -- there has been

23   a lot of testimony in this case about -- presented about

24   what values are and what values of the claims are.  And in

25   terms of common stock, what its provided is the common stock

1    is simply extinguished because there's been no showing that

2    there's any value associated with common stock.  If Great

3    Banc wanted to come in and show that there was, in fact,

4    value there, they had an opportunity during the evidence

5    phase of this case to do that.  They didn't do that.

6    There's no showing that there's value there.  And why common

7    stock?  We've simply provided that those are going to be

8    extinguished.

9            THE COURT:  Sir, is there any confirmed plan that

10   supports your view?

11           MR. KRAKAUER:  Any confirmed plan?  It's pretty

12   common in confirmed plans to provide that common stock gets

13   extinguished when there's no value.

14           THE COURT:  No, I'm talking about specifically

15   with respect to the one remaining objection Great Banc has

16   and that is that it should say subordinated, but not

17   extinguished.  It seems to me as a matter of plain statutory

18   reading that that's a fair objection.

19           MR. KRAKAUER:  With respect --

20           THE COURT:  And, you know, Great Banc

21   acknowledges --

22           MR. KRAKAUER:  Yeah.

23           THE COURT:  -- as a matter of economics, it may

24   end up being the same thing, but we now don't know that

25   really.  And, in fact, if what you're suggesting and I think

```
 1   it is that in every case in which a class is proposed to be
 2   subordinated, they've got the burden to come in and give
 3   valuation testimony, I will you tell you, I decline
 4   respectfully to burden myself with that exercise --
 5   (Laughter)
 6            THE COURT:  -- and anyone else who might be
 7   involved.
 8            MR. KRAKAUER:  Your Honor, it is the case in most
 9   reorganizations and this is reorganization, that where you
10   provide for -- when you try -- you provide for who's going
11   to get what in terms of the various classes of
12   consideration, right?  And here, we've done that.
13       With respect to the Tribune itself, it's emerging and
14   it's determining what various classes are going to get.  And
15   if somebody comes in and says that they are entitled to
16   something, there has to be some evidence in there that
17   there's some value there and there just -- it just isn't
18   here.  I do understand your point with regard to the
19   litigation trust which is I think what you're saying which
20   is under our plan.  And, you know, that's where end up.
21            THE COURT:  Okay.  The objection is sustained.
22            MR. KRAKAUER:  Okay, thanks.
23            MR. DUBLIN:  Thank you, Your Honor.
24            MR. KANSA:  Your Honor, this progresses us to the
25   next section where we have objections to both plans.  I
```

1  don't know if you want to break now or progress with the

2  Zell EGI objections?

3           THE COURT:  All right.  We'll take a ten minute

4  break.

5  (Recess from 11:23 a.m. to 11:35 a.m.)

6           THE CLERK:  All rise.  Be seated, please.

7           THE COURT:  Let's press on.

8           MR. BRADFORD:  Good morning, Your Honor.  David

9  Bradford, Jenner & Block on behalf of Mr. Zell and EGI-TRB.

10

11           Your Honor, we occupy the next several topics on

12  the agenda.  I'm going to address first our objections as to

13  the pursuit of claims against Mr. Zell not being fair and

14  equitable to creditors and why it is a waste of their assets

15  to pursue frivolous claims.  I'm also going to address why

16  if those claims are permitted as part of either plan, the

17  exculpation provisions of those plans should be stricken or

18  modified and the restrictions on indemnification for legal

19  fees for existing directors and officers should also be

20  eliminated.  And finally, why if those plans are permitted

21  to go forward with claims against Mr. Zell, Aurelius, and

22  the PHONES have conflicts of interest which preclude from

23  acting as litigation trustees with respect to those specific

24  claims.

25           We also have objections that relate for example

1    in Item B1A to the priority of EGI's claims, an objection to

2    the bridge settlement, and objections that I think come

3    later in the agenda under the topics of creditor trust

4    related to the 346(e) priority issue in the bar order.

5              It's our understanding that those objections will

6    be addressed later because they're part of a group of

7    objections where others will also be appearing, but that I

8    together with my partner, Cathy Steege who will address the

9    issue of priority of EGI's claims, will address everything

10   that is in Items B1 and B2A at this time and then we'll move

11   further down the agenda if that's agreeable to the Court.

12             THE COURT:  That's fine, I just have on request.

13   You mentioned at the beginning of your statement that you

14   wanted to address why claims, alleged claims don't have any

15   merit.  I would say spend no time on that.  And by saying

16   that, I don't tell you that I think they have merit, I know

17   we have a hearing scheduled at some time in the future on

18   the standing issue, but that's not an issue for now as far

19   as I'm concerned.

20             MR. BRADFORD:  If I might just be heard briefly

21   on why we believe it's an issue for now Your Honor.

22             THE COURT:  Certainly.

23             MR. BRADFORD:  With respect to the -- both plans,

24   each of them effectively seek to finance and fund their

25   plans on the basis of claims that are being asserted.  The

1   claims against Mr. Zell which are the subject of -- there is

2   no pending standing motion I should say.  We do have a

3   motion that's coming up in the future where we have

4   attempted to serve a Rule 11 motion and that's been objected

5   to on the grounds that the stay precludes even the service

6   of a Rule 11 motion.  But independent of our effort to at

7   least effectuate service of a Rule 11 motion, we have

8   nothing on the horizon that is going to address that claim.

9           Your Honor may recall that the issue as it

10  pertained to standing was addressed by the committee

11  withdrawing its request for confirmation of standing.  So

12  they withdrew that motion entirely.  We think that's

13  indicative of their desire to avoid a resolution of whether

14  these claims are in the best interest of the estate, whether

15  they're colorable, and whether they survive Rule 11.  And

16  that those issues need to be addressed at some point and

17  that ultimately they go to whether or not it's in the best

18  interest of creditors, including EGI-TRB which is a

19  substantial creditor to spend estate money, deplete the

20  estate insurance policies on claims that the examiner not

21  only found lacked merit, found highly unlikely to succeed in

22  critical part, but that as Your Honor heard, Professor Black

23  opined had no value and no merit --

24          THE COURT:  Okay.  Mr. Bradford, stop, please

25  stop there.

1        MR. BRADFORD:  Sure.

2        THE COURT:  You've come up and your colleague has

3   come up repeatedly to tell me the same thing.  I do not need

4   to hear it again.  I know what your position is, believe me.

5   I was unaware and maybe it could be that in the course I was

6   asked to sign an order and just don't remember it, that that

7   issue had gone away in terms of standing.  So that's my

8   miss, not yours.  But I don't want to get into the merits

9   again.  Mr. Sottile?

10        MR. SOTTILE:  Your Honor, I rise only because the

11   issue with respect to standing has not gone away as I

12   understand it.  As the Court will recall, the Court granted

13   standing to the committee to pursue claims against Mr. Zell

14   and EGI-TRB back in October.  When the committee filed an

15   amended complaint as the Court will recall, the committee

16   also filed a motion to confirm that the claims asserted and

17   the amended complaint fell within the scope of the original

18   order.

19        THE COURT:  Yeah, and I thought that was

20   unresolved.

21        MR. SOTTILE:  It was resolved without objection

22   as to all parties other than those represented by Mr.

23   Bradford.

24        THE COURT:  No, that I remember.

25        MR. SOTTILE:  And then ultimately, in part in

1    response to the Court's suggestion when -- after the motion

2    and confirmed standing was filed, we withdrew the motion to

3    confirm standing without prejudice.  To be absolutely clear,

4    it's the committee's view that the Court has already granted

5    standing as to these claims.

6              THE COURT:  Okay.

7              MR. SOTTILE:  And that the motion to confirmation

8    standing was unnecessary.  The Court should not take the

9    withdraw as anything more than taking something off the

10   table we did not believe was necessary.

11             THE COURT:  No, I was just thinking that I had --

12   I remember saying that I was not going to consider the issue

13   before confirmation.  And I think we had set a hearing date

14   at some point in the future, I just didn't remember when

15   that was, but thanks for bringing me up to date.

16             MR. SOTTILE:  Thank you, Your Honor.

17             THE COURT:  Okay.

18             MR. BRADFORD:  Yes, Your Honor, just to complete

19   the record on that.  When we filed our plan objections, that

20   motion was scheduled for hearing and we incorporated that

21   motion into our plan objection.  So it was our understanding

22   that this issue would be taken up at confirmation.  We

23   understood our objection to confirmation would be the

24   vehicle for doing that.  We're happy to --

25             THE COURT:  I'm not overruling any part of your

1    objection at this point and I'm not suggesting that you need

2    or should have abandoned it.  All I'm saying is I don't need

3    to hear oral arguments on it.

4              MR. BRADFORD:  I understand, Your Honor.

5              THE COURT:  So that you're clear.  Okay.

6              MR. BRADFORD:  I understand.  If I might, Your

7    Honor, then I'm going to turn to specific provisions in the

8    plan which we think provide inadequate safeguards against

9    frivolous litigation.  And I'll try to restrain my remarks

10   insofar as they boil over to the particulars of these

11   particular claims, but one of the key concerns we have is

12   the exculpation clause.  The exculpation clause has in it a

13   provision that essentially as we read it would exculpate

14   litigation trustees from liability and circumstances where

15   they have acted in good faith in a reasonable understanding

16   of their authority.

17             We note with respect to Rule 11, that Rule 11

18   does not turn on the subjective good faith of a

19   professional, it's an objective standard.  It turns on

20   whether there is an objective basis for the claims.  We have

21   and the record reflects that this will before the Court at

22   the omnibus on the 25th, moved to modify the stay or

23   objected to the extension of the stay so that we could

24   proceed on a Rule 11 motion.

25             We do think there are Rule 11 violations in

1   certain of the claims that have been asserted against Mr.

2   Zell and to permit a plan to exculpate professionals from

3   their Rule 11 liabilities is unprecedented and would not in

4   any way further the general interests of exculpation in

5   protecting individuals who have been involved in the

6   formulation of a plan.  The conduct of the litigation trust

7   and the conduct of a litigation is a separate animal from

8   the issue of the litigation of the plan itself.  And

9   certainly there is no basis to exculpate professionals to

10  the extent that there have been Rule 11 violations or if in

11  the future, Rule 11 violations are committed in connected

12  with the pursuit of these claims.

13        As a second and related matter, we object to the

14  provisions in the plan which effectively provide limitations

15  on indemnifications of directors and officers with respect

16  to the LBO claims.  We have cited to the Court in our

17  objection three cases, two recent cases from Delaware; the

18  *Summit* case, the *Pamalum* [ph] case, and the *Crabtree* case

19  from the Southern District of New York holding that articles

20  of incorporation are executory contracts.

21        Here we have articles of incorporation which

22  provide indemnification for the directors.  And as a

23  consequence of that under *Sharon Steel* they must either be

24  accepted or rejected in whole.  What the debtor can't do or

25  either plan can't do is essentially pick piecemeal where

1    it's going to provide indemnification for legal fees and

2    where it is not.  And that's what the plan proposes to do by

3    providing and recognizing the articles insofar as they

4    provide indemnification rights for legal fees in all

5    circumstances but for the LBO claims.

6            The debtor or DCL plan proponents I should say in

7    response cite two cases that suggest that articles of

8    incorporation are not executory.  Neither of them dealt with

9    Delaware articles of incorporation.  The *Baldwin* case comes

10   out of Ohio and involved a circumstance where

11   indemnification was permissive, not mandatory as it is in

12   Delaware and where the directors had already done their

13   service.  Mr. Zell by contrast is still currently a

14   director.  So he has been induced to continued service and

15   does continue service in reliance upon the articles of

16   incorporation.

17           Certainly, when someone has completed their

18   service, someone may make the argument that the situation is

19   not longer executory insofar as that director can no longer

20   breach their contract.  But as to a director who continues

21   their services, there is an executory situation and either

22   the contract and the bylaws in this case, articles of

23   incorporation must be accepted in whole or rejected in

24   whole.  There is no proposal and should be none to reject

25   them in whole.

1          Similarly, the one other case cited by the DCL

2   proponents here the *THC* case is a 1977 Hawaii case where the

3   directors had already served in the past.  And the Court

4   there specifically preserved the right to seek

5   indemnification for legal fees as an administrative claim.

6   So there should be no basis to limit our right to

7   indemnification for legal fees, if these claims go forward

8   to a claim in the context of the unsecured claim

9   administration. There should be an ongoing right to

10  indemnification that continues independent of the claim

11  process.

12         And to the extent that litigation is being

13  brought here and it's frivolous or unsuccessful there is no

14  reason that a sitting director should be denied their right

15  to both advancement and payment of legal fees to the extent

16  not otherwise provided by insurance.  And the insurers are

17  taking positions such as there's a $25 million deductible

18  and so forth.  So there can be no reliance completely on DNO

19  insurance.  And I believe this is ultimately important as

20  well because it goes to why the estate ultimately could be

21  injured by the pursuit of claims because ultimately there

22  should be indemnification costs to the estate from the

23  continuation of that litigation.

24         The final point that I would turn to in terms of

25  objections to the plans insofar as they pertain to the

1    pursuit of litigation and then I'll ask Ms. Steege to

2    address the issue of priority and the bridge settlement is

3    related to the conduct of the litigation trust.  And I

4    should note, Your Honor, that each of these objections, that

5    is our specific objection on indemnification exculpation on

6    the conduct of the litigation trust would be moot if, in

7    fact, these claims could not go forward.  Whether that would

8    be for standing or Rule 11 or other reasons.  And so the

9    Court need not reach any of the issues I'm addressing today

10   if, in fact, the claims against Mr. Zell are not permitted

11   to go forward, they would become moot.

12            The history of this case illustrates precisely

13   why neither of the parties and I would focus specifically on

14   Aurelius or the PHONE, should be in a position of

15   controlling any litigation trust decisions that relate to

16   whether or not claims against Mr. Zell specifically should

17   be allowed to be pursued.

18            Your Honor will recall that prior to the

19   appointment of the examiner in this case, there was an

20   investigation of claims.  It was done first by debtor and

21   then by the UCC starting in May of 2009 and including by the

22   Zuckerman firm starting in August of 2009.  It's been

23   represented to the Court that there were some 30 witnesses

24   interviewed, 4.5 million documents reviewed.  And following

25   that investigation, there was a determination that there was

1   no basis for claims against Mr. Zell as reflected by the

2   fact that a plan was put forward to this Court that was

3   accepted by the creditors' committee, accepted by

4   Centerbridge, accepted by JP Morgan, Angelo Gordon, and Law

5   Debenture to had a release for Mr. Zell.  And your heard Mr.

6   Gropper testify, he had no objection to that plan at that

7   time.

8           So what happened?  And what happened, I believe

9   demonstrates why typical safeguards against frivolous

10  litigation are not sufficient here and why the individuals

11  who have now elected to include claims against Mr. Zell have

12  incentives to do so which are unrelated to the best interest

13  of creditors and should disqualify them from continuing to

14  serve in that capacity going forward.  And that is as Your

15  Honor knows and I won't get into the merits.

16          The examiner came in and among other things, the

17  examiner vindicates Mr. Zell.  At the same time, what that

18  does is change the dynamics of this bankruptcy.  Two things

19  happen.  Aurelius buys the PHONES position.  And Aurelius

20  decides that it now has a plan that is going to generally

21  pursue litigation and it wants to be in a position to attach

22  any settlement plan put forward by the DCL proponents.

23          And as a consequence of its acquisition of the

24  PHONES position, Aurelius gains an interest in trying to

25  subordinate the EGI-TRB notes.  That's a direct economic

1   interest that they have.  Ms. Steege will address the issue

2   of subordination between those two.  But suddenly, Aurelius

3   has an interest in saying well Mr. Zell must have done

4   something wrong because that would provide us a basis for

5   subordinating a competing creditor who is otherwise ahead of

6   us in the food chain here.  And that coupled with the fact,

7   they seize on the fact that Mr. Zell's long time advisor,

8   Mr. Liebentritt whose integrity I would say could not be

9   challenged by anybody in this courtroom is the general

10  counsel in Tribune and he becomes the chief restructuring

11  officer of Tribune.  And so isn't a convenient that if we

12  can tar Mr. Zell as the architect of some great LBO

13  conspiracy, we can claim that everybody on the other side of

14  the courtroom has a conflict of interest.

15          And you continue to hear that song played, Your

16  Honor.  And the fundamental fault with that whole argument

17  obviously is that there is no viable claim here.  Anybody

18  independently who looks at it has seen there is no viable

19  claim.  But Aurelius has demonstrated that for reasons

20  related solely to the rhetoric and desire to promote its own

21  plan and advance the economic interest of the PHONES

22  position that it purchased, it has an incentive to try to

23  put Mr. Zell into the role of an LBO defendant when there is

24  no basis to do that.  They cannot make an objective

25  disinterested determination about whether that's in the best

1   interest of creditors.

2           THE COURT:  Let me ask you to pause for a moment.

3           MR. BRADFORD:  Sure.

4           THE COURT:  Yes, Mr. Golden?

5           MR. GOLDEN:  Excuse me, I'm sorry.  Your Honor, I

6   tried to patient here.  I don't like to be interrupt when

7   I'm making a speech.  I thought it was very clear based upon

8   a lot of communications with the Court that today was

9   reserved for legal objections to be raised by third parties

10  not including legal objections by the DCL's or the

11  noteholder plan proponents.  It is equally clear listening

12  to Mr. Bradford that he is not relying on solely legal

13  objections.  He is I'm not sure what the evidentiary record

14  that he's tried to establish is based upon.  I don't believe

15  it's the testimony that we've heard over the last twelve

16  trial days, but these are not based on legal objections.

17          And so I don't have to keep getting up and

18  sitting down to make this objection, I was wondering if we

19  could get some clarification from the Court as to whether we

20  are -- whether all the parties today are confined to making

21  legal based objections or are we now expanding that into

22  some kind of evidentiary basis upon which I don't know what

23  the basis is.

24          THE COURT:  Well, as I understand it, Mr.

25  Bradford is arguing that a litigation trust controlled by

1   Aurelius and I understand what the dynamics are there

2   between the advisory board and the trustee and we did get

3   into that this week, I think.  But arguing that you're

4   legally ineligible to be an estate fiduciary.  I mean,

5   that's the essence of it.  So I don't know how else -- Mr.

6   Bradford, if I'm wrong correct me.

7           MR. BRADFORD:  That's correct, Your Honor.

8           THE COURT:  Okay.  I -- so I'll allow you to

9   continue.

10          MR. BRADFORD:  Thank you, Your Honor.

11          THE COURT:  But again, as a general proposition,

12  Mr. Golden is right.  We're here today to talk about

13  objections which are based on the law, not tied to an

14  evidentiary record.

15          MR. BRADFORD:  And so the record we believe

16  reflects and this I don't believe gets into evidence, but

17  the proceedings before this Court even prior to the start of

18  the confirmation hearing when Your Honor will recall that

19  what Aurelius proposed to say in its disclosure statement

20  about its plan and I quoted this to the Court previously,

21  I'll quote it again.  Aurelius claimed shortly after the

22  examiner report vindicating Mr. Zell, "The examiner's report

23  put an end to 20 months of cover up.  It exposed flagrant

24  wrongdoing within Tribune's executive ranks and identified

25  billions of dollars of LBO related actions, many of them

1   against Tribune insiders such as Sam Zell who's close

2   business associate is Tribune's chief restructuring officer

3   that would have been released for free under the prior

4   plan."  And clearly, that was a false statement as it was

5   put forward.  And Your Honor required that they excise that

6   from the disclosure statement.

7         But the theme persists which is we have to tar

8   Mr. Zell as a wrongdoer and bring claims against him

9   notwithstanding that every independent party who has looked

10  at this has said there is no basis for doing so, so that we

11  can contend that there's a conflict of interest on the other

12  side of the courtroom.

13        And then you've heard it throughout this case,

14  well you happen to know Mr. Zell, that must make you

15  ineligible to act in good faith.  And I know Your Honor has

16  seen through many of those aspersions and attacks on

17  people's good faith and these purported conflicts of

18  interest, but this is a vestige and surely Aurelius in the

19  role that it's in with an ownership interest in the PHONES

20  with a very clearly announced position that this

21  relationship of anybody to Mr. Zell disqualifies them from

22  being independent in this case because of their claims

23  against Mr. Zell give them incentives that are different

24  than looking out for the best interest of creditors and

25  should disqualify them from acting in a role of litigation

1   trustees.

2           THE COURT:  Well some might argue that's exactly

3   the kind of party you should have chasing such claims for

4   the very reasons that you described.

5           MR. BRADFORD:  If, in fact, there motives were

6   not restricted to getting the PHONES put ahead of for

7   example EGI-TRB, but there are a whole host of other

8   creditors ahead of them.  There are a whole host of parties

9   who depend upon the distributions from this plan.  And there

10  is nobody before this Court who has other than obviously the

11  examiner who had no interest in proposing a plan, there's

12  nobody before the Court who has the best interest of the all

13  the creditors in mind.             And if you look at why

14  are we not hearing from the DCL proponents that it makes no

15  sense to pursue this litigation, I think you've heard them

16  through their own expert say they don't believe this

17  litigation has value.  They don't believe this litigation

18  has merit, but they don't want to be accused of being soft

19  on Mr. Zell because they're being accused of having this

20  conflict.  They're put in the position of responding by

21  saying well, we'll sue him, too.  Let's have a party and see

22  who can find more claims to assert against Mr. Zell so we

23  don't have a conflict of interest either.

24          And you, therefore, have this incentive on the

25  part of Aurelius to triumph the PHONES position over EGI-TRB

1  and to construct a conflict when none exists as a motivation

2  for bringing claims that otherwise don't meet the best

3  interest test, don't meet the Rule 11 test, and you have DCL

4  proponents who are put in the defensive and say we'll do

5  whatever Aurelius will do by way of suing people so nobody

6  can accuse of being soft on the LBO claims.

7         There is nobody who has been an independent

8  decision maker and that's all we're asking for is an

9  independent trustee without those kind of specific creditor

10  oriented incentives, incentives that are unique to

11  particular creditor positions instead of in the best

12  interest of all creditors.  And we would submit Professor

13  Black who was the proponent for the DCL or the expert for

14  the DCL proponents on the value of the claims, spoke for

15  them when he testified that there was no value to these

16  claims and that these claims did not have merit.

17         THE COURT:  Well what mechanism would you suggest

18  to locate and appoint such a person?

19         MR. BRADFORD:  I believe Your Honor could appoint

20  someone as you appointed the examiner.  I also believe that

21  we could allow the examiner essentially to serve in that

22  capacity with respect to the issue of what claims should be

23  permitted and what claims should not be permitted.  And

24  there should be some threshold determination --

25         THE COURT:  So you think it would be a -- the

1  examiner who's determined that claims against your client

2  have no merit would be a fair arbiter of determining whether

3  such claims should be pursued?

4         MR. BRADFORD:  Yes, Your Honor, I absolutely do

5  and I believe that's why Your Honor appointed the examiner

6  in the first place.  He came to this proceeding with no

7  independent -- with no interest to promote any particular

8  plan with no agenda other than trying to get at the truth.

9  As Your Honor knows, $12 million of estate money was spent

10 to get at the truth.  And if somebody can come forward and

11 rebut what he has shown, that's certainly a determination

12 for Your Honor to make.  But in the absence of some evidence

13 as to why the examiner got it wrong, that's a pretty good

14 starting point for what is in the best interest of the

15 estate.

16         In the *Maxwell* case, Judge Posner specifically

17 held that any time you have a litigation by trustee, a

18 similar situation with a litigation trust, the incentives

19 are fairly skewed.  Insofar as it's very easy to say this is

20 a large claim. It may have a fractional change of success,

21 but what's the harm in pursuing it? And Judge Posner wrote

22 and other Courts have followed the same reasoning.

23         We've cited these opinions that the Court needs

24 to exercise some gate keeping function over that.  That

25 specifically those expenses that are not reasonably in the

1   best interest of the estate should not be permitted.  That

2   Rule 11 should be applied with some vigilance and that was

3   the same ruling that the Court reached in *Adelphia* in saying

4   I'm not going to give releases, but on the other hand, I'm

5   going to apply Rule 11 in a meaningful sort of way.  Because

6   the parties don't have the usual incentives that private

7   parties do in making their decisions about whether to spend

8   money on litigation or no.  And as a result, there needs to

9   be some gate keeping mechanism for someone independent of

10  those trying to persuade creditors that they're going to get

11  the biggest bank and the largest recovery regardless of how

12  specious or frivolous the claims to make that decision.

13          There needs to be Rule 11 determinations.  We

14  have tried to T up a Rule 11 motion.  I will be back in two

15  weeks to try to get that before Your Honor.  We can

16  certainly try to raise these issues again by way of

17  standing, but what I'm speaking to today really are the

18  institutional safeguards against the pursuit of frivolous

19  litigation.  And one of those safeguards should be a part

20  that is truly independent and objective of valuating whether

21  or not these claims are in the best interest of these

22  estate.

23          Ultimately, I believe that's Your Honor's

24  determination, but to the extent that someone is going to

25  look at that before Your Honor rules on it, I do think that

1   is a role that the examiner has played.  That was one of the

2   reasons I believe the examiner was engaged in this case and

3   that his work should not be discounted.

4         So to summarize, specifically, we object to the

5   indemnity provisions that would deny ongoing legal fees in

6   this circumstance.  We object to the exculpation provision

7   particularly insofar as it would curtail Rule 11 liability.

8   And we would ask that as it pertains to the issue of whether

9   claims against Mr. Zell specifically because I do think his

10  circumstances are unique by reason of the examiner's

11  findings and confirmed by Professor Black's testimony,

12  whether those claims should be pursued, that that is an

13  issue that should be made by an independent party and

14  hopefully the Court would address it in the context of

15  standing on Rule 11 before we got that far.

16        THE COURT:  Well he's presently a defendant in

17  the lawsuit that's currently stayed.  Why shouldn't that be

18  resolved in connection with the adversary matter?

19        MR. BRADFORD:  We don't -- we believe it can be

20  resolved in connection with the lawsuit by way of an early

21  Rule 11 motion and that's precisely how we've tried to

22  address this.  What we don't think is appropriate is to

23  leave this claim pending for any greater length of time

24  because there are I believe unfounded allegations that are

25  reputationally injurious and we have a stay in that lawsuit

1    that essentially allows these allegations and promises of

2    recovery to made without affording a real chance to respond

3    to that in the litigation.

4         THE COURT:  Well what if the plan were to be

5    neutral and leave to resolution of those issues to

6    disposition of the adversary?

7         MR. BRADFORD:  First, we again, believe that all

8    Rule 11 issues should be preserved, indemnity rights

9    brought, and then we would still submit that the question of

10   whether or not any estate money should be spent on those

11   claims is a threshold issue for this Court.  That whatever

12   cost there is in that motion practice is needless cost.

13   Whatever waste there is of the DNO policies is needless.

14        And I think most importantly, that this Court has

15   some obligation not to put its imprimatur on lottery ticket

16   litigation.  And that's what Judge Posner held that it's not

17   enough to say that will get sorted out somewhere down the

18   road in litigation.  If it's going to be part of a plan that

19   this Court approves and sanctions, that there needs to be

20   some judgment made about whether that's really a fair and

21   equitable expenditure of funds.  And that at least requires

22   that the claims not be frivolous, that they meet Rule 11

23   standards, colorability standards, best interest standards.

24   And that's a determination that should be made as a gate

25   keeping function before the litigation is allowed to go

1    forward.  And in that sense, we think it makes more sense

2    for Your Honor to address those issues early on as we've

3    sought to do in responding to the standing motion at an

4    earlier time.

5              THE COURT:  So we should have the hearing that we

6    never had.

7              MR. BRADFORD:  That's correct, Your Honor.

8              THE COURT:  I tend to disagree with that.  At

9    least at the confirmation stage, but I -- look, I hear your

10   concerns.  I've heard them all along.

11             MR. BRADFORD:  I appreciate that, Your Honor.

12             THE COURT:  And I, you know, I understand your

13   client's position.  Okay.  Anything further?

14             MR. BRADFORD:  Not on these specific aspects of

15   our objection.  As I mentioned, there are what I would call

16   more discrete objections which go to the issue of the

17   priority of treatment of EGI-TRB under the plan, the bridge

18   settlement.  And then there are some other objections that

19   will come later in the agenda.  It was my expectation that

20   Ms. Steege, my partner, would address those other

21   objections.  I know it's close to the lunch hour and I don't

22   know how Your Honor would like to proceed.

23             THE COURT:  Well let's go a little while longer,

24   I'm building up a great appetite.

25   (Laughter)

1          MR. BRADFORD:  Right.  I'm going to ask Ms.

2    Steege to address those issues.

3          THE COURT:  Thank you.

4          MR. BRADFORD:  Thank you, Your Honor.

5          MS. STEEGE:  Good morning, Your Honor.  Catherine

6    Steege on behalf of the EGI-TRB.

7          And the first issue I am going to address is the

8    question of the priority of the EGI-TRB notes.  EGI-TRB

9    holds approximately $300 million in notes against the

10   Tribune.  We have -- the class, the EGI-TRB class has voted

11   no on the plan triggering the cram down provisions of

12   Section 1129(b) which require that the plan satisfy the

13   absolute priority rule.  We would submit that neither the

14   DCL plan nor the noteholder plan satisfies that rule because

15   neither plan makes it clear that the EGI-TRB notes are

16   senior to the PHONES securities.

17         In response to this objection, the DCL plan

18   proponents state in the chart that they filed last week that

19   they really don't think that the issue needs to be resolved

20   today.  They point to a statement made in their confirmation

21   memo filed before the hearing begin which states that if and

22   when there are funds available to distribute to either of

23   these two classes, then the issue of who's entitled to those

24   funds can be determined at that point in time.

25         The problem with that resolution, well that

1    resolution might be acceptable, the problem is is that Your

2    Honor's not going to be confirming their confirmation brief.

3    What Your Honor is going to be confirming is a plan or

4    reorganization and entering a confirmation order.  And the

5    plan itself is not clear in this respect.  It does not

6    reserve the issue.  It doesn't really address the issue,

7    right on its face, one would read that the two sets of the

8    notes and the PHONE securities are being treated as if they

9    are equal claims and equal priority.

10             THE COURT:  Or some other Court of competent

11   jurisdiction --

12             MS. STEEGE:  Or you resolve it.

13             THE COURT:  -- could decide that issue, too.

14             MS. STEEGE:  Right.  But another Court of

15   competent jurisdiction is going to want to see that it's

16   clearly been expressively preserved in a confirmation order

17   and in a plan, not in a brief that's filed prior to

18   confirmation that doesn't really -- doesn't itself get

19   approved by the Court.  So that is our position with regard

20   to the subordination, absolute priority rule objection.

21   With regard to the objection that we've made, we've made an

22   objection, a narrow objection, to the provisions of Section

23   9.12 of the DCL plan.  And when the bridge lenders withdrew

24   their plan and came on board with the DCL plan, changes were

25   made to the plan which provided that the bridge lenders

1  would be reimbursed for their fees and expenses up to I

2  believe under the current amendments it's $7 million, but

3  they only get those payments if they support the DCL plan

4  and take no positions inconsistent with confirmation of the

5  plan.  In short we think that this is an inappropriate, not

6  to be pejorative, but it's basically a bride.  There's no

7  basis in the bankruptcy code to allow the bridge lenders

8  reimbursement for their fees and expenses.  They're not a

9  secured creditor that's over-secured that's entitled to

10 collect that under Section 506(b), simply because they

11 withdrew a plan.  That's not a substantial contribution.  No

12 one is suggesting it is under Section 503(b).  In their

13 chart of objections they say well, they've resolved one

14 objection by making Your Honor have approval of the

15 reasonableness of those fees.  That's a start, but there's

16 no legal basis to be giving them fees in the first place.

17 And we would submit that that particular provision of the

18 plan is inappropriate and that this allowance of fees for a

19 creditor who is not entitled to it should not be confirmed.

20         THE COURT:  Well, let me ask the question as

21 carefully as I can articulate it.  What makes this proposal

22 different from what I find is a common dynamic in bankruptcy

23 proceedings and that is a party who wants something,

24 bargaining for the other party's acquiescence or

25 cooperation?  What makes this different?

 1          MS. STEEGE:  What makes it different, Your Honor,

 2    is the creation of a claim for this party that they would

 3    not otherwise be entitled to under the code.  The code

 4    specifically provides for reimbursement of expenses and fees

 5    to certain creditors if they're secured and they're over-

 6    secured under Section 506(b).  It might allow for recovery

 7    of expenses under 503(b) if a party has made a substantial

 8    contribution.  But the case law is pretty clear that

 9    proposing your own plan, withdrawing your own plan, these

10    are things you're doing for your own benefit, not for the

11    benefit of the estate as a whole and you don't get a

12    substantial contribution claim.  There's no basis in the

13    code to provide this type of claim to induce their

14    cooperation.  That's different than reaching an agreement

15    over a claim that the code would allow to be paid under a

16    plan, agreement you're going to pay a creditor a certain

17    percentage amount on their claim in exchange for their

18    support of your plan, you're dealing with a claim the code

19    recognizes.  Here you're creating something out of whole

20    cloth simply to get their support to go on board.  They

21    should support the plan or not, but they shouldn't be doing

22    it because they're going to get $7 million in fees for doing

23    so.  Then every single other creditor that the debtor wants

24    to induce could come in here and say I want my fees paid,

25    too, and there's no legal basis for that and that's why it's

1    wrong.  Thank you.

2            THE COURT:  Thank you.

3            MR. SOTTILE:  Your Honor, James Sottile of

4    Zuckerman Spaeder, Special Counsel to the Official Committee

5    of Unsecured Creditors.  Mr. LeMay of Chadbourne will be

6    addressing the legal points raised by Jenner Block, Counsel

7    for Mr. Zell and EGI-TRB.

8            I rise to ask the Court's indulgence to speak for

9    two or three minutes about those arguments by Mr. Bradford

10   that I think went a little beyond the legal objections that

11   he was presenting, in particular arguments about what

12   happened on standing and when claims should be pursued and

13   what Determinations were made about the merits of claims.

14           THE COURT:  You can do that in two to three

15   minutes?

16           MR. SOTTILE:  I believe that I can, Your Honor.

17           THE COURT:  Go ahead.

18           MR. SOTTILE:  Your Honor, let me just say what --

19   where we fundamentally disagree with Mr. Bradford.  There

20   was no Determination by any of the parties that agreed to

21   the April settlement that there was no basis for claims

22   against Mr. Zell or EGI-TRB.  There was simply a settlement

23   under which for the consideration given at the time and

24   based on what the parties knew at the time, they were

25   prepared to release those claims.  Nobody decided there was

1    no basis for them.  Mr. Bradford told the Court that the

2    examiner vindicated Mr. Zell and suggested that the

3    examiner's conclusions show that claims against Mr. Zell

4    have no merit and are frivolous.  None of that can be found

5    in a fair reading of the examiner's report, Your Honor, as I

6    know the Court will conclude when it reviews the report in

7    detail.  The examiner found that various claims were

8    reasonably unlikely to succeed, somewhat unlikely to

9    succeed, and so forth with respect to Mr. Zell and EGI-TRB.

10   I submit, Your Honor, that's the stuff of litigation.

11   Litigators all the time pursue and win claims that one might

12   look at at the beginning and say you know less than 50/50,

13   but you have a real chance of success.  That's all one can

14   fairly infer from what the examiner found.  It is for some

15   Court down the road that's hearing the merits of these

16   claims to determine whether or not those claims will succeed

17   or not.

18            You also heard Mr. Bradford allude to testimony

19   by Professor Black, an expert speaking on behalf of the DCL

20   plan proponents about value of the claims against Mr. Zell.

21   I want to be very clear, Your Honor, that Mr. Black's views,

22   Professor Black's views about the merits of claims against

23   Mr. Zell and associated entities are not the view of the

24   Committee.  The Committee believes that those claims have

25   substantial merit and should be pursued.

1                    Finally, Your Honor, I would submit that the

2       right way to deal with these issues, this sort of attempt to

3       pre-litigate in the Bankruptcy Court the merits of claims

4       that ought to be resolved later on in the adversary

5       proceeding, to litigate that as part of confirmation

6       hearings is inappropriate.  The claims have been asserted,

7       the actions are stayed, they should remain stayed until the

8       Court concludes these confirmation proceedings, at which

9       time they're going to end up in some litigation trust.  The

10      Trustee of that trust can make a Decision as to whether or

11      not the claim should be pursued.  This Court can review that

12      Decision and can entertain motions to dismiss and can

13      ultimately deal with the merits of the claims.  It's not a

14      confirmation objection.

15                   THE COURT:  Well, let's assume for the moment,

16      without deciding, that you then agree that the plan should

17      be neutral with respect to any rights Mr. Zell or related

18      entities should be able to assert in the adversary.  Are

19      there changes that should be made in the proposed plans to

20      make that clear?

21                   MR. SOTTILE:  Your Honor, I don't believe that

22      anything in the plan that the DCL proponents have submitted

23      to the Court purports to limit in any way Mr. Zell's and

24      EGI-TRB's ability to litigate fully the merits of claims.

25      And if Mr. Bradford believes there is something, they should

 1   point it out to us because we are not intending to have this

 2   Court in confirming a plan, make a Decision about whether or

 3   not those claims will ultimately succeed or not or whether

 4   or not the litigation trust that will be prosecuting the

 5   claims should pursue them.  We believe they are avowed and

 6   meritorious claims, but ultimately the Decision about

 7   whether to pursue them is one the litigation trust should

 8   make without the plan telling them one way or the other how

 9   they should proceed.

10              THE COURT:  All right.  Thank you.

11              MR. SOTTILE:  Thank you, Your Honor.

12              MR. LEMAY:  Good morning.  Good afternoon, Your

13   Honor.  David LeMay from Chadbourne and Parke of the

14   Official Committee of Unsecured Creditors.  The Zell and

15   EGI-TRB attorneys have given me a number of things that I

16   guess I should deal with.  With the Court's permission I'm

17   going to proceed in not exactly the order that they did.  I

18   think I'll first address the two arguments made by Ms.

19   Steege with a view of getting in effect clearing out the

20   underbrush because I don't believe it's any more than

21   underbrush.  First with respect to the relative priority of

22   the DCL plan on the one -- I'm sorry -- of the PHONES notes

23   and the EGI-TRB notes as between each other, at least as it

24   relates to the DCL plan.  I believe that the DCL plan is

25   extremely clear that it does not purport in any way to

1    resolve that relative priority dispute.  If you look at the

2    definitions in Section 1.1.42 and 1.1.43 of the DCL plan,

3    those define the Class 1L litigation and Class 1L creditors

4    trust interests, which are the distributions to be received

5    on the EGI-TRB notes.  And what they say is that essentially

6    they're going to get these litigation trust distributions

7    and then it goes on with a proviso to say that until the

8    holders have allowed senior note claims on the one hand and

9    there's no dispute as to that and then B, the holders of any

10   other allowed claims that are entitled to share in the

11   parent trust -- the parent GUX [ph] trust preference and to

12   the benefit of the contractual subordination of the EGI-TRB

13   notes receive payment in full, then the EGI-TRB notes will

14   not receive any distribution.  So that definition

15   intentionally and purposefully leaves open the relative

16   priority as between those subordinated notes and the PHONES

17   subordinated notes.  I think Your Honor should decline any

18   invitation to take on that issue now, both because you've

19   got an awful lot else on your plate, but just because

20   there's no good reason to do it and indeed I have a strong

21   suspicion that ultimately it will prove not to be as much of

22   a dispute as people are suggesting it might be, for the

23   simple reason that I don't think there's anything there to

24   fight about.  Your Honor will remember that colloquy that

25   happened at the January 24 hearing when Mr. Rosenberg, on

1   behalf of the PHONES holders or a subset of the PHONES

2   holders, very candidly told the Court that he didn't think

3   that -- he said it is very unlikely the PHONES -- I'm

4   quoting now -- that the PHONES are going to be able -- are

5   going to see a significant recovery here, if any recovery at

6   all.  And of course the indenture trustees counsel for the

7   PHONES wanted to unsay that and I had some fun with it.  But

8   I think it is an open secret in this courtroom that the

9   subordinated classes are probably quarreling about nothing.

10  So for all those reasons, Your Honor, I would urge the Court

11  not to reach out and attempt to bite off this unnecessary

12  issue of the respective priority of these two subordinated

13  classes.  I think our plan is perfectly clear that it

14  doesn't purport to prejudge that issue and if people -- if

15  the Court wants, I should say, for us to make that clearer

16  in bold print or somewhere else, I don't see any reason we

17  wouldn't do that.  So I think that's a phony issue in

18  effect, Your Honor.

19          THE COURT:  Well, then if it's so easy to make it

20  go away, why not just make it go away?

21          MR. LEMAY:  We could add a sentence to our plan.

22          THE COURT:  All right.

23          MR. LEMAY:  I don't see any reason we couldn't do

24  that.  With respect to the bridge loan settlement, I'm kind

25  of amused you know.  That is the one aspect of what we've

1    done that the noteholders and Aurelius actually have not

2    taken us to task on.  If the bridge settlement was such a

3    rotten deal and was giving away money that ought not to have

4    been given, I'm quite confident that these gentlemen over

5    here would have called our attention to it.  They didn't do

6    that.  In fact, their most recent supplemental filing seems

7    to suggest that they'd be willing to embrace the bridge

8    settlement itself.  It's actually a pretty good settlement.

9    We settled a billion six of potential liability for $64.5

10   million or approximately four percent of the total.  A

11   portion of that is in effect stated to be on account of

12   legal fees, it is stated to be subject to the Court's

13   approval, so I think we've met the Court approval

14   requirement that's come out of some of the recent case law

15   here, but I think the way to look at it is the way that Your

16   Honor looked at it in your question to Counsel, which is in

17   effect what we're doing is settling this $1.6 billion claim

18   for $64.5 million.  A portion of it is allocated under the

19   settlement to legal fees.  I think that is more of interest

20   to the bridge proponents than -- I'm sorry -- to the bridge

21   lenders than to the DCL proponents.  I think the way to look

22   at it is what did the estate get from this and of course

23   what the estate did get was that the bridge reserve, the

24   initial amount of $77 million satisfied that settlement and

25   left money left over, I think it was about $13 million, I'm

1   subject to correction on that, left money left over to be

2   distributed to the bondholders and to the parent GUX.  So I

3   think all in all that was a very good settlement and I think

4   Your Honor hit the nail on the head when you suggested that

5   this is just how claims get resolved in the attribution of a

6   portion of that consideration, subject to your Court -- to

7   Your Honor's approval to legal fees I think is just not

8   problematical.  I think that really is more of an internal

9   kind of scorekeeping mechanism within the bridge community

10  itself.  So those issues I think, Your Honor, should come

11  off the table relatively quickly.

12          I'm going to turn now to some of the things that

13  Mr. Bradford talked about.  I was perplexed -- well, first

14  as to the inadequate safeguards against frivolous

15  litigation.  I think we've all heard Your Honor pretty

16  clearly.  Mr. Sottile has made that remark.  You know it's -

17  - it should not come as a surprise that there is a spotlight

18  on Mr. Zell, I mean and I'm told that in naval circles when

19  a ship sinks out from under a captain, there's usually an

20  inquiry and here, if I may use one of my famous analogies,

21  Mr. Zell and his colleagues designed and built a ship and

22  they launched it and they commissioned it and they put a

23  crew on it and it sailed about 100 yards into Lake Michigan

24  and sunk to the bottom of the ocean, it is hardly surprising

25  that they are the subject of attention from lawyers under

```
 1    those circumstances.  Mr. Sottile has explained to you that
 2    I don't think the plan puts any undue levers on that
 3    process.  I'll address exculpation and indemnity in that
 4    context because I think those are the undue levers that Your
 5    Honor may have been questioning about when you asked your
 6    question and I hope I got that right.
 7               So let me turn to the indemnity and exculpation
 8    questions that have been raised by Mr. Bradford.  First as
 9    to the exculpation, I think that's an easy one and it is a -
10    - it's a textural one.  The relevant text is Section 11.5 of
11    the DCL plan and it basically sets forth an exculpation
12    starting with the words to the fullest extent permitted
13    under applicable law, which is an interesting way to start
14    because I think it gives the Court and all parties comfort
15    that in effect it is self-regulating.  If, as Mr. Bradford
16    suggests, this paragraph otherwise might have been deemed to
17    somehow write Rule 11 out of the bankruptcy rules and I
18    don't think it does that at all, I think that savings clause
19    at the beginning should totally take care of that.  But I
20    think the real substance of the exculpation makes it very
21    clear that nothing that's being done by way of exculpation
22    does the horrible things that are being advertised.
23               THE COURT:  Let me --
24               MR. LEMAY:  Yes.
25               THE COURT:  -- suggest to you how I have from
```

1    time to time dealt with the exculpation/release issues with

2    such proposed savings language and it leaves for another

3    time and probably more often than not for another Court,

4    just what the extent of that -- of those clauses should be

5    and I don't know, at least in one case recently I declined

6    to approve that language because while sometimes it's good

7    to kick the can down the road, sometimes it's just not the

8    right thing to do.  Why is it the right thing to do here?

9              MR. LEMAY:  I think it's the right thing to do

10   because and this was where I was going to go with this, the

11   exculpation clause in this plan was intentionally and pretty

12   narrowly tailored to measure up to Judge Walrath's recent

13   Decision in the Washington Mutual case.  I think it was no

14   secret to any of the parties that that would be on

15   everyone's mind and Your Honor confirmed that yesterday when

16   you told us to think pretty hard about that.  This

17   exculpation clause looks quite a bit different from the one

18   that we filed with the initial plan and that initial plan

19   was pre Washington Mutual and this is post Washington

20   Mutual.  We've done our very best to make sure that the

21   exculpation clause for example only protects, at least as to

22   the estate fiduciaries, only protects us to post-petition

23   conduct because that's a Washington Mutual Decision, that

24   the related parties definition, as you'll hear later, falls

25   within the ambit of the sorts of exculpations that would be

1    appropriate.  So Your Honor, I totally agree.  If we had

2    written an exculpation clause that was completely off the

3    reservation and then said to the fullest extent permitted by

4    applicable law, then I think that would be a very, very

5    valid criticism from the bench.  Why should I have to do

6    this?  But I think here and I know you've asked the parties

7    to address this tomorrow, the exculpation clauses really

8    weren't just sort of you know thrown down the field.  They

9    were really written with a view of passing muster and we

10   think they do.  I don't myself see anything in this

11   exculpation clause to bring it back to the argument that's

12   in front of the Court right now.  I don't see anything in

13   here that says litigation trustees are going to be

14   exculpated from Rule 11 violations.

15            MR. GOLDEN:  Your Honor, I might save some time

16   just by clarifying the scope of our objection.  Thank you.

17   Our objection is not to 11.5 which is being referred to, but

18   we're referring specifically to 13.3.7, which deals with

19   exculpation of the litigation trustee and those responsible

20   for the litigation and I apologize if I caused any confusion

21   about the scope of the objection.

22            THE COURT:  All right.  Thank you.

23            MR. LEMAY:  Actually don't know that that's an

24   exculpation clause, Your Honor.  I think that's an

25   indemnification from the litigation trust in favor of the

1   litigation, the litigation trustee and to the extent that

2   the litigation trust as opposed to the Chapter 11 estate is

3   indemnifying and to the extent that there isn't a Court-

4   ordered exculpation, I think that's a pretty different

5   creature.  Basically what this is just saying is that the

6   litigation trust will indemnify the litigation trustee.

7   That just doesn't seem like a very remarkable proposition to

8   me.  If the litigation trust wastes its assets by violating

9   Rule 11, then what that means is the litigation trust and

10  the creditors who empowered that litigation trust are going

11  to have to eat their own cooking.  So I'm not sure that that

12  -- I'm not sure that one makes any sense.  I think there'd

13  be a more cogent objection if either A, you were being asked

14  to use your judicial powers to craft an exculpation or B,

15  the debtor or its reorganized estate were being put on the

16  hook for that.  So I'm not sure that's a well-taken point.

17  I think I've beaten that one to death, Your Honor.  I'll

18  keep going.

19          I think the last thing I need to talk about,

20  unless I've got my notes wrong, is indemnity.  And I guess

21  the argument that's being made is that Mr. Zell has been

22  induced post-petition to remain as a director and that

23  because he's been induced it is wrong to treat his pre-

24  petition indemnity claims as pre-petition indemnity claims.

25  And some cases were cited that purport to stand for that.  I

1    have a couple of observations.  I don't think it's quite

2    right to say that Mr. Zell was induced to remain as a

3    director.  I suspect that he has remained as a director for

4    the purpose of exerting, as is perfectly proper, ongoing

5    control over the reorganizing entity until the time comes

6    when he'll circle off the board.  But the fact remains, I

7    think it's beyond per adventure that when acts are committed

8    by an officer or director pre-petition, those acts give rise

9    to pre-petition claims.  A case called Summit Metals decided

10   by Your Honor, makes it very clear.  And this is a decided

11   case.  This is not just one of the sort of confirmation

12   orders, which I'll get to in a minute because I think that

13   was what was adverted to by Mr. Bradford.  In Summit Metals,

14   in the decided case and it's reported at 379BR40, this Court

15   has said consistently Courts have held that an

16   indemnification claim based on pre-petition services or

17   conduct is not a cost or expense for services rendered after

18   the commencement of the case.  Putting it a different way,

19   pre-petition conduct gives rise to pre-petition claim and

20   gives rise not to an administrative claim because you have

21   not been dealing with the debtor in possession.  You've been

22   dealing with the pre-petition debtor and no benefit has been

23   conferred upon the estate.  The suggestion is made that

24   however charters and bylaws are executory contracts and must

25   be assumed or rejected.  I think if the Court looks at our

1    briefing, you'll see that that's just not necessarily the

2    law and the fact that the holdings that say that that isn't

3    the law emanate from other jurisdictions, I don't really

4    think is dispositive.  And so for those reasons I don't

5    think it can be said in any meaningful way that these are

6    executory contracts that have to be assumed.  I think that's

7    contrary to the weight of the law.  And the Baldwin United

8    and THC cases that Mr. Bradford mentioned I think continue

9    to be good law.  Mr. Bradford cited three confirmation

10   orders for the proposition that certificates of

11   incorporation are executory contracts.  He mentioned

12   Panolam, Crabtree & Evelyn and then I think he mistakenly

13   mentioned the Summit Metals case.  I believe he meant to

14   mention because his papers mention a case instead called NII

15   Holdings.  And I guess the only observation I have with

16   respect to those three cases is that they are simply

17   confirmation orders, they do not appear in any way to have

18   been the result of a litigated decision, and I think that

19   they're precedential value for that reason should be limited

20   or probably discounted entirely.  Excuse me.  Your Honor, if

21   I could just have a second.  They did cover a lot of topics

22   and I just want to make sure that I don't repent of yielding

23   the podium.

24             THE COURT:  You may.

25             MR. LEMAY:  Thank you.  I know Mr. Dublin wants

1    to have a word or two about some of the observations in

2    particular that were made with respect to Aurelius as

3    litigation trustee nominator, so I think I'm done.  Your

4    Honor, thank you.

5              THE COURT:  Thank you.

6              MR. DUBLIN:  Good afternoon again.  For the

7    record Phil Dublin, Akin Gump on behalf of Aurelius and the

8    other noteholder plan proponents.  Your Honor, I'll do my

9    best not to repeat the comments that either Mr. Sottile or

10   Mr. LeMay have made.  I think Mr. Sottile put it quite

11   succinctly and accurately as to what the examiner's report

12   does say and what it doesn't say and that Mr. Bradford I

13   believe reads that report with rose-colored glasses that I

14   wish I had in connection with all my matters.

15             With respect to the last couple of items that Mr.

16   LeMay touched on, the indemnity and the exculpation, again I

17   believe the provisions being referred to in the plan, as

18   well as in the related draft trust agreements are indemnity

19   provisions, not exculpation provisions.  With respect to the

20   trusts under the noteholder plan, those provisions I believe

21   are consistent with much precedent and applicable law and

22   they carve out the extent of the indemnity to make sure that

23   parties can only be indemnified to the extent of applicable

24   law and likewise provides that there will be no

25   indemnification upon a finding of fraud, self-dealing,

1   intentional misrepresentation, or willful misconduct.  And

2   on the heels of that discussion on the indemnity

3   specifically focused on self-dealing is where I'd like to

4   move into the attacks on Aurelius.  And I'll do it briefly

5   because I think that the only reason why Mr. Bradford was

6   focused on Aurelius is because he knows that they have the

7   weight of their conviction.  They know that there are valid

8   claims here with respect to Step 1 and Step 2, as well as

9   with respect to the preference claims and the like that are

10  asserted against Mr. Zell and EGI in connection with the

11  Committee complaint that's on file, which this Court has

12  already granted standing.  And really it's an attempt by EGI

13  and Zell to try to get Aurelius to say hey, we really want

14  to be involved in these causes of action, we want to be on

15  the board, so we'll drop these claims against you because

16  we're scared.  That's not the case.  As Professor Rock

17  testified, these are the exact type of people that you want

18  to be in charge of your trust, people that are going to

19  maximize the value of the assets.  And in that regard in

20  addition to the indemnification provision that's limiting in

21  the trust agreements, our trust agreements provide that the

22  members of the trust advisory boards, as well as the

23  trustees, will have fiduciary obligations to maximize the

24  value of the assets in the trust, the staten [ph] way, and

25  with those fiduciary duties in the same manner that a

```
 1    creditors committee has to its constituency.  We do have a
 2    specific carve out because under our plan everybody is going
 3    to get trust interest, that there will be no fiduciary duty
 4    in your capacity as a member of the advisory board or as
 5    trustee against any trust beneficiary in that trust
 6    beneficiary's capacity as a defendant.  Obviously that is
 7    what would create the conflict of interest if you had a
 8    fiduciary duty to somebody in their defendant capacity.  Mr.
 9    Bradford goes out of his way also to say that Aurelius is
10    really just focused on the PHONES and assuming I guess as we
11    all believe that the senior notes are entitled to a full
12    recovery, that Aurelius will continue to press the causes of
13    action once the senior notes are paid in full, but I don't
14    think he's read our plan.  Once the senior notes are paid in
15    full, the PHONES notes trustee takes over Aurelius'
16    position.  Anybody that's been appointed by Aurelius on the
17    board is gone.  It's the PHONES notes trustee that takes
18    over at that point.  Aurelius does not have a say after the
19    senior notes are paid in full as to how that board will
20    continue to operate.
21              THE COURT:  I'm not so sure Mr. Bradford would
22    consider that an enhancement of his position.
23    (Laughter)
24              MR. DUBLIN:  That is probably true, but it will
25    no longer be Aurelius that will have a say in the
```

1    prosecution of those causes of action.  Moving on also to

2    priority argument with respect to the PHONES and the EGI

3    notes.  I'll talk about it just for a minute and I think our

4    plan is quite clear where it says that it's going to be

5    determined at a later date with respect to whatever allowed

6    claims there are as to who has priority against the PHONES

7    and that is in, if you give me one second I'll tell you the

8    exact -- I think it's in 3.9C.  It's in the treatment

9    section for the PHONES.  But it's really a red herring.

10   There are no initial distributions going out under the

11   noteholder plan to the holders, the PHONES notes, or the

12   EGI-TRB notes for the specific purpose that we all agree --

13   they are all subordinated to Step 1, Step 2, the bridge, and

14   the senior notes at the parent company.  Now if the LBO

15   causes of action are successful, well, then the EGI-TRB

16   notes are going to go away.  They're Step 2 debt.  So we're

17   not going to have to worry about whether the EGI-TRB notes

18   are senior to the PHONES because they won't be there.  If

19   the LBO causes of action are unsuccessful, well, then

20   there's not going to be any value for the PHONES or the EGI-

21   TRB notes in that circumstance, so we don't have to worry

22   about it at that point.  So I think it's really a red

23   herring as to whether the PHONES or the EGI notes are

24   senior, which is senior to each other or whether even

25   they're pari passu.  I think that the order of reading if

1  the Court -- if this Court or any Court is eventually going

2  to determine which is senior, the PHONES or the EGI-TRB

3  notes to the extent that is ever necessary, which again I

4  say it is not -- the right order is to read the PHONES

5  notes, indenture trust -- indenture first, followed by the

6  subordination agreement for the EGI notes because the

7  language that Counsel for EGI-Zell read from the PHONES

8  indenture is strikingly similar to the language that's in

9  the subordination for the EGI notes, which provides that the

10  EGI notes will be subordinate to all senior obligations and

11  senior obligations are all obligations, indebtedness and

12  other liabilities of the company, meaning Tribune company,

13  other than any such obligations, indebtedness, or

14  liabilities that by their express terms rank pari passu or

15  junior to the company's obligations under the subordinate

16  notes.  There's nothing in the PHONES notes that say

17  anything about the EGI notes because the PHONES notes trust

18  indenture came first and by the fact that this agreement

19  came second, if they wanted to be senior to the PHONES, they

20  would have said so, but they didn't, so I think that is the

21  proper order to read them in.

22            I think I may have covered everything that was

23  necessary here.  I'm just going to take a quick look as

24  well.  One more second, I believe I have -- that's all I

25  have.

1              THE COURT:  All right.  Thank you.

2              MR. SIEGEL:  Martin Siegel of Brown Rudnick on

3    behalf of Wilmington Trust, the indenture trustee for the

4    PHONES.  Much of what I was going to say, Your Honor, has

5    been said.  I incorporate Mr. Dublin's argument.  We don't

6    believe if you read -- if you were to decide the issue that

7    you would decide that when in 2007 when the EGI note was

8    prepared and they said we're only senior basically -- you

9    have to say that you're going to be subordinated.  They

10   could have amended the PHONES if they wanted to, they could

11   have said so in the EGI subordination agreement.  They

12   didn't.  We think if you ruled on it, you would rule that

13   the PHONES are not subordinated to the EGI note.  However,

14   we agree that you do not need to decide the issue now, the

15   way the plans are written, we're not entitled to a

16   distribution at the -- right now.

17              Now we've heard more than two weeks of testimony

18   and we disagree with Mr. LeMay's statement that we will

19   ultimately not get a substantial distribution.  But that's

20   for a later date.  Your Honor has enough on his plate, so on

21   behalf of the indenture trustee, we are not insisting that

22   you resolve this issue now.  When Your Honor enters a ruling

23   on the other issues that you have before you, we believe

24   that at that point there will be a need to resolve it

25   because the PHONES will get a substantial distribution.  But

1    that's not for today.  You have enough to decide.

2              THE COURT:  Well, as I sit here and listen to the

3    respective arguments, I recall an argument that was made on

4    a similar issue and I think it was in Spansion.  And there

5    the plan changed in its terms with respect to dealing with

6    the priority issue and one version of the debtors plan said

7    well, we'll issue stock in accordance with whatever the

8    priority turns out to be, but we make no position -- take no

9    position about it now and one party argued therefore I have

10   no jurisdiction to determine the dispute about who came

11   first.  Then the plan changed and made a choice about who

12   came first, so I think I put the issue squarely before me,

13   which I had to decide.  So I then ruminated about whether

14   here depending upon the valuation decision, which I have to

15   make in connection with confirmation, would mean that

16   depending on the number I would have to decide the issue,

17   but if it's not high enough I might not have to until later

18   or another Court might not have to until later, depending

19   upon the success of the litigation outcomes.  Okay.

20             MR. SIEGEL:  Your Honor, if you'd like to decide

21   another issue, we'd be more than happy to submit whatever

22   you -- how you want to do it.

23             THE COURT:  Yeah.  I've run out of my invitation

24   stationary, Mr. Siegel.

25   (Laughter)

```
 1              MR. SIEGEL:  Thank you, Your Honor.

 2              THE COURT:  All right.  Is this an appropriate

 3    time for a break?

 4              MR. SOTTILE:  Yes, Your Honor.

 5              THE COURT:  Okay.  Mr. Sottile?

 6              MR. SOTTILE:  Yes, Your Honor?

 7              THE COURT:  I'd like to ask you to revisit now

 8    your time estimate on getting through these objections and -

 9    -

10    (Laughter)

11              THE COURT:  -- whether we're still on track or

12    whether there might have been a bit of slippage.

13              MR. SOTTILE:  Actually, Your Honor, I believe

14    that we are on track.  We had anticipated that this

15    morning's objections would be rather lengthy and I still

16    anticipate, although I will look around and make sure that

17    I'm not going to be corrected by any of my colleagues, I

18    still anticipate we should complete today.  I think that we

19    are optimistic, Your Honor, that we can continue and

20    complete the third party objections today.

21              THE COURT:  Listen, any time a little optimism

22    sneaks its way through in this case I'm happy.  In terms of

23    numbers of hours, what do you think?

24              MR. SOTTILE:  Your Honor, my best estimate would

25    be that we need another three to three and a half hours.
```

1          THE COURT:  Okay.  Anything before we break?

2    Court will stand in recess until 2:00.

3    (Recess from 12:49 p.m. to 1:59 p.m.)

4          THE COURT:  Good afternoon.

5          MR. BRADFORD:  Your Honor, David Bradford on

6    behalf of Mr. Zell.  Briefly a point of order before we

7    leave this last objection.  Over the lunch hour a Bloomberg

8    Report issued with a headline which read, "Claims against

9    Tribune Chairman Zell 'have merit' bankruptcy judge says."

10   Your Honor is then quoted as having found that the claims

11   against Mr. Zell have merit.  I'm confidant that Your Honor

12   made no such Determination.  I would ask Your Honor to

13   clarify for the record that you made no such Determination.

14         THE COURT:  The record will speak for itself.  I

15   do not make a habit of responding to press reports for

16   reasons which I'm sure you understand.

17         MR. BRADFORD:  Your Honor, I do think -- I will

18   state for the record and I've consulted with other Counsel

19   that no such statement was made by the Court, that the issue

20   of whether these claims have merit was not before the Court

21   today and that there was no such Determination.  So I think

22   unfortunately this illustrates why we are trying to get this

23   issue resolved sooner rather than later because there are

24   serious reputational consequences to these kinds of

25   unfounded articles.  Thank you, Your Honor.

1          MR. LANTRY:  Kevin Lantry on behalf of the

2     Debtors, Your Honor.  This now brings us to the last of the

3     third party objections to both plans and that has to do with

4     contentions about the creditor trust structures that are in

5     both plans and EGI indicated they'd like to fall back a

6     little bit, so the foundations I believe have the first

7     objection on this.

8          THE COURT:  Very well.

9          MR. RILEY:  Good afternoon, Your Honor.  Richard

10    Riley from Duane Morris on behalf of the Robert McCormick

11    Tribune Foundation and the Cantigny Foundation, which I'll

12    refer to as the foundations.

13         Your Honor, you heard some of our argument at the

14    March 22 hearing in connection with the foundations

15    objection to the noteholders motion for determination that

16    they retained their state law fraudulent conveyance claims.

17    This will -- our arguments will amplify a little bit of what

18    we said at that hearing, Your Honor.  I don't think there's

19    any dispute among the parties as to what the intent and the

20    motivation is for the creation of the creditor trust under

21    both of the plans.  The Committee has already sued the

22    foundation and other former shareholders for -- to try to

23    recover shareholder payments made as part of the 2007 LBO

24    under an intentional fraudulent conveyance theory.  The

25    Committee intentionally did not sue the foundation and the

```
 1   other shareholders, the other former shareholders, under
 2   constructive fraudulent conveyance theories.  So under both
 3   plans the only thing being assigned or conveyed to this
 4   creditor trust is these state law fraudulent conveyance
 5   actions.  As I'm sure Your Honor is aware, the Third Circuit
 6   has found that you know these shareholder payments like the
 7   payments that the foundations have received, are protected
 8   by 546(e) under -- if they're brought under by a trustee for
 9   constructive fraudulent conveyance.  Given the 546(e)
10   limitations, the plan proponents have concocted the creditor
11   trust mechanism under each of the competing plans, simply to
12   try to evade 546(e) of the Bankruptcy Code.  In doing so,
13   Your Honor, the foundations assert that the creditor trust
14   provisions of the competing plans violate 1129(a)(1) and
15   (a)(3) of the Bankruptcy Code.  We have two main reasons,
16   Your Honor.  First is somewhat duplicative of what we argued
17   back on March 22.  By assigning the -- trying to assign the
18   creditors state law fraudulent conveyance claims to this
19   creditor trust --
20            THE COURT:  Do you mean unsuccessfully argued on
21   the 22nd?
22            MR. RILEY:  Well, Your Honor, I guess -- the
23   issue I guess -- that's a point of clarification I guess.  I
24   guess some of us, me included, are unclear of what was
25   actually ruled on at -- on March 22.
```

A394

1    THE COURT:  I have to say that ruling from the

2   bench set a record for confusing others involved.

3    MR. RILEY:  Yeah.  Because as you know, Your

4   Honor, there's competing certifications to Counsel, I

5   believe --

6    THE COURT:  Oh, I know.

7    MR. RILEY:  -- based on that ruling.

8   (Laughter)

9    MR. RILEY:  What we say is that the creditor

10   trust mechanism under the plan is trying to confer standing

11   on the creditor trustee to bring these state law fraudulent

12   conveyance actions, but Your Honor they've -- the Committee

13   has already brought an action for -- to recover the payments

14   under the -- for this LBO under fraudulent conveyance

15   theories.  And once the Committee brought that action,

16   that's the action.  The creditors no longer have standing to

17   bring the state law actions.  And Your Honor, for that

18   proposition we cite in our objection the National American

19   Insurance Company v. Rupert Landscaping case.  And in that

20   case the Court found that a creditor could not bring a

21   similar cause of action to an action that the trustee was

22   bringing where the actions had the same similar focus.  And

23   Your Honor if you think about it, if this creditor trust

24   mechanism were to be approved and go into effect, you will

25   have competing causes of action for the same dollars arising

1   out of that LBO transaction.

2             THE COURT:  You're right.  That was the same

3   argument that was made and I thought I was clear in that to

4   the extent that was an objection and I had overruled it as -

5   - for the reasons that as certain parties argued that's just

6   something to be sorted out later and Courts have a way of

7   dealing with that and they do.

8             MR. RILEY:  Well, Your Honor, then I'll move on

9   to the -- I guess you're saying that's overruled.  The

10  second reason we contested --

11            THE COURT:  Well, you know Mr. Riley if you can

12  tell me -- you quite properly acknowledged at the outset

13  that it was like the objection that was made before, which I

14  thought I'd overruled.  But I see no difference in the

15  argument here either.

16            MR. RILEY:  Well, our position is since the

17  Committee has commenced the action, you're going to have

18  competing causes of action for the -- for basically the same

19  dollars.  It's going to be a --

20            THE COURT:  I acknowledge that that might be a

21  possibility.

22            MR. RILEY:  And Your Honor, I do point out that -

23  - where is it -- in the Klingman [ph] case, which is one of

24  the cases cited by the noteholders for the proposition that

25  once the two year statute of limitations under 546 for the

1    trustee expires, that the creditors regain or can assert

2    these causes of action, but the Klingman Court actually said

3    -- it's an apt quote.  It says this holding should not be

4    construed as suggesting that creditors may vie with the

5    bankruptcy trustee for the right to pursue fraudulent

6    conveyance actions.  To the contrary, the commencement of a

7    bankruptcy case gives the trustee the right to pursue

8    fraudulent conveyed assets to the exclusion of all creditors

9    and they cite 546(a) and they -- but they say however the

10   trustee does not retain this exclusive right in perpetuity,

11   the trustees exclusive right to maintain a fraudulent

12   conveyance cause of action and the creditors may step in or

13   resume actions when the trustee no longer has a viable cause

14   of action.  And in this case the Committee has brought a

15   viable cause of action for the return of the shareholder

16   payments.  So our argument would be with that they don't

17   have standing to bring them and it's going to cause all

18   sorts of problems after the plan is confirmed.

19         THE COURT:  Well, I acknowledge that the

20   potential exists, but as I said and as was argued before

21   Courts have a way of dealing with that and the noteholders

22   also had a notion that it might help prompt resolutions and

23   I tend to think they're right about that.

24         MR. RILEY:  Your Honor, the other reason we state

25   that the creditor trust would violate or would not be

1   brought in good faith under 1129(a)(1) or (a)(3) is that our

2   position is that 546(e) of the Bankruptcy Code preempts the

3   state law fraudulent conveyance actions and the creditor

4   trust mechanism is just a clear attempt to sidestep 546(e).

5   And Your Honor, I would cite to you the Hechinger's Decision

6   by Judge Walrath, which I'm sure you're aware of, in which

7   she found that 546(e) preempted an unjust enrichment claim

8   that sought to recover you know under similar theories as

9   fraudulent conveyance.

10         THE COURT:  Well, it came up in a different

11   context, but the Third Circuit decided recently in Visteon

12   that the enhanced protections given to employee benefits by

13   Section 1114 was intended by Congress and it did actually

14   offer more than arguably was available outside of

15   bankruptcy, which is somewhat unusual as the interplay

16   between bankruptcy and non-bankruptcy law typically goes.

17   Here what in effect is maybe happening is that while there's

18   the protection in bankruptcy, after bankruptcy maybe it's

19   not and maybe that's what Congress intended.

20         MR. RILEY:  But Your Honor --

21         THE COURT:  Tell me why that's not a fair reading

22   of the code.

23         MR. RILEY:  Well, Your Honor, I think Congress

24   intended to protect the exact kind of transaction that's

25   trying to be unwound here.  I mean if you look at what

1    Tribune is trying to do, the noteholders or the debtor

2    committee lender plan is trying to do, they're trying to

3    unwind billions of dollars of securities transactions that's

4    going to involve thousands if not ten thousands of

5    shareholders.  If you look at the Committee complaint as an

6    example of what will be the state court litigation, I think

7    the Committee complaint, the caption goes on for at least

8    two pages and it has a -- close to a 500-page exhibit of

9    additional plaintiffs.  And Congress in passing 546(e) was

10   trying to give some certainty to the financial markets that

11   these types of transactions couldn't be unwound.  So Your

12   Honor, it's just that this whole mechanism is --

13          THE COURT:  Or maybe that bankruptcy couldn't be

14   used to unwind them.

15          MR. RILEY:  Or once a company decides to file

16   bankruptcy, they cannot unwind them.  And I don't think it

17   stops with confirmation.  Once the debtor decides to file

18   bankruptcy, 546(e) applies.

19          THE COURT:  Forever.

20          MR. RILEY:  Yeah.  And Your Honor, I think

21   there's joinders.

22          THE COURT:  All right.

23          MR. RILEY:  I do have one last point, Your Honor.

24   We do mention in our brief or our objection that these same

25   arguments were actually raised by the Debtor to the

1    examiner, so they were -- they knew that preemption was an

2    issue and they knew that this attempted sidestep would be

3    problematic.

4              THE COURT:  Well, it wouldn't be the first time

5    I've seen a position change during the course of a

6    bankruptcy.

7    (Laughter)

8              MS. STEEGE:  Good afternoon, Your Honor.

9    Catherine Steege again on behalf of EGI-TRB and Mr. Zell.

10   I'd like to answer Your Honor's question with regard to why

11   this isn't a circumstance where parties ought to be allowed

12   to proceed outside of bankruptcy and evade some restrictive

13   provisions of the Bankruptcy Code.  The reason for that,

14   Your Honor, is because the estate made a Determination to

15   administer these particular claims.  By making that

16   Determination, by bringing the actual fraudulent transfer

17   claims and the other claims that implicate 546(e), they've

18   administered that particular body of claims.  They've chosen

19   to proceed in the bankruptcy process and creditors should

20   not be allowed to then proceed outside of bankruptcy on the

21   parallel claims.  And I think the problem with how everyone

22   is focusing on this is they're defining claims by looking at

23   the legal label that's placed on the claim.  They're saying

24   if we call it this it's something different than if we call

25   it that, but that's not how the law works in any other

1    circumstance.  If you were, for example, looking at whether

2    or not res judicata or issue preclusion would apply, you'd

3    be looking at the core set of operative facts and the core

4    set of operative facts with regard to the causes of action

5    that the estate, through the Committee's complaint has

6    brought, that same core set of facts, the same ultimate

7    relief is being attempted to be sought in connection with

8    these claims that would be assigned to the creditor trust.

9    As to the question as to why it's appropriate to resolve

10   that issue now as opposed to letting it be deferred until a

11   later date, the issue before the Court today isn't whether

12   or not Aurelius gets relief from the stay to bring causes of

13   action in its own name.  It's whether the Court enters a

14   confirmation order that places an imprimatur on creditors

15   abilities to assign into a creditor trust these particular

16   claims.  And I'm not suggesting, because I don't think it's

17   correct, that you can't have a creditor trust in a plan.

18   You can.  You can have a trust for claims that are assigned

19   by creditors that they own.  The question here is do

20   creditors actually own any claims that can be assigned into

21   that trust and you can only get there if you determine that

22   the claim depends solely on the legal label placed on that

23   claim.  If you look at it the way I think it's looked at

24   every other time when you try to figure out, when you're

25   amending a claim under Rule 15, you're applying res

1    judicata, you look at the core set of operative facts.  When

2    you look at it that way, the estate chose to administer

3    these claims and by administering these claims, creditors

4    lost the right to individually pursue those claims outside

5    of bankruptcy.  And that's the reason why this mechanism

6    doesn't work in this plan.  And if you look at the cases

7    that both of the plan proponents cite to support this, they

8    are all instances where the bankruptcy trustee, the estate,

9    doesn't administer at all the fraudulent conveyance claims,

10   doesn't do anything with that core set of operative facts.

11   And after they don't do anything for the two-year period,

12   creditors then come in, they revert back, they're abandoned

13   back, and they're allowed to proceed.  But you don't see any

14   case where anyone is jointly on a parallel track prosecuting

15   that with a trust that's got the imprimatur of the Court.

16   And I don't think it's appropriate.  It's one thing in the

17   stay motion.  It's another thing when you have a

18   confirmation order to suggest that a Court in some other

19   jurisdiction is going to be able to raise that issue because

20   what will be said is the Court confirmed the plan allowing

21   the assignment of those claim, it made a Determination that

22   there was something to assign, so the argument that I'm

23   making today shouldn't be made because the confirmation

24   order borrows it and it's a collateral attack on the plan.

25   That's why I think it becomes ripe here where it may not

1    have been a few weeks ago when it was argued in connection

2    with the stay relief.   Thank you, Your Honor.

3              THE COURT:   Thank you.

4              MR. DOUGHERTY:   Good afternoon, Your Honor.   My

5    name is George Dougherty.   I'm here on behalf of certain

6    current and former officers and directors of the Tribune.

7    Mr. Riley covered a lot of what I wanted to cover and EGI's

8    Counsel also did the same and I certainly heard what you

9    said.   I do want to point out that at least from our

10   perspective, 546(e) shows Congress's clear intent that these

11   types of transactions, those that involve securities

12   transactions, should be protected.   The plan proponents I

13   think need to show you why that is not the case in this

14   situation and I don't think they've made that burden and

15   it's not what you said a forever thing.   I think the way to

16   reconcile this issue is to say that the claims that existed

17   at the time the bankruptcy was filed and these disclaim

18   state law fraudulent conveyance claims clearly existed at

19   that time, that they should be subject to the 546(e) issue.

20   And that you know perhaps there's claims outside of

21   bankruptcy that may come later.   Maybe we don't get those

22   protections under 546, but with respect to the things that

23   could have been brought under -- is it 547 or 548, I forget

24   which one, those are claims that should be covered by 546

25   because that's the only way you can fulfill a clear

1    congressional determination that these types of claims

2    should not be upset under a state law or a constructive

3    fraudulent conveyance theory and thank you.

4              THE COURT:   Thank you.

5              MR. DUBLIN:   Good afternoon, Your Honor.   Phil

6    Dublin, Akin Gump for Aurelius and the Noteholder Plan

7    Proponents.   I'll be brief because I think Mr. Golden

8    covered on March 22 substantially all of the issues that

9    have been addressed by the objecting parties so far this

10   morning.   I would just like to note that we obviously

11   disagree with all their positions.   But as far as for one

12   clarification, EGI-Zell made the point that creditors don't

13   own these claims and only if they have valid state law

14   claims can they transfer them to a trust.   That's exactly

15   what our plan says.   Our plan says that creditors that are

16   going to get credit or trust interests will only be entitled

17   to receive creditor trust interests to the extent they have

18   valid state law avoidance claims that can be transferred to

19   that trust.   And that -- whether there are valid state law

20   claims that can be transferred to that trust is something

21   that will be determined by the state court overseeing the

22   litigation, that will likely be commenced prior to

23   confirmation of any plan in these cases as we come up to the

24   June 4 statute of limitations period for certain states.

25   And all of the arguments that the objecting parties have

1    raised with respect to 546(e) and standing and the like,

2    those are defenseless claims.  There's nothing in the plan

3    that's seeking to prevent those parties, just like there was

4    no relief being sought on March 22 seeking to prevent those

5    parties from pursuing those defenses in connection with any

6    litigation commenced by an individual creditor or by any

7    causes of action that a creditor trust may pursue on behalf

8    of creditors that have contributed to that trust the valid

9    state law avoidance claims that they have.

10          Other than that any remarks I have will be

11   repetitive of the hearing that we had on the 22nd and the

12   rulings that you made.  Obviously we do have competing

13   orders.  We view that as a fact that we have objecting

14   parties that are trying to add things into an order that

15   this Court did not rule, but we'll wait to see the order

16   that's eventually entered.

17          THE COURT:  Thank you.

18          MR. LEMAY:  Your Honor, David LeMay from

19   Chadbourne and Parke for the Official Committee of Unsecured

20   Creditors and also for the DCL proponents.  Counsel for the

21   foundation began his remarks by saying that some of his

22   arguments had previously been ventilated on the 22nd.  I

23   don't think that was quite right.  I think all of this was

24   previously ventilated and what we really have here is the

25   second pre-motion to dismiss and I think that the correct

1   time to be arguing motions to dismiss is on the motion to

2   dismiss.

3            I will note, just very briefly, that there are

4   two or three legal authorities that you don't hear too much

5   about from the other side in this quarrel.  One is the PHP

6   case, which you did hear about on the 22nd.  You heard about

7   it from Mr. Golden.  And the PHP case I think makes it very

8   clear and that's a Delaware case of course, that if the

9   claim that is being pursued is not being pursued by the

10  estate or by a successor to the estate, then the 546(e)

11  defense isn't applicable.  Now I assume there will probably

12  be an argument sooner or later about whether the 546(e)

13  defense -- I'm sorry -- whether the claim is being pursued

14  by the estate or by the -- by a successor to the estate.

15  Taking a cue perhaps from a couple of the suggestions that

16  the Court made this morning to first Mr. Krakauer and then

17  to me, for our part, the Committee's part, we'd be perfectly

18  happy to add a sentence to the plan that says as such 546(e)

19  defenses as may exist, if any, are not impaired or are not

20  prejudiced.  And if that makes this go away, that's maybe a

21  profitable use of our time.  It is the case that in Lyondell

22  a trust just like this one was part of a confirmed plan, so

23  it's not like we're going anything new or extraordinary.

24  But if putting in that kind of clause would save the day on

25  this and give us some time to turn to some other things, I'd

1    be happy to do it.  I don't feel, Your Honor, the need to

2    reargue at any length these issues about what the case means

3    when it says that the -- when the estate has possession or

4    control of a claim, that it gets first swing or first crack

5    and then what happens after it yields that first crack.

6    We've been down that road.  We all know what the Barone [ph]

7    case says.  So perhaps I'll let that go.  I guess I'll only

8    note that at least nobody is using the word Enron this time

9    and that makes me happy.  Thank you, Your Honor.

10              THE COURT:  Thank you.  Shall we move on?

11              MR. LANTRY:  Sir, Your Honor, Kevin Lantry.  That

12   brings us to the objections to the DCL plan and its bar

13   order.

14              MR. MCCAMBRIDGE:  Good afternoon, Your Honor.  My

15   name is John McCambridge.  I'm here on behalf of certain

16   DNO's and we're objecting to the DCL plan because its

17   proposed bar order violates 1129(a).  As Your Honor knows,

18   the proponents have the burden of demonstrating compliance

19   and they cannot.  My clients are either current or soon to

20   be defendants in multiple actions arising out of the LBO or

21   facing actions by a litigation trust, a creditors trust, and

22   individual creditors.

23              Now I want to start with the natural state of

24   affairs, which is that my clients have claims of

25   contribution and non-contractual indemnity that they may

```
1   choose to bring against other individuals and entities.  Now
2   there's well-settled, non-bankruptcy procedures for dealing
3   with those claims.  We got various state laws, uniform acts,
4   contribution acts, and those are all out there and that's
5   what we have today.  Now the DCL plan proposes to upset the
6   natural currently existing state of affairs, the one that
7   exists between my clients, who are non-debtors, and these
8   other individuals and entities, who are also non-debtors.
9   Now the DCL plan proposes to do this with a bar order that
10  they've negotiated with each other and without any consent
11  or participation by us.  Now the background is that the
12  debtors entered various settlement agreements with non-
13  debtors.  The appropriateness of those settlement agreements
14  we understand has been a significant topic in this Court for
15  at least the last month.  But what we're focused on is one,
16  apparent feature or product of those settlement agreements
17  and that's the bar order that's included at paragraph 11.3
18  of the DCL plan.  And the bar order that they've proposed
19  would prevent my clients from bringing claims for
20  contribution or non-contractual indemnity against anybody
21  that's covered by their settlement agreements.  And that
22  seems to us as far as we can tell to be a vast array of
23  individuals and firms, not readily identifiable at all.
24          Now turning to what that means.  The DCL bar
25  order is a non-consensual release of our claims, non-
```

A408

 1   debtors, against other non-debtors.  So there's no question

 2   that the bar order, if entered, would release our claims.

 3   There's no question that they're non -- it would be a non-

 4   consensual release.  There's no question that we're non-

 5   debtors and no question that the people being released by

 6   their plan are also non-debtors as well.  So 524(e) and

 7   especially in the Third Circuit, it's very clear that they

 8   require strict special scrutiny of any such purported

 9   release.  There's four factors that are relevant.  Those are

10   laid out in Continental and in Spansion.  As applied to this

11   case the four are first, is this non-consensual release

12   necessary to the success of the reorganization?  In this

13   instance the non-consensual release, the one being imposed

14   on us, is attached to some unknown number of settlement

15   agreements.  So the relevant question on that would be is

16   each of those settlement agreements necessary to the

17   reorganization and if so, is the non-consensual release

18   being imposed on us necessary to those settlement

19   agreements.  That's factor one.  Factor two, are the

20   entities that are being released from our claims, are they

21   providing -- making a critical financial contribution to the

22   DCL plan?  Factor three, is each of the entities that's

23   being released on our claims making a financial contribution

24   that's necessary to make the plan feasible?  Again, these

25   are embedded in the settlement agreements that exist that

1  they did with the debtor.  Finally, we come to factor four.

2  If factors 1 to 3 are met, there's a final factor that

3  focuses on the people in the position of my clients and that

4  is is the release, the imposed release of our claims fair,

5  is it fair to us, the non-consenting people or entities and

6  the issue is are we being fairly compensated for the forced

7  release of our claims?  That's factor four.  That's the one

8  we're going to focus on mostly.  Let me just briefly comment

9  on factors one to three.  Now the issues there in one to

10  three all regard the financial elements of the various

11  settlement agreements and presumably those have been

12  addressed at length during the hearings that have just

13  concluded.  And we're not here in a position ourselves to

14  evaluate the showing that was made on those issues over the

15  last three weeks or month or whatever period of time these

16  hearings have gone on.  As we note in our written objection,

17  however, that's been a topic, it is a topic of contention

18  between the parties in the confirmation hearing and we

19  understand that the Court will be looking at these issues on

20  its own in any event.  And all we would note is it's up to

21  the proponents of this bar order to demonstrate that they

22  satisfy factors one to three.

23          Now assuming for purposes of the analysis that

24  factors one to three are satisfied, that's when factor four

25  becomes relevant.  Here's the proper analysis on factor

1    four.  We have to ask what consideration is being provided

2    to us in exchange for being forced, if the order were

3    entered, to release our claims.  Is the consideration

4    offered fair?  Now in this instance according to the DCL

5    proponents, the consideration given is the purported

6    replacement of our contribution claims and indemnity claims

7    with something that is supposed to be equivalent.  And what

8    that is under the proposal is the use in future courts, in

9    the litigation courts, of a proportionate fault procedure,

10   specifically that future courts will apply a proportionate

11   fault proceeding, conduct a proportionate fault proceeding,

12   so that our clients will be held responsible for only their

13   portion of any liability.  And that's it.  That's what's

14   supposedly being offered to us.  And the DCL proponents say

15   well, that's fair consideration.  You're getting the

16   equivalent of a contribution claim, the bar order says well,

17   any court in which you're sued by the litigation trustee,

18   the creditor trustee, individual creditors, they're already

19   talking about bringing cases all over the country, as Your

20   Honor knows.  Any of those future litigation courts will

21   have to apply the proportionate fault hearing, conduct a

22   trial, alongside the liability trial for our clients and

23   make sure that we are, if found liable on anything, required

24   to pay only our proportionate fault.  Now what's the problem

25   with this?  As I said, first and foremost according to the

1    DCL plan and recent events, we're allegedly going to face

2    multiple suits in multiple jurisdictions, state and federal,

3    around the country.  As I said Plaintiffs including

4    litigation trustee, creditor trustee, and now individual

5    creditors.  Without the bar order we have our claims of

6    contribution and indemnity and the attendant statutory case

7    law, protections that have developed over the years.  With

8    the bar order we don't.  Now is it sufficient for the bar

9    order to say future litigation courts will do this?  That's

10   essentially what it says.  And what we are concerned about

11   and what we have raised on February 15 and ever since is

12   what happens if one of these other courts does not apply the

13   proportionate fault provisions, does not conduct a

14   concurrent hearing to be sure that we're entitled and get

15   the benefit, such as it is, of the bar order, of the

16   proportionate fault reduction.  Again, remember this is

17   their plan forced on us.  Our position is that if a court

18   were not to apply the proportionate fault procedures in

19   full, that the burden of that failure has to fall on the DCL

20   proponents and whatever plaintiff has brought that claim.

21   It cannot be imposed on us.

22          What does the DCL's proposal do?  It does impose

23   it on us.  Their written response on this issue says you

24   know there's a low probability that a court elsewhere would

25   not fully apply the proportionate fault proceedings, but if

1   that happens, tough luck for you, that it's our problem, we

2   can come back to this court, but the people who are suing us

3   are not under and enjoined by the bar order.  And under

4   their procedures we can well be in Court in any number of

5   jurisdictions, Oklahoma, Cook County where I'm from, with a

6   judge that doesn't think that he's going to apply it.  He

7   doesn't conduct imaginary trials.  He doesn't like the empty

8   chair.  We've all been there.  Anybody that's been -- that's

9   tried cases around in different jurisdictions knows that

10   different judges run their courtroom their way.  So for us

11   to be exposed to the possibilities and it's crystal clear we

12   are, that the proportionate fault procedures are not

13   followed by future courts, means that were are not getting

14   consideration for the forced release of our claims.  And

15   that's utterly unacceptable to us.  It's not fair and it's

16   wrong on multiple levels.  The only consideration or

17   compensation that we're allegedly getting for these non-

18   consensual releases is a proportionate fault hearing and

19   determination.  If we don't get that, the consideration has

20   failed.  No consideration, no compensation, that's unfair,

21   it's inequitable and it's a violation of 524(e).

22         In addition, the way that they've got this

23   constructed, if you look at the plaintiff's incentives,

24   according to this the plaintiff does better if the

25   proportionate fault rule is not applied.  Why is that?

1    Without the proportionate fault rule and without us being

2    able to bring contribution claims, the possibility is clear

3    that we could be hit for the full amount of damage, without

4    use of proportionate fault, and without contribution.  What

5    does that mean?  Their recovery goes way up and beyond

6    what's envisioned allegedly by this rule or by this order.

7    And that's their incentive.  Essentially they've got

8    opportunities for double recovery.  Can I imagine a

9    plaintiff somehow looking for a jurisdiction that might not

10   follow an order from this court?  It's possible.  Now it's

11   also just not acceptable under the law.  This is their plan.

12   If the litigation court does not deliver in proportionate

13   fault, the burden of failure has to rest, would have to rest

14   on the proponents and whatever plaintiff is trying to take

15   advantage of the bar order -- of this procedure.  So the

16   burden of failure has to be on them.  This is their plan,

17   non-consensual, imposed on us.  That's not what this order

18   says at all and it's very telling what it doesn't say.  It

19   does not put the burden on them of a court not going forward

20   and applying this.  The only way perhaps that you could deal

21   with this would be by including in the bar order itself, an

22   injunction, a set of injunctions directed against the

23   plaintiffs, the people that the DCL proponents are pushing

24   forward here and that are going to be the people suing us,

25   right?  So some of the things that you might have in such an

 1  order would be that any plaintiff suing us would be barred

 2  from seeking any amount greater than the proportionate

 3  liability, if any, of the non-settling defendants, us.

 4  That's what was done in the Eichenholtz [ph] case in the

 5  Third Circuit.  In addition, other things that you would

 6  have to have would be if a litigation court were not

 7  following through on applying the full protections of

 8  proportionate fault.  The plaintiff in the order entered by

 9  this court, the plaintiff should be subject to injunction,

10  being adjoined immediately, that they cannot proceed in that

11  other court.  Stop.  Full stop.  In addition, issues about

12  prohibiting a plaintiff once again in any order entered by

13  this Court, asserting jurisdiction over that Plaintiff in

14  this order saying you can't take any steps to have any

15  judgment that's entered -- any judgment against us entered,

16  enforced, collected, etc.  If the proportionate fault rules

17  are not applied, you're enjoined.  And these are -- granted

18  these are potentially complicated issues to get the

19  injunction right.  It's not even attempted here, not even

20  attempted.

21          Additionally there would be jurisdictional issues

22  that are also not addressed here.  For example, this court

23  certainly has jurisdiction over the litigation trustee and

24  it would be easy to add that entity or person in.  And the

25  DCL plan itself does provide for continuing jurisdiction by

1    this Court, I understand over the litigation trustee.  The

2    creditors trustee, though, a creature of this court created

3    by this court, also somebody that could be subject to an

4    injunction in this order to make sure that things are done

5    properly.  I understand the DCL position to be there's no

6    jurisdiction of this court over the creditors trustee in the

7    future.

8              As for individual creditors, you've already dealt

9    with the fact that these lawsuits are apparently coming and

10   any individual creditor who is operating as a plaintiff, the

11   same thing would have to apply.  There would have to be a

12   method by this court in this order to enjoin any other

13   plaintiff, anybody that's suing us from avoiding the

14   proportionate fault rules and then stopping the litigation

15   if it's not applied.

16             So in our view the DCL plan does not measure up

17   at all for this critical issue in terms of factor four,

18   under Continental and Spansion.  The way it's structured we

19   are not being given appropriate fair and actual

20   consideration in exchange for the loss of these claims.  And

21   for that reason it fails 524(e).

22             Now there are other problems with the DCL bar

23   order, so that even if the burden of failure issue and the

24   injunction issue were resolved as to all of the potential

25   plaintiffs, there would be other issues.  One, you've got to

1   be practical I think with regard to the drafting of one of

2   these bar orders.  The notion is that you'd be bringing this

3   to another court that's not a bankruptcy court, maybe a

4   state court, with little experience in a lot of these

5   issues.  If you read the bar order that's proposed, it ought

6   to be self-contained and intelligible to other courts.  This

7   one is not.  You read it and it would require all kinds of

8   reference back into the plan and it really -- I bring this

9   up in part because the unintelligibility of the bar order as

10  proposed really only heightens, increases the chances that a

11  state court judge would either ignore it or get it wrong.

12  So that's an additional problem that's intertwined with the

13  first part of the argument.  In addition, the -- to be

14  equivalent to a contribution claim and I'm not saying it's

15  identical, but in terms of even rough equivalency the

16  proportionate fault issue would have to be determined by the

17  same trier of fact that's determining our liability, if any.

18  So it would have to run together if it's going to be like

19  that.  That's not provided for.  And again if you go to the

20  Eichenholtz case, it's not a bankruptcy case, but it

21  addresses these issues directly and exactly.  The plaintiff

22  can't seek anything more than a proportionate fault judgment

23  and the trial has to proceed together so that if you're

24  going to take it away you've got to provide the equivalent,

25  roughly equivalent benefits.  This plan doesn't do it.

1           I referenced the perversity of the plaintiffs

2    bringing these claims that have been constructed or assigned

3    into various buckets by the DCL people.  And again I

4    emphasize the plaintiffs then do better if the proportionate

5    fault plan is not used by the litigation court.  They do

6    better.  That's a perverse incentive.  In addition, the

7    entities that are protected from our contribution claims,

8    not only will they be protected, but they'd be sharing --

9    they'd be protected against claims from us and they'd be

10   sharing in any recoveries by the litigation trustee or the

11   creditors trustee any recoveries that are made against our

12   group.  So as a couple of courts have pointed out in

13   arguments, et cetera, those people then they're protected

14   and they have now an incentive to trash the transaction in

15   which they have -- in which they may have played an integral

16   part.

17          So for all those reasons this bar order does not

18   work and it renders under 524(e), it can't be approved and

19   as I said none of the things that we would have needed are

20   there.  There's not an injunction against the plaintiffs.

21   There's not retained jurisdiction over all the plaintiffs

22   and any other entities suing us.  So for all those reasons,

23   Your Honor, we object to the plan because the bar order does

24   not work and cannot be used.  Thank you.

25          THE COURT:  Thank you.

1          MS. STEEGE:  Good afternoon again, Catherine
2     Steege.  We simply join in the argument that was made by the
3     directors and officers.
4          THE COURT:  Thank you.
5          MR. PACHULSKI:  Excuse me, Your Honor.
6          THE COURT:  Yes.
7          MR. PACHULSKI:  Hi.  This is Isaac Pachulski of
8     Stutman, Treister, and Glatt for Brigade Capital Management
9     and I'm -- I've been following with the agenda and I think
10    Brigade is next, but I'm not sure.  I apologize.  I don't
11    intend to preempt anybody else, but if I am next I just
12    wanted you to know I'm here sort of.
13    (Laughter)
14         THE COURT:  Thank you, Mr. Pachulski.  Hold on
15    just one moment.
16         MR. HANNAFAN:  Good day, Your Honor.  Blake
17    Hannafan of Hannafan & Hannafan on behalf of Timothy Knight.
18    We had joined in the objection of the certain officers and
19    directors and we again, Your Honor, just join and adopt the
20    arguments of Mr. McCambridge.
21         THE COURT:  Thank you.
22         MR. HANNAFAN:  Thank you.
23         THE COURT:  All right.  I think we now are ready
24    for Brigade.
25         MR. RILEY:  No, Your Honor.

1          THE COURT:  Oh, I'm sorry.

2          MR. PACHULSKI:  Thank you, Your Honor.  Again for

3     the record Isaac Pachulski --

4          THE COURT:  No, Mr. Pachulski --

5          MR. PACHULSKI:  -- of Stutman, Treister, and

6     Glatt professional corporation.

7          THE COURT:  I'm sorry.  There is one more.

8     Please pause for another moment.  Forgive me.

9          MR. PACHULSKI:  Happy to.

10         MR. RILEY:  Your Honor, Richard Riley from Duane

11    Morris on behalf of the foundations.  Your Honor, with me

12    today is David Bohan from the Katten Muchin firm.  And I

13    don't know if we have filed pro-hoc papers, but I'd ask that

14    he'd be heard today and I'll follow up with pro-hoc papers.

15         THE COURT:  Very well.  Thank you.

16         MR. BOHAN:  Thank you for hearing me, Your Honor.

17    I'm here this afternoon on behalf of the Robert McCormick

18    Foundation and the Cantigny Foundation.  Your Honor, we have

19    joined in the objections to the DCL plan that have been

20    filed by certain officers and directors and I also adopt the

21    comments that were made this afternoon by Mr. McCambridge.

22    We agree that the bar order is over broad and that in

23    exchange for -- that the conferring on the non-settling

24    defendants of a speculative, hypothetical, and potentially

25    unenforceable judgment reduction provision sometime in the

1    future is not fair and adequate compensation for the

2    certainty and the immediacy of the forced taking of our

3    contribution and indemnity rights by virtue of the

4    confirmation of this plan.

5              Your Honor, I won't repeat everything that's been

6    said, but I do note that the contribution bar order has been

7    defended on the grounds that it's necessary to bring about a

8    final peace, the certainty that the settling defendants will

9    know what their maximum liability has been.  In the DCL plan

10   memorandum, for example, the plan proponents state that

11   settling defendants are entitled to the benefit of their

12   bargain, namely that they cannot be held liable on account

13   of the settled claims beyond the consideration that was

14   already paid pursuant to the settlement.  That's all well

15   and good, Your Honor, but the bar order in this case goes

16   far, far beyond that and is completely unnecessary.  It is a

17   difficult document to parse, but if I understand it

18   correctly, Your Honor, it would preclude -- it would not

19   preclude, for example, released parties from initiating

20   contribution claims of their own against other than released

21   parties.  In other words, the beneficiaries of the bar order

22   themselves I believe have preserved their own rights to

23   bring contribution claims against parties like my clients,

24   the foundations.  And that's completely unnecessary.  Unless

25   the Court has any questions --

```
 1              THE COURT:  I do not.

 2              MR. BOHAN:  All right.  Thank you, Your Honor.

 3              MR. PACHULSKI:  May I proceed, Your Honor?

 4              THE COURT:  Not yet.

 5  (Laughter)

 6              MR. PACHULSKI:  Thank you.

 7              MR. LOIZIDES:  Your Honor, Chris Loizides.  I'm

 8  just here as local counsel with Mr. Pachulski, who's on the

 9  telephone.

10              THE COURT:  Oh, okay.

11              MR. LOIZIDES:  Thank you.

12              THE COURT:  All right.  Mr. Pachulski, you may

13  proceed.

14              MR. PACHULSKI:  Thank you, Your Honor.  For the

15  record, Isaac Pachulski of Stutman, Treister & Glatt

16  appearing for Brigade Capital Management.

17              Our objection to the bar order is very limited

18  and it's very different from what Your Honor's heard thus

19  far.  Our objection is to that portion of the judgment

20  reduction provision which is the second paragraph of the

21  proposed order that would purport to apply judgment

22  reduction to claims that the estate does not own and has

23  admitted that it does not own and that the estate cannot

24  release and that the estate has admitted it can't release,

25  namely the individual creditors state law fraudulent
```

1   conveyance, constructive fraudulent conveyance claims that

2   Your Honor has heard so much about.  And the fact is there

3   is simply no precedent, no reported decision that permits

4   the imposition of involuntary judgment reduction on anyone

5   other than a settling plaintiff.

6              Now I'd like to put this argument in context with

7   a couple of preliminary observations, Your Honor.  First,

8   from the time that we filed our objection where we spent a

9   great deal of time talking about these individual creditor

10  claims, we've had two concerns.  One is that the distinction

11  between the estate claims and the individual creditor claims

12  be recognized and that they not be conflated.  And second,

13  that the plan not advertently or inadvertently release the

14  individual plans that the estate doesn't own.  And between

15  the time of the objection and today there have been prior

16  iterations of the plan.  And we've actually corresponded

17  with the debtors on this.  And with the exception of this

18  issue, they management to resolve our other concerns on this

19  point of avoiding the conflation and avoiding the relief,

20  but this issue remains outstanding.

21             The second point that I think is critical to

22  understand and is contrary to what you've heard thus far is

23  that if you didn't have the second paragraph, you didn't

24  have the judgment reduction, there is already a judgment

25  reduction resulting from this settlement.

1          Now this settlement if it's approved by the Court

2     and if the Court finds that it's fair and equitable, will

3     result in a dollar for dollar judgment reduction because at

4     least in the context of a fraudulent conveyance claim and I

5     can't speak to other types of tort claims, if for example,

6     somebody with a $100 claim gets a $30 distribution as a

7     result of a settlement, there's already a judgment reduction

8     because inter fraudulent conveyance claim, you can't seek

9     more than your claim.

10          So to the extent that there are distributions

11     resulting from this settlement, that will automatically

12     reduce without anything and this will true in any Court

13     whoever decides fraudulent conveyance, there will be a

14     dollar for dollar reduction for what the case law refers to

15     as the pro tanto reduction.

16          The issue here is here is different because the

17     proposal goes beyond that and would impose what's called a

18     proportionate reduction.  So that would mean that if a Court

19     decides that the settling banks were liable to the selling

20     stockholders, then it would take the judgment that the

21     senior noteholders would have gotten, multiply that by the

22     bank's proportionate liability, and reduce the judgment by

23     that amount.

24          As applied in this case to parties who are not

25     settling plaintiffs, this has two perverse and in at least

1   one case, bizarre results.  The first is that the reduction

2   in our judgment, the senior noteholders judgment, could far

3   exceed anything we get under the settlement.  For example,

4   and this is just a hypothetical, it's not in the evidence,

5   if there's a $1.5 billion judgment against selling stock --

6   against to Step 2 selling stockholders and a Court

7   subsequently finds that actually the banks were also at

8   fault, the banks were really liable and that their share is

9   50 percent, out judgment goes down $750 million. And no

10  matter how you slice the numbers, we're not getting $750

11  million out of the settlement.  But beyond that, it places

12  us in an impossible position.  We're going to have to -- to

13  protect our judgment against selling stockholders, we're

14  going to have to argue that the banks weren't liable.

15          Now I'd ask the Court to consider how bizarre

16  that is in light of what you've heard for months in this

17  case, including over twelve days of trial.  After having

18  argued vociferously that the banks were liable because we

19  think the banks are liable, we're now going to have to say

20  no, we were only kidding, they're really not liable and it's

21  all your fault.

22          But whether or not those are fair or appropriate

23  results, they're illegal results because the application of

24  judgment reduction to someone who's not a settling plaintiff

25  and not a debtor as distinguished from the estate claims

1   which are not the subject of this argument which raise

2   different issues is an illegal third party release.  And

3   although the debtors, the plan proponents cite various bar

4   order and judgment reduction cases at Pages 111 through 117

5   of their brief, there is not a single case, they cite not a

6   single reported case where judgment reduction has been

7   involuntarily imposed on anyone other than a plaintiff.

8   What happens is if a plaintiff wants the settlement and the

9   plaintiff wants to bar order, the plaintiff who wants the

10  settlement has to subject himself to judgment reduction.

11          Now the debtors and the plan proponents have

12  asked this Court to consider the confirmation order in

13  *Lyondell* where judgment reduction was apparently applied to

14  a creditor trust.  And here I'd actually like to echo

15  something that one of the counsel for the plan proponents

16  pointed out early on in arguing about the indemnities with

17  respect to Zell.  Counsel pointed that a confirmation order

18  which is not the result of any reported opinion and which

19  had -- does not explain the reasoning for the decision,

20  should be discounted.  In fact, I agree, except it shouldn't

21  be considered at all.  It's a confirmation order.  We don't

22  know if anybody objected.  While there is a vague reference

23  in this confirmation order to any objections being

24  overruled, that's boilerplate language.  We don't know who

25  objected or why.  So the fact that in some other Court where

1  the issue was not litigated might have decided this was

2  appropriate is meaningless.

3          I would also add that if you were going to assess

4  the *Lyondell* decision, while they did have a creditors'

5  trust, from what little I've seen, it appears that they kind

6  of conflated the estate claims and creditor claims and they

7  treated this as an abandonment and a reversion which with

8  all due respect is analytically incorrect.  These aren't

9  estate claims and shouldn't have been treated as such.

10          So that there really is no authority for what

11  they proposed to do.  And I'd like the Court to consider the

12  following hypothetical so the Court will understand they

13  couldn't even do this outside the Bankruptcy Court.  Suppose

14  you have two plaintiffs and they were both injured in the

15  same car accident and they're each suing two defendants.

16  And one of the plaintiffs decides they want to settle with

17  one of the defendants.  So the settling plaintiff settles

18  with on defendant and wants to get a bar order.  No case

19  that holds that the, excuse me, that the non-settling

20  plaintiff can be forced to undergo a judgment reduction so

21  that the settling plaintiff can get the bar order.  But

22  that's exactly what they're trying to do here.

23          Beyond that, Your Honor, if you were to decide

24  that on some basis that you can impose a judgment reduction

25  on the individual creditors, they should be limited to a

1  dollar for dollar pro tanto reduction.  To begin with, there

2  is precedent for such a limited reduction in one of the

3  cases that the DCL plan proponents cite.  It's the *Munford*

4  case out of the Eleventh Circuit.  And in that case, over

5  the objection of non-settling defendants, the Court affirmed

6  a judgment reduction that was limited to dollar for dollar.

7        But beyond that, there are two important reasons

8  that that limitation is appropriate here.  First, you're not

9  dealing with a settling plaintiff.  Second, to approve the

10  settlement at all, the Court is going to have to decide that

11  it's fair and equitable and that the banks are paying a

12  reasonable amount.  And third, and this is a point that's

13  indicated in the *Eichenholtz* case out of the Third Circuit

14  which was actually cited by someone else in a different

15  context.  The Court there explained that when you apply

16  apportionate judgment reduction to a plaintiff, the risk of

17  a bad settlement falls with the plaintiff.  In other words,

18  if the plaintiff settles a $100 case against one defendant

19  for $30 and the proportionate liability of that defendant

20  was really $50, the burden of that settlement falls on the

21  plaintiff who settled and that makes sense where a plaintiff

22  decides to settle.  But by definition, we haven't decided to

23  settle and so that construct is wholly inappropriate.

24        And again, this is a fallback, Your Honor.  With

25  respect, I don't think there's any basis to impose judgment

1    reduction on plaintiff, but if you do, it should be limited

2    to what is already going to happen anyway by operation of

3    law which is the judgment reduction should be limited to the

4    amount of the settlement proceeds that are applied to the

5    payment of the debt that's the subject of any fraudulent

6    conveyance action.  And with that, I'd conclude my remarks

7    on this point.

8              THE COURT:  Thank you.

9              MR. GOLDEN:  Good afternoon, Your Honor.  Daniel

10   Golden, Akin, Gump, Strauss, Hauer & Feld, counsel for the

11   Aurelius and the noteholder plan proponents.

12             Your Honor, I don't rise to lodge an objection in

13   general to the bar order.  We do, in fact, object globally

14   to the bar order as set forth in our confirmation objection.

15   But understanding the rules of the game, because much of the

16   global nature of the bar order will be dependent upon Your

17   Honor's ultimate determination as to the reasonableness of

18   the settlement, we have determined that we're not going to

19   press the global nature of our objection to the bar order

20   until closing arguments because it will involve getting into

21   the evidence.

22             With respect to the specific point and just so

23   that Your Honor knows, I have informed the other side that

24   we were going to wait to the closing arguments to object to

25   the global nature of the bar order, but did indicate that we

1  were going to object and it will be our turn tomorrow.  But

2  we rise to -- our objection will be limited to the

3  application of the bar order as it relates to disclaim state

4  law fraudulent conveyance claims, the issue that Mr.

5  Pachulski just discussed with the Court.  So really this is

6  just an indication that our turn on that issue will come

7  tomorrow.  I thought Mr. Pachulski handled it exceedingly

8  well.  We may have very little to add to that point, but I

9  didn't want to -- I wanted the Court to know what the

10 noteholder plan proponents' position was with respect to

11 these issues.

12          THE COURT:  It's the noteholders' placeholder.

13 (Laughter)

14          THE COURT:  Thank you, Mr. Golden.

15          MR. MOSKOWITZ:  Your Honor, good afternoon.

16 Elliot Moskowitz representing JP Morgan Chase.

17          I actually just have a minor objection to Mr.

18 Golden's placeholder.  I think that if the arguments that

19 he's going to raise tomorrow are going to be I think as he

20 conceded essentially duplicative of Mr. Pachulski's

21 arguments or certainly deeply related to Mr. Pachulski's

22 arguments with respect to the disclaim state law avoidance

23 claims, why doesn't he do that -- why doesn't he put those

24 arguments out right now and this way we can in an organized

25 way respond to all of the legal arguments with respect to

1   the bar order in one shot.  I think it makes for not the

2   greatest presentation for these arguments to have been made

3   by others and by Mr. Pachulski and then us to respond and

4   then tomorrow Mr. Golden makes the same, essentially the

5   same argument, perhaps exactly the same argument that Mr.

6   Pachulski made and then we have to respond again or respond

7   differently.  I just don't think that makes good sense.

8           THE COURT:  Okay.  Before my head explodes, I'll

9   just say no.

10  (Laughter)

11          MR. MOSKOWITZ:  Very well, Your Honor.

12          THE COURT:  Thank you.

13  (Laughter)

14          MR. MOSKOWITZ:  So, Your Honor, I do rise to

15  respond to the arguments that have been made today in

16  connection with the bar order or the contribution bar that's

17  contained in the DCL plan.  I think the most helpful way for

18  me to organize my remarks at the Court's discretion is to

19  first address the arguments that have been made by I guess

20  the directors and officers which I think go to the bar order

21  generally and to bar orders generally.  Then to spend a

22  little bit of time going through the more specific comments

23  they had about the bar order that don't challenge bar orders

24  generally, but challenge some of the specific provisions of

25  this particular bar order.  And then to conclude by

1   addressing some of the comments that Mr. Pachulski made with

2   respect to the disclaim state law causes of action in

3   particular which I understood to be the core of his argument

4   and objection with respect to the bar order.

5           The director and officer defendants and all of

6   those joining their arguments, but apparently not Brigade,

7   appear to argue that a bar order is essentially in all cases

8   inappropriate.  And we think that is simply wrong.  Case

9   after case, including the Third Circuit itself in the

10  *Eichenholtz* decision, but also in the bankruptcy context

11  including a decision by Judge Shannon just a few months ago

12  in *in re: Semcrude*, a decision that you've heard nobody talk

13  about so far and that is featured in none of the papers

14  except for our papers.  Those cases have fully endorsed the

15  concept of a contribution bar just like the one that we have

16  over here.  And as I'll describe more fully in a couple of

17  minutes, I want to be very clear about something because

18  there's been I think a lot of confusion today about this.

19          A bar order is not a third party release, it is

20  something different than that.  It is a tool the Courts have

21  endorsed to encourage a settlement in multiparty cases to

22  ensure that a settling defendant doesn't have to pay twice

23  for the same liability, first by paying consideration in the

24  settlement and then again for contribution joint liability

25  in respect of that same liability.

1          Let me begin with the case law itself because I

2    think it's important to study the leading cases, especially

3    the two most leading ones from this jurisdiction.  The

4    leading case on this topic in this circuit and hopefully

5    there's no debate about this is the *Eichenholtz case, 52*

6    *F.3rd 478, Third Circuit 1995.*

7          In *Eichenholtz*, the plaintiff reached a

8    settlement of a securities class action lawsuit with some,

9    but not all of the defendants.  The settlement agreement

10   included a bar order which barred the non-settling

11   defendants from asserting a contribution claim against the

12   settling defendants just like the contribution bar does

13   here.  This provision was challenged by the plaintiff.

14         The District Court approved the bar order and

15   then the Third Circuit approved the bar order as well.  The

16   Court reasoned that bar orders are necessary tools to

17   facilitate partial settlements in cases with multiple

18   defendants and they should be endorsed.  And that's worth

19   quoting from the Third Circuit's own words and I'll just do

20   that briefly.  And I'm quoting from the *Eichenholtz* decision

21   at Page 486.  "In general, the settlement of complex

22   litigation before trial is favored by the Federal Courts.

23   However, in multiparty litigation, settlement may be

24   difficult.  Defendants who are willing to settle by little

25   peace through settlement unless they are assured that they

1    will be protected against co-defendants efforts to shift

2    their losses through cross claims for indemnity,

3    contribution, and other causes related to the underlying

4    litigation.  Therefore, in cases involving multiple

5    defendants, a right to contribution inhibits partial

6    settlement.  Therefore, in order to encourage settlement in

7    these cases, modern settlements increasingly incorporate

8    settlement bar orders into partial settlements."

9              And the Third Circuit went on to say that the bar

10   order must include a judgment reduction component so that

11   the non-settling defendant is not prejudice by being barred

12   from bringing the contribution claim that that defendant

13   would ordinarily have.

14             In other words, instead of bringing the

15   contribution claim, the non-settling defendant gets the same

16   benefit by getting its judgment reduced by the amount that

17   it would have received had it asserted a contribution claim.

18   And the Third Circuit in *Eichenholtz* again, expressly agreed

19   that "Proportionate judgment reduction is the fairest method

20   and the non-settling defendants will not be prejudiced by a

21   proportionate fault reduction."  And that's at Pages 486 and

22   487.

23             And just to go slightly out of order, Mr.

24   Pachulski criticized the proportionate fault reduction

25   formula that is set forth in the bar order in our case.  I

1  don't particularly have a dog in that fight other than to

2  say that we are in the Third Circuit and we have clear Third

3  Circuit case law saying that among the different ways you

4  can calculate the reduction, the proportionate fault is the

5  best way -- is the most fair way to do it quoting from the

6  Third Circuit directly.

7          And so, Your Honor, that is, in fact, what we

8  have in this case, a partial settlement of a litigation with

9  multiple defendants with some defendants are settling, some

10  defendants are not settling, and a bar order that prevents

11  those non-settling defendants from suing for contribution,

12  but at the same time granting them judgment reduction

13  through a proportionate fault formula as was the case in

14  *Eichenholtz*.  But let me not stop with *Eichenholtz*.  This is

15  true also in the bankruptcy context.  And I think that the

16  most important precedent or an extremely precedent is Judge

17  Shannon's recent, very recent decision in *in re: Semcrude,*

18  *210 Banker Lexus 4160, Bankruptcy Court, District of*

19  *Delaware, November 19, 2010* which nobody has discussed.

20          In *Semcrude*, a settlement was reached by the

21  parties and was conditioned in part on the entry of a

22  contribution bar discharging individual defendants "from all

23  liability to any other person for contribution or indemnity

24  relating to the released claims."  The settlement also

25  contained a provision preserving judgment reduction rights

1   of the non-settling defendants as well.

2           A non-settling party objected to the settlement

3   on the grounds that the contribution bar didn't comport with

4   that individual's due process rights.  Similar in some

5   respects to the objections that are being lodged by the

6   director and officer defendants here.  Judge Shannon soundly

7   rejected this objection and approved the bar order at issue.

8   He held among other things, that the bar order was not

9   prejudicial to the non-settling party because that party was

10  still permitted to take the judgment credit corresponding to

11  what that party would have gotten though the contribution

12  claim.  And in the process, Judge Shannon cited approvingly

13  to the *Eichenholtz* decision and stated that "Courts in

14  similar proceedings routinely approve contribution bars."

15  And again, as I said, quoted approvingly from *Eichenholtz*.

16          I'm not going to go through a whole laundry list

17  of cases.  The other cases are set forth in our brief.  I

18  will make passing reference to the Third Circuit's decision

19  in *Nutraquest* as well which is supportive of a bar order and

20  that, too, was also in the Third Circuit sitting in appeal

21  on the Bankruptcy Court's ruling below *434 F.3rd 639.*

22          And let me conclude this portion of my argument

23  by saying that it's not just a matter of judicial invention,

24  there are many states that have similar provisions, both

25  Illinois and Delaware also have judgment reduction

1   provisions, contribution bars that come with judgment

2   reduction provisions as well, although in the *Eichenholtz*

3   decision -- I guess in response to some of the comments that

4   were made as to why don't you just -- why don't we just

5   forget about this whole thing and just rely on whatever

6   rights people may have under state law, *Eichenholtz* counsels

7   against that and says that it is desirable to fashion a

8   federal doctrine with respect to contribution bars and not

9   simply to revert to whatever state law people have because

10  that would encourage possibly foreign shopping.

11          So I think that these cases are important.  I

12  think they sort of set out the lay of the land with respect

13  to the use of contribution bars in complex cases involving

14  partial settlement.

15          Now to respond to the points that have been made

16  repeatedly about the contribution bar constituting a third

17  party release and we've heard quotations from *Spansion* of

18  course and we've heard quotations from *Continental*.  I want

19  to be very clear about this.  The parties have gotten -- the

20  parties that are least calling the entirety of the bar order

21  as third party release, have gotten it wrong.  And the fact

22  that they've tried to analyze the bar order under the

23  factors that you typically would use to analyze a non-

24  consensual third party release are not appropriate for

25  purposes of this analysis.

```
 1   (Telephone recording interruption)

 2   (Laughter)

 3             MR. PACHULSKI:  Hello?

 4             MR. MOSKOWITZ:  There's plenty of activity.

 5   (Laughter)

 6             THE COURT:  Is the Court Call Operator on the

 7   line?

 8             COURT CALL OPERATOR:  Yes, Your Honor, I'm here.

 9             THE COURT:  All right.  Have we fixed the problem

10   with that one line?

11             COURT CALL OPERATOR:  I did.  I fixed the

12   problem.

13             THE COURT:  Thank you.

14             COURT CALL OPERATOR:  You're welcome.

15             THE COURT:  You may proceed.

16             MR. MOSKOWITZ:  Thank you, Your Honor.  To be

17   very clear about this, the bar order only prevents non-

18   settling defendants, non-released parties from bringing

19   contribution and indemnity claims against released parties

20   for barred claims.  And we've amended the bar order in

21   response to the objections that have been filed to make it

22   crystal clear that it has nothing to do with third party

23   claims.  And I'm quoting now, quote -- this is a quote from

24   the bar order, "Order that nothing herein shall prejudice or

25   operate to preclude the rights of any barred person to
```

1   assert any claims or causes of action, including without

2   limitation any direct or personal claims or causes of

3   actions other than claims for non-contractual indemnity or

4   contribution against any released party as set forth above."

5          We've tried to make it crystal clear that all we

6   are talking about here is liability for contribution claims

7   so that we don't pay twice; one in the settlement and then

8   once again in respect of that same liability if a Court

9   finds that we're jointly liable with a non-settling

10  defendant.

11         Let me move now to the what I will call the

12  procedural fairness arguments that have been made,

13  principally by the director and officer defendants.  I think

14  their main concern that they articulated to you, Your Honor

15  is that the bar -- there's a concern, I guess that down the

16  line there will be another Court out there that will

17  disregard the injunctions of -- the rulings of this Court

18  and will simply fail to apply the bar order.  Or I guess a

19  corollary concern, the parties in that case will fail to

20  adhere to this Court's instructions with respect to the bar

21  order.  And the question is, you know, what happens then?

22         I think the first thing I'd like to say is that I

23  mean bar orders happen all the time and this concern

24  probably is relates to not just this bar order, but it would

25  relate to any bar order.  And the truth is that there's I

1    think -- and frankly, even outside the bar order context,

2    there should be presumption that other Court in the United

3    States will follow the directives of a properly issued order

4    of another Court, full faith in credit, et cetera.

5             So I think that, you know, the concern about

6    another Court not following the order of this Court is

7    probably a remote proposition.  But for the avoidance of all

8    doubt, the amended bar order clarifies that the Bankruptcy

9    Court retains continuing jurisdiction with respect to all

10   matters concerning the bar order, expressly including

11   matters related to the enforcement of the bar order.

12            And I think that it's not controversial

13   proposition to say that a Bankruptcy Court can retain

14   jurisdiction with respect to all manner of orders, but even

15   with respect specifically to a bar order, that has been done

16   time and time again.  Judge Shannon did it in the *in re:*

17   *Semcrude* case.  It was done in *Lyondell*.  Judge Gerber

18   retained jurisdiction there as well in case there were any

19   issues down the line with respect to the bar order.  It's

20   done -- it was done in the *MTC Technologies* shareholder

21   litigation in the Eastern District of New York in 2005.

22   Done in that bar order.  It was done in the *Enron* case.

23   Courts routinely retain jurisdiction of -- over all manner

24   of orders, but also including specifically over a bar order.

25            I submit that that is a pretty substantial

1    protection that is available to the non-settling defendants

2    should something go wrong.  And I would also say that what I

3    will just call the penalty provisions that the director and

4    officer defendants wanted to add to the bar order, while I

5    may not have a dog in that fight, that seems to be a

6    provision that you would -- provisions that were suggested

7    are not found in any bar order and I think it would be

8    offensive to whoever is pursuing those claims going forward.

9                THE COURT:  You would agree though, would you

10   not, that a provision that -- well a retention of

11   jurisdiction provision in an order doesn't necessarily mean

12   that a Bankruptcy Court at any given point in time post

13   confirmation, in fact, would have jurisdiction, does it?

14               MR. MOSKOWITZ:  I agree with that.  Obviously,

15   the Court can only retain jurisdiction as to matters for

16   which it can retain jurisdiction.

17               THE COURT:  Well, my point is, you know, at the

18   point of confirmation, the Court may have jurisdiction.  Two

19   months after it may have jurisdiction.  And a year later it

20   may not, depending upon the circumstances.

21               MR. MOSKOWITZ:  Understood, Your Honor, but

22   specifically in response to that point, I would refer Your

23   Honor to the *Travelers Indemnity Company v. Pearlie Bailey*

24   case coming out of the Supreme Court in 2009, *129 S Court*

25   *2195, 2009*, in which the Supreme Court approved the

1    Bankruptcy Court's decision to enjoin State Court lawsuits

2    filed ten years after the approval of a plan of

3    reorganization in light of settlement orders that were

4    issued years prior.

5           And the Court, the Supreme Court there stated

6    "The Bankruptcy Court plainly had jurisdiction to interpret

7    and enforce its own prior orders.  What is more when the

8    Bankruptcy Court issued its prior order, it explicitly

9    retained jurisdiction to enforce it."  That doesn't sway

10   entirely Your Honor's concerns, but all I'm saying is that

11   it is standard for Bankruptcy Courts to retain jurisdiction

12   going on quite a ways into the future.

13          THE COURT:  Oh, I know.

14   (Laughter)

15          MR. MOSKOWITZ:  Okay.  Moving on, Your Honor, to

16   some of the points that Mr. Pachulski made.  I guess I sort

17   of -- there was a dissonance between Mr. Pachulski's initial

18   remark and frankly, my conversations with him privately and

19   what he presented to the Court.  I mean, I think it is the

20   case that he has an issue with the bar order with respect to

21   one particular point of it and that's with respect to the

22   treatment of the disclaimed state law avoidance claims.  He

23   mentioned a few other things in the course of his

24   presentation, but I think at its core, and he's filed no

25   pleading on this.  Certainly though at its core in our

1  discussions and I think it's not, probably not disputed that

2  on the whole, other than the evidentiary objections that the

3  noteholders will present in closing, that Mr. Pachulski's

4  issue with the bar order is limited to the treatment if

5  disclaimed state law avoidance claims under the bar order.

6  So let me just talk about that for just a minute

7  or two.  Consistent with other changes in the DCL plan, the

8  bar order has been amended to reflect the fact that state

9  law constructive fraud claims versus shareholders which we

10  call the disclaim state law avoidance claims are not

11  released by the DCL plan.  Accordingly, the bar order now

12  expressly states "Bar claims shall not include any claim for

13  non-contractual indemnity or contribution against any

14  released party solely in its capacity, if any, as a selling

15  shareholder."

16  So just to be clear about what this means.  If a

17  selling stockholder gets sued and then wants to sue another

18  stockholder for contribution in that parties capacity as a

19  stockholder, the selling stockholder can do that under our

20  bar order.  It does not -- that action, that claim for

21  contribution is not restrained even for released parties who

22  have settled all other claims against them.

23  But I think what Mr. Pachulski and perhaps others

24  are arguing is that this is not enough.  This carve out, if

25  you will, is not enough.  In their view, in Mr. Pachulski's

1    view, the bar order should not apply in an action asserting

2    a disclaim state law avoidance claim under any

3    circumstances.

4            In other words, they're arguing that if they

5    bring a constructive fraud claim against a shareholder, than

6    that shareholder should be able to claim over against a

7    release party for contribution not only in that parties

8    capacity as a selling stockholder for which liability has

9    not been released and we concede that such a lawsuit is not

10   precluded by the bar order, but even on account of liability

11   for which the released party already paid to settle under

12   the plan and we disagree with that view and let me just

13   flesh it out for another moment.

14           By failing to assert a very narrow universe of

15   claims, in other words, the state law constructive fraud

16   claims against the shareholders, that's the only thing

17   that's been disclaimed under the plan, those narrow claims

18   reverted to or are in the hands of, use whatever term, to

19   individual creditors.  But only those claims are in the

20   hands of individual creditors, nothing more than that.

21   State law constructive fraud claims against the lenders in

22   their lender capacities were asserted by the estate under

23   544(b) on behalf of all creditors and are proposed to be

24   released under this plan in exchange for the consideration

25   that we're providing under the settlement.

1           And obviously, it's hotly debated as to whether

2    that consideration is enough, is adequate for the claims

3    that are being released.  But the bottom line is the estate

4    had the authority to assert those claims and it exercised

5    that authority with respect to our lender capacity and those

6    claims are proposed to be settled under the DCL plan for the

7    settlement consideration that's being paid.

8           Brigade would have no right to bring those

9    settled claims directly against the released parties.  And,

10   therefore, should have no right to recover indirectly on

11   account of any contribution claims in respect of that same

12   form of liability.  In other words, what I think that

13   Brigade is arguing and they may not be doing this

14   intentionally, but what I think Brigade is arguing is that

15   they should have the right to do indirectly what they cannot

16   do directly.  They want to be able to sue a shareholder and

17   then allow that shareholder to sue a lender in its capacity

18   as a lender for contribution even though that lender has

19   already paid for a release in respect of its lender

20   liability on state law avoidance claims against -- that were

21   asserted against the lenders.  And that we would suggest

22   would permit a classic double recovery for Brigade or for

23   anyone asserting those claims.  They would be recovering

24   once on the part of the settlement.

25           Let's not forget that Brigade is getting recovery

1    as part of our settlement.  They debate that it's enough,

2    but they are getting a recovery under our settlement.  And

3    then we would pay them again in our capacity as a lender

4    through the exercise of the contribution claims.  We would

5    pay the defendant who is asserting the contribution claim

6    against us and then those funds would be used to satisfy the

7    judgment against that non-settling defendant.  And so we

8    believe it would be two recoveries and that and only that is

9    the aim that the DCL plan and the bar order in it is trying

10   to frustrate.

11              Again, we have amended the DCL plan to make clear

12   that the bar order does not protect a release party in the

13   event a contribution claim is brought against it solely in

14   its capacity as a selling stockholder.  And that is because

15   seeing shareholders were not released under the plan.  So to

16   the extent we're also a selling shareholder, we didn't pay

17   for a release in that capacity and we're not entitled to the

18   protections of the bar order in that capacity.  But where

19   we've paid for a release such as JP Morgan in connection

20   with its lender capacity, we should not continue to face

21   exposure in our lender capacity of those state law claims

22   when they were held by the estate were settled for a

23   consideration and that -- then the adequacy of which is

24   before the Court, but that is part of the proposed

25   settlement.

```
 1              MR. PACHULSKI:  Your Honor?
 2              THE COURT:  Mr. Pachulski, if you've been
 3    listening, what I've been doing is not hearing rebuttals but
 4    --
 5              MR. PACHULSKI:  It's just -- I want to clarify
 6    something because most of this argument was responding to an
 7    argument that I didn't make.  And so my position hasn't -- I
 8    don't intend to go through a full rebuttal.  All I'd like to
 9    do is clarify my position because it seems to have been
10    misunderstood.
11              THE COURT:  Well let's wait until Mr. Moskowitz
12    is done.
13              MR. PACHULSKI:  Okay.  I'm sorry, I thought he
14    was done.
15              THE COURT:  He was just taking a breath.
16    (Laughter)
17              MR. MOSKOWITZ:  I'm nearly done, Your Honor,
18    actually.  Let me just review my notes, but while I review
19    my notes, I would suggest that an exception not be made with
20    respect to Mr. Pachulski and -- because if you're going to
21    allow rebuttals in one case, we should allow them in all.
22              MR. PACHULSKI:  So if someone misstates my
23    position, I can't respond?
24              THE COURT:  Just wait a minute, Mr. Pachulski.
25              MR. PACHULSKI:  All right.
```

1          THE COURT:  Until Mr. Moskowitz tells me he's

2     done.

3          MR. MOSKOWITZ:  Okay.  That's all I have for now,

4     Your Honor.

5          THE COURT:  All right, thank you.  Mr. Pachulski,

6     you may have two minutes.

7          MR. PACHULSKI:  Just to clarify, we have never

8     taken the position that as one way or the other as to

9     whether a bar order can or cannot be entered between

10    settling defendants and non-settling defendants.  We don't

11    have a dog in that fight.  Our position was -- simply had to

12    do with the application of the judgment reduction provisions

13    to our claims as plaintiffs.  So as far as whether one -- a

14    settling defendant can sue a non-settling defendant or not,

15    we've never -- we don't have a position one way or the other

16    on that.  And our sole objection is limited to the

17    application of the judgment reduction provisions, not the

18    bar order, but the judgment reduction provisions to the

19    claims that are not owned by the estate.  That's it.

20         THE COURT:  Thank you.

21         MR. STEEN:  Good afternoon, Your Honor.  Jeffrey

22    Steen, Sidley Austin on behalf of the debtors.

23         And the let the record reflect that the fact that

24    I had to practically climb over three or four of my

25    colleagues to take the podium says nothing about the

1   popularity of this provision.  But in light of the vigor of

2   the objections --

3            THE COURT:  I'm sure the fee applications will

4   reflect that as well.

5   (Laughter)

6            MR. STEEN:  Thank you, Your Honor.  In light of

7   the vigor of some the objections that have been raised to

8   the bar order today, and in particular, the focus of

9   Brigade's objection, we thought it would be useful to the

10  Court to briefly supplement the remarks of Mr. Moskowitz to

11  flesh out the debtors' perspective on this provision.

12           And, Your Honor, what I'd like to do is direct

13  the Court's attention to the third decretal paragraph of

14  Section 11.3.  And it's actually on Page 88 of the second

15  modified DCL plan that was lodged with the Court on April 5.

16  And that provision, Your Honor, that paragraph is very

17  brief, but that basically contains a number of restrictions

18  and limitations that we think are very important and we

19  think have a direct bearing, if not dispositive bearing on

20  the objection raised by Brigade and others.  Does Your Honor

21  have a copy of that plan?

22           THE COURT:  I do.

23           MR. STEEN:  Oh, thank you very much.  In

24  particular, Judge, we think that the exclusions in the third

25  decretal paragraph of Section 11.3 protect any individual

1    creditors who may bring any disclaimed state law

2    constructive fraudulent transfer claims or any selling

3    shareholders that may be defendants in any of those disclaim

4    causes of action.  And we'd like to briefly highlight two

5    points.

6              First, by its terms, Section 11.3 and Mr.

7    Moskowitz actually made this clear, but if we take a look at

8    the first sentence of the third decretial paragraph on Page

9    88 of the plan, Section 11.3 applies by its terms only to

10   claims of contribution or non-contractual indemnity.  And so

11   to use a specific example, if any non-settling defendant

12   such as a selling Step 1 or Step 2 shareholder is sued on

13   account of the pre-petition leveraged buyout and that

14   defendant has any claim over against any released party that

15   is a direct claim or that is a non-derivative claim or that

16   is a personal cause of action that does not sound in

17   contribution or non-contractual indemnity, than that claim

18   is preserved and it's not subject to the provisions of the

19   bar order and it's not subject to the judgment reduction

20   provisions in that bar order.

21             And so specifically, it's our view, Your Honor,

22   the company's view, that with respect to state law

23   constructive fraudulent conveyance claims of the type that

24   are the basis of Brigade's objection, the law is pretty

25   clear that those claims do not give rise to contribution

1    claims.  And there are several cases that hold this, Your

2    Honor.  I'm just going to mention a couple.  The leading

3    case is out of Tribune's neck of the woods, out of the

4    Northern District of Illinois, it's the *Wiebolt's* opinion

5    which is reported at *111 Bankruptcy Reporter 162*.  That's a

6    decision by the Judge, District Judge Holderman in 1990.

7    And more recently, Judge Shannon in 2009 issued a similar

8    holding in the *Amp'd Mobile* decision which is reported at

9    *404 Bankruptcy Reporter 118.*

10         And those decisions are well reasoned and they

11   make sense.  And they hold that in contrast to tort claims,

12   the legislative theory animating fraudulent transfer law is

13   cancellation or avoidance of the challenged transfer.  In

14   other words, the nature of the relief sought is

15   recessionary.  It's not the imposition of liability for

16   money damages based upon the consequences of a wrongful act

17   or tort which as we know is the basis of tort law.  And so

18   those cases and many cases cited by those decisions in law

19   review articles conclude that constructive fraudulent

20   transfer claims brought under the UFTA, the UFCA, or state

21   law do not give rise to contribution or non-contractual

22   indemnity.

23         And so our view, Your Honor, on behalf of the

24   company is that even if this Court has jurisdiction to enter

25   the bar order with respect to disclaimed state law

1   constructive fraudulent transfer claims, that as a practical

2   matter, the terms of this bar order would not apply to those

3   claims and would not prejudice the rights of either the

4   plaintiffs, the individual creditors asserting those claims,

5   or any of the selling shareholder defendants under those

6   claims.

7          I have one more point, Your Honor.  If we look

8   back at this third decretial paragraph, Clause 2 in the

9   second sentence makes clear that the bar order by its terms

10  does not apply to any claim or any cross claim or any third

11  party claim for which there's no joint liability as between

12  the non-settling defendant on the one hand and the release

13  party on the other hand.  Now as I said, this exclusion is

14  made clear in Clause 2 of the third decretial paragraph of

15  Section 11.3 in that provision and that exclusion has been

16  in the bar order since last October.

17         Now we do not believe, Your Honor, for the same

18  reason I just discussed with respect to the first point

19  about contribution claims that under applicable non-

20  bankruptcy law, any of the disclaimed state law constructive

21  transfer claims would give rise to joint liability as

22  between the selling shareholders, the selling Step 1 or Step

23  2 shareholders on the one hand and any of the parties that

24  paid considerable consideration to settle their claims under

25  the DCL plan.  And those claims simply do not sound in tort.

1    They do not give rise to money damages for which multiple

2    tort-feasers can be found jointly liable.  And, therefore,

3    it our view that under the four corners of the bar order as

4    proposed in the DCL plan, the judgment reduction provisions

5    in that order would not apply to those kinds of claims.

6             Our analysis, Your Honor, of the counts, the

7    multiple counts and causes of actions, the avoidance claims

8    that were actually brought by the committee on behalf of the

9    estate in December of last year before the expiry of the

10   statute of limitations, we would apply a similar analysis

11   and focus on whether those claims would give rise to

12   contribution claims under non-bankruptcy law and whether

13   those types of claims would give rise to joint liability.

14   And without going through the litany of all those claims and

15   causes of action, we can tell Your Honor that on behalf of

16   the company, it's our conclusion that many, if not most of

17   the counts and claims in the community complaint for similar

18   reasons would fall within one of these exclusions, the joint

19   liability or non-contribution and non-indemnity exclusion in

20   Section 11.3.

21             And, Your Honor, unless you have any additional

22   questions, I'm glad to yield the podium.

23             THE COURT:  I do not.

24             MR. STEEN:  Thank you.

25             THE COURT:  Are we ready to move on to Wilmington

1    Trust?

2              MR. STARK:  Your Honor, I'm bringing my bottle of

3    water, but I know Your Honor's rule about that if I --

4              THE COURT:  The only rule is don't spill it.

5    (Laughter)

6              MR. STARK:  If I spill it, I buy you a new

7    podium.  I think we've had this colloquy before.  Give me a

8    minute.

9              For the record, Robert Stark from Brown Rudnick

10   on behalf of Wilmington Trust, the successor indenture

11   trustee for the PHONES.

12             Now, Your Honor, this is the time to talk about

13   PHONES' specific legal issues.  And I appreciate this

14   opportunity.  Your Honor's tired, you've heard a lot and I'm

15   not going to abuse it.  Also, we do fold in with the Akin

16   Gump team and the co-plan proponents and their leadership in

17   the collective arguments and I'm not going to be reiterating

18   or advance previewing any of them for you.  I'm sensitive to

19   Your Honor's needs in that regard.

20             Furthermore, the DCL plaintiffs and, excuse me,

21   the DCL plan proponents in their amendments obviated one of

22   my issues.  They've clarified that Wilmington Trust's claims

23   for its own fees and professional costs is not apparent --

24   is now a parent level general unsecured claim and not a

25   subordinated PHONES claim so we have one issue left to talk

1   about.

2            And two of the other objections that were raised

3   or points that were raised in my objection are indeed

4   factual in nature and acknowledge it as such and should be a

5   closing when we talk about evidence.  And that's whether

6   depending upon the valuation, enterprise valuation, trade is

7   receiving an appropriately better treatment than the PHONES

8   holders. It does invoke contractual subordination issues,

9   but it's really a valuation issue.

10           And second, whether the banks can enjoy

11  contractual subordination under the terms of our indenture

12  when evidence shows a lack of good faith in the transactions

13  that they hereby assert in their claims.  So we'll defer

14  those arguments again for another day.  That leaves us with

15  two arguments, Your Honor.  And sadly, they are meaty ones

16  and they're a little involved, but I'll try to be engaging

17  as I can.

18           THE COURT:  Oh, you're always engaging, Mr.

19  Stark.

20           MR. STARK:  Good.  I'm glad to hear that.  Thank

21  you, Your Honor.

22           The first is does the DCL plan architecture

23  properly invoke the contractual subordination provisions of

24  the PHONES indenture and to walk through that contractual

25  subordination.  And the second, does the DCL plan

1  inappropriately infringe upon our legal rights, Wilmington

2  Trust's legal rights, on behalf of the PHONES noteholders,

3  as a private litigant against non-debtor third parties.  And

4  we've heard a little bit about the bar date order.  I won't

5  touch upon that too much, but we have some other issues.

6  Let me take each of them in turn.

7         First, contractual subordination.  So what does

8  the plan provide?  We do not receive any of the 431 million.

9  The settlement funds that's being reserved exclusively for

10 the senior noteholders, we get exclusively subordinated

11 rights to litigation recoveries through a trust vehicle.

12 There's a fair amount of stacked definitions that ultimately

13 gets you to what the distribution rights are.

14         I'm happy to walk Your Honor through it, but I

15 think we probably all can -- know what it is and can cut

16 through it.  So if you'll allow me to paraphrase it, I'll do

17 my best.

18         As I see, for the stacked definitions, all the

19 LBO causes of action are put in a trust.  Unsecureds get, I

20 believe, the first net 90 million, and then they get 65

21 percent of the next -- net proceeds thereafter.  The banks

22 get the 35 percent net proceeds.  The PHONES get a pro rata

23 slice -- pro rata allocation of the unsecured part.  But of

24 course, we don't get to keep it.

25         Section 1.1.44 on page 7, that's the definition

1   of Class 1J trust interests.  It provides -- and again, I'll

2   paraphrase, but we can go through whatever language issues

3   you'd like, Your Honor.  The PHONES turn over all such

4   rights of distribution to senior noteholders and anyone else

5   claiming contractual seniority, meaning the banks.  And this

6   marries, I guess, with Section 7.15, which states that the

7   DCL plan proponents, it's their intention to honor

8   contractual subordination against the PHONES to the fullest

9   extent possible.

10          Okay.  We understand their deal.  But is it

11   right?  We don't think so.  We don't so absent consent.

12   We've certainly consented to certain treatments in our own

13   plan.  That may be somewhat prejudicial in terms of what the

14   arguments are, but it's our plan.  And they impose upon us,

15   cram-down-wise, under 1129(b), a form of contractual

16   subordination that we think is inconsistent with our

17   document.  We don't think they can.

18          I ask Your Honor to turn, respectfully, to the

19   indenture itself.  It's the exhibit to our objection.  If

20   Your Honor doesn't have a copy handy, I'd be happy to give

21   you one.

22          THE COURT:  Well, I'm sure it's up here

23   somewhere, but it would be handier if you could give one to

24   me and to my law clerk.

25          MR. STARK:  Okay.  May I approach?

1          THE COURT:  You may.  Thank you.

2          MR. STARK:  Now, subordination has its own

3    article.  It's Article 14, and the principle provision is

4    1402, and that's on page 62.

5          THE COURT:  Go ahead.

6          MR. STARK:  Okay.  Now, I'll paraphrase it,

7    because it is lengthy.  Again, we can read it into the

8    record, but upon distribution of assets of the company in a

9    bankruptcy, a wind-up, or assignment for the benefit of

10   creditors under state law, we have an A and a B.  A is

11   senior indebtedness is entitled to full payment before

12   PHONES receive repayment that they're entitled to under

13   Section 3.10 of the indenture, the company's repayment

14   obligations, and B, any distribution "of assets of the

15   company", shall be turned over to holders of senior

16   indebtedness.

17          The following sections of Article 14 sort of

18   reiterate and follow the same philosophical conceptual

19   architecture.  Contractual subordination, and thus

20   distribution turnover, pertains exclusively to distributions

21   of "assets of the company".  The company, by the way, is

22   defined on page 1.  And on page 1, we see that the company

23   is Tribune Company.  It's not its bankruptcy state.  It's

24   certainly not its bankruptcy state as it may be augmented by

25   Chapter 5 causes of action or strong-arm rights taken from

1  creditors and bestowed upon the debtor-in-possession.  And

2  that's even though Article 14, all over the place, talks

3  about, extensively, what's supposed to happen in a

4  bankruptcy scenario.

5           And tellingly, the indenture also contemplates

6  third-party recoveries.  If Your Honor will look, please at

7  5.10 of the indenture.  That's on page 32.  This is the

8  cumulative remedies provision.  And the cumulative remedies

9  provision, like all indenture of cumulative remedy

10 provisions, says, "The indentured trustee, on behalf of the

11 PHONES noteholders, have rights under this indenture.  They

12 may be asserted.  They may be asserted in bankruptcy.  They

13 may be asserted in any sort of non-bankruptcy forum."

14           THE COURT:  Mr. Stark, I'd ask you to pause,

15 because I'm --

16           MR. STARK:  You're not finding it?

17           THE COURT:  I've got page 32.

18           MR. STARK:  Page 34.  Excuse me.

19           THE COURT:  I'm sorry.  Okay.

20           MR. STARK:  I may have misspoken.

21           THE COURT:  All right.  Thank you.

22           MR. STARK:  Okay.  "And the indenture trustee has

23 any other rights that may exist in the law or in equity."

24 And that's anyone.  So clearly, this contract contemplates

25 trustee recoveries from third parties, but explicitly

1    provides only for turnover of company assets distributed in

2    a liquidation scenario but not third-party recoveries.  Now,

3    if the DCL proponents would concede that the parent level

4    unsecureds are the fulcrum class, and so we're really here

5    discussing about a distribution of enterprise value -- sort

6    of in the form of cash, debt, stock, et cetera -- I'd have

7    little to argue.  These are clearly assets of the company,

8    and I'd have to turn them over.

9            But all the proponents claim -- all the DCL

10   proponents claim is that the banks are the fulcrum, that

11   they are guaranteed claims at the subsidiary, soak up all

12   the value, and if there's nothing really for parent company

13   creditors, but for their settlement that they're willing to

14   give up.  And it's settlement with all of the creditor

15   constituencies and the creditors committee and the

16   settlement of their claim exposure.  Now, the claims that

17   have been -- that we talk about, some of them may be "assets

18   of the company" but probably not the strong ones, because of

19   in *pari delicto* and other defenses, the powerful claims, so

20   says Mr. Klee [ph], of the creditor claims -- those arising

21   under state law, those that were strong-armed to the debtor,

22   those that now have been reverted back to -- at least in

23   constructive fraudulent conveyance terms -- these pre-LBO

24   creditors, like Wilmington Trust on behalf of the holders.

25   Or they arise under Chapter 5 avoidance theories.

1          The long -- the law has long held, and Mr. Klee

2    expanded on, at great length in his report, and the 3rd

3    Circuit confirmed in <u>Cybergenics</u> cited in our brief, that

4    strong-arm and Chapter 5 claims do not belong to the

5    company.  They belong to creditors.  The debtors, and here

6    the official committee, only is given standing to assert

7    them in a trustee capacity on behalf of others, other

8    creditors, but they are not assets of the company.  So, some

9    unknown, unquantifiable -- at least by me -- portion of the

10   431 million that's being given up to senior noteholders on

11   account of the strong Chapter 5 -- the strong strong-arm

12   claims that the estates are asserting but belong to me, some

13   portion of that 431 million does belong to the PHONES

14   noteholders.  They're assertable by the trustee, absent a

15   bankruptcy case.  And under applicable law, they belong to

16   the creditors.  And they're not to be turned over, under my

17   indenture.  They are to be delivered to the PHONES

18   noteholders.  Again, if we were to consent to a different

19   mechanic, as we have done in our plan, that would be a

20   different story.  But it can't be imposed upon us.

21          Besides the 431 million, the plan architecture is

22   all wrong.  Our slice of litigation recoveries are not to be

23   turned over to senior indebtedness.  These are third-party

24   recoveries.  We are to share in them *pari passu*.  So this

25   plan violates our claim rights.  It overextends contractual

1    subordination beyond what the document provides for.  I

2    think the rule of explicitness still applies in connection

3    with subordination issues, so it violates our rights under

4    502(a).  It overextends beyond the limitations of 510(a),

5    and thus, the plan violates 1129(a)(1).  If the plan

6    violates other provisions of the bankruptcy code, it can't

7    be proposed in good faith.  It has to be violative of A(3).

8    Certainly, it violates the best interest test if it takes

9    away my entitlement.  And most assuredly, under 1129(b),

10   it's not fair and equitable.

11           I think that takes me to my second major

12   objection point, Your Honor, and that's does the DCL plan

13   inappropriately infringe on our legal rights as a private

14   litigant against non-debtor third parties.  And we think so.

15   There are two lawsuits at issue here.  We have our

16   constructive fraudulent conveyance claims against the

17   stockholders, and that's the bar order discussion we had

18   earlier.  And we have our separate adversary proceeding

19   against the banks, and we'll talk about them in turn very,

20   very quickly.

21           I don't want to belabor the point on the bar

22   order, but to the extent we sue shareholders, they sued

23   JPMorgan for contribution indemnity, I fail to see -- and I

24   can't believe I listened to all this conversation but nobody

25   ever addressed it -- how Your Honor has jurisdiction to

1 impose that kind of fee-sharing arrangement between the

2 shareholder defendants in my litigation versus JPMorgan.

3 They may claim unfairness all over the place.  They chose

4 not to settle with us.  That's their choice, but Your Honor

5 has marathon limitations.  Those don't enable you to enter

6 the bar date that they ask for.

7        And one further point on that.  You can't just

8 sort of call it a settlement and violate the law.  The 2nd

9 Circuit dealt with that in <u>Iridium</u>.  The law is the law.

10 Calling something a settlement doesn't get you out of it.

11 And if you're going to call it a settlement, I didn't get

12 anything in the settlement.  The senior noteholders got all

13 the funding, so for Mr. Moskowitz to come up and say, we

14 bought peace, not with me.

15        Let me take -- let's take a quick turn to the

16 second lawsuit, Your Honor.  Our adversary proceeding

17 against Citicorp and the banks was filed here on March 4,

18 2010.  It's been around for quite a while, and as sort of

19 dropping a footnote for calendar observation purposes, in

20 eight days, Your Honor, it will be the one-year anniversary

21 of Your Honor's order appointing Mr. Klee as examiner.  We

22 seem to have learned so much and so little at the same time.

23        Our lawsuit against Citicorp emanates from the

24 LBO, but it is particular to the PHONES noteholders.  It

25 hasn't been before Your Honor in quite a while, not by our

1    choice, so let me just give you a really quick summation of

2    what it is.

3              In 2007, Citicorp was the PHONES indenture

4    trustee.  In 2007, at the same time it was our indenture

5    trustee, it was a primary advisor to Tribune on the

6    structuring and the architecture of the leverage buyout.

7    The complaint alleges that Citicorp violated duties to the

8    PHONES holders, including especially the duty of loyalty,

9    and that the other banks knew all about this.  In fact, it

10   was -- it's all in the report itself.  And they aided and

11   abetted that violation.  And we sought in that complaint,

12   among other forms of relief, claims disallowance under

13   Section 502(a), and the theory for that was unclean hands,

14   under applicable federal law, and also equitable

15   subordination at the parent company level, pursuant to

16   510(c).

17             And I've long wanted to litigate this cause of

18   action.  In fact, Your Honor may recall.  You and I had a --

19   kind of a fun colloquy, I was trying to find it just

20   preceding the hearing, where I said, Judge, I really want to

21   litigate this.  And you said, nobody ever doubted your

22   eagerness, Mr. Stark.  And I also said at that hearing,

23   there'll be a day of reckoning by the decision on this side

24   of aisle for not letting me litigate that.

25             The 5th Amendment's a pesky thing, Your Honor.

1  I'm entitled to due process.  I'm entitled to due process,

2  even if it's inconvenient for their plan constructs.  The

3  Court cannot, consistent with the Constitution, confirm a

4  plan that whisks away my lawsuit, as if it didn't happen,

5  without affording me my day in Court.  You cannot do that.

6  And I think that's true, even if they don't think all that

7  much of my lawsuit.

8        Frankly, I think, going back, again, a year ago,

9  they then didn't think an awful lot about the fraudulent

10  conveyance claim against step two.  I expect the usual

11  retort: "Judge, you can't hold up the plan over this

12  lawsuit.  It's been sitting."  I answer you can, and you

13  must.  And frankly, we do it all the time.

14        Let me tell you what I mean by that.  Let's think

15  of a basic, plain vanilla, widget manufacturing debtor.  It

16  files for bankruptcy.  It files a plan of reorganization,

17  and it's going to convert the unsecured debt into a stock.

18  Simple.  Debtor's books and records reflect a $1 billion

19  unsecured aggregate liability amount, but unsecured

20  creditors have filed claims totaling 3 billion.  We don't

21  delay confirmation until the claim's disputes are resolved.

22  We don't do claims reconciliation to completion for

23  confirmation and consummation.  We exit bankruptcy and we do

24  it in the usual way.  We distribute one-third of the stock

25  to the 1 billion in allowed claims, and we reserve two-

1    thirds of the stock pending litigation outcome or

2    settlement.  That's what we do.  Everyone gets due process.

3    If the creditors, who have asserted the 2 billion in excess

4    over the books and records, if they don't settle, they get

5    their day in Court.  The same for the debtor.

6            The DCL plan takes this right away from me,

7    because the claims are allowed in a stipulated amount, and

8    the distributions are made for the claims allowance without

9    affording me the opportunity to litigate, notwithstanding

10   the fact that I virtually begged to allow to litigate it.

11           Your Honor, their plan is inconsistent with the

12   law.  It's inconsistent with what we do in bankruptcy.  But

13   there's another plan before you that is consistent with the

14   law, and that widget manufacturer's traditional plan of

15   reorganization.  That's our plan.  Their plan can't be

16   confirmed, Your Honor.

17           I don't know if you have any questions for me.

18           THE COURT:  I do not.  Thank you, Mr. Stark.

19           MR. JOHNSTON:  Your Honor, I'd like to ask for a

20   five-minute recess.  Mr. Stark articulated his primary

21   argument, which is nowhere to be found in his brief, and I'd

22   just like to organize my thoughts for a few minutes.

23           THE COURT:  Well, it's about time anyway.  We'll

24   take a five-minute break.

25           MR. JOHNSTON:  Thank you.

1    (Recess at 3:57 p.m. to 4:09 p.m.)

2              THE CLERK:  All rise.

3              MR. JOHNSTON:  Thank you, Your Honor.  For the

4    record, again, Jim Johnston of Dewey & LeBoeuf on behalf of

5    Oaktree and Angelo Gordon as proponents or co-proponents of

6    the DCL plan.  I appreciate the break, Your Honor, because

7    it allowed me to confirm specifically what I had suspected

8    when I was hearing Mr. Stark's argument, and that is, in

9    fact, that the first argument he laid out for you is nowhere

10   in his brief and, in fact, is a brand-new argument.

11             The objection by Wilmington Trust is filed at

12   docket 7996, and it lays out four arguments to confirmation

13   of the DCL plan.  The second argument previewed in the

14   preliminary statement at paragraph one says that the DCL

15   plan provides the PHONES with a lower recovery than it would

16   receive in a Chapter 7 liquidation by A, subordinating the

17   PHONES to trade indebtedness and retiree claims against

18   Tribune Company and inter-company claims of Tribune

19   subsidiaries.  I think we heard Mr. Stark reserve that

20   argument for later advancement.  And B, wrongly assuming

21   that the PHONES are subordinated for the purpose of

22   allocating distributions from the creditors trust contained

23   in that plan when the purported payment subordination of the

24   PHONES does not extend to payments from entities other than

25   Tribune Company.

1          Now, that is related to what Mr. Stark argued

2    today, but it is an argument that was strictly limited to

3    payments from the creditors trust under the DCL plan, which

4    Mr. Stark argued in his objection are not subject to the

5    PHONES subordination provisions.  This argument is laid out

6    in section 2 of the brief, starting at paragraph 7, and in

7    particular, paragraphs 11 through 17.  The argument

8    concludes, driving home the point that it is strictly

9    limited to distributions from the creditors trust at

10   paragraph 16, where Wilmington Trust concludes: "According,

11   the subordination provisions in the DCL creditors trust

12   agreement does not apply to those holders of the PHONES who

13   purportedly contributed their individual claims to the DCL

14   creditors trust and are entitled to receive their

15   unencumbered pro rata share of the DCL creditors trust along

16   with other creditors holdings, state law, constructive

17   fraudulent conveyance claims who contribute claims to the

18   DCL creditors trust with no pay-over obligation."  And it

19   continues in paragraph 17: "Since the DCL plan proposes to

20   enforce contractual subordination of the PHONES,

21   notwithstanding the fact that distributions from the DCL

22   creditors trust are effectively a return of proceeds of

23   direct litigation on behalf of PHONES, it fails the best

24   interest of creditors test by providing the PHONES with less

25   than they would receive in a Chapter 7 liquidation."

1          We took that objection to heart.  As a matter of
2    fact, we thought that our plan the first time around did not
3    provide for the PHONES to be subordinated to creditor stress
4    recoveries if that's not what the PHONES indenture provided,
5    but we wanted to make it crystal clear.  So in the chart
6    that we filed last Friday, at document 8607, listing the
7    objections or outstanding objections to the plan, we
8    discussed the Wilmington Trust objection -- let me find the
9    page here -- on page 14.  And with respect to this
10   objection, we noted that Wilmington Trust objects to the
11   application of contractual subordination to the creditors
12   trust proceeds, payable to holders of Class 1J creditors
13   trusts.  And we said that we were going to amend Class 1J --
14   amend the plan to provide that the Class 1J creditors trust
15   interests are not subject to PHONES subordination, to the
16   extent that they -- that the indenture does not so provide.
17   And we noted that we believe that this resolved the
18   Wilmington Trust objection.  And there's language appended
19   to that document that has proposed plan resolutions.  And we
20   also pointed out in our brief that it was never our
21   intention to subordinate PHONES -- creditors trust
22   recoveries to the PHONES to the extent that the indenture
23   did not so provide.
24          Apparently, having resolved that objection,
25   Wilmington Trust decided that it needed to raise a new one,

1  which is what you heard today, which has never been

2  articulated before.  The argument you heard today, as best I

3  understand it, was that somehow the settlement of estate

4  causes of action embodied in the DCL plan contained a

5  component of state law fraudulent conveyance claims and that

6  that component of recoveries in the settlement is not

7  subject to the PHONES subordination provisions.

8          Your Honor, I'd love to address that argument.

9  I'm not prepared to address it today, because it's never

10 before been articulated, other than to know that it's wrong.

11 It's wrong under the terms of the indenture, and it's wrong

12 under the bankruptcy law.  The recoveries or the state

13 causes of action that are settled under the DCL plan clearly

14 are estate property, and by virtue of them being estate

15 property, they are subject to the PHONES subordination

16 provisions.  The PHONES indenture could not be clearer.  It

17 says they -- the subordination provisions apply to any

18 distribution of assets of the company, and then it goes on

19 at some length to describe how and why and the ways and the

20 extent to which the PHONES are subordinated.

21          It's crystal clear that proceeds of avoidance

22 actions in a bankruptcy case are assets of the debtor, and

23 those assets of the debtor are then subject to contractual

24 subordination agreements.  I would venture to guess, and I

25 know that none was cited in the brief and no authority was

1   cited by Mr. Stark today, that there's not a single case out
2   there that provides that avoidance actions or proceeds of
3   avoidance actions recovered by a debtor in a bankruptcy case
4   are not somehow property of the estate and assets of the
5   company.  So, I'm handicapped by the inability to respond to
6   an argument that had not been articulated before.  I think
7   I'll leave it at that for now.
8            With respect to the last argument that there are
9   due-process concerns that Wilmington Trust filed a complaint
10  against certain lenders, against Citibank back on March 4,
11  2010, and that this plan harms that complaint in some way,
12  there's just no issue here, and we made this clear in our
13  brief as well.  From the beginning, we've stated that the
14  DCL plan only settles and resolves estate causes of action.
15  To the extent that the Wilmington Trust complaint has --
16  asserts or alleges personal causes of action, causes of
17  action that do not belong to these bankruptcy estates,
18  Wilmington Trust will remain free to assert them, no matter
19  how frivolous they may be.  The only claims settled under
20  the DCL plan are estate plans and causes of action.  With
21  that, all of Mr. Stark's due-process concerns, procedural
22  concerns fall away.  Confirmation of our plan will not
23  impact any of the causes of action asserted in that
24  complaint to the extent that they are personal.
25            THE COURT:  Thank you.

1          MR. JOHNSTON:  And I believe Mr. Moskowitz has

2    something to say about the new arguments raised by Mr. Stark

3    on the bar order.  Otherwise, that's all that I have.

4          THE COURT:  All right.

5          MR. STARK:  Your Honor, I know there's no

6    rebuttals, but I have just been attacked for making stuff

7    up, and it's all clear.  I'm happy to walk through it in the

8    brief, and Your Honor can read the objection, but I don't

9    think that's --

10          MR. JOHNSTON:  Your Honor, I would invite you to

11   read the objection; it's not there in the brief at all.

12          THE COURT:  Well, let me hear from Mr. Moskowitz.

13          MR. MOSKOWITZ:  Good afternoon, Your Honor.

14   Elliot Moskowitz for JPMorgan.  I will be exceedingly brief.

15          Mr. Stark levied a glancing blow at the bar order

16   in his argument, and I'm just going to levy a glancing

17   response.

18          First of all, his argument with respect to the

19   bar order also was absent from  his brief, except for one

20   line that carries over from pages 13 to 14, nor was it the

21   subject of any other pleading that's been submitted to the

22   Court.

23          Having said that, I just want to correct one

24   thing for the record, or amplify it.  Mr. Stark complains

25   that we did not settle with him, we did not settle with the

1   PHONES, and he's receiving nothing under the settlement.  I

2   think it's probably more accurate to say, and it's helpful

3   to the analysis, that we did settle with him in the sense

4   that we have a settlement of the estate causes of action

5   that the estate has brought that is being -- that is before

6   the Court.  And we've settled those causes of action,

7   including state law avoidance claims.  In our capacity as a

8   lender, the money will flow into the estate or money would -

9   - is remaining in the estate as a result of those causes of

10  action.  He may not get those monies ultimately because of a

11  separate contractual document that provides for him being

12  subordinated to the notes, but it's not a fair

13  characterization, I think, to say that there's no settlement

14  with his causes of action as part of the DCL plan.

15          That's all I have to say, Your Honor.

16          THE COURT:  Thank you.  Mr. Stark, I'll give you

17  a minute.

18          MR. STARK:  Cybergenics is cited on page 14.  The

19  -- it acknowledged the fact that there was mention in the

20  brief about the implications of the DCL plan in our separate

21  litigation.  In fact, it's a whole section.  I'm sorry that

22  my advocacy didn't marry up specifically to what they

23  intended to say on rebuttal.  It's just how I argue.  Your

24  Honor, yes, in fact, we were focused on the creditors trust,

25  but the mechanic is the same.  And in fact, we never

1   actually gave to the creditors trust when we ultimately

2   delivered, but the theory and the arguments all are the same

3   respective the litigation trust versus the creditors trust.

4   It's a C versus an L situation.

5           THE COURT:  Thank you.  Okay.  Are we ready to

6   move onto the PHONES?

7           MR. SIEGEL:  Martin Siegel of Brown Rudnick on

8   behalf of Wilmington Trust as successor indentured trustee

9   for the PHONES.

10          I rise, Your Honor, because this is our motion

11  for estimation and classification of certain of the PHONES

12  claims.  And I'll be brief, because counsel for certain of

13  the noteholders will argue their respective positions.  what

14  I want to sort of walk the Court through are what I call the

15  undisputed facts, because we think this can and should be

16  decided as a matter of law.

17          It's undisputed that the size of the PHONES

18  claims is either 760 million or a million one something.

19  The difference, approximately $403 million, arises from the

20  fact that the PHONES had a provision where certain -- they

21  could be redeemed under certain circumstances for cash.

22          THE COURT:  I remember.

23          MR. SIEGEL:  And prior to the bankruptcy, $403

24  million worth of PHONES were redeemed, or at least submitted

25  for redemption to the then-indentured trustee, Deutsch Bank.

1  Deutsch, through a certain mechanism, canceled those

2  certificates, but then Tribune didn't pay.  The bankruptcy

3  interrupted the different timing issues.  Some were

4  submitted that day.  Some were submitted a week before, some

5  a month before, but it wasn't paid.  Deutsch sent a letter

6  to Tribune, saying that, in light of the non-payment, we

7  want to withdraw, at least on behalf of certain holders.

8  Tribune wrote back and said, no; as far as we're concerned,

9  it was irrevocable.  That was their election.  So the way

10 the 760 comes up that's in the debtor plan is, I believe,

11 $703 million worth of face amounts of unredeemed PHONES plus

12 the $56 million that they should have paid but didn't pay

13 for the exchange.

14          As indenture trustee, we have an issue between

15 our holders, so Wilmington Trust takes no position on the

16 merits of the motion.  There are representatives of redeemed

17 holders here and representatives of people who did not

18 redeem, so I'd like to just turn it over to them.  As I

19 said, I think the facts that give rise to the dispute are

20 relatively undisputed.  Nobody has raised any issues with

21 those facts, so we think that Your Honor, once it hears from

22 the various holders, can and should decide this as a matter

23 of law.  Thank you.

24          MS. STAFFORD:  Your Honor, Sarah Stafford,

25 Benesch Friedlander.  Speaking on behalf of Barclays and

1  Waterstone is Jason Sanjana from Latham & Watkins, admitted

2  pro hoc.

3           MR. SANJANA:  Your Honor, Jason Sanjana on behalf

4  of Barclays and Waterstone.

5           Mr. Rosenberg was here in January, and we went

6  through our arguments pretty carefully, and we briefed them,

7  so I won't belabor the point.

8           Two things to respond to just now.  One, Deutsch

9  Bank was clear at the time that they did not cancel their

10 notes, and that would be consistent with the exchange notice

11 provisions that we cited to you, whereby the holders would

12 tender for redemption; the trustee would hold the notes --

13 withdraw them, but would only cancel them once the

14 transaction was consummated.

15          That's really the crux of our argument.  We --

16 there was never any consideration paid.  There was never

17 consummation of the transaction, so there was no exchange,

18 and these are just withdrawn, pending reissuance or whatever

19 other remedy is right.  But there's really nothing in the

20 documents of the indenture or the note that says that the

21 act of simply submitting them changes their value

22 permanently.

23          One factual clarification from our response to

24 the motion, we had said that all of the notes held by

25 Barclays and Waterstone were tendered on the petition date.

1  A very small number, five percent, were actually tendered on
2  December 2.  That's still within the 10 days that the
3  exchange notice speaks to, which is the time before --
4  within which the company can pay.
5         But in any case, at least clearly for the notes
6  tendered on the petition date, it would be impossible for
7  the company to pay.  There's an impossibility that would be
8  a bar to consideration in the transaction.
9         And the result that we are seeking, that these
10  notes would be valued at their full value, is consistent
11  with the indenture documents, especially the exchange
12  notice, which was specifically crafted to provide for this
13  sort of situation.  And it's also consistent with Wilmington
14  Trust's filed proof of claim.  So I don't want to go through
15  the arguments again.  I think our arguments on subordination
16  were clear.  There's really a fundamental difference between
17  subordinating a claim for payment under a note with
18  subordinating a claim based on the sale of a note.  And if
19  you look at the cases they cited, one was a stock exchange
20  that was going to be payment for an employment contract.
21  The stock exchange never happened.  The other one was a
22  breach of a merger contract -- merger agreement.  These are
23  the cases cited by Sutton Brook.  And I think it's just not
24  consistent with the cases we cited that say if you were to
25  apply 510(b) subordination to payments under clear

1   provisions of a note, that would make any claim under a bond

2   based on default or in bankruptcy, really, a 510(b)

3   subordinated claim.

4         With that, I guess -- unless you have any

5   questions.

6         THE COURT:  I don't.  Thank you.

7         MR. GELBER:  Good afternoon, Your Honor.

8   Lawrence Gelber of Schulte Roth & Zabel for Suttonbrook

9   Capital Management.

10        I agree: we shouldn't rehash everything that we

11  went over in January.  But one point that Your Honor raised

12  in January I did want to address.  You seemed to frame this

13  as a classification issue, which I don't think any of us had

14  really framed it as.  I think our expectation -- and I think

15  I understand what you're saying is that if the exchanging

16  noteholders claims were to be subordinated, you would have

17  disparate treatment of -- you would have senior and

18  subordinated within the same class.

19        I think our expectation or our anticipation would

20  have been that had Your Honor -- or if Your Honor is to rule

21  that way, the plans could be modified accordingly to set

22  out, you know, a subordinated class for the exchanging --

23  could make a provision for the exchanging PHONES

24  noteholders.

25        More importantly, though, I think if the Court

1   determines that the appropriate amount of those claims is
2   $56 million, you don't even need to get to the
3   classification issue, all right, because then you would just
4   have an additional -- as the debtors say, you would have
5   $759 million in that single class: 703 of non-redeeming and
6   56 of redeeming.  I think, just to remind the Court -- and I
7   think this is where the Court's primary focus should be, to
8   remind the Court, as we pointed out last time, it's our view
9   that the exchanging PHONES holders did everything that they
10  needed to do.  They tendered.  They signed and delivered the
11  exchange notices.  The notes were DWAC'd out of DTC.  That's
12  deposit/withdraw at custodian.  Once they were DWAC'd out of
13  DTC, the trustee takes possession, and the debtor's books
14  are credited as if those notes are no longer in existence.
15  So the debtor's books would reflect that those notes are no
16  longer outstanding.
17          The exchanging holders did that with the
18  expectation of receiving $56 million in exchange.  They
19  bargained away the risk of non-payment under the PHONES
20  notes for certainty of a payment.  Obviously, the bankruptcy
21  intervened, and they didn't receive that payment; yet, the
22  risk/reward analysis that they undertook was it was better
23  for them to exchange and seek the $56 million than risk
24  continued payment under the PHONES at some point in the
25  future.

1                 THE COURT:  But timing is everything, isn't it?

2                 MR. GELBER:  It certainly is.  Having eliminated

3     the risk, it seems to us that it's inequitable that they

4     would still get to reap the reward, although perhaps in this

5     case I don't know how much of a reward it will ultimately

6     be, but there is hope that there will be a substantial

7     distribution to the PHONES noteholders after the litigations

8     are resolved.

9                 So at the point of the exchange, where they have

10    done everything that they needed to do, they have bargained

11    away that risk, and they shouldn't be entitled to that

12    reward.  Just because the transaction was not completed,

13    that the consideration was not paid, doesn't mean that the

14    transaction is void.  It means that they sold to -- their

15    security to the debtor, the debtor didn't pay for it, and

16    now they have a claim for the amount that they were due to

17    be paid on the sale of that security of the debtor, and

18    that's the $56 million, not the face amount of those claims.

19                And unless Your Honor has any questions, I have

20    nothing further.

21                THE COURT:  I don't.  Thank you.  Do either of

22    the plan proponents care to address?  Okay.

23                MR. SANJANA:  Not the DCL plan proponents, Your

24    Honor.

25

1          THE COURT:  Okay.  Does that bring us back to

2    Brigade?

3          MR. PACHULSKI:  Thank you, Your Honor.  Again for

4    the record, Isaac Pachulski of Stutman, Treister & Glatt,

5    for Brigade Capital Management.  To make this hopefully

6    shorter than it might otherwise be, I'm not going to repeat

7    the various objections with the same detail as in our -- the

8    opening argument that we made, it was like about a month

9    ago, and I'll just incorporate that by reference.  So my

10   silence on a point shouldn't be deemed a waiver, but there

11   are only -- there are two specific issues I would like to

12   address; namely, the plans violation of the requirement the

13   plan not discriminate unfairly, and the overpayment of the

14   swap claim in connection with converting Oaktree from a plan

15   opponent to a plan proponent.  And again I will repeat what

16   I said in opening argument only to the extent necessary to

17   create context because there's some additional points I'd

18   like to establish for the Court regarding these two issues.

19          First with respect to the requirement that a plan

20   not discriminate unfairly, we pointed out and cited the

21   Court to legislative history, which has subsequently been

22   provided that insofar as the plan gives equivalent treatment

23   to two classes; namely, the senior noteholders, and the

24   other parent claims that have unequal rights under the PHONE

25   subordination.  Namely, we have those rights, and the other

1  parent claims do not.  The plan clearly violates the

2  requirement that it not discriminate unfairly because the

3  relative entitlements under subordination provisions has to

4  be reflected in the relative priorities in the relative

5  distributions.  In fact, that's the only illustration, the

6  only illustration of not-discriminate-unfairly principle

7  that one finds in the legislative history.  Now originally

8  at the time I first argued this, there was only one argument

9  that the debtors had offered, or the plan proponents had

10 offered to justify this treatment.  And to summarize, it was

11 basically this is how the settling LBO lenders want to

12 distribute their consideration.  And just so that it's clear

13 that I'm not putting words in anyone's mouth, this is how

14 the DCL plan proponents described their arguments in their

15 brief at page 172 of the Confirmation Memorandum.  They

16 said, "most importantly" -- "most importantly, the senior

17 lenders have determined that it is in their best interest,

18 as consideration for the settlement of LBO related causes of

19 action to provide for the recovery of Tribune's trade claims

20 and retiree claims as other parent claims."  Well as I

21 pointed out then, you can't -- you can't get around the

22 absolute priority rule by making gifts, nor can you get

23 around the requirement of the plan not to discriminate

24 unfairly when you're not even making a gift, but basically

25 these are estate causes of action.  They're not causes of

1    action of the retirees.  They're not causes of action of

2    trade creditors.  They're estate causes of action, and

3    someone who settles an estate cause of action is supposed to

4    give the consideration to the estate, and then the

5    consideration gets distributed in accordance with the

6    parties bankruptcy entitlement.

7              Now -- and just to put this in perspective, under

8    their theory, Your Honor, if the senior lenders had said,

9    you know, we want the other parent claims to get a hundred

10   cents on the dollar plus post deficient interest.  And you

11   can give the senior noteholders whatever is left.  Under

12   their theory, they can do that, and that's simply a

13   violation of the law.  It's flagrant.  They can't do it that

14   way, and they can't do it in a lesser way either.  Now at

15   the conclusion of the hearing on -- of the opening argument,

16   following my remarks, Counsel for Oaktree came up with a new

17   theory to justify this.  And according to counsel for

18   Oaktree, at least some of the claims that are classified as

19   other parent claims, including assertively the swap claim,

20   actually do have the benefit of the contractual PHONE

21   subordination.  Now preliminarily, Your Honor, I would note

22   that if -- and he didn't say all.  He said some.  Well, if

23   some other parent claims are entitled to the benefit of that

24   subordination, and some aren't, you have a huge problem of

25   misclassification because you can't classify claims that are

1   the beneficiaries of subordination with claims that aren't

2   and treat them all the same.  So if Counsel is right, you'd

3   have to go plan by plan and figure out which one belongs

4   where, but happily for everyone, we don't have to go through

5   that brain numbing exercise because the fact is that none of

6   the other parent claims, including the swap claim are

7   entitled to the benefit of the contractual subordination.

8   Now the -- preliminarily the indenture is in evidence, and I

9   don't think this is an evidentiary objection.  It's

10  construing and unambiguous document without evidence, and I

11  think that's an issue of law.  And I believe someone else

12  actually gave the Court a copy of the indenture.  It's an

13  exhibit, 0963, but I think the Court has the PHONES

14  indenture.

15          THE COURT:  I have it.

16          MR. PACHULSKI:  And if -- okay.  And if the court

17  will turn -- and I'm not sure if the pagination that I have

18  is right, but the definition of senior indebtedness is on

19  page 62, at least in my copy, and it should be around page

20  62 in the Court's copy.  And there's a defined term, senior

21  indebtedness.  Okay.  Now to be senior indebtedness, you

22  have to be Indebtedness with a capital I.  So we have to ask

23  ourselves is the swap claim indebtedness.  And now here I'm

24  going to paraphrase.  There are four things to qualify as

25  Indebtedness with a capital I.  The first is all obligations

1 represented by notes, bonds, indentures, or similar evidence

2 of indebtedness.  The second is all indebtedness for

3 borrowed money or for the deferred purchase price other than

4 on normal trade terms -- and I'm paragraphing --

5 paraphrasing -- the third is parental payments under a

6 capital lease, and the fourth is for a guarantee of any of

7 the first three items.

8         Now Your Honor, a swap claim isn't any of these.

9 It's not a claim for borrowed money.  If you look at the

10 swap agreement which is actually another exhibit, it's

11 Exhibit 2300, it was filed as part of a proof of claim.  It

12 doesn't look anything like a note, a debenture, a bond, or

13 any similar instrument.  It's clearly not a rental payment

14 under a capital interest under a capital interest

15 [indiscernible].  And in fact, to confirm what I just said,

16 I think the best thing to do is look at how the DCL

17 proponents, including Oaktree, characterize the swap claim

18 at page 145 of the Confirmation Memorandum.  According to

19 them, a fundamental characteristic of an interest rate swap

20 is that the counterparties never actually loan or advance

21 the notional amount.  Well, there goes the borrowed money

22 argument.  The swap involves an exchange of periodic

23 payments calculated by reference to interest rates and a

24 hypothetical notional amount.  Well, that explains why you

25 don't have a note, because you don't even know who's going

1  to owe who money when or what the amount will be.  So that's

2  why you have this convoluted swap agreement and not a simple

3  debenture or bond.

4         And finally, they say the senior loan claims, on

5  the other hand, are for money loaned.  By implication, the

6  swap claims are not for money loaned.  So given all of those

7  facts, clearly the swap claims are not entitled to the

8  benefit of the contractual subordination.  Now briefly, as

9  to trade payables, the definition of senior indebtedness

10  makes it clear that even if a trade payable is represented

11  by a note, it's still not Indebtedness because a specific

12  carve-out for trade payables in part C of the definition of

13  senior indebtedness.  And similarly, retiree claims don't

14  fall into any of these categories.  So it's clear that other

15  parent claims were properly classified separately from

16  senior note claims because of none of them is entitled to

17  the benefit of subordination.  What was improper is giving

18  them the same treatment.

19         Now this discussion of the swap claim is a good

20  segue to our second point, which is that -- which has to do

21  with the overpayment of the swap claims.  In the opening

22  argument --

23         MR. JOHNSTON:  Your Honor --

24         MR. PACHULSKI:  -- we pointed out that --

25         THE COURT:  Mr. Pachulski, let me ask you to

1    pause for one moment.  Yes, Mr. Johnston.

2            MR. JOHNSTON:  Your Honor, I apologize for

3    interrupting, but this is another bait and switch.  This

4    argument regarding the swap claim that Mr. Pachulski's about

5    to unveil, again, was never argued or even mentioned in

6    Brigade's confirmation objection.  And I think more

7    importantly, it was argued extensively at length in the

8    noteholders' confirmation objection, and is on the list of

9    issues that the noteholders intend to argue tomorrow.  I

10   just don't want to be put in a position, Your Honor, of

11   having to respond to this argument twice.  This is not

12   something that is in the Brigade brief.  It's more properly

13   considered tomorrow.

14           MR. PACHULSKI:  Your Honor, in the course of --

15   well, first of all, just so we're clear, on the chart that I

16   was served with that listed our objections, and I don't have

17   handy, but this argument is on the chart as a Brigade

18   objection.  So --

19           MR. JOHNSTON:  As a Brigade objection raised in

20   oral argument -- or opening argument, not in the brief.

21           MR. PACHULSKI:  Well, the chart did not

22   distinguish between arguments made orally and in the brief,

23   and at the opening argument, I made it clear that we were

24   joining in the -- we were joining in the noteholder

25   objection on this point, and I amplified the point to

1   provide legislative history that was not provided.  And

2   beyond that, at the close of that argument, Mr. Bennett

3   specifically raised the issue of subordination.  Well (a) I

4   couldn't reply at that time, and (b) I thought it would be a

5   good idea to actually read the provision before I responded.

6   So given the fact that Mr. Bennett himself raised the

7   argument claiming that the swap claims were entitled to this

8   subordination, I was entitled to assume that somebody had

9   actually read the subordination provision before they made

10  the argument.  Now personally, Your Honor, I don't care if

11  this argument is made today or tomorrow, but I -- but as to

12  the subordination issue of the swap, it was squarely placed

13  at issue by Mr. Bennett at that hearing, and the terms of

14  the subordination agreement -- I'm not asking the Court to

15  consider evidence, and given the fact that the chart assumed

16  that this was an argument I had made, I had assumed it was

17  an argument I would be able to present today.  And in fact

18  looking at a copy of today's agenda, one of the specific

19  items under Brigade, and maybe this was handwritten in by

20  someone, I thought was swap.

21              THE COURT:  Well --

22              MR. PACHULSKI:  So if I'm not supposed to make

23  this argument today, I'm sorry, but based on everything I

24  read, I assumed I was.

25              THE COURT:  Well let me ask you to pause for a

1    moment.  I remember at the opening I suggested to you that

2    you supplement your objection to memorialize what you had

3    argued.  Did you do that?

4            MR. PACHULSKI:  Excuse me, Your Honor, actually

5    that's -- that's not quite what happened.  I asked for

6    permission to supplement my presentation on the not-

7    discriminate-unfairly requirement because it was legislative

8    history that no one had cited.  And here I'm paraphrasing.

9    I'm sorry.  I don't have the transcript, but you basically

10   said that I could submit a supplement that was simply

11   limited to providing that legislative history because I

12   believe you indicated you didn't want to encourage people to

13   start filing additional briefs at that time.  And so I made

14   it clear to the Court, respecting the Court's desire to

15   limit the flood of papers, that I would provide a copy of

16   the legislative history without argument, and that's exactly

17   what I did.  I would have been happy to argue in that

18   pleading but my impression was that the Court didn't want me

19   to do it.

20           THE COURT:  Well I fall back into a -- just a

21   principle of how Courts consider arguments, and that is they

22   consider them based upon positions taken on pleadings.  And

23   what I hear from Mr. Johnston is that this argument that

24   you're making is not embodied in a pleading of yours.  Now

25   you did say, but I haven't read it.  You did say you joined

1    in a pre-existing objection that made this objection.

2            MR. PACHULSKI:  At the time oral -- at the time

3    of opening argument, Your Honor, without objection by

4    anybody, I indicated that in the noteholders' memorandum,

5    and it's towards the end, they had discussed -- and they

6    cited a number of statutory provisions including 1129(b).  I

7    pointed out that they had noted that the plan distributions

8    were violative of the waterfall resulting from the

9    subordination provision, and among the provisions they

10   quoted was 1129(b) and I amplified on that.  I also argued

11   separately, and this was in -- I argued separately, and this

12   is also something that they had pointed out, that the swap

13   claims were being overpaid; that what had basically

14   happened, and they've chronicled this chronology.  I wasn't

15   aware of this chronology until I read it in their paper;

16   that in April of -- April, I think it was 2010, Oaktree

17   opposed a compromise that was then reached.  Around June or

18   so, they bought the swap claim.  At the time they bought the

19   swap claim, the debtors were going to treat it like any

20   other senior loan claim.  It would have received like one

21   and a half cents at the parent level.  I then pointed out

22   again, based on what was in the noteholder brief that as

23   part of the settlement in September, in the course of

24   getting Oaktree to become a plan proponent, all of a sudden

25   the swap claim went from being treated as a senior lender

1   claim to being treated as another parent claim on a parody

2   with all other parent claims and on a parody with our claim.

3   Nobody objected at the time, and it was all based on facts

4   in the noteholder brief.  The only thing I've been doing now

5   so far, other than what I said at oral argument, is

6   responding to a specific argument that mischaracterized the

7   terms of the subordination agreement.

8          MR. JOHNSTON:  Your Honor, the key point there

9   was this is all coming straight from the noteholder brief,

10  and presumably we're going to hear it all again tomorrow.

11  We should do this once.

12          THE COURT:  Well --

13          MR. GOLDEN:  Can I be heard one --

14          THE COURT:  Yes, Mr. Golden.

15          MR. GOLDEN:  Thank you.  Your Honor, look, I

16  don't -- I resent the notion that this is bait and switch.

17  I had -- we had a personal phone call with Mr. Sottile and

18  Mr. Lantry late last week where we went over in excruciating

19  detail what would be agenda for today's hearing.  Mr.

20  Sottile and Mr. Lantry certainly knew that Mr. Pachulski

21  intended to raise the swap argument and the unfair

22  discrimination argument.  Whether they failed to communicate

23  that to Mr. Johnston, I don't know, but we're now talking

24  about two of the four DCL plan proponents.  So this isn't a

25  question of surprise, and I don't want Mr. Pachulski to be

1    put in a position that he is doing something inappropriate.

2    If the Court would like, and we want to adjourn this

3    discussion on the swap until after I present it initially,

4    and then allow Mr. Pachulski to weigh in as the joinder,

5    that's fine, too.  But I don't think the Court should be

6    left with the misimpression that somehow there was a bait

7    and switch occurring here.

8            THE COURT:  Well I don't want to be drawn....

9            THE COURT:  Well, and I don't want to be drawn

10   into which -- into which I have been drawn --

11   (Laughter)

12           THE COURT:  -- an argument about the argument.

13   You know I mean the parties here have been given and will be

14   given, you know, multiple opportunities to make their points

15   you know evidentiary, legal, and both.  Well, let me put it

16   this way, Mr. Johnston.  You don't have to answer today.

17   How's that?  Does that solve your problem?

18           MR. JOHNSTON:  If that's the way Your Honor wants

19   to proceed, obviously I have no choice, so --

20           THE COURT:  You don't want to argue it twice and

21   I don't want to hear it twice.  I -- you know we're on the

22   same plane there.

23           MR. JOHNSTON:  All right.

24   (Laughter)

25           MR. JOHNSTON:  I'll hear what Mr. Pachulski has

1   to say and make a decision then.  Thank you.

2              THE COURT:  All right.  Mr. Pachulski, you may

3   conclude.

4              MR. PACHULSKI:  And I apologize, I just have to

5   tell you when I read page 15 of their chart of unresolved

6   objections and they said swap claim and they said unfair

7   discrimination, I must have misunderstood something and I

8   didn't mean to create much of a ruckus.  I thought my

9   participation in this would take a couple of minutes.

10             Anyway, let me just get back on my train of

11  thought.  All right.  So basically with respect to the swap

12  claim, I think we've beaten the unfair discrimination issue

13  to death, but there was also another concern we had raised

14  and I believe the noteholders also raised, which is that the

15  swap claim is being treated as if there were no defenses to

16  the swap claim.  It's basically a complete surrender and the

17  theory is that even though the swap claim was an integral

18  part of the LBO transaction, in fact it was required by the

19  credit agreement, that it is subject to other potential

20  defenses that might not be available to the senior lenders.

21  Well, the fact that it might be subject to other defenses

22  might be a grounds for some sort of a settlement, but this

23  wasn't a settlement.  It was a complete surrender by the

24  debtors on the point.  And I'd like to quote from -- and

25  this will brief, from one part of their brief as to sort of

1   their theory.  At page 147, they point to the fact that the

2   examiner found that it is reasonably likely that a Court

3   would find that the obligations arising from the termination

4   of the swap documents are not avoidable.  Now reasonably

5   likely.  Now you'll recall earlier in this case when Mr.

6   Sottile was talking about similar language in the context of

7   Mr. Zell's issues.  Mr. Sottile stated and I'm quoting here,

8   that is the stuff of litigation.  And we agree.  We actually

9   agree with Mr. Sottile on this.  The problem is it's not

10  right to say that that is the stuff of litigation against

11  Mr. Zell because he opposes the plan and that is the stuff

12  of a complete surrender, which is what happened with Oaktree

13  on the swap claim.

14          And so the point that I'd like to leave the Court

15  with and now I'm kind of coming full circle, is that there

16  is no justification for what they did with the swap claim,

17  either in terms of treating it on a parody with our claims

18  or in terms of treating it as there were no defenses.  They

19  gave the swap claim another $50 million in value at the same

20  time that they coincidentally reduced the distribution to

21  senior noteholders between the April proposal and the

22  October proposal, so this didn't cost the bank anything and

23  this whole history puts us back into the world of

24  Featherworks, which I cited in opening arguments without

25  objection, which is basically we have a situation where the

1  swap claims were being overpaid, beyond their legal

2  entitlement, simply as a basis to get them to switch from

3  becoming a plan opponent to a plan proponent.  And with that

4  I will conclude and thank the Court for its indulgence.

5          THE COURT:  Thank you.

6          MR. JOHNSTON:  Your Honor, I think I'd like to

7  take you up on your invitation and respond to these

8  arguments once I've heard them all with respect to the swap

9  claim, so I'll do it tomorrow.

10          THE COURT:  Very well.

11          MR. JOHNSTON:  Thank you.

12          THE COURT:  All right.  Anyone else?  Okay.

13          MR. LEMAY:  Your Honor, David LeMay from

14  Chadbourne and Parke for the Creditors Committee.  I've been

15  tasked with the unfair discrimination prong of this and it

16  would be convenient for me to deal with all of the unfair

17  discrimination claims, both those raised by the noteholders

18  and those raised by Mr. Pachulski all at once, but I'm

19  perfectly happy to just talk a little bit about Mr.

20  Pachulski's objection since he's lodged it.  But I have a

21  different sort of procedural model and that's this, I

22  understand that the ground rule here is that we are here

23  today to talk about legal arguments and non-evidentiary

24  matters.  And Mr. Pachulski has made an argument about

25  unfair discrimination and I believe has pitched it as a

1   purely legal matter.  I guess my model, Your Honor, is that

2   it seems to me that the question of unfair discrimination in

3   the Third Circuit involves a threshold inquiry about whether

4   the discrimination is material.  And why do I say that?  I

5   say that that's that -- I say that because that's what the

6   District Court in Armstrong, later affirmed by the Third

7   Circuit, tells us.  So Mr. Pachulski's legislative history

8   is good, but I think Armstrong, Third Circuit Law, is better

9   and that Third Circuit Law sends us into a fact question.

10  And the fact question turns out to have been answered by Mr.

11  Whitman in his testimony.  I'm not sure and I don't want

12  people yelling at me, whether I'm supposed to talk about

13  that.  But there's no way that I can meaningfully address

14  the Armstrong materially test without adverting to the

15  evidence.  And so I thought I'd pause for a moment and ask

16  Your Honor what you'd like me to do.

17              THE COURT:  I can't imagine anyone would yell at

18  you, Mr. LeMay.

19  (Laughter)

20              THE COURT:  But you may proceed.

21              MR. LEMAY:  Thank you, Your Honor.  I and so the

22  question of unfair discrimination that's been raised by Mr.

23  Pachulski is not simply a pure application of statutory law

24  in the way that absolute priority on cram down is.  It's

25  become very clear and I believe Mr. Pachulski has perhaps

1  inadvertently conflated a couple of different threads in the

2  law, but it's become very clear in the light of recent

3  jurisprudence that testing unfair discrimination as between

4  two equal classes is a different exercise than testing for

5  absolute priority when something goes to a junior class over

6  an intervening dissenting class.  Here there is no

7  intervening dissenting class, there's no junior class.  Mr.

8  Pachulski's problem is he says that the parent general

9  unsecured creditors have gotten more than they ought to have

10 at the expense of the bondholders.  And I think it's pretty

11 clear under modern law that that does not involve the

12 application of the very strict kind of rules that pop up

13 when you're dealing with absolute priority, but rather a

14 more subtle test which grew out of a publication by a

15 Professor Markell that was published -- I'm sorry -- that

16 was picked up by a number of Courts, including the Armstrong

17 Court, which looks at unfair discrimination in the context

18 of two parallel classes from the point of view first of all

19 of is there discrimination and is it material?  And in that

20 context the progeny of the cases under that four part test

21 make it very clear that in viewing unfair discrimination,

22 the level of discrimination or the level of change has to be

23 grossly disproportionate.  There's a case called Great Bay

24 which says that Courts that have rejected confirmation on

25 the basis of unfair discrimination have confronted plans

1    proposing grossly disparate treatment, 50 percent or more,

2    to similarly situated creditors.  And there are other cases

3    along the same line.  What all those cases tell you, Your

4    Honor, is that before you even need to engage meaningfully

5    on this issue, you've got to find that there is A,

6    discrimination and B, that it's meaningful.

7           THE COURT:  Well --

8           MR. LEMAY:  Now --

9           THE COURT:  -- let me ask you to pause there.

10   This is the Markell I guess proposal, who was then a

11   professor at the time and then I think I discussed in Exide,

12   but didn't adopt.  I don't know that the circuit here has

13   adopted it yet, now Judge Markell.

14           MR. LEMAY:  Well, it was I think adopted by the

15   District Court in Armstrong and of course that was affirmed.

16   The District Court in Armstrong sets forth the standard,

17   cites to the article, and then the District Court says,

18   having set forth that article, if there is an allegation of

19   a materially lower percentage recovery, the presumption can

20   be rebutted by showing that and then it goes on to show how

21   you rebut the presumption.  But I take it from the District

22   Court and its opinion that since it engaged in the

23   materiality analysis, that it must have adopted the

24   reasoning behind that test and the need for materiality,

25   because they wouldn't have done the exercise that they did.

1          THE COURT:  Okay.  And what you're telling me is

2     that it's a persuasive Decision, but not a controlling

3     Decision on this Court.

4          MR. LEMAY:  I'd say that's true, yes.  I didn't

5     mean to suggest that it was --

6          THE COURT:  No, because it was not the focus of

7     the appeal of the Appellate --

8          MR. LEMAY:  That's absolutely right, Your Honor.

9          THE COURT:  Okay.

10          MR. LEMAY:  No.  And I certainly wouldn't mean to

11     oversell the case, but I do think it's the right way to go

12     and I think it's the way that the modern trend in these

13     unfair discrimination cases has gone, to distinguish on the

14     one hand between a very strict rule on gifting in the

15     absolute priority context and a somewhat different unfair

16     discrimination thing.  So I didn't mean to oversell it and

17     I'm not suggesting that it's binding Third Circuit Law.  I

18     do think that it is the best way of thinking about these

19     issues.

20          At any rate, Your Honor, that then brings us to

21     the factual issue.  Your Honor will remember that Mr.

22     Whitman testified.  His testimony was unrebutted.  I don't

23     think there's any other testimony in the record.  And Mr.

24     Whitman's testimony on direct examination was that the -- in

25     effect the net harm suffered by the senior noteholders was

1    in the vicinity of $40,000.  There was on cross examination

2    and I can give page cites if that's helpful.  There was on

3    cross examination a little bit of an attempt to sort of have

4    at him on that, but I believe his testimony is quite

5    consistent that the harm to the bondholders that's being

6    complained of as a factual matter is in the range of $30,000

7    to $40,000.  As I say, that testimony I believe is the only

8    testimony on the record in the issue.  And so if that's the

9    case, I think we are infinite worlds away from the kind of

10   material harm or gross disproportionality that the cases

11   talk about and that therefore this is much ado about

12   nothing.

13          The other thing I would point out is I guess that

14   to the extent that the Court later finds that the settlement

15   is a reasonable settlement and that the economic

16   justification for the settlement makes sense, then it is

17   going to be correct to say that what happened and Mr.

18   Pachulski disputes this, that what in effect happened here

19   is that the senior lenders parted with a piece of their

20   recovery to bring the parent general unsecured creditors up

21   to the same level as the bondholders.  Now to be sure, if

22   the Court later finds that the settlement itself doesn't

23   pass muster, then that won't work.  But at that point we all

24   have much larger problems and so I think it's a -- I think

25   it's actually a footnote.  So for all those reasons, Your

 1   Honor, I think that this can be disposed of relatively

 2   easily, this issue of unfair discrimination, by simply

 3   focusing on issues of materiality and the size of the

 4   amounts involved.  So that's my pitch on unfair

 5   discrimination.  As to the Brigade objection, I guess you

 6   might hear a somewhat similar theme from me tomorrow, but I

 7   won't repeat myself.

 8              THE COURT:  Thank you.  Anyone else?  Okay.  Have

 9   we reached the end of the third party objections?

10              MR. SOTTILE:  We have, Your Honor.

11              THE COURT:  Well, of the argument anyway.  Okay.

12   Is there any further business for today?

13              MR. SOTTILE:  Not on the side of the DCL plan

14   proponents, Your Honor.

15              MR. GOLDEN:  None here, Your Honor.  Just what

16   time are we -- I'd like to know what time we are planning to

17   restart tomorrow.

18              THE COURT:  I'm glad you asked that question.

19   10:00.  I have a matter that I heard -- that I scheduled on

20   short notice for 9:30 tomorrow morning and because it's on

21   short notice, objections are not due until the time of

22   hearing, although I'm supposing given the nature of the

23   relief that's been requested that objections are unlikely,

24   but it's been a contested case, so I won't promise you

25   anything.  I just ask that when we're going through that

1  proceeding as parties move in and out of the courtroom to

2  get ready for 10:00 that they do so with consideration for

3  those before the Court.

4         Okay.  Let me just give you -- cover some other

5  things.  I've received and reviewed both of the letters and

6  I'm perfectly okay with what's been proposed with respect to

7  I guess I'll call them the afternoon arguments, although we

8  can start in the morning if we get you know -- get that far.

9  (Laughter)

10        THE COURT:  But each side has proposed.  I have

11 nothing to add to that.  I think I am going to allow short,

12 maybe in letter form, post-hearing submissions by other

13 objectors whose objections I did not resolve from the bench

14 today.  So I haven't decided anything other than what I've

15 just told you, so the parties can think about that overnight

16 and if someone wants to comment on that tomorrow they're

17 welcome to.

18        I also -- well, again something for the parties

19 to think about, but I'd like to find a way somehow to get

20 everything teed up in such a way that I have all of the

21 written submissions prior to the commencement of closing

22 argument and we'll talk about a date in a minute.  And by

23 that I mean I think I am going to ask for submission of

24 proposed findings and conclusions.  And given the timeframe

25 which will exist between the end of the day tomorrow and the

1  briefing schedule and closing arguments, I also assume

2  and/or encourage final amendments to the proposals to the

3  extent certain of the objections that were not resolved

4  today can be resolved by language changes to the respective

5  plans and find a way to get them to the Court early enough

6  that I can have a full understanding of exactly where

7  everyone is because at some point you know we're going to

8  have to freeze time and the other reason for that is obvious

9  I'm sure.

10         Finally, let me just throw out a couple of

11  suggestions for dates.  The briefing proposal has the last

12  submission May 27.  I will tell you the next available time

13  beyond June 3, which I think is way too close to the

14  submissions, is the week of June 13.  And I would propose to

15  make, assuming closing can be had in a day, either the 14th

16  or 15th of June available for that.  I do have something

17  scheduled for those days now and I've yet to inform the soon

18  to be unhappy parties that they're not trying their case

19  that week.  But I felt in balancing the respective urgencies

20  I wanted to clear some time for closing here.  So think

21  about those dates and see if the parties can agree upon one.

22  And if for any reason they are not suitable, we'll try

23  something else.  All right.  Are there any questions?  All

24  right.  Thank you all very much.  That concludes today's

25  session.  Court will stand adjourned.

1

2    (Whereupon, at 5:03 p.m., the hearing was adjourned.)

3

4                        CERTIFICATION

5            I certify that the foregoing is a correct

6    transcript from the electronic sound recording of the

7    proceedings in the above-entitled matter.

8

9

10   _____          14 April 2011

11   Transcriber                                     Date

**TRIBUNE.4.13.11.DOC**

| Word | Page:Line |
| --- | --- |

**08-13141(kjc(1) 1:5**
**1129(a)(1(3) 103:14 107:1 171:5**
**379br40(1) 91:14**
**401k's(1) 39:24**
**500-page(1) 108:8**
**a(3(1) 171:7**
**a)(3(2) 103:15 107:1**
**a.m(4) 1:15 14:1 53:5 53:5**
**abandoned(2) 58:2 111:12**
**abandonmen(1) 136:7**
**abetted(1) 173:11**
**abid(1) 5:13**
**abilities(1) 110:15**
**ability(1) 81:24**
**able(11) 15:15 48:5 48:11 49:15 81:18 84:4 111:19 123:2 153:6 154:16 197:17**

**about(106) 15:1 15:22 16:18 27:18 30:6 31:25 35:21 40:3 41:7 45:14 45:15 50:20 50:23 50:23 51:14 64:25 66:12 66:20 71:73:20 79:9 79:11 79:13 80:20 80:22 82:2 82:6 83:24 84:9 85:25 86:13 86:23 87:5 88:16 89:21 90:19 93:1 96:3 96:17 96:22 97:17 99:10 99:10 99:11 99:13 102:4 104:23 106:23 115:5 115:6 115:6 115:12 116:2 120:19 121:10 124:11 130:7 132:2 132:9 135:16 140:23 141:13 141:17 141:17 142:5 146:5 146:16 146:19 147:17 148:6 149:5 152:6 152:16 157:25 161:19 163:3 163:12 164:1 164:5 165:4 168:3 169:5 169:17 171:19 173:9 174:9 177:23 181:2 182:20 190:8 196:4 200:24 201:12 203:6 204:19 204:23 204:24 205:3 205:12 208:1 209:11 209:11 211:15 211:19 211:22 212:21**

**above(1) 148:4**
**aboveentitled (1) 213:7**
**absence(2) 19:2 70:12**
**absent(3) 166:11 170:14 181:19**
**absolute(11) 42:22 43:11 43:22 44:7 75:13 76:20 191:22 205:24 206:5 206:13 208:15**

**absolutely(5) 41:10 45:20 57:3 70:4 208:8**
**abuse(1) 163:15**
**acceptable(2) 76:1 123:11**
**accepted(5) 59:24 60:23 63:3 63:3 63:4**
**accident(1) 136:15**
**accordance(2) 99:7 192:5**
**according(6) 38:13 120:4 120:25 122:24 192:17 194:18**

**accordingly(2) 152:11 187:21**
**account(7) 45:13 85:11 130:12 153:10 154:11 159:13 170:11**

**accurate(1) 182:2**
**accurately(1) 93:11**
**accuse(1) 69:6**
**accused(2) 68:18 68:19**
**acknowledge(3) 105:20 106:19 164:4**
**acknowledged(2) 105:12 182:19**
**acknowledges(1) 51:21**
**acquiescence(1) 77:24**
**acquired(2) 36:21 36:23**
**acquisition(11) 37:1 37:9 37:13 38:8 38:10 38:12 39:6 39:6 41:3 41:18 63:23**

**act(3) 67:15 160:16 185:21**
**acted(1) 58:15**
**acting(3) 28:3 53:23 67:25**

**action(54) 23:4 24:25 27:25 47:22 48:4 94:14 95:13 96:1 96:15 96:19 104:13 104:15 104:16 104:21 104:21 104:25 105:17 105:18 106:2 106:12 106:14 106:1 110:4 110:13 114:7 138:6 141:2 142:8 148:1 152:20 153:1 159:4 159:16 162:15 165:19 167:25 173:18 179:4 179:13 180:1 180:16 180:17 180:20 180:23 182:4 182:6 182:10 182:14 191:19 191:25 192:1 192:1 192:2 192:3**

**actions(28) 23:2 23:9 23:21 31:6 31:7 31:20 32:5 34:8 34:9 37:3 38:9 39:6 66:25 81:7 103:5 104:12 104:17 104:22 106:6 106:13 107:3 116:20 116:21 148:3 162:7 179:22 180:2 180:3**

**activity(1) 147:4**
**acts(4) 91:7 91:8 117:3 117:4**
**actual(2) 109:16 125:19**
**actually(31) 47:23 48:4 85:1 85:8 89:23 100:13 103:25 106:2 107:13 108:25 110:22 132:16 134:7 135:14 137:14 139:17 156:18 158:14 159:7 162:8 183:1 186:1 192:20 193:12 194:10 194:20 197:5 197:9 198:4 203:8 209:25**

**adam(1) 4:7**
**add(8) 84:21 114:14 115:18 124:24 136:3 139:8 150:4 211:11**
**added(1) 20:23**
**addition(13) 15:4 15:10 18:6 26:21 28:6 30:14 39:22 94:20 122:22 124:5 124:11 126:13 127:6**
**additional(13) 14:10 17:16 29:4 31:1 43:9 44:1 44:5 108:9 126:12 162:21 188:4 190:17 198:13**
**additionally(1) 124:21**
**address(28) 16:16 18:19 41:8 53:12 53:15 54:8 54:9 54:14 55:8 62:2 64:1 72:14 72:22 74:2 74:20 75:2 75:7 76:6 82:18 87:3 89:7 140:19 179:8 179:9 187:12 189:22 190:12 205:13**
**addressed(10) 16:11 38:25 47:3 54:6 55:10 55:16 113:9 119:12 124:22 171:25**
**addresses(1) 126:21**
**addressing(4) 35:3 62:9 79:6 141:1**
**adelphia(1) 71:3**
**adequacy(1) 155:23**
**adequate(2) 130:1 154:2**
**adhere(1) 148:20**
**adjoined(1) 124:10**
**adjourn(1) 201:2**
**adjourned(2) 212:25 213:2**
**administer(3) 109:15 111:2 111:9**
**administered(1) 109:18**
**administering(2) 32:18 111:3**
**administrator(1) 61:9**
**administrativ(7) 15:14 15:23 16:17 19:21 43:24 61:5 91:20**
**admission(1) 35:17**
**admitted(4) 16:4 131:23 131:24 185:1**
**admonitions(1) 33:20**
**ado(1) 209:11**
**adopt(3) 128:19 129:20 207:12**
**adopted(3) 207:13 207:14 207:23**
**advance(4) 18:11 64:21 163:18 194:20**
**advancement(2) 61:15 176:20**
**advantage(1) 123:15**
**advantages(1) 25:25**
**adventure(1) 91:7**
**adversary(6) 72:18 73:6 81:4 81:18 171:18 172:16**

**adverted(1) 91:13**
**advertently(1) 132:13**
**adverting(1) 205:14**
**advertised(1) 87:22**
**advisor(2) 64:7 173:5**
**advisory(3) 66:2 94:22 95:4**
**advocacy(1) 182:22**
**advocated(1) 38:2**
**affairs(2) 116:24 117:6**
**affiliate(4) 37:17 37:18 41:14 41:19**
**affirmed(3) 137:5 205:6 207:15**
**affirms(1) 49:2**
**affording(3) 73:2 174:5 175:9**
**after(19) 20:20 38:5 38:10 38:12 39:6 57:1 66:21 91:17 95:18 106:18 107:18 111:11 116:5 134:17 141:9 150:19 151:2 189:7 201:3**
**afternoon(17) 82:12 93:6 101:4 102:9 109:8 112:4 113:5 116:14 128:1 129:17 129:21 138:9 139:15 157:21 181:13 187:7 210:7**
**afterwards(1) 38:9**
**again(42) 41:17 50:17 56:4 56:9 66:11 66:21 71:16 73:7 93:6 93:16 97:3 109:9 118:24 121:16 124:12 126:19 127:3 128:1 128:19 129:2 137:24 140:6 141:24 143:18 145:15 148:8 149:16 155:3 155:11 164:14 166:1 167:7 170:18 174:8 176:4 186:15 190:3 190:15 199:6 199:22 200:10 211:18**
**against(101) 21:5 23:5 28:7 28:8 28:14 28:16 29:1 29:2 35:12 36:16 36:25 37:18 40:6 40:9 40:11 41:9 41:15 42:8 44:12 44:22 48:2 48:16 48:18 48:21 48:24 49:1 49:3 53:13 53:21 55:1 56:13 58:8 59:1 62:10 62:16 63:1 63:9 63:11 67:1 67:8 67:23 68:22 70:1 71:18 72:9 79:22 80:3 80:20 80:22 86:14 94:10 94:15 95:5 96:6 101:8 101:11 117:1 117:20 118:1 123:22 124:15 127:9 127:11 127:20 130:2 130:23 134:5 134:6 134:13 137:18 142:1 143:1 146:7 147:19 148:4 152:13 152:22 153:5 153:6 153:16 153:21 154:9 154:20 154:21 155:6 155:7 155:13 159:14 165:3 166:8 171:14 171:16 171:19 172:17 172:2 174:10 176:17 180:10 180:10 203:10**
**agenda(10) 15:20 17:5 53:12 54:3 54:11 70:8 74:19 128:9 197:18 200:19**
**aggregate(1) 174:19**
**ago(4) 112:1 141:11 174:8 190:9**
**agree(12) 81:16 89:1 96:12 98:14 129:22 135:20 150:9 150:14 187:10 203:8 203:9 212:21**
**agreeable(1) 54:11**
**agreed(7) 20:22 20:23 21:8 21:9 39:2 79:20 143:18**
**agreeing(2) 48:15 48:25**
**agreement(16) 11:35 20:17 40:2 78:14 78:16 97:6 97:18 98:11 142:9 177:12 186:22 194:10 195:2 197:14 200:7 202:19**
**agreements(13) 93:18 94:21 94:21 117:12 117:13 117:16 117:21 118:15 118:16 118:19 118:25 119:11 179:24**
**agudelo(1) 10:37**
**ahead(7) 16:16 21:1 64:5 68:6 68:8 79:17 167:5**
**aided(1) 173:10**
**aim(1) 155:9**
**aisle(1) 173:24**
**akin(7) 5:10 9:39 47:10 93:7 113:6 138:10 163:15**

**all(172) 14:4 14:7 14:17 15:3 17:11 18:14 20:7 21:12 21:20 30:6 31:21 34:19 34:22 35:1 35:17 36:20 37:8 37:9 39:5 39:24 41:6 43:15 43:16 43:23 44:14 45:9 45:9 45:11 46:6 47:4 48:17 49:5 50:12 53:3 53:6 56:22 58:2 60:4 65:20 68:12 69:8 69:12 73:7 74:10 80:11 80:13 82:10 84:6 84:10 84:22 86:3 86:3 86:15 87:14 87:18 89:22 93:14 95:11 96:12 96:13 97:10 97:11 97:24 98:1 100:2 106:8 106:17 108:22 111:8 111:9 113:8 113:11 113:25 114:23 116:6 117:4 117:23 119:10 119:20 120:19 122:8 123:18 125:17 125:24 126:7 127:17 127:21 127:22 128:23 130:14 131:2 131:12 134:21 135:21 136:8 137:10 139:25 141:5 141:7 142:9 144:22 147:9 148:5 148:23 149:7 149:9 149:14 149:23 151:10 152:22 153:23 156:8 156:21 156:25 157:3 157:5 162:14 165:15 165:18 166:3 168:2 168:9 168:21 169:9 169:9 169:11 169:14 170:22 171:24 172:3 172:12 173:9 173:10 174:6 174:13 176:2 180:21 181:3 181:4 181:7 181:11 181:18 182:15 183:2 185:24 188:3 192:22 193:2 193:25 194:2 195:6 196:15 199:24 200:2 200:3 200:9 200:10 201:23 202:2 202:11 204:12 204:16 204:18 206:18 207:3 209:23 209:25 211:20 212:23 212:23 212:24**
**allegation(1) 207:18**
**allegations(2) 72:24 73:1**
**alleged(3) 19:14 42:11 54:14**
**allegedly(3) 121:1 122:17 123:6**
**alleges(2) 173:7 180:16**
**allen(1) 6:40**
**allinson(1) 3:35**
**allocated(4) 29:14 30:8 30:12 85:18**
**allocating(2) 30:3 176:22**
**allocation(1) 165:23**
**allow(14) 21:11 34:20 66:8 69:21 77:7 78:6 78:15 154:17 156:21 156:21 165:16 175:10 201:4 211:11**
**allowance(3) 19:14 77:18 175:8**
**allowed(14) 21:13 35:22 46:12 62:17 73:25 83:8 83:10 96:5 109:11 109:20 111:13 174:25 175:7 176:7**
**allowing(2) 46:24 111:20**
**allows(3) 29:17 31:15 73:1**
**allude(1) 80:18**
**along(3) 74:10 177:15 207:3**
**alongside(1) 120:22**
**already(14) 57:4 60:12 61:3 94:12 102:21 104:13 120:18 125:8 130:14 132:24 133:7 138:2 153:11 154:19**
**also(68) 19:20 23:2 24:4 24:8 24:16 26:19 27:13 27:20 28:3 28:7 28:19 32:9 33:18 36:5 37:2 37:5 38:20 39:22 40:3 40:15 41:7 41:9 43:1 44:9 44:12 44:23 47:23 53:15 53:19 53:25 54:7 56:16 69:20 80:18 95:9 96:1 106:22 112:8 114:20 117:8 118:6 123:11 124:22 125:3 129:20 134:7 136:3 141:10 144:15 144:24 145:20 145:25 149:24 150:2 155:16 163:15 168:5 173:14 173:22 178:20 181:19 186:13 199:10 199:12 202:13 202:14 211:18 212:1**
**alternative(4) 11:4 11:5 26:18 43:5**
**although(10) 18:7 19:8 35:7 35:13 100:16 135:3 146:2 189:4 210:22 211:7**
**alvarez(1) 12:19**
**always(2) 14:20 164:18**
**ambiguity(1) 33:44**
**ambit(1) 88:25**
**amend(2) 178:13 178:14**

A505

| Word | Page:Line | Word | Page:Line | Word | Page:Line | Word | Page:Line |
|---|---|---|---|---|---|---|---|
| **amended**(9) 30:22 32:11 56:15 56:17 98:10 147:20 149:8 152:8 155:11 | | **and**(301) 70:22 71:2 71:8 71:11 71:19 71:20 72:2 72:8 72:11 72:13 72:21 72:25 73:1 73:5 73:9 73:14 73:16 73:19 73:20 73:21 73:24 74:1 74:12 74:18 74:21 75:7 75:21 76:4 76:4 76:8 76:9 76:17 76:23 76:24 77:1 77:4 77:8 77:17 77:18 77:23 78:4 78:5 78:11 78:24 78:25 78:25 79:7 79:12 79:12 79:23 80:2 80:4 80:9 80:9 80:11 80:12 80:23 80:25 81:12 81:12 81:23 81:25 82:5 82:13 82:14 82:23 83:2 83:3 83:5 83:7 83:8 83:9 83:11 83:15 83:16 83:20 84:6 84:7 84:11 84:14 85:1 85:3 85:22 85:24 86:2 86:3 86:18 86:20 86:21 86:21 86:21 86:22 86:22 86:23 86:24 87:3 87:6 87:7 87:9 87:11 87:14 87:17 88:2 88:3 88:5 88:10 88:11 88:15 88:18 88:19 89:3 89:6 89:9 89:19 89:20 90:1 90:3 90:9 90:20 90:22 90:25 91:10 91:14 91:19 91:22 91:24 91:24 92:2 92:4 92:7 92:8 92:12 92:15 92:18 92:22 93:7 93:11 93:12 93:12 93:16 93:21 93:21 93:24 94:1 94:4 94:8 94:9 94:10 94:12 94:13 94:19 94:24 95:10 96:2 96:3 96:7 96:13 97:10 97:11 97:18 98:8 98:18 99:2 99:4 99:6 99:9 99:9 99:11 100:8 100:15 100:16 100:19 100:25 101:18 101:21 102:2 102:5 102:11 102:19 102:22 102:25 103:14 104:15 104:19 104:22 104:24 105:3 105:4 105:6 105:7 105:22 106:9 106:9 106:12 106:14 106:17 106:20 106:21 106:22 107:3 107:5 107:13 107:16 107:19 108:8 108:9 108:16 108:20 109:2 109:9 109:12 109:17 109:19 109:21 110:3 110:16 110:21 111:3 111:5 111:6 111:11 111:13 111:16 111:24 112:6 112:6 112:7 112:8 112:14 112:14 112:17 112:20 113:3 113:6 113:13 113:19 113:25 114:1 114:1 114:11 114:19 114:20 114:24 114:25 115:8 115:10 115:15 115:20 115:25 116:5 116:9 116:12 116:16 116:19 116:21 116:25 117:4 117:4 117:7 117:8 117:10 117:17 117:18 117:21 117:23 118:5 118:6 118:10 118:17 119:3 119:5 119:11 119:13 119:18 119:20 120:6 120:7 120:13 120:14 120:22 120:25 121:1 121:2 121:4 121:6 121:6 122:3 122:11 122:14 122:15 122:18 122:21 123:1 | | **and**(301) 123:4 123:5 123:7 123:14 123:18 123:20 123:24 124:17 124:23 124:25 125:9 125:14 125:18 125:19 125:20 125:2 126:6 126:7 126:8 126:14 126:19 126:21 126:23 127:3 127:9 127:14 127:18 127:18 127:22 127:24 128:3 128:8 128:9 128:9 128:18 128:19 128:19 129:5 129:12 129:15 129:18 129:20 129:20 129:22 129:24 130:1 130:2 130:3 130:15 130:16 130:24 131:18 131:22 131:23 131:24 132:2 132:1 132:12 132:12 132:14 132:15 132:16 132:17 132:19 132:22 133:2 133:2 133:4 133:12 133:17 133:22 133:25 134:4 134:6 134:8 134:9 134:20 134:25 135:2 135:4 135:8 135:11 135:14 135:18 136:6 136:6 136:7 136:9 136:11 136:14 136:15 136:16 136:18 137:4 137:11 137:12 137:15 137:19 137:21 137:23 137:24 138:6 138:11 138:22 139:1 139:24 140:3 140:3 140:3 140:6 140:20 140:21 140:25 141:4 141:5 141:5 141:8 141:13 141:16 141:24 142:4 142:14 142:18 142:19 142:25 143:3 143:9 143:18 143:20 143:21 143:21 143:23 144:2 144:7 144:10 144:15 144:21 145:6 145:7 145:12 145:13 145:15 145:19 145:22 145:25 146:5 146:7 146:8 146:17 146:18 146:21 147:19 147:20 147:23 148:13 148:18 148:21 148:23 148:25 149:1 149:12 149:16 150:2 150:3 150:7 150:19 151:5 151:7 151:18 151:18 151:21 151:24 152:1 152:17 152:23 153:9 153:12 153:12 153:23 154:1 154:4 154:5 154:9 154:13 154:16 154:21 155:2 155:6 155:7 155:8 155:8 155:9 155:14 155:17 155:23 156:7 156:20 157:10 157:16 157:23 158:8 158:12 158:14 158:16 158:18 158:18 158:20 159:4 159:6 159:10 159:13 159:18 159:19 159:21 160:1 160:7 160:10 160:10 160:11 160:17 160:18 160:23 161:3 161:15 161:15 161:23 161:25 162:7 162:7 162:11 162:12 162:14 162:14 162:17 162:19 162:21 163:6 163:13 163:16 163:16 163:17 163:20 163:23 163:24 164:2 164:4 164:5 164:10 164:15 164:16 164:24 164:25 165:3 165:15 165:20 166:1 166:4 166:5 166:14 166:24 167:3 167:4 167:10 167:14 167:18 167:19 167:22 168:1 168:1 168:5 168:8 168:24 169:4 169:8 169:12 169:14 169:15 169:15 169:19 170:1 170:2 170:4 170:5 170:15 170:16 171:5 171:9 171:10 171:12 171:14 171:17 171:18 171:19 171:23 172:7 172:8 172:11 | | **and**(249) 172:13 172:17 172:18 172:22 173:6 173:9 173:10 173:10 173:11 173:13 173:14 173:17 173:18 173:21 173:22 174:5 174:12 174:13 174:17 174:18 174:23 174:23 174:25 175:4 175:7 175:14 175:21 176:5 176:8 176:10 176:12 176:17 176:18 176:20 177:6 177:14 177:18 178:9 178:13 178:17 178:18 178:19 179:5 179:11 179:14 179:18 179:19 179:19 179:19 179:22 179:24 179:25 180:4 180:11 180:12 180:14 180:20 181:1 181:7 181:8 181:16 182:1 182:2 182:6 182:25 183:2 183:11 183:12 183:15 183:23 184:8 184:17 184:22 184:25 185:4 185:5 185:6 185:10 185:18 185:25 186:9 186:13 186:18 186:23 187:14 187:17 188:5 188:6 188:10 188:13 188:21 188:23 189:11 189:15 189:17 189:19 190:9 190:13 190:15 190:20 190:23 190:25 191:10 191:12 191:20 192:2 192:4 192:7 192:10 192:12 192:14 192:17 192:22 192:24 193:2 193:3 193:8 193:10 193:10 193:11 193:16 193:16 193:17 193:19 193:20 193:23 194:4 194:6 194:15 194:23 195:2 195:4 195:13 196:3 196:6 196:8 196:16 196:22 196:23 196:25 197:1 197:4 197:13 197:15 197:17 197:19 198:8 198:13 198:16 198:21 198:22 199:5 199:5 199:9 199:10 199:11 199:11 199:14 199:21 200:2 200:3 200:10 200:16 200:17 200:20 200:21 200:25 201:2 201:4 201:7 201:9 201:13 201:15 201:20 202:1 202:4 202:6 202:6 202:7 202:14 202:16 202:24 202:24 203:7 203:8 203:11 203:14 203:15 203:21 203:22 204:3 204:4 204:7 204:14 204:15 204:18 204:21 204:23 204:24 204:25 205:4 205:9 205:10 205:11 205:15 205:15 205:21 205:25 206:10 206:19 206:19 207:2 207:6 207:11 207:15 207:17 207:20 207:22 207:24 208:1 208:10 208:12 208:15 208:16 208:23 209:2 209:8 209:11 209:15 209:17 209:24 210:3 210:20 211:1 211:5 211:5 211:16 211:22 211:22 211:24 211:24 211:25 212:1 212:5 212:8 212:14 212:17 212:21 212:22 |
| **amending**(1) 110:25 | | | | | | | |
| **amendments**(3) 77:2 163:21 212:2 | | | | | | | |
| **amendment's**(1) 173:25 | | | | | | | |
| **america**(5) 7:38 7:42 40:5 40:12 41:5 | | | | | | | |
| **american**(1) 104:18 | | | | | | | |
| **americas**(1) 2:31 | | | | | | | |
| **amit**(1) 10:17 | | | | | | | |
| **among**(8) 37:15 40:12 63:16 102:19 144:3 145:8 173:12 199:9 | | | | | | | |
| **amount**(21) 15:11 16:21 21:7 21:13 78:17 85:24 123:3 124:2 133:23 137:12 138:4 143:16 165:12 174:19 175:7 188:1 189:16 189:18 194:21 194:24 195:1 | | | | | | | |
| **amounts**(2) 184:11 210:4 | | | | | | | |
| **amp'd**(1) 160:8 | | | | | | | |
| **amplified**(2) 196:25 199:10 | | | | | | | |
| **amplify**(2) 102:17 181:24 | | | | | | | |
| **amused**(1) 84:25 | | | | | | | |
| **amy**(1) 11:17 | | | | | | | |
| **analogies**(1) 86:20 | | | | | | | |
| **analysis**(10) 34:6 34:21 119:23 119:25 146:25 162:6 162:10 182:3 188:22 207:23 | | | | | | | |
| **analytically**(1) 136:8 | | | | | | | |
| **analyze**(3) 34:14 146:22 146:23 | | | | | | | |
| **and**(301) 14:9 14:11 14:16 15:1 15:10 15:23 16:17 16:25 17:4 17:15 17:22 17:23 18:8 18:9 18:12 19:9 20:11 20:18 20:20 21:7 22:7 22:13 22:20 23:3 23:5 23:13 23:22 24:2 24:7 25:4 25:6 25:8 25:9 25:11 25:11 25:21 26:7 26:13 26:22 27:2 27:9 27:11 27:21 27:25 28:3 28:20 29:6 29:10 30:21 30:25 31:11 31:12 31:14 31:19 32:1 32:24 33:2 33:19 34:2 34:4 34:5 34:7 34:10 34:14 34:17 35:6 35:13 35:13 35:18 36:2 36:4 36:7 36:16 36:19 37:5 37:10 37:19 37:20 37:23 38:1 38:5 38:10 38:13 38:24 38:25 39:4 39:6 39:10 39:18 39:19 39:24 39:24 40:5 40:11 40:3 40:15 40:17 40:17 40:18 40:19 40:21 40:21 40:23 40:24 41:1 41:3 41:5 41:8 41:12 41:14 41:18 41:20 41:21 42:3 42:4 42:6 42:7 42:8 42:13 42:16 42:22 43:2 43:10 43:14 43:15 43:17 43:18 43:21 43:23 44:4 44:5 44:9 44:14 44:14 44:15 44:20 44:21 44:25 45:3 45:6 45:7 45:8 45:11 45:14 45:15 45:15 45:23 46:2 46:5 46:7 46:8 46:17 46:23 47:2 47:6 47:10 48:8 48:11 48:25 49:10 49:14 49:20 49:22 50:10 50:14 50:24 50:24 51:3 51:6 51:16 51:20 51:25 51:25 52:2 52:6 52:9 52:12 52:13 52:14 52:15 52:17 52:20 53:9 53:13 53:14 53:18 53:19 53:20 53:21 54:2 54:10 54:10 54:15 54:24 54:5 55:15 55:15 55:16 55:23 56:2 56:5 56:6 56:14 56:16 56:19 56:25 57:2 57:7 57:13 57:20 58:1 58:9 58:14 58:21 59:2 59:3 59:7 59:8 59:13 59:15 59:18 59:22 60:1 60:2 60:3 60:10 60:12 60:14 60:21 60:22 60:24 61:3 61:12 61:13 61:15 61:16 61:18 61:19 62:1 62:2 62:3 62:8 62:13 62:20 62:21 62:24 63:4 63:5 63:8 63:10 63:13 63:14 63:15 63:16 63:19 63:21 63:23 64:6 64:10 64:11 64:15 64:16 64:20 64:21 65:17 65:17 66:1 66:2 66:2 66:15 66:16 66:20 66:24 67:4 67:5 67:6 67:13 67:15 67:16 67:17 67:18 67:24 68:9 68:13 68:21 68:24 69:1 69:3 69:4 69:8 69:12 69:16 69:18 69:23 69:23 70:5 70:10 70:10 70:21 | | | | | | | |
| | | | | | | **and/or**(2) 33:18 212:2 | |
| | | | | | | **anderson**(1) 2:20 | |
| | | | | | | **andrew**(8) 4:18 4:26 8:15 8:17 8:36 8:38 11:33 11:44 | |
| | | | | | | **angeles**(1) 2:17 | |
| | | | | | | **angelo**(5) 2:4 11:36 48:8 63:4 176:5 | |
| | | | | | | **animal**(1) 59:7 | |
| | | | | | | **animating**(1) 160:12 | |
| | | | | | | **anna**(2) 9:4 9:4 | |
| | | | | | | **anniversary**(1) 172:20 | |
| | | | | | | **announced**(1) 67:20 | |
| | | | | | | **another**(23) 32:3 50:4 76:14 88:2 88:3 99:18 99:21 100:25 111:17 126:3 129:8 148:16 149:4 149:6 152:17 153:13 164:14 175:13 194:10 196:3 200:1 202:13 203:19 | |
| | | | | | | **answer**(3) 109:10 174:12 201:16 | |
| | | | | | | **answered**(2) 17:4 205:10 | |
| | | | | | | **anthony**(1) 7:5 | |
| | | | | | | **anticipate**(2) 100:16 100:18 | |
| | | | | | | **anticipated**(1) 100:14 | |
| | | | | | | **anticipation**(1) 187:19 | |

A506

| Word | Page:Line | Word | Page:Line | Word | Page:Line | Word | Page:Line |
|---|---|---|---|---|---|---|---|
| **any**(153) 19:25  21:14  21:14  22:5  25:2 25:24  26:2  27:14  27:25  28:4  29:13  30:13 30:17  30:20  30:20  32:6  38:18  39:13  41:14 42:12  42:20  44:2  44:2  44:18  47:15  48:2 48:22  51:2  51:9  51:11  54:14  57:25  59:4 62:9  62:15  63:22  70:7  70:17  72:23  73:10 79:20  81:17  81:23  82:20  82:25  83:9  83:14 83:17  84:5  84:16  84:23  87:2  88:14  89:20 90:12  92:5  92:17  95:5  96:20  97:1  97:13 100:17  100:21  102:19  109:25  110:20 111:13  113:23  114:5  114:6  114:10  115:19 116:2  117:10  118:8  119:20  120:13  120:17 120:20  122:4  124:1  124:2  124:3  124:12 124:14  124:14  124:15  125:10  125:12 126:17  127:10  127:11  127:22  130:25 133:12  135:18  135:23  137:25  138:5  144:2 147:25  148:1  148:2  148:4  148:25  149:18 150:7  150:12  152:12  152:13  152:14  153:2 154:11  158:25  159:1  159:2  159:3  159:11 159:14  159:14  161:5  161:10  161:10  161:1 161:20  161:23  162:21  163:18  165:8 167:14  168:13  168:23  175:17  179:17 180:23  181:21  184:20  185:16  186:5  187:1 187:4  187:13  189:19  194:6  194:8  194:13 195:14  199:19  208:20  208:23  210:12 212:22  212:23 | | **apply**(23) 37:17  42:17  45:20  71:5  110:2 120:10  120:21  121:12  121:18  121:25  122:2 125:11  131:21  137:15  148:18  153:1  161:17 161:10  162:5  162:10  177:12  179:17  186:23 | | **are**(291) 15:5  17:17  18:24  20:20  22:4 22:23  23:23  24:1  24:22  24:23  27:22  30:2 30:10  31:7  31:23  34:3  34:5  35:6  35:13 35:18  35:20  35:25  36:2  36:3  36:12  36:15 36:16  36:25  37:7  39:9  39:10  40:10  40:10 41:25  44:7  45:5  45:9  47:17  47:19  47:20 48:1  48:14  50:11  50:11  50:14  50:24  50:24 51:7  52:14  52:15  53:16  53:20  54:25  55:1 55:14  58:25  59:11  59:20  60:8  61:16  62:10 63:10  63:12  65:16  65:20  65:20  65:21  66:1 66:13  67:23  68:7  68:8  68:14  69:4  69:10 70:19  70:25  71:17  71:21  72:10  72:24 72:24  74:15  74:18  75:15  75:22  76:8  76:9 80:8  80:4  80:23  81:7  81:18  82:1  82:5 83:4  83:10  83:22  84:4  84:4  84:9  86:25 87:4  87:22  89:13  90:10  91:7  91:24  92:5 92:11  92:16  93:18  93:21  94:7  94:9  94:17 94:18  95:11  95:13  95:14  95:19  96:6  96:10 96:13  96:15  96:16  96:18  96:19  96:23 97:11  98:13  98:15  98:21  100:14  100:19 101:22  101:23  102:4  103:7  103:24  110:18 111:8  112:24  113:15  113:19  114:2  114:14 115:3  115:19  115:19  116:19  117:4  117:7 117:8  118:6  118:9  118:9  118:11  118:19 118:20  118:20  118:25  119:2  119:6  119:24 120:23  121:10  122:2  122:3  122:12  122:12 122:13  123:23  123:24  124:17  124:17 124:18  124:22  125:4  125:9  125:19  125:22 127:7  127:11  127:19  128:23  130:11  133:17 133:24  134:19  134:22  135:1  137:7  137:11 138:4  139:19  142:16  142:24  142:25  144:2 144:9  144:10  145:5  145:17  145:24  146:11 146:20  146:24  148:6  150:7  152:10  152:24 153:18  153:19  153:23  154:3  154:6  155:2 157:19  158:18  159:24  160:1  160:10  162:2 164:3  164:15  165:13  165:19  166:14  169:4 169:7  169:10  169:11  170:8  170:12  170:17 170:22  170:23  170:24  171:15  174:21  175:2 175:8  176:21  177:4  177:14  177:22  178:15 179:13  179:14  179:15  179:20  179:22 179:23  180:4  180:8  180:20  180:24  183:2 183:5  183:14  184:16  184:19  185:18  186:9 186:22  188:14  188:14  188:15  189:8  190:1 190:11  191:25  192:18  192:23  192:25 193:6  193:24  195:5  195:6  195:7  203:4 204:22  207:2  209:9  210:16  210:16  210:21 210:23  212:22  212:23 | | **arguments**(41) 58:3  79:9  79:11  82:18  99:3 102:17  108:25  113:25  114:22  127:13 128:20  138:20  138:24  139:18  139:21 139:22  139:24  139:25  140:2  140:15  140:19 141:6  148:12  163:17  164:14  164:15 166:14  176:12  181:2  183:2  185:6  186:15 186:15  191:14  196:22  198:21  203:24  204:8 204:23  211:7  212:1 |
| | | **applying**(3) 110:25  123:20  124:7 | | | | | |
| | | **appoint**(2) 69:18  69:19 | | | | **arise**(7) 22:12  32:6  35:17  36:20  38:7  38:9 169:25 |
| **anybody**(10) 64:9  64:17  67:21  95:16 117:20  122:8  125:13  128:11  135:22  199:4 | | **appointment**(2) 27:12  62:19 **apportionate**(1) 137:16 | | | | | |
| | | **appreciate**(8) 74:11  163:13  176:6 | | | | **arises**(5) 22:20  33:25  34:1  40:25  183:19 **arising**(11) 22:25  25:8  26:22  37:15  38:3 46:6  46:7  104:25  116:20  169:20  203:3 |
| **anymore**(1) 29:22 | | **approach**(2) 14:10  166:25 | | | | | |
| **anyone**(12) 18:3  20:4  52:6  111:14  132:4 135:7  154:23  166:4  168:24  204:12  205:17 210:8 | | **appropriate**(19) 29:16  31:22  44:15  44:21 45:16  45:25  46:5  46:12  72:22  89:1  100:2 110:9  111:16  125:19  134:22  136:2  137:8 146:24  188:1 | | | | **armstrong**(6) 205:6  205:8  205:14  206:16 207:15  207:16 |
| **anyone's**(1) 191:13 | | | | | | **around**(9) 100:16  121:3  122:9  172:18 178:2  191:21  191:23  193:19  199:17 |
| **anything**(29) 15:2  21:2  38:5  40:6  40:8 44:15  44:21  47:19  47:20  57:9  74:13  81:22 83:23  89:10  89:12  97:17  101:1  111:10 111:11  115:23  120:23  126:22  133:12  134:3 172:12  194:12  203:22  210:25  211:14 | | **appropriately**(2) 28:12  164:7 **appropriateness**(1) 117:13 **approval**(5) 77:14  85:13  85:13  86:7  151:2 **approve**(3) 88:6  137:9  145:14 **approved**(9) 46:4  76:19  104:24  127:18 133:1  142:14  142:15  145:7  150:25 | | | | **arps**(1) 9:29 **arrangement**(1) 172:1 **array**(1) 117:22 **arthur**(1) 11:21 **article**(8) 19:15  25:8  167:3  167:3  167:17 168:2  207:17  207:18 |
| **anyway**(5) 33:22  138:2  175:23  202:10 210:11 | | **approves**(1) 73:19 **approvingly**(2) 145:12  145:15 **approximately**(3) 75:9  85:10  183:19 **april**(8) 1:14  14:1  79:21  158:15  199:16 199:16  203:21  213:10 | | | | **articles**(9) 59:19  59:21  60:3  60:7  60:9 60:15  60:22  101:25  160:19 |
| **apart**(1) 41:15 | | | | | | **articulate**(5) 17:11  17:21  19:1  33:5  77:21 179:10  180:6 |
| **apologize**(6) 16:9  50:19  89:20  128:10 196:2  202:4 | | **apt**(1) 106:3 **arbiter**(1) 70:2 **architect**(1) 64:12 **architecture**(4) 164:22  167:19  170:21 | | | | | |
| **apparent**(3) 48:12  117:16  163:23 **apparently**(4) 125:9  135:13  141:6  178:24 **appeal**(4) 19:18  21:14  145:20  208:7 **appeals**(2) 38:21  39:2 **appear**(2) 92:17  141:7 **appearances**(7) 7:31  8:1  9:1  10:1  11:1 12:2  13:1 | | | | | | **articulates**(1) 19:10 **articulating**(1) 18:9 **articulation**(1) 19:24 **ashby**(1) 5:18 **ashley**(1) 4:19 **ask**(30) 16:4  17:10  18:17  18:23  18:25 19:23  20:1  33:1  62:1  65:2  72:8  75:1 77:20  79:8  100:7  101:12  120:1  129:13 134:15  166:18  168:14  172:6  175:19  193:22 195:25  197:25  205:15  207:9  210:25 211:23 |
| **appearing**(3) 20:14  54:7  131:16 **appears**(1) 136:5 **appellate**(1) 208:7 **appended**(1) 178:18 **appetite**(1) 74:24 **applicable**(13) 14:25  23:23  28:10  41:12 41:12  87:13  89:4  93:21  93:23  115:11 161:19  170:15  173:14 | | **aren't**(1) 136:8 **aren't**(2) 192:24  193:1 **arguably**(2) 23:24  107:14 **argue**(10) 28:9  68:2  134:14  141:7  169:7 182:23  183:13  196:9  198:17  201:20 | | | | **asked**(8) 15:16  56:6  87:5  89:6  90:13 135:12  198:5  210:18 **asking**(3) 50:12  69:8  197:14 **aspect**(1) 84:25 **aspects**(1) 74:14 **aspersions**(1) 67:16 **assert**(13) 35:15  35:18  37:11  68:22  81:18 103:13  106:1  148:1  153:14  154:4  164:13 170:6  180:18 |
| | | **argued**(19) 24:2  28:25  40:14  41:11  99:9 103:16  103:20  105:5  106:20  112:1  134:18 177:1  177:4  191:8  196:5  196:7  198:3 199:10  199:11 | | | | **assertable**(1) 170:14 |
| **application**(7) 134:23  139:3  157:12  157:17 178:11  205:23  206:12 | | **arguing**(9) 39:3  65:25  66:3  115:1  135:16 152:24  153:4  154:13  154:14 | | | | **asserted**(18) 35:12  38:17  38:18  39:18 40:16  54:25  56:16  59:1  81:6  94:10  143:17 153:22  154:21  168:12  168:12  168:13  175:3 180:23 |
| **applications**(1) 158:3 **applied**(14) 28:11  28:12  29:11  36:25  38:16 45:4  71:2  118:10  122:25  124:17  125:15 133:24  135:13  138:4 | | **argument**(75) 39:9  41:13  42:25  46:16 50:15  60:18  64:16  89:11  90:21  96:2  98:5 99:3  102:13  105:3  105:15  106:16  111:22 115:12  126:13  128:2  132:6  135:1  140:5 140:5  141:3  145:22  156:6  156:7  175:21 176:8  176:9  176:10  176:13  176:20  177:2 177:5  177:7  179:2  179:8  180:6  180:8 181:16  181:18  185:15  190:8  190:16  191:8 192:15  194:22  195:22  196:4  196:11  196:1 196:20  196:20  196:23  197:2  197:7  197:10 197:11  197:16  197:17  197:23  198:16 198:23  199:3  200:5  200:6  200:21  200:22 201:12  201:12  204:24  210:11  211:22 | | | | **asserting**(8) 40:15  124:13  142:11  153:1 154:23  155:5  161:4  170:12 |
| | | | | | | **assertively**(1) 192:19 **asserts**(4) 37:1  37:2  48:23  180:16 **assess**(1) 136:3 **asset**(3) 13:23  13:24  36:22 **assets**(14) 53:14  90:8  94:19  94:24  106:8 167:8  167:14  169:1  169:7  170:8  179:18 179:22  179:23  180:4 |
| **applies**(8) 41:13  44:24  45:4  45:15  46:15 108:18  159:9  171:2 | | **argument's**(1) 46:18 | | | | **assign**(3) 103:17  110:15  111:22 **assigned**(5) 103:3  110:8  110:18  110:20 127:2 |
| | | | | | | **assigning**(1) 103:17 |

| Word | Page:Line | Word | Page:Line | Word | Page:Line | Word | Page:Line |
|---|---|---|---|---|---|---|---|
| assignment(2) 111:21 167:9 | | balance(1) 36:25 | | basis(30) 19:22 19:25 29:5 30:18 30:20 43:4 43:6 43:7 54:25 58:20 59:9 61:6 63:1 64:4 64:24 65:22 65:23 67:10 77:7 77:16 78:12 78:25 79:21 80:1 136:24 137:25 159:24 160:17 204:2 206:25 | | being(62) 21:25 23:13 29:14 30:8 30:10 30:12 31:25 38:15 43:25 46:20 48:17 50:14 51:24 53:13 54:25 61:12 67:22 68:18 68:19 69:6 76:8 87:21 87:22 89:17 90:13 90:15 90:21 93:17 103:3 110:7 114:4 115:9 115:9 115:13 118:5 118:13 118:18 118:20 118:23 119:6 120:1 120:2 120:14 123:1 124:10 125:19 135:23 143:11 145:5 154:3 154:7 165:9 170:10 179:14 182:5 182:11 199:13 199:25 200:1 202:15 204:1 209:5 | |
| assisted(1) 23:3 | | balancing(1) 212:19 | | | | | |
| associate(1) 67:2 | | baldwin(2) 60:9 92:7 | | | | | |
| associated(3) 41:21 51:2 80:23 | | bale(1) 7:35 | | | | | |
| assume(4) 81:15 115:11 197:8 212:1 | | banc(18) 4:32 11:24 22:14 22:22 27:3 27:11 27:14 27:16 27:21 27:25 28:1 49:6 49:21 50:2 50:12 51:3 51:15 51:20 | | bay(1) 206:23 | | | |
| assumed(6) 26:6 91:25 92:6 197:15 197:16 197:24 | | | | bear(1) 7:7 | | | |
| | | banc's(1) 50:4 | | bearing(2) 158:19 158:19 | | belabor(2) 171:21 185:7 | |
| assuming(4) 95:10 119:23 176:20 212:15 | | bank(9) 7:38 7:42 10:8 10:12 13:41 71:11 183:25 185:9 203:22 | | beaten(2) 90:17 202:12 | | belief(2) 25:2 26:5 | |
| assured(1) 142:25 | | | | because(107) 15:18 23:10 23:14 24:3 25:15 27:7 27:12 29:2 32:4 32:23 34:10 34:11 36:3 37:18 43:13 43:20 43:25 46:19 50:3 51:1 54:6 56:10 61:20 61:21 64:4 67:22 68:19 71:5 72:9 72:24 75:14 77:10 78:22 82:1 82:20 83:18 83:19 87:4 87:14 88:6 88:10 88:23 90:23 91:12 91:20 92:14 94:5 94:6 94:15 95:2 96:18 97:6 97:17 98:25 101:23 104:3 109:14 110:16 111:19 111:23 112:23 113:7 116:16 126:9 127:23 133:3 133:8 133:16 134:18 134:23 138:15 138:20 141:17 142:1 145:9 146:9 155:14 156:6 156:9 156:20 167:7 168:15 169:18 175:7 176:6 179:9 182:10 183:10 183:22 183:15 188:3 189:12 190:17 191:2 192:25 193:5 194:25 195:11 195:16 198:7 198:11 203:11 205:5 207:25 208:6 210:20 212:7 | | believe(54) 23:22 28:13 40:11 44:18 54:21 68:16 68:17 69:19 69:20 70:5 71:23 72:2 72:19 72:24 73:7 77:2 79:16 81:21 82:5 82:20 82:24 92:13 93:13 93:17 93:20 95:11 97:24 98:6 98:23 100:13 102:6 104:5 130:22 155:8 161:17 165:20 171:24 178:17 181:1 184:10 193:11 198:12 202:14 204:25 205:25 209:4 209:7 | |
| assuredly(1) 171:9 | | bank's(1) 133:22 | | | | | |
| asylum(1) 3:31 | | banker(1) 144:18 | | | | | |
| atamian(1) 10:19 | | bankruptcy(74) 1:1 1:19 22:8 24:9 24:13 25:9 30:19 32:10 33:2 33:4 45:3 63:18 77:7 77:22 81:3 87:17 101:9 103:12 103:15 106:5 106:7 107:2 107:15 107:16 107:18 107:18 108:13 108:16 108:18 109:7 109:12 109:13 109:19 109:20 111:5 111:5 112:17 112:21 126:3 126:20 136:13 141:16 144:15 144:18 145:21 149:8 149:13 150:12 151:1 151:6 151:8 151:11 160:5 160:9 161:20 167:9 167:23 167:24 168:4 168:12 170:15 171:6 174:16 174:23 175:13 179:12 179:22 180:3 180:17 183:23 184:2 187:2 188:20 192:6 | | | | | |
| attach(1) 63:21 | | | | | | | |
| attached(1) 118:14 | | | | | | | |
| attack(1) 111:24 | | | | | | | |
| attacked(1) 181:6 | | | | | | believes(4) 15:13 46:10 80:24 81:25 | |
| attacks(2) 67:16 94:4 | | | | | | belong(6) 170:4 170:5 170:12 170:13 170:15 180:17 | |
| attempt(7) 28:9 41:1 81:2 84:11 94:12 107:4 209:3 | | | | | | | |
| | | | | become(6) 19:19 34:14 62:11 199:24 205:25 206:2 | | | |
| attempted(5) 55:4 109:2 110:7 124:19 124:20 | | | | | | belongs(1) 193:3 | |
| | | | | becomes(4) 28:5 64:10 111:25 119:25 | | below(1) 145:21 | |
| attendant(1) 121:6 | | banks(14) 133:19 134:7 134:8 134:14 134:18 134:19 137:11 164:10 165:21 166: 169:10 171:19 172:17 173:9 | | becoming(3) 21:16 25:15 204:3 | | ben(1) 10:23 | |
| attention(3) 85:5 86:25 158:13 | | | | been(103) 14:9 14:16 14:16 14:19 14:23 15:7 15:13 16:4 16:16 17:4 19:8 19:13 19:18 20:17 25:7 27:5 31:17 35:8 38:20 47:24 50:22 50:22 51:1 55:4 59:1 59:5 59:10 60:14 62:22 67:3 69:7 76:16 81:6 85:4 87:5 87:8 87:16 90:21 90:23 91:21 91:21 91:22 92:18 95:16 98:5 100:12 112:1 112:23 113:9 114:22 116:6 117:14 119:11 119:17 122:8 122:8 127:2 128:9 129:19 130:5 130:6 130:9 132:15 135:6 136:9 140:2 140:15 140:19 141:18 146:15 147:21 148:12 149:15 152:8 153:9 153:17 156:2 156:3 156:9 158:7 161:15 169:17 169:22 172:18 172:25 174:12 179:1 179:12 180:6 181:6 181:21 187:20 190:21 198:17 200:4 201:10 201:13 204:14 205:10 205:22 210:23 210:24 211:6 | | bench(3) 89:5 104:2 211:13 | |
| attorneys(1) 82:15 | | | | | | beneficiaries(2) 130:21 193:1 | |
| attribution(1) 86:5 | | | | | | beneficiary(1) 95:5 | |
| audible(2) 18:4 20:6 | | | | | | beneficiary's(1) 95:6 | |
| augmented(1) 167:24 | | | | | | benefit(13) 78:10 78:11 83:12 91:22 121:15 130:11 143:16 167:9 192:20 192:23 193:7 195:8 195:17 | |
| august(1) 62:22 | | | | | | | |
| aurelius(32) 5:10 9:34 9:35 47:10 53:21 62:14 63:19 63:19 63:24 64:2 64:9 66:1 66:19 66:21 67:18 68:25 69:5 85:1 93:2 93:7 94:4 94:6 94:13 95:9 95:12 95:15 95:16 95:18 95:25 110:12 113:6 138:11 | | | | | | | |
| | | bar(117) 17:19 54:4 116:12 116:17 117:9 117:17 117:18 117:24 118:2 119:21 120:1 121:5 121:8 121:8 121:15 122:3 123:15 123:21 125:22 126:2 126:5 126:9 127:17 127:23 129:22 130:6 130:15 130:21 131:1 135:3 135:9 136:18 136:21 138:13 138:13 138:16 138:19 138:25 139:3 140:1 140:16 140:16 140:20 140:21 140:23 140:23 140:25 141:4 141:7 141:15 141:19 142:10 142:12 142:14 142:15 142:16 143:8 143:9 143:25 144:10 144:22 145:3 145:7 145:8 145:19 146:16 146:20 146:22 147:17 147:20 147:24 148:15 148:18 148:20 148:23 148:24 148:25 149:1 149:8 149:10 149:11 149:15 149:19 149:22 149:24 150:7 151:20 152:4 152:5 152:8 152:11 152:12 152:20 153:1 153:10 155:9 155:12 155:18 157:9 157:18 158:8 159:19 159:20 160:25 161:2 161:9 161:16 162:3 165:4 171:17 171:21 172:6 181:3 181:15 181:19 186:8 | | before(42) 1:18 15:20 24:19 30:24 32:10 57:13 58:21 66:17 68:10 68:12 71:15 71:25 72:15 72:25 73:25 75:21 98:23 99:12 101:1 101:6 101:20 105:13 106:20 110:11 140:8 142:22 155:24 162:9 163:7 167:11 172:25 175:13 179:2 179:10 180:6 182:5 184:4 184:5 186:3 197:5 197:9 207:4 211:3 | | benefits(3) 26:17 107:12 126:25 | |
| | | | | | | benesch(1) 184:25 | |
| austin(4) 1:23 9:7 19:5 157:22 | | | | | | bennett(3) 197:2 197:6 197:13 | |
| authorities(1) 115:4 | | | | | | benson(1) 12:29 | |
| authority(5) 58:16 136:10 154:4 154:5 179:25 | | | | | | besides(1) 170:21 | |
| | | | | | | best(24) 32:2 55:14 55:17 63:12 64:25 67:24 68:12 69:2 69:11 70:14 71:1 71:21 73:23 88:20 93:9 100:24 144:5 165:17 171:8 177:23 179:2 191:17 194:16 208:18 | |
| automatically(1) 133:11 | | | | | | | |
| available(6) 75:22 107:14 150:1 202:20 212:12 212:16 | | | | began(1) 114:21 | | | |
| | | | | begged(1) 175:10 | | bestowed(1) 168:1 | |
| ave(4) 1:35 2:16 5:27 6:21 | | | | begin(3) 75:21 137:1 142:1 | | beta(1) 39:1 | |
| avenue(8) 2:31 2:38 3:16 4:34 4:40 5:20 5:33 6:6 | | | | beginning(6) 20:16 41:13 54:13 80:12 87:19 180:13 | | better(7) 17:20 122:24 127:4 127:6 164:7 188:22 205:8 | |
| | | | | | | | |
| avoid(1) 55:13 | | | | behalf(39) 14:6 16:2 18:9 19:5 35:3 48:8 53:9 75:6 80:19 84:1 93:7 98:3 98:21 101:6 102:1 102:10 109:9 112:5 114:7 116:15 128:17 129:11 129:17 153:17 157:22 160:23 162:8 162:15 163:10 165:2 168:10 169:4 170:7 176:4 177:23 183:8 184:7 184:25 185:3 | | between(26) 20:17 22:7 22:19 26:13 33:2 64:2 66:2 82:23 83:16 107:16 117:7 119:18 132:11 132:14 151:17 157:9 161:11 161:22 172:1 184:14 186:16 196:22 203:21 206:3 208:14 211:25 | |
| avoidable(1) 203:4 | | | | | | | |
| avoidance(16) 113:18 114:9 139:22 149:7 151:22 152:5 152:10 153:2 154:20 160:13 162:7 169:25 179:21 180:2 180:3 182:7 | | barclays(6) 2:29 2:35 10:16 184:25 185:4 185:25 | | | | | |
| | | | | | | | |
| | | bargain(1) 130:12 | | | | | |
| avoiding(3) 125:13 132:19 132:19 | | bargained(2) 188:19 189:10 | | | | beyond(14) 79:10 91:7 123:5 130:13 130:16 133:17 134:11 136:23 137:7 171:1 171:4 197:2 204:1 212:13 | |
| avoids(1) 43:14 | | bargaining(1) 77:24 | | | | | |
| avowed(1) 82:5 | | barone(1) 116:6 | | | | | |
| aware(11) 22:9 25:19 26:10 26:21 27:17 27:20 28:5 29:16 103:5 107:6 199:15 | | barred(5) 124:1 142:10 143:11 147:20 147:25 | | behind(1) 207:24 | | bigelow(1) 12:8 | |
| | | | | | | biggest(1) 71:11 | |
| away(16) 48:18 56:7 56:11 84:20 84:20 85:3 96:16 115:20 126:24 171:9 174:4 175:6 180:22 188:19 189:11 209:9 | | bars(4) 145:14 146:1 146:8 146:13 | | | | billion(7) 85:9 85:17 134:5 174:18 174:20 174:25 175:3 | |
| | | based(35) 16:21 22:15 36:11 37:8 37:9 37:12 38:17 38:18 38:18 39:18 40:17 41:13 41:17 41:21 44:10 46:1 47:21 47:24 48:9 65:7 65:14 65:16 65:21 66:13 79:24 91:16 104:7 160:16 186:18 187:2 197:23 198:22 199:22 200:3 | | | | | |
| | | | | | | billions(2) 66:25 108:3 | |
| awful(2) 83:19 174:9 | | | | | | building(1) 208:17 | |
| b1a(1) 54:1 | | | | | | bit(8) 88:17 100:12 102:6 102:17 140:22 165:4 204:19 209:3 | |
| b2a(1) 54:10 | | | | | | | |
| back(21) 16:9 16:20 17:5 56:14 71:14 89:11 102:5 103:17 111:12 111:13 122:2 126:8 161:8 169:22 174:8 180:10 184:8 190:1 198:20 202:10 203:23 | | basic(1) 174:15 | | | | bite(1) 84:11 | |
| | | basically(15) 23:1 46:6 77:6 87:11 90:5 98:8 105:18 158:17 191:11 191:24 198:9 199:13 202:11 202:16 203:25 | | | | bizarre(2) 134:1 134:15 | |
| | | | | | | blabey(1) 39:1 | |
| background(1) 117:11 | | | | | | black(3) 55:22 69:13 80:19 | |
| bad(1) 137:17 | | | | | | black's(3) 72:11 80:21 80:22 | |
| baiera(1) 11:37 | | | | | | blake(3) 2:6 7:11 128:16 | |
| bailey(1) 150:23 | | | | | | | |
| bait(3) 196:3 200:16 201:6 | | | | | | | |

**TRIBUNE.4.13.11.DOC**

| Word | Page:Line |
|------|-----------|

blanket(1) 34:18
block(4) 6:31 11:32 53:9 79:6
bloomberg(1) 101:7
blow(1) 181:15
board(9) 9:28 66:2 76:24 78:20 91:6 94:15 95:4 95:17 95:19
boards(1) 94:22
bockius(1) 13:41
body(1) 109:18
bohan(4) 6:26 129:12 129:16 131:2
boil(1) 58:10
boilerplate(1) 135:24
bold(1) 84:16
bond(3) 187:1 194:12 195:3
bondholders(4) 86:2 206:10 209:5 209:21
bonds(1) 194:1
books(4) 174:18 175:4 188:13 188:15
borrowed(3) 194:3 194:9 194:21
borrows(1) 111:24
both(24) 14:14 15:8 15:12 15:12 19:9 35:6 35:10 35:12 35:24 40:5 52:25 54:23 61:15 83:18 102:3 102:5 102:21 103:2 111:7 136:14 145:24 201:15 204:17 211:5
bottle(1) 163:2
bottom(2) 86:24 154:3
bought(3) 172:14 199:18 199:18
bove(1) 7:24
bowden(1) 5:19
bradford(46) 6:32 53:8 53:9 54:20 54:23 55:24 56:1 56:23 57:18 58:4 58:6 65:3 65:12 65:25 66:6 66:7 66:10 66:15 68:5 69:19 70:4 72:19 73:7 74:7 74:11 74:14 75:1 75:4 79:9 79:19 80:1 80:18 81:25 86:13 87:8 87:15 91:13 92:8 92:9 93:12 94:5 95:9 95:21 101:5 101:5 101:17
brady(1) 2:7
brain(1) 193:5
brand-new(1) 176:10
brandywine(1) 2:8
branzburg(2) 5:38 16:1
breach(3) 34:17 60:20 186:22
breaches(1) 24:18
break(7) 15:1 53:1 53:4 100:3 101:1 175:24 176:6
breath(2) 31:1 156:15
brett(1) 9:13
brian(1) 12:22
bride(1) 77:6
bridge(14) 54:2 62:2 74:17 76:23 76:25 77:7 84:24 85:2 85:7 85:20 85:20 85:23 86:9 96:13
brief(32) 39:16 49:22 50:18 76:2 76:17 108:24 113:7 135:5 145:17 158:17 170:3 175:21 176:10 177:6 178:20 179:25 180:1 181:8 181:11 181:14 181:19 182:20 183:12 191:15 196:12 196:22 199:22 200:4 200:9 202:25 202:25
brief's(2) 158:9 159:24
brigade's(1) 196:6
bring(17) 67:8 89:11 104:11 104:17 104:20 106:17 110:12 117:1 123:2 126:8 130:7 130:23 153:5 154:8 159:1 190:1 209:20

bringing(12) 57:15 69:2 104:22 109:16 117:19 120:19 126:2 127:2 143:12 143:14 147:18 163:2
brings(3) 102:2 116:12 208:20
broad(3) 31:13 31:14 129:22
broadly(2) 24:3 38:16
brockius(1) 11:24
brook(1) 186:23
brought(16) 23:4 23:13 61:13 73:9 103:8 104:13 104:15 106:14 107:1 110:6 112:23 121:20 155:13 160:20 162:8 182:5
brown(5) 3:28 10:16 98:2 163:9 183:7
bryan(1) 1:25 35:2 50:17
bryant(1) 5:14
buckets(1) 127:3
building(3) 2:8 7:26 74:24
built(1) 86:21
burden(10) 52:2 52:4 112:14 116:18 121:19 123:13 123:16 123:19 125:23 137:20
burns(1) 11:6
bush(1) 8:14
business(2) 67:2 210:12
but(230) 15:16 15:19 17:25 18:11 18:15 22:5 22:19 23:25 24:3 24:14 24:19 25:18 25:24 27:8 29:4 30:1 30:4 30:16 30:21 30:25 31:7 32:9 32:22 33:14 34:18 35:10 35:20 37:7 38:14 42:4 43:4 43:12 45:19 46:14 46:23 48:23 49:12 49:15 50:10 51:16 51:24 54:7 54:18 55:6 55:22 56:8 57:15 58:11 60:5 60:24 62:4 64:19 65:16 66:3 66:11 66:16 67:7 67:18 68:7 68:18 70:12 70:21 71:4 71:17 71:24 74:9 76:14 77:2 77:6 77:15 78:8 78:21 80:13 82:6 83:19 84:7 85:15 87:9 89:17 91:6 95:13 95:24 96:9 97:20 98:19 98:25 99:8 99:17 104:12 105:14 106:2 106:9 106:20 107:11 107:20 109:25 111:1 112:22 113:11 114:15 115:24 117:15 121:25 122:12 126:15 126:20 127:8 128:10 128:11 129:13 130:6 130:15 130:17 132:2 134:11 134:22 136:21 137:7 137:22 138:1 138:15 138:25 139:1 139:8 140:24 141:6 141:10 142:9 144:12 144:14 148:24 149:7 149:14 149:24 150:21 151:10 151:24 152:23 153:10 153:19 154:3 154:14 155:2 155:18 155:24 156:3 156:18 157:18 158:1 158:17 159:7 163:3 164:9 164:16 165:5 165:14 165:23 166:2 166:10 166:14 166:22 167:8 168:25 169:2 169:9 169:13 169:18 170:8 170:12 170:20 171:22 171:24 172:2 172:24 174:19 175:12 177:2 178:5 181:6 181:8 182:12 182:25 183:2 184:2 184:12 185:13 185:19 186:5 187:11 189:1 189:6 190:10 191:24 193:4 193:13 193:18 196:3 196:17 197:11 197:11 197:23 198:9 198:18 198:25 202:5 202:13 202:22 204:18 204:20 205:8 205:13 205:20 206:2 206:13 207:12 207:21 208:2 208:11 209:4 209:23 210:6 210:24 211:10 211:19 212:1
butcher(1) 42:4
buy(1) 163:6
buyback(1) 25:21
buyout(3) 25:23 159:13 173:6
buys(1) 63:19
bylaws(2) 60:22 91:24
bynum(1) 12:14
calculate(1) 144:4
calculated(1) 194:23
calendar(1) 172:19
call(15) 74:15 109:24 109:24 147:6 147:8 147:11 147:14 148:11 150:3 152:10 172:8 172:11 183:14 200:17 211:7

called(7) 39:15 45:2 85:5 91:9 92:14 133:17 206:23
calling(2) 146:20 172:10
came(12) 39:18 40:19 45:1 63:16 70:6 76:24 97:18 97:19 99:10 99:12 107:10 192:16
campanaric(1) 9:31
can(81) 32:1 34:6 36:13 44:9 60:19 61:18 64:12 64:13 67:11 68:22 69:6 70:10 71:15 72:19 75:24 77:21 79:14 79:16 80:4 80:11 81:10 81:11 81:12 81:12 88:7 92:5 93:23 100:19 105:11 106:1 110:18 110:18 110:22 110:21 112:25 113:14 113:18 113:20 117:22 122:2 122:4 123:8 136:20 136:21 136:24 139:24 144:4 149:13 150:15 150:1 152:19 157:9 157:14 162:2 162:15 164:10 164:17 165:15 165:15 166:2 166:17 167:7 174:12 181:8 183:15 184:22 186:4 191:22 192:11 192:12 200:13 205:13 207:19 209: 210:1 211:8 211:15 212:4 212:6 212:15 212:21
can't(13) 29:11 46:18 59:24 59:25 110:17 124:14 126:22 127:18 131:24 133:5 133:8 156:23 205:17
cancel(2) 185:9 185:13
canceled(1) 184:1
cancellation(1) 160:13
candidly(1) 84:2
cannot(12) 64:24 108:16 116:19 121:21 124:10 127:24 130:12 131:23 154:15 157: 174:3 174:5
cantigny(3) 13:10 102:11 129:18
cantiguy(1) 6:19
canyon(2) 12:42 12:42
can't(11) 170:20 171:6 171:24 172:7 174:11 175:15 191:21 191:21 192:13 192:14 192:25
capacities(1) 153:22
capacity(18) 63:14 69:22 95:4 95:6 95:8 152:14 152:18 153:8 154:5 154:17 155:3 155:14 155:17 155:18 155:20 155:21 170: 182:7
capital(29) 2:36 5:30 6:10 7:33 7:33 8:24 8:25 9:34 9:35 11:5 11:5 12:37 12:38 13:14 13:14 13:18 13:19 13:32 13:33 16: 128:8 131:16 187:9 190:5 193:22 193:25 194:6 194:14 194:14
captain(1) 86:19
caption(1) 108:7
car(1) 136:15
care(4) 15:15 87:19 189:22 197:10
careful(1) 22:23
carefully(2) 77:21 185:6
carey(1) 1:18
carickhof(1) 6:34
caridas(1) 8:17
carlyle(1) 4:32
carol(1) 7:35
carries(1) 181:20
carroon(1) 2:20
carve(3) 93:22 95:2 152:24
carve-out(1) 195:12

case(124) 1:5 12:25 16:4 23:8 23:23 24:17 26:3 26:9 26:20 26:23 28:11 28:12 28:13 29:8 29:23 30:1 30:7 33:7 34:12 37:21 38:23 38:23 38:24 39:11 39:13 39:15 39:18 41:9 42:3 42:22 42:23 43:17 45:5 45:8 50:7 50:23 51:5 52:1 52:8 59:18 59:18 60:9 60:22 61:1 61:2 61:2 62:12 62:19 67:13 67:22 70:16 72:2 78:8 85:14 88:5 88:13 91:9 91:11 91:14 91:18 92:13 92:14 94:16 100:22 104:19 104:20 105:23 106:7 106:14 111:14 112:13 115:6 115:7 115:8 115:21 116:2 116:7 118:11 121:6 124:4 126:20 126:20 130:15 133:14 133:24 134:1 134:17 135:5 135:6 136:18 137:4 137:4 137:13 137:18 141:8 141:9 142:1 142:4 142:5 143:25 144:3 144:8 144:13 148:19 149:17 149:18 149:22 150:24 151:20 156:21 160:3 170:15 179:22 180:1 180:3 186:5 189:5 203:5 206:23 208:11 209:9 210:24 212:18
cases(45) 23:25 33:20 39:23 41:6 44:25 45: 45:11 46:6 46:7 47:23 59:17 59:17 60:7 90:25 92:8 92:16 105:24 111:6 113:23 120:19 122:9 135:4 137:3 141:7 141:14 141:21 142:2 142:17 143:4 143:7 145:17 145:17 146:11 146:13 160:1 160:18 160:18 186:19 186:23 186:24 206:20 207:2 207:3 208:13 209:10
cash(3) 30:10 169:6 183:21
cashman(2) 13:28 13:28
categories(1) 195:14
catherine(3) 75:5 109:9 128:1
cathy(2) 6:33 54:8
cause(8) 104:21 106:12 106:13 106:15 106:17 159:16 173:17 192:3
caused(1) 89:20
causes(38) 47:21 48:4 94:14 95:12 96:1 96:15 96:19 104:25 105:18 106:2 110:10 110:12 114:7 141:2 143:3 148:1 148:2 159:4 162:7 162:15 165:19 167:25 179:4 179:13 180:14 180:16 180:16 180:20 180:23 182:4 182:6 182:9 182:14 191:18 191:25 191:25 192:1 192:2
causing(1) 29:15
centerbridge(1) 63:4
cents(3) 36:15 192:10 199:21
certain(20) 7:16 48:3 59:1 78:5 78:16 105:5 112:5 113:24 116:15 128:18 129:20 166:12 180:10 183:11 183:12 183:20 183:21 184:1 184:7 212:3
certainly(17) 29:11 40:10 54:22 59:9 60:17 70:11 71:16 112:8 124:23 139:21 151:25 162:12 167:24 171:8 189:2 200:20 208:10
certainty(4) 108:10 130:2 130:8 188:20
certificates(2) 92:10 184:2
certification(1) 213:4
certifications(1) 104:4
certify(1) 213:5
cetera(3) 127:13 149:4 169:6
chadbourne(6) 4:12 8:5 79:5 82:13 114:19 204:14
chain(2) 37:23 64:6
chair(1) 122:8
chairman(1) 101:9
challenge(2) 140:23 140:24
challenged(3) 64:9 142:13 160:13
chance(3) 14:21 73:2 80:13
chances(1) 126:10
chandler(1) 12:8
chaney(1) 12:43
change(6) 46:12 46:17 63:18 70:20 109:5 206:22

A509

| Word | Page:Line | Word | Page:Line | Word | Page:Line | Word | Page:Line |
|------|-----------|------|-----------|------|-----------|------|-----------|

**changed**(2) 99:5 99:11
**changes**(8) 14:10 15:5 15:9 76:24 81:19 152:7 185:21 212:4

**chapter**(13) 1:8 31:25 32:16 32:24 46:6 46:7 90:2 167:25 169:25 170:4 170:11 176:16 177:25
**characteristic**(1) 194:19
**characterization**(2) 29:11 182:13
**characterize**(1) 194:17
**characterized**(1) 15:23
**charge**(1) 94:18
**chart**(9) 14:15 75:18 77:13 178:5 196:15 196:17 196:21 197:15 202:5

**charters**(1) 91:24
**chase**(3) 10:8 10:12 139:16
**chasing**(1) 68:3
**chatting**(1) 15:14
**chicago**(7) 1:29 6:7 6:28 6:36 6:42 7:13 7:21

**chief**(2) 64:10 67:2
**choice**(5) 26:15 99:11 172:4 173:1 201:19
**choose**(2) 29:18 117:1
**chose**(2) 111:2 172:3
**chosen**(2) 26:8 109:18
**chris**(2) 6:12 131:7
**christine**(1) 12:33
**chronicled**(1) 199:14
**chronology**(2) 199:14 199:15
**chung**(1) 7:43
**circle**(2) 91:6 203:15
**circles**(1) 86:18
**circuit**(41) 23:7 23:18 23:22 24:1 25:3 29:21 38:1 38:5 38:20 38:22 38:23 38:24 38:25 43:2 43:3 45:9 45:10 103:5 107:11 118:7 124:5 137:4 137:13 141:9 142:4 142:6 142:15 143:9 143:18 144:2 144:3 144:6 145:20 170:3 172:9 205:3 205:7 205:8 205:9 207:12 208:17

**circuit's**(4) 32:9 37:25 142:19 145:18
**circulated**(1) 14:7
**circumstance**(5) 60:10 72:6 96:21 109:11 110:1

**circumstances**(7) 58:14 60:5 72:10 87:1 150:20 153:3 183:21

**cite**(9) 42:3 60:7 104:18 106:9 107:5 111:7 135:3 135:5 137:3

**cited**(23) 39:16 42:23 59:16 61:1 70:23 90:25 92:9 105:24 137:14 145:12 160:18 170:3 179:25 180:1 182:18 185:11 186:19 186:23 186:24 190:20 198:8 199:6 203:24

**cites**(2) 207:17 209:2
**citibank**(2) 8:33 180:10
**citicorp**(4) 172:17 172:23 173:3 173:7
**citigroup**(1) 11:15

**claim**(132) 19:15 21:4 21:5 21:6 21:10 21:12 21:14 21:15 22:1 22:20 28:17 30:18 34:16 34:17 35:11 36:7 36:8 36:10 36:14 36:17 37:11 39:14 39:18 39:20 40:13 40:25 41:20 41:22 46:25 47:1 48:16 48:22 48:24 49:3 50:3 50:5 55:8 61:5 61:8 61:8 61:10 64:13 64:17 64:19 70:20 72:23 78:7 78:12 78:13 78:15 78:17 78:18 81:11 85:17 91:16 91:19 91:20 107:7 109:23 110:22 110:23 110:25 111:21 115:9 115:17 116:4 120:16 121:20 126:14 133:4 133:6 133:8 133:9 142:11 143:12 143:15 143:17 145:12 152:12 152:20 153:2 153:5 153:6 155:5 155:13 159:14 159:15 159:15 159:17 161:10 161:10 161:11 163:24 163:25 169:9 169:10 169:16 170:25 172:3 174:10 186:14 186:17 186:18 187:1 187:3 189:16 190:14 192:19 193:6 193:23 194:9 194:11 194:17 195:19 196:4 199:18 199:1 199:20 199:25 200:1 200:1 200:2 202:6 202:12 202:15 202:16 202:17 203:13 203:16 203:19 204:9

**claimant**(1) 38:15
**claimant's**(2) 38:14 40:14
**claimed**(1) 66:21
**claiming**(2) 166:5 197:7
**claims**(301) 16:21 19:16 19:19 20:19 20:21 20:21 21:7 21:12 22:2 22:5 22:7 22:7 22:12 22:15 22:18 22:24 23:1 23:13 23:14 23:15 23:17 24:17 24:23 24:24 24:24 25:1 25:5 25:15 25:15 26:2 26:5 26:14 26:18 26:22 28:7 28:8 28:12 28:14 28:15 28:15 28:16 28:19 28:19 28:20 28:23 29:1 29:2 29:6 29:6 29:12 30:15 30:16 30:17 30:20 30:22 30:23 30:25 32:6 33:7 34:13 34:14 34:14 34:20 35:12 35:13 35:15 35:17 35:19 35:22 35:24 35:25 36:1 36:2 36:6 36:7 36:11 36:12 36:15 36:16 36:19 37:7 37:12 37:17 37:17 37:20 38:3 38:6 38:6 38:11 38:14 38:17 38:18 39:5 39:8 39:9 39:24 40:2 40:15 40:16 41:9 41:13 41:14 41:17 41:25 42:8 42:10 42:14 44:12 44:22 45:6 48:1 48:2 48:17 48:21 49:1 49:24 50:11 50:11 50:14 50:24 53:13 53:15 53:16 53:21 53:24 54:1 54:9 54:14 54:14 54:25 55:1 55:14 55:20 56:13 56:16 57:5 58:11 58:24 59:1 59:12 59:16 60:5 61:7 61:21 62:7 62:10 62:16 62:20 63:1 63:11 67:8 67:22 68:3 68:22 69:2 69:6 69:14 69:16 69:16 69:22 69:23 70:1 70:3 71:12 71:21 72:9 72:12 73:11 73:22 76:9 79:12 79:13 79:21 79:25 80:3 80:7 80:11 80:16 80:20 80:22 80:24 81:3 81:6 81:13 81:24 82:3 82:5 82:6 83:8 83:10 86:5 90:24 90:24 91:9 94:8 94:9 94:15 96:6 101:8 101:10 101:20 102:16 103:18 109:15 109:17 109:17 109:18 109:21 109:22 110:8 110:16 110:18 110:20 111:3 111:3 111:4 111:9 112:16 112:18 112:20 112:24 113:1 113:1 113:14 113:18 113:20 114:2 114:9 116:21 119:4 119:7 120:3 120:6 120:6 121:5 122:14 123:2 125:20 127:2 127:7 127:9 130:13 130:20 130:23 131:22 132:1 132:11 132:11 133:5 134:25 136:6 136:6 136:9 139:4 139:23 143:2 144:24 147:19 147:20 147:23 148:1 148:2 148:3 148:6 150:8 151:22 152:5 152:9 152:10 152:12 152:22 153:15 153:16 153:17 153:19 153:21 154:2 154:4 154:6 154:9 154:11 154:20 154:23 155:4 155:21 157:13 157:1 159:2 159:10 159:23 159:25 160:1

**clarification**(5) 17:8 65:19 103:23 113:12 185:23

**clarified**(1) 163:22
**clarifies**(1) 149:8
**clarify**(4) 101:13 156:5 156:9 157:7
**clarifying**(1) 89:16
**clark**(2) 6:35 6:41
**class**(18) 52:1 75:10 75:10 83:3 83:3 142:8 166:1 169:4 178:12 178:13 178:14 187:18 187:22 188:5 206:5 206:6 206:7 206:7
**classes**(9) 30:4 52:11 52:14 75:23 84:9 84:13 190:23 206:4 206:18

**classic**(1) 154:22
**classification**(3) 183:11 187:13 188:3
**classified**(2) 192:18 195:15
**classify**(2) 35:24 192:25
**clause**(12) 58:12 58:12 87:18 88:11 88:17 88:21 89:2 89:11 89:24 115:24 161:8 161:14
**clauses**(2) 88:4 89:7
**clear**(63) 26:9 33:14 33:18 33:19 33:21 34:7 44:7 45:5 45:19 45:20 47:13 57:3 58:5 65:5 67:1 75:6 78:8 80:21 81:20 82:25 84:13 87:21 91:10 96:4 105:7 107:4 112:10 112:25 115:8 118:7 122:11 123:2 141:17 144:2 146:19 147:17 147:22 148:5 152:16 155:11 159:7 159:25 161:9 161:14 178:5 179:21 180:12 181:7 185:9 186:16 186:25 191:12 195:10 195:14 196:15 196:23 198:14 205:25 206:2 206:1 206:21 212:20

**clearer**(2) 84:15 179:16
**clearing**(1) 82:19
**clearly**(14) 28:11 39:4 67:4 67:20 76:16 86:16 112:18 168:24 169:7 179:13 186:5 191:1 194:13 195:7

**cleary**(1) 2:6
**clerk**(4) 14:2 53:6 166:24 176:2
**client**(1) 70:1
**client's**(1) 74:13
**clients**(8) 116:19 116:24 117:7 117:19 119:3 120:12 120:22 130:23

**climb**(1) 157:24
**cloaks**(2) 22:10 25:18
**close**(5) 67:1 74:21 108:8 197:2 212:13
**closing**(8) 138:20 138:24 152:3 164:5 211:21 212:1 212:15 212:20

**cloth**(1) 78:20
**co-defendants**(1) 143:1
**co-fiduciary**(1) 28:5
**co-plan**(1) 163:16
**co-proponents**(1) 176:5
**cobb**(2) 4:5 8:20

**claims."**(1) 191:20
**claim's**(1) 174:21
**claire**(1) 12:10

**claims**(69) 160:11 160:20 161:1 161:3 161:4 161:6 161:9 161:21 161:24 162:5 162:5 162:7 162:11 162:12 162:13 162:14 162:17 163:22 164:13 169:11 169:16 169:19 169:20 170:4 170:12 171:16 173:1 174:20 174:22 174:25 175:7 175:8 176:17 176:18 177:13 177:17 177:17 179:5 180:1 182:7 183:12 183:18 187:16 188:1 189:17 190:24 191:1 191:19 191:20 192:9 192:18 192:19 192:23 192:25 193:1 193:6 193:8 195:6 195:7 195:13 195:15 195:16 195:21 197:7 199:13 200:2 203:17 204:1 204:17

**code**(19) 22:8 24:9 24:13 30:19 32:10 33:3 50:21 77:7 78:3 78:3 78:13 78:15 78:18 103:12 103:15 107:2 107:22 109:13 171:6
**code's**(1) 33:4
**cogent**(1) 90:13
**cognizable**(1) 19:10
**coincidentally**(1) 203:20
**cole**(1) 1:32
**collateral**(1) 111:24
**colleague**(1) 56:2
**colleagues**(3) 86:21 100:17 157:25
**collect**(1) 77:10
**collected**(1) 124:16
**collective**(1) 163:17
**colleen**(1) 9:11
**colloquy**(3) 83:24 163:7 173:19
**colorability**(1) 73:23
**colorable**(1) 55:15
**come**(22) 18:18 38:25 48:4 51:3 52:2 54:2 56:2 56:3 70:10 74:19 78:24 85:14 86:10 86:17 111:12 112:21 113:23 119:1 122:2 139:6 146:1 172:13

**comes**(4) 52:15 60:9 91:5 184:10
**comfort**(1) 87:14
**coming**(7) 44:10 44:13 55:3 125:9 150:24 200:9 203:15

**commenced**(3) 105:17 113:22 114:6
**commencement**(3) 91:18 106:6 211:21
**comment**(2) 119:8 211:16
**comments**(6) 48:11 93:9 129:21 140:22 141:1 146:3

**commission**(1) 25:9
**commissioned**(1) 86:22
**committed**(2) 59:11 91:7
**committee**(31) 4:4 8:4 9:27 19:12 31:12 47:25 55:10 56:13 56:14 56:15 63:3 79:4 80:24 80:24 82:14 94:11 95:1 102:21 102:25 104:12 104:15 105:17 106:14 108:2 108:5 108:7 114:19 162:8 169:15 170:6 204:14

**committee's**(3) 57:4 110:5 115:17
**committees**(1) 32:21
**common**(17) 28:19 36:20 37:7 37:21 37:22 37:24 38:7 41:23 42:1 50:22 50:25 50:25 51:2 51:6 51:12 51:12 77:22

**communicate**(1) 200:22
**communications**(1) 65:8
**community**(2) 86:9 162:17
**comp**(1) 39:1
**company**(34) 1:8 6:4 9:20 11:36 12:13 21:5 23:1 28:16 42:2 48:16 96:14 97:12 97:12 104:19 108:15 150:23 160:24 162:16 167:8 167:21 167:22 167:23 169:1 169:7 169:12 170:5 170:8 173:15 176:18 176:25 179:18 180:5 186:4 186:7

**company's**(3) 27:22 97:15 159:22
**company's**(1) 167:13
**company'**(3) 167:15 167:21 169:18
**compensated**(1) 119:6
**compensation**(4) 40:2 122:17 122:20 130:1
**competent**(2) 76:10 76:15
**competing**(7) 64:5 103:11 103:14 104:4 104:25 105:18 114:12

**complained**(1) 209:6
**complains**(1) 181:24
**complain**(13) 56:15 56:17 94:11 108:5 108:7 110:5 162:17 173:7 173:11 180:9 180:11 180:15 180:24

**complete**(7) 17:12 57:18 100:18 100:20 202:16 202:23 203:12

| Word | Page:Line |
|------|-----------|
| **completed**(3) 17:22 60:17 189:12 | |
| **completely**(4) 61:18 89:2 130:16 130:24 | |
| **completion**(1) 174:22 | |
| **complex**(2) 142:21 146:13 | |
| **compliance**(1) 116:18 | |
| **complicated**(2) 34:6 124:18 | |
| **component**(3) 143:10 179:5 179:6 | |
| **comport**(1) 145:3 | |
| **compromise**(1) 199:17 | |
| **conaway**(1) 2:4 | |
| **concede**(2) 153:9 169:3 | |
| **conceded**(1) 139:20 | |
| **conceding**(1) 50:2 | |
| **concept**(1) 141:15 | |
| **conceptual**(1) 167:18 | |
| **concern**(7) 24:8 148:14 148:15 148:19 148:23 149:5 202:13 | |
| **concerned**(3) 54:19 121:10 184:8 | |
| **concerning**(2) 16:15 149:10 | |
| **concerns**(8) 58:11 74:10 132:10 132:18 151:10 180:9 180:21 180:22 | |
| **conclude**(7) 80:6 138:6 140:25 145:22 160:19 202:3 204:4 | |
| **concluded**(1) 119:13 | |
| **concludes**(4) 81:8 177:8 177:10 212:24 | |
| **conclusion**(3) 39:1 162:16 192:15 | |
| **conclusions**(2) 80:3 211:24 | |
| **concocted**(1) 103:10 | |
| **concurrent**(1) 121:14 | |
| **conditioned**(1) 144:23 | |
| **conduct**(13) 45:21 46:7 59:6 59:7 62:3 62:6 88:23 91:17 91:19 120:11 120:21 121:13 122:7 | |
| **confer**(1) 104:10 | |
| **conferred**(1) 91:23 | |
| **conferring**(1) 129:23 | |
| **confidant**(1) 101:11 | |
| **confident**(1) 85:4 | |
| **confined**(1) 65:20 | |
| **confirm**(5) 56:16 57:3 174:3 176:7 194:15 | |
| **confirmation**(51) 16:24 16:25 19:7 19:11 20:2 20:20 20:24 21:4 55:11 57:7 57:13 57:22 57:23 66:18 74:9 75:20 76:2 76:4 76:16 76:18 77:4 81:5 81:8 81:14 91:11 92:9 92:17 99:15 108:17 110:14 111:18 111:23 113:23 119:18 130:4 135:12 135:1 135:21 135:23 138:14 150:13 150:18 174:21 174:23 176:12 180:22 191:15 194:18 196:6 196:8 206:24 | |
| **confirmed**(14) 29:20 35:10 51:9 51:11 51:12 57:2 72:11 77:19 88:15 106:18 111:20 115:22 170:3 175:16 | |
| **confirming**(3) 76:2 76:3 82:2 | |
| **conflated**(3) 132:12 136:6 206:1 | |
| **conflation**(1) 132:19 | |
| **conflict**(7) 33:3 64:14 67:11 68:20 68:23 69:1 95:7 | |
| **conflicts**(2) 53:22 67:17 | |
| **confronted**(1) 206:25 | |
| **confusing**(1) 104:2 | |
| **confusion**(2) 89:20 141:18 | |
| **congress**(12) 21:23 24:5 24:8 24:13 25:10 25:11 26:5 29:5 107:13 107:19 107:23 108:9 | |
| **congress's**(1) 112:10 | |
| **congressional**(1) 113:1 | |
| **congruity**(1) 24:15 | |
| **conlan**(1) 1:24 | |
| **connected**(1) 59:11 | |

| Word | Page:Line |
|------|-----------|
| **connection**(21) 20:5 22:16 27:16 38:4 38:7 38:9 39:8 40:18 72:18 72:20 93:14 94:10 99:15 102:14 110:7 112:1 114:5 140:16 155:19 171:2 190:14 | |
| **connolly**(1) 7:24 | |
| **consensual**(3) 118:4 122:18 146:24 | |
| **consent**(3) 117:10 166:11 170:18 | |
| **consented**(1) 166:12 | |
| **consequence**(2) 59:23 63:23 | |
| **consequences**(2) 101:24 160:16 | |
| **consider**(9) 32:22 57:12 95:22 134:15 135:12 136:11 197:15 198:21 198:22 | |
| **considerable**(1) 161:24 | |
| **consideration**(27) 52:12 79:23 86:6 120:1 120:3 120:15 120:15 122:14 122:16 122:19 122:20 125:20 130:13 141:23 153:24 154: 154:7 155:23 161:24 185:16 186:8 189:13 191:12 191:18 192:4 192:5 211:2 | |
| **considered**(2) 135:21 196:13 | |
| **consist**(1) 36:20 | |
| **consistent**(13) 41:6 45:9 45:24 45:25 93:21 152:7 174:3 175:13 185:10 186:10 186:13 186:24 209:5 | |
| **consistently**(2) 38:21 91:15 | |
| **conspiracy**(1) 64:13 | |
| **constituencies**(1) 169:15 | |
| **constituency**(1) 95:1 | |
| **constituting**(1) 146:16 | |
| **constitution**(2) 5:27 174:3 | |
| **construct**(2) 69:1 137:23 | |
| **constructed**(2) 122:23 127:2 | |
| **constructive**(16) 103:2 103:9 113:2 132:1 152:9 153:5 153:15 153:21 159:2 159:23 160:19 161:1 161:20 169:23 171:16 177:1 | |
| **constructs**(1) 174:2 | |
| **construed**(2) 24:3 106:4 | |
| **construing**(1) 193:10 | |
| **consulted**(1) 101:18 | |
| **consummated**(1) 185:14 | |
| **consummation**(3) 37:4 174:23 185:17 | |
| **contained**(4) 140:17 144:25 176:22 179:4 | |
| **contains**(2) 36:5 158:17 | |
| **contemplates**(2) 168:5 168:24 | |
| **contend**(1) 67:11 | |
| **contention**(1) 119:17 | |
| **contentions**(1) 102:4 | |
| **contested**(2) 105:10 210:24 | |
| **context**(17) 16:24 49:1 61:8 72:14 87:4 107:11 132:6 133:4 137:15 141:10 144:15 149:1 190:17 203:6 206:17 206:20 208:15 | |
| **continental**(3) 118:10 125:18 146:18 | |
| **continuation**(2) 16:20 61:23 | |
| **continue**(8) 60:15 64:15 66:9 92:8 95:12 95:20 100:19 155:20 | |
| **continued**(14) 2:2 3:2 4:2 5:2 6:2 7:2 8:2 9:2 10:2 11:2 12:3 13:2 60:14 188:24 | |
| **continues**(3) 60:20 61:10 177:19 | |
| **continuing**(3) 63:13 124:25 149:9 | |
| **contract**(5) 60:20 60:22 168:24 186:20 186:22 | |
| **contracts**(4) 59:20 91:24 92:6 92:11 | |
| **contractual**(18) 83:12 164:8 164:11 164:23 164:24 165:7 166:5 166:8 166:15 167:19 170:25 177:20 178:11 179:23 182:11 192:20 193:7 195:8 | |
| **contrarian**(2) 13:32 13:33 | |
| **contrary**(6) 18:3 21:3 45:9 92:7 106:6 132:22 | |

| Word | Page:Line |
|------|-----------|
| **contrast**(4) 22:12 26:15 60:13 160:11 | |
| **contribute**(1) 177:17 | |
| **contributed**(2) 114:8 177:13 | |
| **contribution**(59) 40:17 77:11 78:8 78:12 116:25 117:4 117:20 118:21 118:23 120:6 120:16 121:6 123:2 123:4 126:14 127:7 130:3 130:6 130:20 130:23 140:16 141:15 141:24 142:11 142:12 143:3 143:5 143:12 143:15 143:17 144:11 144:22 144:23 145: 145:11 145:14 146:1 146:8 146:13 146:12 147:19 148:4 148:6 152:13 152:18 152:21 153:7 154:11 154:18 155:4 155:5 155:13 159:10 159:17 159:25 160:21 161:19 162:12 171:23 | |
| **contributions**(3) 24:11 24:14 36:24 | |
| **control**(2) 91:5 116:4 | |
| **controlled**(1) 65:25 | |
| **controlling**(2) 62:15 208:2 | |
| **controversial**(1) 149:12 | |
| **convenience**(1) 43:19 | |
| **convenient**(2) 64:11 204:16 | |
| **conversation**(1) 171:24 | |
| **conversations**(1) 151:18 | |
| **convert**(1) 174:17 | |
| **converting**(1) 190:14 | |
| **convey**(1) 48:11 | |
| **conveyance**(28) 102:16 102:24 103:2 103:4 103:9 103:18 104:12 104:14 106:6 106:15 107:3 107:9 111:9 112:18 113:3 132:1 132:1 133:4 133:8 133:13 138:6 139:4 159:23 169:23 171:16 174:10 177:17 179: | |
| **conveyed**(2) 103:3 106:8 | |
| **conviction**(1) 94:7 | |
| **convoluted**(1) 195:2 | |
| **cook**(1) 122:5 | |
| **cooking**(1) 90:11 | |
| **cooperation**(2) 77:25 78:14 | |
| **cooperstown**(2) 13:18 13:19 | |
| **copy**(7) 158:21 166:20 193:12 193:19 193:20 197:18 198:15 | |
| **core**(9) 44:2 110:3 110:3 110:6 111:1 111:10 141:3 151:24 151:25 | |
| **corners**(1) 162:3 | |
| **corollary**(1) 148:19 | |
| **corporate**(6) 23:6 23:10 23:21 26:6 34:9 34:17 | |
| **corporation**(3) 23:11 27:23 129:6 | |
| **corporations**(1) 23:15 | |
| **correct**(11) 33:23 47:12 50:20 66:6 66:7 74:7 110:17 114:25 181:23 209:17 213:5 | |
| **corrected**(1) 100:17 | |
| **correction**(1) 86:1 | |
| **corrections**(1) 25:12 | |
| **corrective**(2) 24:21 24:25 | |
| **correctly**(1) 130:18 | |
| **corresponded**(1) 132:16 | |
| **corresponding**(1) 145:10 | |
| **cost**(8) 43:13 43:14 44:3 44:5 73:12 73:12 91:17 203:22 | |
| **costs**(4) 29:3 29:4 61:22 163:23 | |
| **could**(34) 15:22 19:25 25:18 27:3 43:1 43:5 44:4 47:1 56:5 58:23 61:20 62:7 64:8 65:19 69:19 69:21 76:13 78:24 84:21 92:21 98:10 98:10 104:20 112:23 123:3 123:20 125:3 134:2 166:23 179:16 183:21 187:21 187:23 198:10 | |
| **couldn't**(5) 16:9 84:23 108:11 108:13 136:13 | |
| **couldn't**(1) 197:4 | |

| Word | Page:Line |
|------|-----------|
| **counsel**(19) 18:17 64:10 79:4 79:6 84:6 85:16 97:7 101:18 104:4 112:8 114:20 131:8 135:15 135:17 138:10 183:12 192:16 192:17 193:2 | |
| **counsels**(1) 146:6 | |
| **counterparties**(1) 194:20 | |
| **country**(2) 120:19 121:3 | |
| **counts**(3) 162:6 162:7 162:17 | |
| **county**(1) 122:5 | |
| **couple**(11) 14:13 91:1 93:15 115:15 127:12 132:7 141:16 160:2 202:9 206:1 212:10 | |
| **coupled**(1) 64:6 | |
| **couri**(1) 13:20 | |
| **course**(11) 56:5 84:6 85:22 109:5 115:8 146:18 151:23 165:24 196:14 199:23 207:15 | |
| **court**(301) 1:1 14:3 14:12 15:3 15:22 16:6 16:12 16:14 17:2 17:4 18:3 18:5 18:14 18:17 18:23 19:3 19:7 19:22 19:23 19:25 20:4 20:7 21:1 21:17 21:20 22:9 23:4 23:5 23:7 23:18 23:22 25:19 26:21 27:17 29:9 29:12 29:16 29:21 29:25 30:25 32:12 32:14 33:1 33:8 33:10 33:15 34:2 34:15 34:22 35:1 38:11 38:21 39:2 39:13 39:19 40:4 40:21 42:13 45:3 45:25 46:20 47:4 47:6 49:5 49:9 49:12 49:18 50:16 51:9 51:14 51:20 51:23 52:6 52:21 53:3 53:7 54:11 54:12 54:22 55:24 56:2 56:12 56:12 56:15 56:19 56:24 57:4 57:6 57:8 57:11 57:17 57:25 58:5 58:21 59:16 61:3 62:9 62:23 63:2 65:2 65:4 65:8 65:19 65:24 66:8 66:11 66:17 66:20 68:2 68:10 68:12 69:17 69:25 70:23 71:3 72:14 72:16 73:4 73:11 73:14 73:19 74:5 74:8 74:12 74:23 75:3 76:10 76:10 76:13 76:14 76:19 77:20 79:2 79:14 79:17 80:1 80:6 80:15 81:3 81:8 81:11 81:15 81:23 82:2 82:10 84:2 84:10 84:15 84:19 84:22 85:13 86:6 87:14 87:23 87:25 88:3 89:12 89:22 90:3 91:14 91:25 92:24 93:5 94:11 95:21 97:1 97:1 97:1 98:1 99:2 99:18 99:23 100:2 100:5 100:7 100:11 100:21 101:1 101:2 101:4 101:14 101:19 101:20 102:8 103:20 104:1 104:6 104:20 105:2 105:11 105:20 106:2 106:19 107:10 107:21 108:6 108:13 108:19 108:22 109:4 110:11 110:13 111:15 111:18 111:20 112:3 113:4 113:21 114:15 114:17 115:16 116:10 117:14 119:19 120:17 121:17 121:24 122:2 122:4 123:10 123:12 123:19 124:6 124:9 124:11 124:13 124:22 125:1 125:2 125:3 125:6 125:12 126:3 126:3 126:4 126:11 127:5 127:25 128:4 128:6 128:14 128:21 128:23 129:1 129:4 129:7 129:15 130:25 131:1 131:4 131:10 131:12 133:1 133:12 133:22 133:18 134:6 134:15 135:12 135:25 136:11 136:12 136:13 137:5 137:10 137:15 138:8 139:5 139:9 139:12 139:14 140:8 140:12 142:14 142:16 144:18 147:6 147:6 147:8 147:9 147:11 147:13 147:14 147:15 148:8 148:16 148:17 149:2 149:4 149:6 149:6 149:9 149:13 150:9 150:12 150:15 150:17 150:18 150:24 150:24 150:25 | |

| Word | Page:Line | Word | Page:Line | Word | Page:Line | Word | Page:Line |
|---|---|---|---|---|---|---|---|
| court(103) 151:1 151:5 151:5 151:6 151:8 151:13 151:19 155:24 156:2 156:11 156:1 156:24 157:1 157:5 157:20 158:3 158:10 158:15 158:22 160:24 162:23 162:25 163:1 164:18 166:22 167:1 167:5 168:14 168:17 168:19 168:21 174:3 174:5 175:5 175:18 175:23 180:25 181:4 181:12 181:22 182:6 182:16 183:5 183:14 183:22 187:6 187:25 188:6 188:8 189:1 189:21 190:1 190:18 190:21 193:12 193:13 193:15 193:16 195:25 197:14 197:21 197:25 198:14 198:18 198:20 200:12 200:14 201:2 201:5 201:8 201:9 201:12 201:20 202:2 203:2 203:14 204:4 204:5 204:10 204:12 205:6 205:17 205:20 206:17 207:7 207:7 207:15 207:16 207:17 207:22 208:1 208:3 208:6 208:9 209:14 209:22 210:8 210:11 210:18 211:3 211:10 212:5 212:25 | | crew(1) 86:23 | | dearborn(1) 1:28 | | defined(2) 167:22 193:20 |
| | | crimson(1) 7:6 | | death(2) 90:17 202:13 | | defines(2) 36:1 36:6 |
| | | critical(9) 24:6 25:12 27:18 27:24 30:1 55:22 118:21 125:17 132:21 | | debate(3) 26:12 142:5 155:1 | | defining(1) 109:22 |
| | | | | debated(1) 154:1 | | definition(14) 30:14 30:17 30:21 31:1 31:13 31:16 36:5 83:14 88:24 137:22 165:25 193:18 195:9 195:12 |
| | | criticism(1) 89:5 | | debenture(4) 12:29 63:5 194:12 195:3 | | |
| | | criticized(1) 143:24 | | deborah(1) 11:25 | | definitions(3) 83:2 165:12 165:18 |
| | | crone(1) 6:39 | | debt(4) 96:16 138:5 169:6 174:17 | | deiterich(1) 11:17 |
| | | cross(4) 143:2 161:10 209:1 209:3 | | debtor(33) 19:11 36:13 37:16 37:16 37:17 38:17 38:18 43:18 45:23 46:24 47:25 59:24 60:6 62:20 78:23 90:15 91:21 91:22 108:1 108:17 108:25 119:1 134:25 169:21 174:15 175:5 179:22 179:23 180:3 184:10 189:15 189:15 189:17 | | delaware(13) 1:2 1:12 1:35 4:34 5:20 6:21 14:1 59:17 60:9 60:12 115:8 144:19 145:25 |
| | | crux(2) 16:22 185:15 | | | | delay(1) 174:21 |
| | | crystal(6) 33:13 122:11 147:22 148:5 178:5 179:21 | | | | delicto(1) 169:19 |
| | | | | | | deliver(1) 123:12 |
| court's(13) 23:16 23:19 23:20 34:3 57:1 79:8 82:16 85:12 140:18 145:21 148:20 151:1 158:13 | | cue(1) 115:15 | | | | delivered(3) 170:17 183:2 188:10 |
| | | cumulative(1) 143:24 | | | | delve(1) 33:21 |
| | | cushion(5) 25:14 25:16 25:20 25:24 26:3 | | | | demo(1) 9:8 |
| | | custodian(1) 188:12 | | debtor-in-possession(1) 168:1 | | demonstrate(1) 119:21 |
| | | cut(1) 165:15 | | debtors(34) 1:12 1:23 14:6 19:5 27:10 28:24 30:10 30:13 30:15 31:11 31:22 32:17 32:24 35:3 37:19 38:7 40:7 50:18 99:6 102:2 117:12 117:13 118:1 135:8 132:17 135:3 135:11 157:22 158:11 170:5 188:4 191:9 199:19 202:24 | | demonstrated(1) 64:19 |
| courtroom(9) 1:10 18:22 18:24 64:9 64:14 67:12 84:8 122:10 211:1 | | cutler(1) 11:40 | | | | demonstrates(1) 63:9 |
| | | cybergenics(2) 170:3 182:18 | | | | demonstrating(1) 116:18 |
| | | d's(1) 40:18 | | | | denied(3) 20:3 22:5 61:14 |
| | | damage(2) 42:13 123:3 | | | | dennis(1) 9:15 |
| courts(26) 22:23 33:15 33:20 40:24 45:10 70:22 91:15 105:6 106:21 120:8 120:9 120:10 120:20 121:9 121:12 122:13 126:6 127:12 141:20 142:22 145:13 149:23 151:11 198:21 206:16 206:24 | | damaged(2) 23:9 42:13 | | debtor's(3) 174:18 188:13 188:15 | | denomination(1) 48:3 |
| | | damages(3) 41:21 160:16 162:1 | | december(2) 162:9 186:2 | | deny(2) 19:23 72:5 |
| | | damien(1) 3:13 | | decide(11) 76:13 98:6 98:7 98:14 99:1 99:13 99:16 99:20 136:23 137:10 184:22 | | department(11) 5:24 5:25 15:6 20:11 20:14 20:18 21:5 24:20 35:4 36:10 36:19 |
| | | daniel(4) 4:6 5:11 7:39 138:9 | | | | |
| | | darn(1) 25:18 | | decided(11) 27:3 79:25 91:9 91:10 91:14 107:11 136:1 137:22 178:25 183:16 211:14 | | |
| court's(3) 188:7 193:20 198:14 | | darning(1) 22:10 | | | | depend(2) 42:24 68:9 |
| cover(4) 66:23 92:21 112:7 211:4 | | data(1) 11:41 | | decides(7) 63:20 108:15 108:17 133:13 133:19 136:16 137:22 | | dependent(1) 138:16 |
| covered(7) 40:20 41:3 97:22 112:7 112:24 113:8 117:21 | | date(11) 35:9 57:13 57:15 96:5 98:20 110:11 165:4 172:6 185:25 186:6 211:22 | | | | dependents(1) 24:7 |
| | | | | deciding(1) 81:16 | | depending(5) 99:14 99:16 99:18 150:20 164:6 |
| | | dates(2) 212:11 212:21 | | decipherable(1) 31:2 | | |
| covers(4) 25:5 31:9 31:10 31:13 | | dave(1) 9:25 | | decision(36) 37:25 38:1 40:4 40:6 40:9 40:10 45:3 69:8 71:12 81:10 81:12 82:2 82:6 88:13 88:23 92:18 99:14 107:5 132:2 135:19 136:4 141:10 141:11 141:12 142:22 144:17 145:13 145:18 146:3 151:1 160:6 160:8 173:23 202:1 208:2 208:3 | | depends(1) 110:22 |
| crabtree(2) 59:18 92:12 | | david(14) 3:5 4:13 6:26 6:32 6:34 9:42 11:10 12:25 53:8 82:13 101:5 114:18 129:12 204:13 | | | | deplete(1) 55:19 |
| crack(2) 116:4 116:5 | | | | | | deposit/withdraw(1) 188:12 |
| cracks(1) 14:21 | | | | | | derived(1) 25:25 |
| craft(1) 90:14 | | davidson(1) 11:25 | | | | describe(3) 33:2 141:16 179:19 |
| crafted(1) 186:12 | | davis(3) 3:11 8:34 10:8 | | decisions(7) 22:20 22:20 27:15 62:15 71:7 160:10 160:18 | | described(3) 29:9 68:4 191:14 |
| cram(2) 75:11 205:24 | | day(12) 15:21 49:15 50:4 115:24 128:16 164:14 173:23 174:5 175:5 184:4 211:25 212:15 | | | | designed(1) 86:21 |
| cram-down-wise(1) 166:15 | | | | decline(4) 38:11 52:3 83:17 | | desirable(1) 146:7 |
| create(3) 95:7 190:17 202:8 | | | | declined(1) 88:5 | | desire(3) 55:13 64:20 198:14 |
| created(1) 125:2 | | days(5) 65:16 134:17 172:20 186:2 212:17 | | decretial(5) 158:13 158:25 159:8 161:8 161:14 | | despite(1) 33:20 |
| creating(2) 44:4 78:19 | | dbtca(1) 5:4 | | | | despoiled(1) 23:2 |
| creation(2) 78:2 102:20 | | dcl(108) 17:14 20:12 21:22 22:1 22:2 22:6 26:13 28:7 28:21 29:8 30:6 30:15 30:19 31:4 31:4 32:8 34:19 35:6 35:11 35:11 36:1 36:9 36:12 36:14 37:2 47:14 49:25 81:22 82:22 82:24 82:24 83:2 85:21 87:11 114:20 116:12 116:16 117:5 117:9 117:18 117:24 118:22 120:4 120:14 121:1 121:19 123:23 124:25 125:5 125:16 125:22 127:3 129:19 130:9 137:3 140:17 152:7 152:11 154:6 155:9 155:11 158:15 161:25 162:4 163:20 163:21 164:22 164:25 166:7 169:3 169:9 171:12 175:6 176:6 176:13 176:14 177:3 177:11 177:13 177:15 177:18 177:1 177:21 179:4 179:13 180:14 180:20 182:14 182:20 189:23 191:14 194:16 200:24 210:13 | | deductible(1) 61:17 | | detail(3) 80:7 190:7 200:19 |
| creature(2) 90:5 125:2 | | | | deemed(4) 21:11 21:13 87:16 190:10 | | determination(17) 62:25 64:25 69:24 70:11 71:24 73:24 79:20 101:12 101:13 101:21 102:15 109:14 109:16 111:21 113:1 122:19 138:17 |
| credit(5) 11:35 113:16 145:10 149:4 | | | | deep(1) 45:2 | | |
| credited(1) 188:4 | | | | deeply(2) 33:21 139:21 | | |
| creditor(39) 43:8 43:11 54:3 55:19 64:5 69:9 69:11 77:9 77:19 78:16 78:23 102:4 102:20 103:4 103:10 103:13 103:19 104:9 104:11 104:20 104:23 106:25 107:3 110:8 110:15 110:17 113:17 114:6 114:7 120:18 121:4 125:10 132:9 132:11 135:14 136:6 169:14 169:20 178:3 | | | | defamation(1) 19:14 | | determination(2) 71:13 79:13 |
| | | | | default(1) 187:2 | | determine(7) 33:11 33:16 33:17 80:16 97:2 99:10 110:21 |
| | | | | defects(1) 31:8 | | |
| | | | | defendant(19) 64:23 72:16 95:6 95:8 136:18 137:18 137:19 141:22 143:11 143:12 143:15 148:10 155:5 155:7 157:14 157:14 159:11 159:14 161:12 | | determined(9) 21:7 35:22 70:1 75:24 96:5 113:21 126:16 138:18 191:17 |
| creditor's(1) 32:21 | | dcl's(2) 65:10 121:22 | | | | determines(1) 188:1 |
| creditors(100) 4:5 8:5 17:19 25:15 25:17 25:18 25:23 26:7 26:8 28:15 29:17 29:19 44:13 47:16 47:17 47:18 47:20 47:22 48:7 50:9 53:14 55:18 63:3 63:13 65:1 67:24 68:8 68:13 69:12 71:10 78:5 79:5 82:14 83:3 90:10 95:1 103:18 104:16 106:1 106:4 106:8 106:12 109:19 110:14 110:19 110:20 111:3 111:12 112:12 113:15 114:8 114:20 116:21 116:22 120:18 121:5 125:2 125:6 125:8 127:11 131:25 136:4 136:25 153:19 153:20 153:23 159:1 161:4 167:10 168:1 169:13 169:15 169:24 170:5 170:8 170:16 174:20 175:3 176:22 177:3 177:9 177:11 177:14 177:15 177:16 177:18 178:21 182:24 183:1 183:3 192:2 204:14 206:9 207:2 209:20 | | deal(10) 17:1 49:14 81:2 81:13 82:16 85:3 123:20 123:9 166:10 204:16 | | defendants(34) 23:14 23:20 116:20 124:3 129:24 130:8 130:11 136:15 136:17 137:15 144:5 142:9 142:11 142:12 142:18 142:24 143:5 143:20 144:9 144:9 144:10 144:11 144:22 145:1 145:6 147:18 148:13 150:1 150:4 157:10 157:10 159:3 161:5 172:2 | | deutsch(5) 4:16 183:25 184:1 184:5 185:8 |
| | | | | | | developed(1) 121:7 |
| | | | | | | dewey(3) 2:13 48:7 176:4 |
| | | | | | | diamond(1) 10:43 |
| | | | | | | diaz(1) 1:41 |
| | | dealing(9) 78:18 91:21 91:22 99:5 105:7 106:21 117:2 137:9 206:13 | | | | did(38) 34:10 42:16 45:19 57:10 66:2 69:16 82:17 85:22 85:23 92:21 102:25 107:13 112:8 114:15 115:6 119:1 136:4 138:25 147:11 149:16 178:2 178:23 181:25 181:25 182:3 184:17 185:9 187:12 188:9 188:17 196:21 198:3 198:17 198:25 198:25 203:16 207:25 211:13 |
| | | | | defended(1) 130:7 | | |
| | | | | defense(2) 115:11 115:13 | | |
| | | | | defenseless(1) 114:2 | | |
| | | | | defenses(7) 114:5 115:19 169:19 202:15 202:20 202:21 203:18 | | |
| | | dealings(2) 41:17 42:11 | | | | |
| | | deals(1) 89:18 | | defensive(1) 69:4 | | didn't(24) 16:22 16:25 25:13 32:6 32:22 42:14 42:19 51:5 57:14 84:2 85:9 97:20 98:12 132:23 132:23 134:9 145:3 155:16 156:7 202:8 203:22 207:12 208:4 208:16 |
| | | dealt(7) 39:23 42:8 46:3 60:8 88:1 122:6 172:9 | | defer(1) 164:13 | | |
| | | | | deferred(2) 110:10 194:3 | | |
| | | | | deficient(1) 192:10 | | |
| | | | | define(1) 83:3 | | |

| Word | Page:Line | Word | Page:Line | Word | Page:Line | Word | Page:Line |
|---|---|---|---|---|---|---|---|
| didn't(11) 172:11 174:4 174:9 182:22 184:2 184:12 188:21 189:15 192:22 198:1 198:18 | | disqualify(2) 63:13 67:25 | | don't(91) 14:20 15:16 18:21 28:9 28:13 30:19 31:25 34:12 41:1 44:18 51:24 53:54:14 54:16 56:6 56:8 58:2 65:6 65:14 65:17 65:22 66:5 66:16 68:16 68:17 68:18 68:23 69:2 69:3 71:6 72:19 72:22 74:21 75:19 78:11 81:21 82:20 83:23 84:16 84:23 87:2 87:18 88:5 89:10 89:12 89:23 91:1 92:3 92:4 92:22 95:13 96:21 98:5 102:18 106:16 108:16 110:16 111:11 111:13 111:16 112:14 112:21 113:12 114:23 115:4 116:1 121:8 122:19 128:10 129:13 135:21 135:24 137:25 138:12 140:23 141:1 146:4 146:4 148:7 156:8 157:10 157:15 163:4 201:9 201:16 201:20 201:21 205:11 207:12 208:22 | | economic(3) 63:25 64:21 209:15 | |
| difference(5) 22:7 36:9 105:14 183:19 186:16 | | disregard(1) 148:17 | | | | economically(1) 50:7 | |
| | | dissenting(2) 206:6 206:7 | | | | economics(1) 51:23 | |
| | | dissonance(1) 151:17 | | | | ecro(1) 1:39 | |
| | | distinction(2) 34:16 132:10 | | | | edgar(1) 12:39 | |
| | | distinguish(5) 22:24 23:13 34:3 196:22 208:13 | | | | effect(11) 32:22 39:7 82:19 84:18 85:11 85:17 87:15 104:24 107:17 208:25 209:18 | |
| different(31) 18:10 18:13 39:10 42:10 44:19 46:11 67:23 77:22 77:25 78:1 78:14 88:17 90:4 91:18 107:10 109:24 122:9 122:10 131:18 133:16 135:2 137:14 141:2 144:3 170:18 170:20 184:3 204:21 206:1 206:4 208:15 | | | | | | effective(1) 21:16 | |
| differently(1) 140:7 | | distinguished(1) 134:25 | | | | effectively(5) 54:24 59:14 177:22 | |
| difficult(2) 130:17 142:24 | | distribute(3) 75:22 174:24 191:12 | | | | effectuate(1) 55:7 | |
| difficulty(2) 33:25 33:25 | | distributed(4) 14:22 86:2 169:1 192:5 | | | | efficient(3) 17:24 43:20 44:1 | |
| diminished(3) 27:8 38:19 45:14 | | distribution(16) 47:18 50:9 83:14 98:16 98:19 98:25 133:6 165:13 166:4 167:8 167:14 167:20 169:5 179:18 189:7 203:20 | | | | effort(1) 55:6 | |
| diminution(1) 38:19 | | | | don't(32) 165:24 166:11 166:11 166:17 171:21 172:5 174:6 174:20 174:22 175:4 175:17 181:8 186:14 187:6 187:13 188:2 189:5 189:21 193:4 193:9 194:25 194:25 195:13 196:10 196:16 197:10 198:9 200:1 200:23 200:25 201:5 201:8 | | efforts(1) 143:1 | |
| direct(7) 63:25 148:2 158:12 158:19 159:15 177:23 208:24 | | | | | | egi(15) 6:31 53:22 94:10 94:12 96:2 96:20 96:23 97:6 97:9 97:10 97:17 98:7 98:11 98:13 102:5 | |
| | | distributions(14) 29:18 30:2 68:9 83:4 83:6 96:10 133:10 167:20 175:8 176:22 177:9 177:21 191:5 199:7 | | | | egi's(3) 54:1 54:9 112:7 | |
| directed(3) 22:9 26:22 123:22 | | | | | | egi-trb(26) 11:32 53:9 55:18 56:14 63:25 68:7 68:25 74:17 75:6 75:8 75:8 75:10 75:15 79:7 79:22 80:9 82:15 82:23 83:5 83:12 83:13 96:12 96:15 96:17 97:2 109:9 | |
| direction(1) 29:5 | | district(18) 1:2 23:4 23:5 23:16 23:19 23:20 39:17 59:19 142:14 144:18 149:21 160:4 160:6 205:6 207:15 207:16 207:17 207:21 | | | | | |
| directives(1) 149:3 | | | | | | egi-trb's(1) 81:24 | |
| directly(6) 39:20 40:10 126:21 146:6 154:9 154:16 | | | | don't(32) 165:24 166:11 166:11 166:17 | | egi-zell(2) 97:7 113:12 | |
| | | diversified(2) 38:22 40:1 | | | | eichenholtz(14) 124:4 126:20 137:13 141:10 142:5 142:7 142:20 143:18 144:14 144:14 145:13 145:15 146:2 146:6 | |
| director(12) 60:14 60:19 60:20 61:14 90:22 91:3 91:3 91:8 141:5 145:6 148:13 150:3 | | divided(2) 18:8 18:12 | | | | | |
| | | dla(1) 2:29 | | dorr(1) 11:41 | | eight(1) 172:20 | |
| directors(12) 7:17 9:29 53:19 59:15 59:22 60:12 61:3 112:6 128:3 128:19 129:20 140:20 | | dno(2) 61:18 73:13 | | double(2) 123:8 154:22 | | either(21) 14:18 32:6 37:9 38:8 53:16 59:23 59:25 60:21 68:23 75:22 90:13 93:9 105:15 116:19 126:11 161:3 183:18 189:21 192:14 203:17 212:15 | |
| | | dno's(1) 116:16 | | doubt(1) 149:8 | | | |
| disagree(6) 46:13 74:8 79:19 98:18 113:11 153:12 | | docket(2) 19:18 176:12 | | doubted(1) 173:21 | | | |
| | | doctrine(4) 29:16 29:17 30:6 146:8 | | dougherty(3) 7:19 112:4 112:5 | | | |
| | | document(7) 130:17 166:17 171:1 178:6 178:19 182:11 193:10 | | douglas(1) 4:16 | | elden(1) 7:17 | |
| disallowance(1) 173:12 | | | | down(14) 45:17 18 48:15 54:11 65:18 73:17 75:11 80:15 88:7 89:8 116:6 134:9 148:15 149:19 205:24 | | eldersveld(1) 9:25 | |
| disallowed(2) 19:16 19:21 | | | | | | elected(1) 63:11 | |
| disallowing(2) 19:19 21:15 | | documents(4) 62:24 185:20 186:11 203:4 | | | | election(1) 184:9 | |
| discharging(1) 144:22 | | does(56) 18:3 20:4 28:21 36:8 36:12 42:17 42:21 42:23 46:9 46:20 47:15 50:10 58:1 60:15 63:18 76:5 82:25 87:18 87:22 93:1 95:18 106:10 121:12 121:13 121:22 121:22 122:24 123:4 123:13 123:19 124:25 125:16 127:17 127:23 131:22 131:23 135:19 142:12 150:13 152:20 155:12 158:20 159:16 161:10 164:8 164:22 164:2 165:7 170:13 171:12 176:24 177:12 178:16 190:1 201:17 206:11 | | | | electronic(2) 1:47 213:6 | |
| disclaim(7) 112:17 139:3 139:22 141:2 152:10 153:2 159:3 | | | | draft(1) 93:18 | | elements(1) 119:10 | |
| | | | | drafting(1) 126:1 | | eleventh(1) 137:4 | |
| disclaimed(6) 151:22 152:5 153:17 159:1 160:25 161:20 | | | | drawn(2) 201:9 201:10 | | eli(1) 3:15 | |
| | | | | drawn..(1) 201:8 | | eliminated(3) 25:17 53:20 189:2 | |
| | | | | drew(1) 3:22 | | eliminates(1) 32:5 | |
| disclose(3) 27:14 27:18 27:24 | | | | drive(2) 7:6 7:20 | | elizabeth(1) 8:42 | |
| disclosure(3) 19:9 66:19 67:6 | | doesn't(25) 25:2 34:20 34:20 42:24 44:15 76:6 76:18 76:18 84:14 90:7 93:12 111:6 111:9 111:10 122:6 122:7 122:7 126:25 132:14 139:23 139:23 141:22 150:11 151:209:22 | | drives(1) 48:19 | | elkins(1) 10:4 | |
| discounted(3) 72:3 92:20 135:20 | | | | driving(1) 177:8 | | ellers(1) 16:2 | |
| discrete(1) 74:16 | | | | drop(1) 94:15 | | elliot(3) 3:12 139:16 181:14 | |
| discretion(1) 140:18 | | | | dropping(1) 172:19 | | else(13) 15:2 20:4 52:6 66:5 83:19 84:16 128:11 137:14 166:4 193:11 204:12 210:8 212:23 | |
| discretionary(1) 44:24 | | | | dtc(2) 188:11 188:13 | | | |
| discriminate(4) 190:13 190:20 191:2 | | doesn't(1) 123:18 166:20 172:10 189:13 194:12 | | duane(3) 6:19 102:10 129:10 | | | |
| discriminate-unfairly(1) 198:7 | | | | dublin(1) 5:12 47:9 47:10 50:19 52:23 92:25 93:6 93:7 95:24 113:5 113:6 | | elsewhere(1) 121:24 | |
| discrimination(20) 200:22 202:7 202:12 204:15 204:17 204:25 205:2 205:4 205:22 206:3 206:17 206:16 206:21 206:22 206:2 207:6 208:13 208:16 210:2 210:5 | | | | | | email(1) 14:18 | |
| | | dog(3) 144:1 150:5 157:11 | | dublin's(1) 98:5 | | emanate(1) 92:3 | |
| | | doing(14) 18:2 43:15 43:19 57:24 67:10 78:10 78:21 78:22 85:17 103:12 154:13 156:3 200:4 201:1 | | due(8) 38:11 136:8 145:4 174:1 174:1 175:2 189:16 210:21 | | emanates(1) 172:23 | |
| discussed(7) 40:5 139:5 144:19 161:18 178:8 199:5 207:11 | | | | | | embedded(1) 118:25 | |
| | | | | due-process(2) 180:9 180:21 | | embodied(2) 179:4 198:24 | |
| discussing(1) 169:5 | | | | duplicative(2) 103:16 139:20 | | embrace(1) 85:7 | |
| discussion(4) 94:2 171:17 195:19 201:3 | | dol(21) 21:5 21:12 21:15 35:6 37:1 37:7 37:11 38:2 39:3 39:8 39:17 40:11 41:10 41:15 45:22 48:12 48:16 48:17 48:21 48:22 49:3 | | during(4) 14:25 51:4 109:5 119:12 | | emerge(2) 36:13 46:25 | |
| discussions(2) 35:14 152:1 | | | | duties(4) 22:14 23:18 94:25 173:7 | | emerging(1) 52:13 | |
| disinterested(1) 64:25 | | | | duty(4) 3:38 7:12 13:4 13:4 | | emphasize(1) 127:4 | |
| dismiss(4) 81:12 114:25 115:1 115:2 | | dol's(1) 39:9 | | dwac'd(2) 188:11 188:12 | | employee(2) 40:1 107:12 | |
| disparate(2) 187:17 207:1 | | dollar(11) 36:16 48:3 133:3 133:3 133:14 133:14 137:1 137:1 137:6 137:6 192:10 | | dynamic(2) 33:5 77:22 | | employees(3) 31:14 39:25 45:23 | |
| disposed(1) 210:1 | | | | dynamics(2) 63:18 66:1 | | employers(1) 24:10 | |
| disposition(1) 73:6 | | | | each(14) 17:10 17:20 18:19 54:24 62:4 82:23 96:24 103:11 117:10 118:16 118:22 136:15 165:6 211:10 | | employment(1) 186:20 | |
| dispositive(3) 42:19 92:4 158:19 | | | | | | empowered(1) 90:10 | |
| disproportionality(1) 209:10 | | dollars(5) 35:16 66:25 104:25 105:19 | | | | empty(1) 122:7 | |
| disproportionate(1) 206:23 | | don(1) 6:5 | | | | enable(1) 172:5 | |
| dispute(9) 41:16 45:15 48:15 83:1 83:9 83:22 99:10 102:19 184:19 | | | | eagerness(1) 173:22 | | enacted(1) 32:10 | |
| | | | | earlier(3) 74:4 171:18 203:5 | | enacting(1) 25:10 | |
| disputed(7) 20:21 21:6 21:10 21:12 34:14 35:20 152:1 | | | | early(5) 15:15 72:20 74:2 135:16 212:5 | | enactment(1) 32:14 | |
| | | | | easier(1) 15:1 | | encompassing(1) 31:6 | |
| | | | | easily(1) 210:2 | | encourage(5) 141:21 143:6 146:10 198:12 212:2 | |
| | | | | east(4) 3:38 7:12 13:4 13:4 | | | |
| | | | | eastern(2) 39:16 149:21 | | | |
| disputes(2) 174:21 209:18 | | | | easy(4) 70:19 84:19 87:9 124:24 | | | |
| disqualifies(1) 67:21 | | | | eat(1) 90:11 | | | |
| | | | | echo(1) 135:14 | | | |

| Word | Page:Line |
|---|---|
| end(12) | 15:21 18:8 21:18 37:23 49:14 51:24 52:20 66:23 81:9 199:5 210:9 211:25 |
| endorsed(3) | 141:14 141:21 142:18 |
| enforce(3) | 151:7 151:9 177:20 |
| enforced(1) | 124:16 |
| enforcement(1) | 149:11 |
| engage(1) | 207:4 |
| engaged(2) | 72:2 207:22 |
| engaging(2) | 164:16 164:18 |
| english(1) | 5:4 |
| enhanced(1) | 107:12 |
| enhancement(1) | 95:22 |
| enjoin(2) | 125:12 151:1 |
| enjoined(2) | 122:3 124:17 |
| enjoy(1) | 164:10 |
| enough(10) | 43:17 73:17 98:20 99:1 99:17 152:24 152:25 154:2 155:1 212:5 |
| enrichment(1) | 107:7 |
| enron(5) | 39:23 40:5 40:22 116:8 149:22 |
| ensure(1) | 141:22 |
| enter(2) | 160:24 172:5 |
| entered(11) | 16:23 19:17 114:16 117:12 118:2 120:3 124:8 124:12 124:15 124:15 157:9 |
| entering(1) | 76:4 |
| enterprise(2) | 164:6 169:5 |
| enters(2) | 98:22 110:13 |
| entertain(1) | 81:12 |
| entirely(3) | 55:12 92:20 151:10 |
| entirety(1) | 146:20 |
| entities(13) | 43:15 43:25 44:3 80:23 81:18 117:1 117:8 118:20 118:22 119:5 127:7 127:22 176:24 |
| entitled(29) | 29:19 30:3 45:7 47:17 47:20 52:15 75:23 77:9 77:19 78:3 83:10 95:11 98:15 113:16 121:14 130:11 155:17 167:1 167:12 174:1 174:1 177:14 189:11 192:23 193:7 195:7 195:16 197:7 197:8 |
| entitlement(3) | 171:9 192:6 204:2 |
| entitlements(1) | 191:3 |
| entity(4) | 48:24 48:24 91:5 124:24 |
| entry(1) | 144:21 |
| envisioned(1) | 123:6 |
| eos(2) | 10:30 10:30 |
| ephraim(1) | 10:43 |
| equal(3) | 76:9 76:9 206:4 |
| equally(1) | 65:11 |
| equitable(6) | 53:14 73:21 133:2 137:11 171:10 173:14 |
| equity(14) | 25:13 25:16 25:20 25:24 26:2 28:19 28:21 28:25 29:6 29:14 38:19 42:20 43:9 44:20 |
| equity."(1) | 168:23 |
| equivalency(1) | 126:15 |
| equivalent(6) | 120:7 120:16 126:14 126:24 126:25 190:22 |
| erisa(48) | 21:25 22:2 22:7 22:15 22:19 22:23 22:25 23:6 23:8 23:12 23:13 23:17 23:21 24:4 24:5 24:8 24:11 24:14 24:15 24:19 24:23 24:25 25:1 25:4 28:3 28:4 28:23 30:17 30:25 32:4 32:18 32:23 33:2 34:4 34:5 34:20 35:19 35:24 36:7 36:11 37:2 37:6 39:9 39:18 39:19 40:18 46:11 46:17 |
| erisa's(1) | 25:5 |
| eroded(1) | 25:14 |
| esop(33) | 22:16 22:17 23:8 23:9 23:11 25:24 26:1 26:15 26:24 26:25 27:2 27:5 27:6 27:13 34:9 34:11 34:18 35:18 35:25 36:21 36:21 36:22 36:22 36:25 37:4 37:5 38:5 39:19 40:18 42:16 48:24 49:2 |
| esop's(5) | 22:21 27:12 37:1 41:17 41:17 |
| especially(4) | 118:7 142:2 173:8 186:11 |
| esq(128) | 1:24 1:25 1:26 1:27 1:34 2:6 2:7 2:14 2:15 2:21 2:22 2:30 2:37 3:5 3:6 3:12 3:13 3:14 3:15 3:21 3:22 3:29 3:30 3:37 4:6 4:7 4:13 4:14 4:15 4:16 4:17 4:18 4:19 4:25 4:26 4:33 4:39 5:5 5:11 5:12 5:13 5:19 5:26 5:32 5:39 6:5 6:12 6:20 6:26 6:32 6:33 6:34 6:40 7:5 7:10 7:18 7:19 7:25 7:35 7:39 7:43 8:6 8:8 8:10 8:14 8:15 8:16 8:17 8:21 8:30 8:34 8:36 8:38 8:40 8:42 9:8 9:10 9:11 9:13 9:15 9:17 9:21 9:23 9:25 9:31 9:36 9:40 9:42 10:5 10:9 10:13 10:17 10:19 10:21 10:23 10:27 10:31 10:35 10:37 10:39 10:43 11:6 11:12 11:17 11:21 11:25 11:26 11:33 11:37 11:42 11:44 12:6 12:9 12:10 12:14 12:16 12:22 12:26 12:31 12:33 12:35 13:11 13:20 13:25 13:29 13:34 13:38 13:42 |
| essence(3) | 41:1 45:13 66:5 |
| essential(1) | 32:3 |
| essentially(19) | 20:18 25:7 29:20 36:16 37:10 40:2 48:14 48:19 50:5 58:13 59:25 69:21 73:1 83:5 121:10 123:7 139:20 140:4 141:7 |
| establish(2) | 65:14 190:18 |
| estate(56) | 45:21 46:8 55:14 55:19 55:20 61:20 61:22 66:4 70:9 70:15 71:1 71:22 73:10 78:11 85:22 85:23 88:22 90:2 90:15 91:23 109:14 110:5 111:2 111:8 115:10 115:10 115:14 115:14 116:3 131:22 131:22 131:24 132:11 132:14 134:25 136:6 136:7 135:22 154:3 155:22 157:19 162:9 179:3 179:14 179:14 180:4 180:14 180:20 182:4 182:5 182:8 182:9 191:25 192:2 192:3 192:4 |
| estates(2) | 170:12 180:17 |
| esther(1) | 7:43 |
| estimate(2) | 100:8 100:24 |
| estimation(2) | 16:21 183:11 |
| etc(1) | 124:16 |
| evade(2) | 103:12 109:12 |
| evaluate(1) | 119:14 |
| evelyn(1) | 92:12 |
| even(33) | 23:7 28:9 28:11 29:10 35:22 39:12 41:16 42:19 50:8 55:5 66:17 96:24 124:19 124:19 125:23 126:15 136:13 149:11 149:14 152:21 153:10 154:18 160:24 168:2 174:2 174:6 188:2 191:24 194:25 195:10 196:5 202:17 207:4 |
| event(2) | 119:20 155:13 |
| events(1) | 121:1 |
| eventually(2) | 97:1 114:16 |
| ever(6) | 35:19 50:8 97:3 121:11 171:25 173:21 |
| every(5) | 38:21 52:1 67:9 78:23 110:24 |
| everybody(3) | 47:13 64:13 95:2 |
| everyone(8) | 14:3 14:19 15:18 26:23 109:21 175:2 193:4 212:7 |
| everyone's(1) | 88:15 |
| everything(9) | 54:9 97:22 130:5 187:10 188:9 189:1 189:10 197:23 211:20 |
| evidence(13) | 51:4 52:16 66:16 70:12 134:7 138:21 164:5 164:12 193:8 193:10 194:1 197:15 205:15 |
| evident(2) | 24:9 25:22 |
| evidentiary(6) | 65:13 65:22 66:14 152:2 193:9 201:15 |
| exact(3) | 94:17 96:8 107:24 |
| exactly(10) | 41:5 45:4 68:2 82:17 113:14 126:21 136:22 140:5 198:16 212:6 |
| examination(3) | 208:24 209:1 209:3 |
| examine(1) | 25:5 |
| examiner(19) | 55:20 62:19 63:16 63:17 66:22 68:11 69:20 69:21 70:1 70:5 70:13 72:1 72:2 80:2 80:7 80:14 109:1 172:21 203:2 |
| examiner's(7) | 25:22 27:17 66:22 72:10 80:3 80:5 93:11 |
| example(13) | 17:18 22:25 53:25 68:7 88:21 108:6 110:1 124:22 130:10 130:19 133:5 134:3 159:11 |
| exceed(1) | 134:3 |
| exceedingly(2) | 139:7 181:14 |
| except(3) | 135:20 141:14 181:19 |
| exception(2) | 132:17 156:19 |
| excess(1) | 175:3 |
| exchange(12) | 78:17 120:2 125:20 129:23 153:24 184:13 185:10 185:17 186:3 186:1 186:19 186:21 188:11 188:18 188:23 189:19 194:22 |
| exchanging(5) | 187:15 187:22 187:23 188:9 188:17 |
| excise(1) | 67:5 |
| exclusion(4) | 106:8 161:13 161:15 162:19 |
| exclusions(2) | 158:24 162:18 |
| exclusive(2) | 106:10 106:11 |
| exclusively(5) | 165:9 165:10 167:20 |
| excruciating(1) | 200:18 |
| exculpate(3) | 58:13 59:2 59:9 |
| exculpated(1) | 89:14 |
| exculpation(40) | 31:3 31:5 31:9 31:16 31:20 31:23 31:23 32:4 32:8 32:23 45:18 46:5 46:13 46:14 46:17 46:19 53:17 58:12 58:12 59:4 62:5 72:6 87:3 87:7 87:9 87:11 87:20 87:21 88:11 88:17 88:21 89:2 89:7 89:11 89:19 89:24 90:4 90:14 93:16 93:19 |
| exculpation/release(1) | 88:1 |
| exculpations(1) | 88:25 |
| excuse(8) | 38:19 65:5 92:20 128:5 136:19 163:20 168:18 198:4 |
| executive(1) | 66:24 |
| executory(7) | 59:20 60:8 60:19 60:21 91:24 92:6 92:11 |
| exercise(7) | 32:2 52:4 70:24 155:4 193:5 206:4 207:25 |
| exercised(1) | 154:4 |
| exerting(1) | 91:4 |
| exhibit(5) | 108:8 166:19 193:13 194:10 194:11 |
| exide(1) | 207:11 |
| exist(5) | 38:14 115:19 118:25 168:23 |
| existed(2) | 112:16 112:18 |
| existence(1) | 188:14 |
| existing(3) | 43:20 53:19 117:6 |
| exists(3) | 69:1 106:20 117:7 |
| exit(1) | 174:23 |
| expanded(1) | 170:2 |
| expanding(1) | 65:21 |
| expansively(1) | 45:11 |
| expect(2) | 47:22 174:10 |
| expectation(4) | 74:19 187:14 187:19 188:18 |
| expenditure(1) | 73:21 |
| expense(3) | 44:5 91:17 206:10 |
| expenses(5) | 70:25 77:1 77:8 78:4 78:7 |
| experience(1) | 126:4 |
| expert(3) | 68:16 69:13 80:19 |
| expires(1) | 106:1 |
| expiry(1) | 162:9 |
| explain(1) | 135:19 |
| explained(2) | 87:1 137:15 |
| explains(1) | 194:24 |
| explicit(1) | 29:5 |
| explicitly(4) | 24:5 24:6 151:8 168:25 |
| explicitness(1) | 171:2 |
| explodes(1) | 140:8 |
| exploitation(1) | 21:24 |
| exposed(2) | 66:23 122:11 |
| exposure(2) | 155:21 169:16 |
| express(1) | 97:14 |
| expressively(1) | 76:16 |
| expressly(3) | 143:18 149:10 152:12 |
| extend(2) | 38:6 176:24 |
| extends(1) | 31:21 |
| extension(1) | 58:23 |
| extensively(2) | 168:3 196:7 |
| extent(39) | 17:13 20:2 23:3 23:11 23:16 23:19 26:14 29:13 31:17 32:2 46:15 46:16 48:22 59:10 61:12 61:15 71:24 87:12 88:4 89:3 90:1 90:3 93:22 97:23 97:3 105:4 113:17 133:10 155:16 166:9 171:22 178:15 178:22 179:20 180:15 180:24 190:16 209:14 212:3 |
| extinguished(11) | 36:3 36:4 36:13 49:24 50:6 50:11 50:14 51:1 51:8 51:13 51:17 |
| extinguishment(1) | 41:8 |
| extra(1) | 29:3 |
| extraordinary(1) | 115:23 |
| extremely(3) | 50:7 82:25 144:16 |
| f.3rd(2) | 142:6 145:21 |
| face(14) | 53:14 76:7 121:1 155:20 184:11 189:18 |
| facilitate(1) | 142:17 |
| facing(1) | 116:21 |
| fact(58) | 24:4 24:4 24:5 29:4 30:8 30:9 30:23 32:19 34:13 42:9 50:10 51:3 51:25 62:7 62:10 63:2 64:6 64:7 68:5 85:6 91:6 92:2 97:18 114:13 125:9 126:17 132:2 135:20 135:25 138:13 144:7 146:21 150:13 152:8 157:23 173:9 173:18 175:10 176:9 176:10 177:21 178:2 182:19 182:21 182:24 182:25 183:20 191:5 193:5 194:15 197:6 197:15 197:17 202:18 202:21 203:1 205:9 205:10 |
| factor(9) | 118:19 118:19 118:22 119:1 119:2 119:7 119:24 119:25 125:17 |
| factors(6) | 118:9 119:2 119:9 119:22 119:24 146:23 |
| facts(12) | 26:19 34:2 110:3 110:4 110:6 111:1 111:10 183:15 184:19 184:21 195:7 200:3 |
| factual(4) | 164:4 185:23 208:21 209:6 |
| fail(3) | 148:18 148:19 171:23 |
| failed(3) | 27:18 122:20 200:22 |
| failing(2) | 27:24 27:25 153:14 |
| fails(2) | 125:21 177:23 |
| failure(6) | 22:4 22:6 121:19 123:13 123:16 125:23 |
| failures(1) | 24:10 |
| fair(20) | 51:18 53:13 70:2 73:20 80:5 107:21 119:14 119:5 120:4 120:15 122:15 125:19 130:1 133:2 134:22 137:11 144:5 165:12 171:10 182:12 |
| fairest(1) | 143:19 |
| fairly(3) | 70:19 80:14 119:6 |
| fairness(1) | 148:12 |
| faith(8) | 58:5 58:18 67:15 67:17 107:1 149:4 164:12 171:7 |
| fall(6) | 102:5 121:19 162:18 180:22 195:14 198:20 |
| fallback(1) | 137:24 |

| Word | Page:Line | Word | Page:Line | Word | Page:Line | Word | Page:Line |
|---|---|---|---|---|---|---|---|
| **fallon**(2) 12:16 23:1 | | **first**(54) 15:1 17:15 18:20 19:6 25:13 26:25 31:9 48:10 50:19 53:12 62:20 70:6 73:7 75:7 77:16 82:18 82:21 86:13 87:8 97:5 97:18 99:11 99:12 102:6 103:16 109:4 115:16 116:4 116:4 116:5 118:11 120:25 126:13 132:7 134:1 137:8 140:19 141:23 148:22 159:6 159:8 161:18 164:22 165:7 165:20 176:9 178:2 181:18 190:19 191:8 193:25 194:7 196:15 206:18 | **for**(301) 1:2 1:23 2:4 2:20 2:29 2:35 3:4 3:11 3:28 4:4 4:32 5:4 5:10 5:24 5:30 6:4 6:10 6:17 6:31 6:39 7:4 7:16 7:33 7:38 8:4 8:24 8:33 9:4 9:7 9:27 9:34 10:4 10:9 10:16 10:30 10:34 10:42 11:4 11:18 11:15 11:20 11:24 11:28 11:32 11:35 12:5 12:8 12:13 12:19 12:25 12:29 12:37 12:42 13:4 13:8 13:14 13:18 13:23 13:28 13:32 13:37 13:41 14:23 17:7 17:18 17:20 18:18 18:23 19:1 19:24 20:1 20:14 21:11 22:14 22:25 23:6 23:21 24:8 24:10 24:14 26:1 26:17 26:18 27:6 28:3 30:18 32:5 32:8 32:17 34:16 34:17 34:20 36:4 37:7 37:11 37:14 37:24 38:14 39:4 39:25 40:16 41:1 41:2 44:12 44:16 46:6 46:24 47:9 47:10 47:15 47:17 48:10 50:4 50:8 52:10 52:10 53:18 53:19 53:25 54:18 54:21 55:11 57:15 57:20 57:24 58:20 59:22 60:1 60:4 60:5 61:5 61:7 62:8 63:1 63:5 64:4 64:19 65:2 65:9 67:3 67:10 67:24 68:3 68:6 69:2 69:8 69:13 69:13 69:14 70:12 70:14 71:9 72:23 73:11 74:2 77:1 77:8 77:18 77:24 78:2 78:4 78:6 78:10 78:10 78:17 78:22 78:25 79:7 79:8 79:21 79:23 80:1 80:14 81:15 83:22 84:6 84:10 84:15 85:9 85:18 88:2 88:3 88:21 89:20 90:16 90:25 91:3 91:17 92:4 92:10 92:19 93:6 96:3 96:9 96:12 96:20 97:6 97:7 97:9 98:3 98:20 99:1 100:3 101:13 101:14 101:15 101:18 102:15 102:20 102:22 103:2 104:3 104:8 104:14 104:17 104:25 105:5 105:18 105:11 105:24 105:25 106:5 106:15 108:7 109:13 110:1 110:18 111:11 113:6 113:11 113:24 114:19 114:20 114:20 115:17 117:12 117:1 117:19 119:6 119:23 120:2 120:12 120:22 121:8 122:1 122:10 122:14 122:17 123:3 123:8 123:9 124:22 124:25 125:8 125:17 125:20 125:21 126:19 127:17 127:22 128:5 128:24 129:2 129:8 129:16 129:23 130:1 130:10 130:19 131:14 131:16 133:3 133:5 133:14 133:14 134:3 134:16 135:15 135:18 136:10 137:1 137:2 137:6 137:19 138:10 140:1 140:2 140:17 141:14 141:23 141:24 143:2 144:11 144:23 146:24 147:20 148:3 148:6 149:7 150:15 151:11 | **forman**(1) 1:32 |
| **falls**(4) 29:25 88:24 137:17 137:20 | | | | | | **former**(5) 9:27 31:14 102:22 103:1 112:6 |
| **false**(1) 67:4 | | | | | | **forms**(1) 173:12 |
| **faltas**(2) 12:5 12:6 | | | | | | **formula**(2) 143:25 144:13 |
| **famous**(1) 86:20 | | | | | | **formulating**(1) 31:21 |
| **far**(17) 27:20 36:19 54:18 72:15 113:9 113:11 117:22 130:16 130:16 131:19 132:22 134:2 141:13 157:13 184:8 200:5 211:8 | | | | | | **formulation**(4) 31:11 31:18 31:24 59:6 |
| | | | | | | **forth**(11) 21:3 50:1 61:18 80:9 87:11 138:14 143:25 145:17 148:4 207:16 207:18 |
| **fargo**(1) 12:25 | | | | | | **forum.''**(1) 168:13 |
| **fashion**(1) 146:7 | | **five**(1) 186:1 | | | | **forward**(16) 15:7 27:4 27:19 53:21 61:7 62:7 62:11 63:2 63:14 63:22 67:5 70:10 74:1 123:19 123:24 150:8 |
| **fault**(28) 64:16 120:9 120:11 120:11 120:21 120:24 121:13 121:16 121:18 121:25 122:12 122:18 122:25 123:1 123:4 123:13 124:8 124:16 125:14 126:16 126:2 127:5 134:8 134:21 143:21 143:24 144:4 144:13 | | **five-minute**(2) 175:20 175:24 | | | | **found**(28) 15:5 23:5 23:20 36:7 38:6 39:20 39:24 40:1 40:8 40:9 40:12 40:24 42:14 45:25 55:21 55:21 80:4 80:7 80:14 101:10 103:6 104:20 107:7 120:23 150:7 162:2 175:21 203:2 |
| | | **fixed**(2) 147:9 147:11 | | | | |
| | | **flagrant**(2) 66:23 192:13 | | | | |
| | | **flesh**(2) 153:13 158:11 | | | | |
| | | **flom**(1) 9:30 | | | | |
| **favor**(1) 89:25 | | **flood**(1) 198:15 | | | | **foundation**(12) 6:17 6:18 6:19 13:9 13:10 102:11 102:11 102:22 102:25 114:21 129:18 129:18 |
| **favored**(1) 142:22 | | **floor**(2) 2:9 2:25 | | | | |
| **fax**(1) 14:18 | | **florsheim**(1) 12:9 | | | | |
| **feasible**(1) 118:24 | | **flow**(2) 48:5 182:8 | | | | **foundations**(7) 102:6 102:12 102:14 103:7 103:13 129:11 130:24 |
| **featherworks**(1) 203:24 | | **focus**(7) 62:13 104:22 119:8 158:8 162:11 188:7 208:6 | | | | |
| **feature**(1) 117:16 | | | | | | |
| **featured**(1) 141:13 | | | | | | **four**(14) 85:10 118:9 118:11 119:1 119:7 119:24 120:1 125:17 157:24 162:3 176:12 193:24 200:24 206:20 |
| **february**(1) 121:11 | | **focused**(6) 45:24 94:3 94:6 95:10 117:15 182:24 | | | | |
| **federal**(4) 121:2 142:22 146:8 173:14 | | | | | | |
| **fee**(1) 158:3 | | | | | | |
| **fee-sharing**(1) 172:1 | | **focuses**(1) 119:3 | | | | **fourth**(1) 194:6 |
| **feel**(1) 116:1 | | **focusing**(2) 109:22 210:3 | | | | **fractional**(1) 70:20 |
| **fees**(19) 53:19 60:1 60:4 61:5 61:7 61:15 72:5 77:1 77:8 77:15 77:16 77:18 84:22 78:22 78:24 85:12 85:19 86:7 163:23 | | **fold**(1) 163:15 | | | | **frame**(1) 187:12 |
| | | **follow**(5) 42:14 123:10 129:14 149:3 | | | | **framed**(1) 187:14 |
| | | **followed**(4) 38:21 70:22 97:5 122:13 | | | | **francisco**(1) 8:10 |
| | | **following**(7) 62:24 124:7 128:9 136:12 149:6 167:17 192:16 | | | | **frank**(2) 12:19 12:20 |
| **feld**(3) 5:10 9:39 138:10 | | | | | | **frankel**(1) 11:9 |
| **fell**(2) 14:21 56:17 | | | | | | **frankly**(5) 43:14 149:1 151:18 174:8 153:15 153:21 |
| **felt**(1) 212:19 | | | | | | |
| **few**(5) 14:10 112:1 141:11 151:23 175:22 | | **food**(1) 64:6 | | | | **fraud**(7) 23:25 48:1 93:25 152:9 153:5 |
| **fiduciaries**(6) 23:3 23:5 34:11 45:22 46:8 88:22 | | **footnote**(3) 42:25 172:19 209:25 | | | | **fraudulent**(34) 102:16 102:24 103:2 103:4 103:9 103:18 104:11 104:14 106:5 106:8 106:11 107:3 107:9 109:16 111:9 112:18 113:3 131:25 132:1 133:4 133:8 133:13 138:5 139:4 159:2 159:23 160:12 160:19 161:1 169:23 171:16 174:9 177:17 179:5 |
| **fiduciary**(12) 22:14 22:19 22:21 23:18 27:13 27:13 34:17 66:4 94:23 94:25 95:3 95:8 | | | | | | |
| **field**(1) 89:8 | | | | | | |
| **fifth**(1) 38:23 | | | | | | |
| **fight**(4) 83:24 144:1 150:5 157:11 | | | | | | **free**(4) 32:1 32:5 67:3 180:18 |
| **figure**(2) 110:24 193:3 | | **for**(124) 152:6 152:12 152:18 152:20 152:21 153:7 153:8 153:11 153:13 153:24 154:2 154:6 154:18 154:19 154:22 154:22 155:17 155:19 155:22 157:3 160:15 161:1 161:17 162:1 162:17 163:9 163:11 163:18 163:23 164:14 165:9 165:18 167:9 169:1 169:12 169:13 171:1 171:23 172:6 172:13 172:18 172:19 173:13 173:24 174:2 174:1 174:22 175:5 175:8 175:17 175:19 175:22 176:3 176:9 176:20 176:21 178:3 180:7 181:6 181:14 181:19 181:24 182:11 183:9 183:11 183:12 183:21 183:25 184:13 185:12 186:5 186:6 186:12 186:17 186:20 187:8 187:22 187:23 188:20 188:23 189:15 189:16 190:3 190:5 190:18 191:18 191:19 192:16 192:17 193:4 194:2 194:3 194:6 194:9 195:5 195:6 195:12 196:1 196:2 197:25 198:5 200:19 202:22 203:16 204:4 204:14 204:16 205:15 206:4 207:24 209:16 209:25 210:12 210:20 211:2 211:2 211:18 211:23 212:8 212:11 212:16 212:17 212:20 212:22 | | | | **freedom**(1) 32:19 |
| **file**(3) 94:11 108:15 108:17 | | | | | | **freeze**(1) 212:8 |
| **filed**(26) 14:15 19:13 19:20 21:4 56:14 56:16 57:2 57:19 75:18 75:21 76:17 88:18 112:17 129:13 129:20 132:8 147:21 151:2 151:24 172:17 174:20 176:11 178:6 180:9 186:14 194:11 | | | | | | **frequently**(1) 34:1 |
| | | | | | | **friday**(3) 14:15 14:18 178:6 |
| | | | | | | **friedlander**(1) 184:25 |
| | | | | | | **friedman**(1) 12:30 |
| **files**(2) 174:16 174:16 | | | | | | **frivolous**(10) 53:15 58:9 61:13 63:9 71:12 71:18 73:22 80:4 86:14 180:19 |
| **filing**(2) 85:6 198:13 | | | | | | |
| **final**(7) 19:19 21:8 45:17 61:24 119:2 130:8 212:2 | | | | | | |
| **finally**(6) 44:9 53:20 81:1 119:1 195:4 212:10 | | | | | | |
| **finance**(1) 54:24 | | | | | | |
| **financial**(4) 108:10 118:21 118:23 119:10 | | | | | | |
| **find**(10) 43:5 46:21 68:22 77:22 173:19 178:8 203:3 207:5 211:19 212:5 | | **forced**(6) 119:6 120:2 121:17 122:14 130:2 136:20 | | | | |
| **finding**(3) 39:22 93:25 168:16 | | **foregoing**(1) 213:5 | | | | |
| **findings**(4) 23:17 23:19 72:11 211:24 | | **foreign**(1) 146:10 | | | | |
| **finds**(6) 133:2 134:7 148:9 191:7 209:14 209:22 | | **foremost**(1) 120:25 | | | | |
| | | **forever**(1) 108:19 112:15 | | | | |
| **fine**(5) 15:3 18:17 43:21 54:12 201:5 | | **forget**(3) 112:23 146:5 154:25 | | | | |
| **finger**(1) 3:20 | | **forgive**(1) 129:8 | | | | |
| **firm**(3) 49:20 62:22 129:12 | | **form**(4) 154:12 166:15 169:6 211:12 | | | | |
| **firms**(1) 117:23 | | | | | | |

| Word | Page:Line | Word | Page:Line | Word | Page:Line | Word | Page:Line |
|---|---|---|---|---|---|---|---|
| **from**(128) 15:13 15:14 21:24 22:9 22:12 22:21 22:24 22:25 25:8 25:22 25:25 26:22 27:17 28:1 32:5 32:6 35:18 36:20 37:15 38:3 40:25 41:10 41:15 44:13 49:20 53:5 53:22 58:14 59:2 59:7 59:17 59:19 61:22 63:13 65:19 67:6 67:21 67:25 68:9 68:14 77:22 80:14 82:13 85:22 86:19 86:25 87:25 88:17 89:5 89:14 89:25 92:3 97:7 101:3 102:10 104:1 110:12 112:9 114:5 114:18 115:5 115:7 115:15 117:19 118:20 122:5 123:10 124:2 125:13 127:7 127:9 129:10 129:12 130:19 131:18 132:8 132:25 133:11 134:25 136:5 142:3 142:11 142:19 142:20 143:12 144:5 144:11 144:22 145:1 146:17 146:18 147:18 147:23 163:9 167:25 168:25 172:23 175:6 176:22 176:24 177:3 177:9 177:21 180:13 181:12 181:19 181:20 183:19 184:21 185:1 185:23 190:1 195:15 198:23 199:8 199:25 200:9 202:24 202:25 203:3 204:2 204:13 206:18 207:21 209:9 210:6 211:13 213:6 | | **get**(71) 15:19 17:18 17:23 29:20 30:4 34:6 34:13 34:13 45:11 45:13 47:8 48:25 49:1 52:11 52:14 56:8 63:15 65:19 66:2 70:8 71:10 71:10 71:15 73:17 76:18 77:3 78:1 78:20 78:22 83:6 85:22 85:23 86:5 91:12 94:13 95:3 98:19 98:25 101:22 102:10 112:21 113:16 121:14 122:19 124:18 126:11 134:3 136:18 136:21 165:10 165:21 165:20 165:22 165:22 165:24 172:10 172:11 175:4 182:10 188:2 189:4 191:21 191:22 192:9 202:10 204:2 211:2 211:8 211:8 211:19 212:5 | | **good**(46) 14:3 14:4 14:5 15:25 16:7 19:4 20:13 35:2 49:9 53:18 58:15 58:18 67:15 67:17 70:13 75:5 82:12 82:12 83:20 85:8 86:3 88:6 92:9 93:6 101:4 102:9 107:1 109:8 112:4 113:5 116:14 128:1 128:16 130:15 138:9 139:15 140:7 157:21 164:12 164:20 171:7 181:13 187:7 195:19 197:5 205:8 | | **hannafan**(8) 7:10 7:10 7:11 128:16 128:17 128:17 128:17 128:22 |
| | | **gets**(10) 51:12 66:16 110:12 116:4 133:6 143:15 152:17 165:11 175:2 192:5 | | | | **happen**(6) 63:19 67:14 138:2 148:23 168:3 174:4 |
| | | | | **gordon**(6) 2:4 8:36 11:36 48:8 63:4 176:5 | | **happened**(12) 25:19 42:16 63:8 63:8 79:12 83:25 186:21 198:5 199:14 203:12 209:17 209:18 |
| | | **getting**(15) 18:9 30:5 65:17 68:6 82:19 100:8 120:15 122:13 122:17 134:10 138:2 143:16 154:25 155:2 199:24 | | **got**(16) 35:20 52:2 70:13 72:15 83:19 87:10 90:20 111:15 117:3 122:22 123:7 125:25 126:24 168:17 172:12 207:5 | | **happening**(2) 43:23 107:17 |
| **front**(3) 15:17 15:18 89:12 **frustrate**(1) 155:10 **fulcrum**(2) 169:4 169:10 **fulfill**(1) 112:25 **full**(17) 36:17 47:21 83:13 95:11 95:13 95:15 95:19 121:19 123:3 124:7 124:11 149:4 156:8 167:11 186:10 203:15 212:6 | | **gift**(5) 29:16 29:17 30:4 30:6 191:24 **gifted**(1) 43:2 **gifting**(3) 42:24 44:16 208:14 **gifts**(1) 191:22 **give**(25) 29:18 52:2 67:23 71:4 91:8 96:7 108:10 115:25 159:25 160:21 161:21 162:1 162:11 162:13 163:7 166:20 166:23 169:14 173:1 182:16 184:19 192:4 192:11 209:2 211:4 | | **gotten**(5) 133:21 145:11 146:19 146:21 206:9 **government**(1) 39:14 **graem**(1) 8:14 **grand**(1) 2:16 **grant**(2) 15:17 19:25 **granted**(4) 56:12 57:4 94:12 124:17 **granting**(1) 144:12 **great**(26) 4:32 11:24 13:41 14:12 22:14 22:22 27:3 27:11 27:14 27:15 27:21 27:25 28:1 49:6 49:21 50:2 50:4 50:12 51:2 51:15 51:20 64:12 74:24 132:9 170:2 206:23 | | **happens**(5) 116:5 121:12 122:1 135:8 148:21 **happily**(1) 193:4 **happy**(12) 57:24 99:21 100:22 115:18 116:1 116:9 129:9 165:14 166:20 181:7 198:17 204:19 **hard**(1) 88:16 **hardly**(1) 86:24 **harm**(4) 70:21 208:25 209:5 209:10 **harms**(1) 180:11 **harrisburg**(1) 1:43 **harrison**(2) 5:37 16:1 **hartford**(2) 3:32 19:16 **harvey**(1) 16:1 **harvy**(1) 5:37 |
| **fullest**(3) 87:12 89:3 166:8 **fully**(4) 81:24 121:25 141:14 141:16 **fun**(2) 84:7 173:19 **function**(2) 70:24 73:25 **fund**(2) 10:4 54:24 **fundamental**(5) 21:25 22:6 64:16 186:16 194:19 | | **given**(19) 26:15 44:17 79:23 82:15 85:4 103:9 107:12 120:5 125:19 150:12 170:6 170:10 195:6 197:6 197:15 201:13 201:14 210:22 211:24 **gives**(6) 24:20 87:14 91:19 91:20 106:7 190:22 | | **greater**(3) 32:20 72:23 124:2 **greatest**(1) 140:2 **greatly**(1) 27:8 **greg**(1) 9:8 **greissman**(1) 12:26 **grew**(1) 206:14 **grippo**(1) 7:17 **gropper**(1) 63:6 | | **has**(127) 14:16 14:16 14:23 15:7 16:3 19:8 19:18 19:19 20:17 24:2 25:7 31:1 35:8 35:12 38:23 38:23 38:24 38:25 39:2 39:11 41:15 45:4 45:18 50:2 50:6 50:22 51:15 52:16 56:2 56:11 57:4 58:12 60:14 60:17 63:20 64:3 64:14 64:18 64:19 64:22 67:9 67:10 67:15 68:10 68:12 68:17 68:18 69:7 70:11 72:1 73:14 75:10 78:7 86:16 87:1 90:21 91:3 91:15 92:12 94:11 95:1 96:6 98:4 98:20 102:3 102:21 103:6 104:13 105:17 106:13 106:14 108:8 110:5 116:3 117:14 121:19 121:20 122:19 123:13 123:16 124:23 126:23 130:6 130:9 130:25 131:22 131:24 132:2 133:25 135:6 135:10 144:19 147:22 149:15 151:20 152:8 153:8 154:18 159:14 160:24 161:15 167:2 168:22 170:1 171:7 171:25 172:5 178:19 179:1 180:15 181:1 182:5 184:20 189:19 190:21 191:3 193:13 195:20 201:25 204:24 204:25 205:25 206:22 207:12 208:13 211:10 212:11 |
| **fundamentally**(1) 79:19 **funding**(1) 172:13 **funds**(5) 73:21 75:22 75:24 155:6 165:9 **further**(7) 28:18 54:11 59:4 74:13 172:7 189:20 210:12 | | **giving**(4) 30:2 77:16 85:3 195:17 **glad**(3) 162:22 164:20 210:18 **glancing**(2) 181:15 181:16 **glasses**(1) 93:13 **glatt**(5) 8:29 128:8 129:6 131:15 190:4 **global**(4) 12:5 138:16 138:19 138:25 | | **gross**(2) 32:7 209:10 **grossly**(2) 206:23 207:1 **ground**(1) 204:22 **grounds**(4) 55:5 130:7 145:3 202:22 **group**(2) 54:6 127:12 **guarantee**(1) 194:6 **guaranteed**(1) 169:11 | | |
| **furthermore**(1) 163:20 **future**(13) 54:17 55:3 57:14 59:11 120:8 120:10 120:20 121:9 122:13 125:7 130:1 151:12 188:25 | | **globally**(1) 138:13 **goal**(1) 21:25 **goes**(14) 22:10 61:20 83:7 95:9 107:16 108:7 123:5 130:15 133:17 134:9 179:18 194:21 206:5 207:20 | | **guarantor**(1) 30:10 **guess**(25) 32:7 33:24 82:16 90:20 92:15 95:10 103:22 103:23 103:23 103:24 105:9 116:7 140:19 146:3 148:15 148:18 151:16 166:6 179:24 187:4 205:1 207:10 209:13 210:5 211:7 | | **hasbith**(2) 42:6 42:7 **hasn't**(1) 156:7 **hasn't**(1) 172:25 **hassle**(1) 43:14 **hauck**(1) 42:4 **hauer**(3) 5:10 9:39 138:10 |
| **gains**(1) 63:24 **game**(1) 138:15 **garrison**(1) 11:16 **gary**(1) 9:23 **gate**(3) 70:24 71:9 73:24 **gates**(2) 43:8 49:20 **gave**(4) 21:23 183:1 193:12 203:19 **gavin**(1) 11:37 **gearson**(1) 5:26 **geddes**(1) 5:18 **gelber**(10) 5:32 16:3 16:7 16:8 16:19 17:3 17:6 187:7 187:8 189:2 | | **going**(104) 26:13 27:9 28:1 34:15 42:3 44:3 44:11 44:11 44:13 51:7 52:10 52:14 53:12 53:15 55:8 57:12 58:7 60:1 63:14 63:20 71:4 71:5 71:10 71:24 73:18 75:1 75:7 76:2 76:3 76:15 78:16 78:22 81:9 82:17 83:6 84:4 84:5 86:12 88:10 89:13 90:10 90:18 94:18 95:2 96:4 96:10 96:16 96:17 96:20 97:1 97:23 98:4 98:9 100:17 105:17 105:19 106:17 108:4 111:19 113:1 115:23 119:8 121:1 122:6 123:19 123:24 126:18 124:12 134:14 134:19 136:2 137:10 138:2 138:18 138:24 139:1 139:16 139:19 140:22 145:16 150:8 151:12 156:2 160:2 162:14 163:15 163:17 172:11 174:5 174:17 178:13 181:16 186:20 190:6 193:7 194:25 199:19 200:10 209:17 210:25 211:11 211:23 212:7 | | **gump**(7) 5:10 9:39 47:10 93:7 113:6 138:10 163:16 **guon**(1) 6:40 **gussis**(1) 6:39 **gux**(2) 83:11 86:2 **habit**(1) 101:15 **had**(72) 16:10 16:16 16:20 23:7 25:5 26:6 26:8 27:5 27:14 32:3 39:7 41:16 42:10 42:13 43:17 46:10 51:4 55:23 56:7 57:11 57:13 60:12 61:3 63:5 63:6 68:11 74:6 84:7 89:1 93:14 95:7 99:13 100:14 104:22 105:4 106:22 114:11 114:22 128:18 132:10 135:19 140:23 143:17 151:16 154:4 157:11 157:24 163:7 171:17 171:18 176:7 180:6 183:20 185:24 187:13 187:20 191:9 191:9 192:8 197:8 197:16 197:16 198:2 198:8 199:5 199:7 199:12 199:13 200:17 200:17 202:13 212:15 | | |
| **general**(9) 39:22 59:4 64:9 66:11 138:13 142:21 163:24 206:8 209:20 **generally**(6) 17:14 33:6 63:20 140:21 140:21 140:24 **geneva**(1) 38:24 **gentlemen**(1) 85:4 **george**(2) 7:19 112:5 **gerber**(1) 149:17 **gerson**(24) 20:13 20:14 21:2 21:18 21:21 29:23 30:1 32:13 32:16 33:6 33:10 33:23 34:22 34:24 41:10 42:6 45:18 46:2 46:10 47:6 49:7 49:9 49:11 49:17 | | **golden**(15) 5:11 65:4 65:5 66:12 89:15 113:7 115:7 138:9 138:10 139:14 140:4 200:13 200:14 200:15 210:15 **golden's**(1) 139:18 **goldfarb**(2) 4:26 8:15 **goldis**(1) 11:42 **goldman**(3) 11:44 12:13 12:13 **gone**(5) 56:7 56:11 95:17 119:16 208:13 | | **hale**(1) 11:40 **half**(2) 100:25 199:21 **hand**(8) 24:12 71:4 83:8 161:12 161:13 161:23 195:5 208:14 **handicapped**(1) 180:5 **handier**(1) 166:23 **handled**(1) 139:7 **hands**(3) 153:18 153:20 173:13 **handwritten**(1) 197:19 **handy**(2) 166:20 196:17 | | |

| Word | Page:Line | Word | Page:Line | Word | Page:Line | Word | Page:Line |
|---|---|---|---|---|---|---|---|
| **have**(301) 14:7 14:9 14:14 14:19 15:4 15:13 15:16 16:11 17:4 17:14 17:14 17:16 18:1 18:3 18:7 18:8 18:10 18:12 19:13 27:3 27:6 28:24 30:19 31:4 31:25 32:1 32:17 32:22 34:9 34:16 37:23 38:7 39:22 39:23 40:1 40:24 41:20 41:24 42:13 43:8 43:23 44:15 45:10 46:5 46:9 46:21 47:16 47:18 47:24 48:1 49:25 52:25 53:22 53:23 54:12 54:14 54:16 54:17 55:2 55:3 55:7 58:2 58:11 58:15 58:20 59:1 59:5 59:10 59:16 59:21 63:11 63:11 64:1 64:3 65:17 67:3 67:7 68:3 68:21 68:23 68:24 69:3 69:16 70:2 70:17 70:20 70:22 71:6 71:14 72:25 74:5 75:10 77:14 80:4 80:13 80:24 81:6 81:22 82:1 82:15 83:8 83:20 85:1 85:3 85:5 87:5 87:8 87:16 87:25 89:5 90:11 91:1 91:15 91:20 92:6 92:15 92:17 92:21 93:1 93:10 94:6 94:23 95:1 95:18 95:25 96:17 96:21 97:20 97:22 97:24 97:25 98:9 98:10 98:11 98:23 99:1 99:9 99:14 99:16 99:17 99:18 100:12 101:9 101:11 101:20 102:6 103:7 103:10 103:15 104:1 104:16 104:25 105:6 105:17 106:17 106:21 108:23 110:17 110:18 111:17 112:1 112:23 113:9 113:13 113:17 113:25 114:8 114:9 114:10 114:12 114:13 114:24 116:1 116:24 117:5 119:11 119:12 119:16 120: 120:21 121:5 121:7 121:11 123:13 123:25 124:6 124:6 124:14 125:11 125:11 126:16 126:18 127:2 127:12 127:14 127:15 127:1 127:19 129:13 129:18 129:19 130:22 132:15 132:23 132:24 133:21 134:12 134:14 134:19 135:11 136:1 136:4 136:9 136:14 137:10 138:18 138:23 139:8 139: 140:2 140:6 140:15 140:19 141:14 141:15 141:20 141:22 143:13 143:17 144:1 144:2 144:8 145:11 145:24 145:25 146:6 146:9 146:15 146:19 146:21 147:9 147:21 148:1 150:5 150:13 150:18 150:19 152:22 154:8 154:10 154:15 155:11 156:9 157:3 157:6 157:7 157:11 157:15 158:7 158:19 158:21 161:7 162:21 163:25 165:5 166:20 167:10 168:11 168:20 169:6 169:8 169:17 169:22 170:19 171:15 171:18 172:22 174:20 175: 175:17 181:3 181:6 182:4 182:15 184:12 184:14 187:4 187:16 187:17 187:20 188:4 188:4 189:9 189:10 189:16 189:19 190:24 190:25 191:17 192:20 192:24 | **heard**(34) 16:4 20:4 48:10 49:7 49:22 54:20 55:22 63:5 65:15 67:13 68:15 74:10 80:18 86:15 98:17 102:13 112:8 115:6 129:14 131:18 132:2 132:22 134:16 141:1 146:17 146:18 163:14 165:4 176:19 179: 179:2 200:13 204:8 210:19<br>**hearing**(32) 15:13 16:20 16:24 16:25 20:17 49:13 54:17 57:13 57:20 66:18 68:14 74:5 75:21 80:15 83:25 102:14 102:18 114:11 119:18 120:21 121:14 122:18 129:16 136:3 173:20 173:22 176:8 192:15 197:13 200:19 210:22 213:2<br>**hearings**(3) 81:6 119:12 119:16<br>**hears**(1) 184:21<br>**heart**(1) 178:1<br>**hechinger's**(1) 107:5<br>**heels**(1) 94:2<br>**heightens**(1) 126:10<br>**heilbut**(1) 13:25<br>**held**(10) 39:11 70:17 73:16 91:15 120:12 130:12 145:8 155:22 170:1 185:24<br>**hello**(1) 147:3<br>**help**(1) 106:22<br>**helpful**(3) 140:17 182:2 209:2<br>**henderson**(1) 9:10<br>**hercules**(1) 2:23<br>**here**(90) 14:20 14:23 15:19 17:2 18:22 20:1 37:16 37:21 37:24 38:2 38:15 39:5 40:3 40:7 41:4 41:23 42:15 42:15 43:23 63:10 64:6 64:17 65:6 66:12 78:19 78:24 84:5 85:5 85:15 86:20 88:8 89:6 89:13 94:8 97:23 99:2 99:14 105:15 107:17 107:25 110:19 111:25 112:5 114:24 116:1 119:13 123:24 124:19 124:22 128:12 129:17 131:8 133:16 133:16 135:14 136:2 137:8 141:16 142:13 145:6 147:8 148:6 162:22 169:4 170:5 171:15 172:17 178:9 180:12 184:17 185:5 193:23 198:8 201:7 201:13 203:7 204:22 204:22 206:6 207:12 209:18 210:15 212:20<br>**here's**(2) 33:19 119:25<br>**hereby**(1) 164:13<br>**herein**(1) 147:24<br>**herring**(2) 96:9 96:23<br>**hey**(1) 94:13<br>**he's**(1) 182:1<br>**high**(1) 99:17<br>**highlight**(1) 159:4<br>**highly**(1) 55:21<br>**him**(8) 15:14 67:8 68:21 151:18 181:25 188:12 189:21 209:4<br>**himself**(2) 135:10 197:6<br>**his**(29) 19:2 43:4 43:7 72:3 72:9 86:21 90:23 92:14 95:9 95:22 98:20 114:21 114:21 141:3 151:23 170:2 175:20 175:21 176:10 177:4 181:16 181:19 181:19 182:1 205:11 208:22 209:4<br>**history**(14) 25:6 25:7 33:11 33:16 33:22 62:12 190:21 191:7 197:1 198:8 198:14 198:16 203:23 205:7<br>**hit**(2) 86:4 123:3<br>**hoc**(2) 16:4 185:2<br>**hold**(5) 128:14 160:1 160:11 174:11 185:1<br>**holderman**(1) 160:6<br>**holders**(19) 29:6 83:8 83:9 84:1 84:2 96:11 164:8 167:15 169:24 173:8 177:12 178:12 184:7 184:15 184:17 184:22 185:1 188:9 188:17<br>**holding**(6) 40:13 43:4 43:7 59:19 106:3 160:8<br>**holdings**(3) 92:2 92:15 177:16 | **holds**(2) 75:9 136:19<br>**home**(2) 48:19 177:8<br>**honor**(270) 14:4 14:5 14:7 14:13 15:4 15:10 15:25 16:7 16:22 16:25 17:6 17:7 18:6 18:20 18:25 19:4 19:7 20:3 20:9 20:10 20:13 21:19 29:24 32:13 33:24 34:24 35:2 41:7 46:22 47:9 48:6 48:7 49:7 49:19 49:20 50:15 50:17 52:8 52:23 52:24 53:8 53:11 54:21 55:9 55:22 56:10 57:16 57:18 58:4 58:7 62:4 62:8 63:15 64:16 65:5 66:7 66:10 66:18 67:5 67:15 69:19 70:4 70:5 70:9 70:12 71:15 71:25 74:2 74:7 74:11 74:22 75:4 75:5 76:3 77:14 78:1 79:3 79:16 79:18 80:5 80:10 80:21 81:1 81:21 82:11 82:13 83:17 83:24 84:10 84:18 85:16 86:4 86:10 86:15 87:5 88:15 89:1 89:15 89:24 90:17 91:10 92:20 93:4 93:8 98:4 98:20 98:22 99:20 100:1 100:4 100:6 100:13 100:19 100:24 101:5 101:10 101:11 101:12 101:17 101:25 102:2 102:9 102:13 102:18 103:5 103:13 103:16 103:22 104:4 104:12 104:17 104:23 105:8 105:22 106:24 107:5 107:20 107:23 108:1 108:20 108:23 109:8 109:14 112:2 112:4 113:5 114:18 116:1 116:9 116:11 116:14 116:17 120:20 127:23 128:5 128:16 128:19 128:25 129:2 129:10 129:11 129:16 129:18 130:5 130:13 130:18 131:2 131:3 131:7 131:14 132:2 132:7 136:23 137:24 138:8 138:22 138:23 139:15 140:11 140:14 144:7 147:8 147:16 148:14 150:21 150:23 151:15 156:1 156:17 157:4 157:21 158:6 158:12 158:16 158:20 159:21 160:2 160:22 161:7 161:17 162:6 162:15 162:21 163:2 163:12 164:15 164:21 165:14 166:3 166:7 166:18 166:20 168:6 171:12 171:25 172:4 172:16 172:20 172:25 173:18 173:25 175:11 175:16 175:19 176:3 176:6 179:8 181:5 181:8 181:10 181:13 182:15 182:24 183:10 184:21 184:24 185:3 187:7 187:11 187:20 187:20 189:19 189:24 190:3 192:8 192:21 194:8 195:23 196:2 196:10 196:14 197:10 198:4 199:3 200:8 200:15 201:18 204:6 204:13 205:1 205:16 205:21 207:4 208:8 208:20 208:21 210:1 210:10 210:14 210:15<br>**honor's**(10) 71:23 76:2 86:7 109:10 131:18 138:17 151:10 163:3 163:14 163:1<br>**honorable**(1) 1:18<br>**honor's**(1) 172:21<br>**hook**(1) 90:16<br>**hope**(2) 87:6 189:6<br>**hopefully**(4) 18:10 72:14 142:4 190:5<br>**horan**(1) 4:33<br>**horizon**(1) 55:8<br>**horrible**(1) 87:22<br>**host**(2) 68:7 68:8<br>**hotly**(1) 154:1<br>**hour**(2) 74:21 101:7<br>**hours**(2) 100:23 100:25<br>**housekeeping**(1) 14:14<br>**how**(29) 15:22 16:25 29:25 33:1 33:4 42:18 66:5 71:11 72:21 74:22 82:8 86:5 87:25 95:19 99:22 109:21 109:25 134:10 134:15 171:25 179:19 180:19 182:23 189:5 191:11 191:13 194:16 198:21 207:20<br>**how's**(1) 201:17<br>**howard**(1) 4:14<br>**however**(6) 26:9 91:24 98:13 106:9 119:17 142:23<br>**huge**(1) 192:24<br>**hundred**(1) 192:9<br>**hundreds**(1) 35:16<br>**hurdle**(1) 34:13<br>**hutz**(1) 7:24<br>**hypothetical**(4) 129:24 134:4 136:12 | **i'd**(23) 20:24 47:12 94:3 100:7 105:14 109:10 115:25 129:13 132:6 134:15 135:1 136:11 138:6 148:22 156:8 158:12 202:24 203:14 204:6 205:15 208:4 210:16 211:19<br>**i'll**(31) 35:3 42:3 49:9 49:14 49:22 50:18 58:9 62:1 66:8 66:21 82:18 87:3 90:17 91:12 93:8 94:4 96:3 96:7 102:11 105:8 113:7 116:7 116:7 129:14 140:8 141:16 142:19 146:16 201:25 204:9 211:7<br>**i'm**(87) 15:17 15:22 16:17 16:19 20:14 25:6 32:10 42:3 49:20 51:14 53:12 53:15 54:19 57:25 58:1 58:2 58:7 62:9 65:5 65:7 65:13 66:6 71:4 71:4 71:17 74:24 75:1 82:16 82:22 84:3 84:24 85:4 85:20 85:25 86:12 86:18 90:11 90:12 90:16 93:3 95:21 97:23 100:17 100:22 101:11 101:16 103:5 107:6 110:16 111:22 112:5 115:13 116:15 122:5 126:14 128:9 128:10 128:12 129:1 129:7 129:17 131:7 142:20 145:16 147:8 147:23 151:10 156:13 156:17 158:3 160:2 162:22 163:2 163:14 163:17 163:18 203:7 203:15 204:18 205:11 205:12 206:15 208:17 210:18 210:22 211:6 212:9<br>**i've**(15) 46:22 74:10 90:17 90:20 99:23 101:18 109:5 128:9 136:5 156:3 204:8 204:14 211:5 211:14 212:17<br>**ian**(5) 29:8 29:12 42:23 42:25 44:6<br>**idea**(1) 197:5<br>**identical**(1) 126:15<br>**identifiable**(1) 117:23<br>**identified**(2) 14:19 66:24<br>**identify**(1) 18:18<br>**ignore**(1) 126:11<br>**ignoring**(1) 22:6<br>**illegal**(2) 134:23 135:2<br>**illegality**(1) 38:4<br>**illinois**(2) 145:25 160:4<br>**illustrates**(2) 62:12 101:22<br>**illustration**(2) 191:5 191:6<br>**imaginary**(1) 122:7<br>**imagine**(2) 123:8 205:17<br>**immediacy**(1) 130:2<br>**immediately**(1) 124:10<br>**impact**(1) 180:23<br>**impaired**(1) 115:19<br>**imparted**(1) 27:21<br>**implicate**(1) 109:17<br>**implication**(2) 48:17 195:5<br>**implications**(1) 182:20<br>**important**(8) 46:24 47:2 61:19 137:7 142:2 144:16 146:11 158:18<br>**importantly**(6) 29:12 48:23 73:14 187:25 191:16 196:7<br>**importantly'**(1) 191:16<br>**impose**(7) 26:7 121:22 133:17 136:24 137:25 166:14 172:1<br>**imposed**(10) 24:20 24:23 26:16 118:13 118:18 119:4 121:21 123:17 135:7 170:20<br>**imposes**(1) 24:18<br>**imposition**(2) 132:4 160:15<br>**impossibility**(1) 186:7<br>**impossible**(3) 50:8 134:12 186:6<br>**impression**(1) 198:18<br>**imprimatur**(3) 73:15 110:14 111:15<br>**improper**(1) 195:17<br>**impropriety**(1) 41:2<br>**inability**(1) 180:5<br>**inactions**(2) 37:3 38:9<br>**inadequate**(2) 58:8 86:14<br>**inadvertently**(2) 132:13 206:1<br>**inapplicable**(1) 30:6 |

| **have**(37) 193:3 193:4 193:15 193:17 193:22 193:22 194:25 195:2 196:16 198:9 198:17 199:20 201:10 201:13 201:16 201:19 202:4 202:7 203:25 204:20 205:10 206:9 206:9 206:24 206:25 207:23 207:25 209:3 209:24 210:8 210:10 210:19 211:10 211:20 212:6 212:8 212:16 |   |   |   |   |   |   |   |
| **haven't**(7) 29:23 30:21 31:17 40:8 41:11 137:22 211:14 |   |   |   |   |   |   |   |
| **haven't**(1) 198:25 |   |   |   |   |   |   |   |
| **having**(12) 14:22 25:14 26:1 36:17 68:19 101:10 134:17 178:24 181:23 189:2 196:1 207:18 |   |   |   |   |   |   |   |
| **hawaii**(1) 61:2 |   |   |   |   |   |   |   |
| **hazeltine**(2) 3:35 3:37 |   |   |   |   |   |   |   |
| **he'd**(1) 129:14 |   |   |   |   |   |   |   |
| **he'll**(1) 91:6 |   |   |   |   |   |   |   |
| **he's**(11) 18:22 50:19 65:14 72:16 90:23 95:14 122:6 139:19 151:24 157:1 204:20 |   |   |   |   |   |   |   |
| **head**(3) 18:7 86:4 140:8 |   |   |   |   |   |   |   |
| **headline**(1) 101:8 |   |   |   |   |   |   |   |
| **hear**(17) 15:24 16:9 18:5 56:4 58:3 64:15 74:9 88:24 115:4 115:6 164:20 181:12 198:23 200:10 201:21 201:25 210:6 |   |   |   |   |   |   |   |

TRIBUNE.4.13.11.DOC

| Word | Page:Line |
|---|---|
| **inappropriate**(6) | 77:5 77:18 81:6 137:23 141:8 201:1 |
| **inappropriately**(2) | 165:1 171:13 |
| **inc**(1) | 12:19 |
| **incentive**(5) | 64:22 68:24 123:7 127:6 |
| **incentives**(7) | 63:12 67:23 69:10 69:10 70:18 71:6 122:23 |
| **include**(6) | 31:17 34:12 36:6 63:11 143:10 152:12 |
| **included**(3) | 103:24 117:17 142:10 |
| **includes**(3) | 30:16 30:17 31:13 |
| **including**(21) | 21:12 31:15 37:3 45:10 55:18 62:21 65:10 121:3 123:21 134:17 141:9 141:11 148:1 149:10 149:24 173:8 182:7 192:19 193:6 194:17 199:6 206:16 |
| **inconsistent**(4) | 77:4 166:16 175:11 175:12 |
| **inconvenient**(1) | 174:2 |
| **incorporate**(3) | 98:5 143:7 190:9 |
| **incorporated**(1) | 57:20 |
| **incorporation**(7) | 59:20 59:21 60:8 60:9 60:16 60:23 92:11 |
| **incorrect**(2) | 46:2 136:8 |
| **increases**(1) | 126:10 |
| **increasingly**(1) | 143:7 |
| **incurred**(2) | 29:3 29:4 |
| **indebtedness**(17) | 97:11 97:13 167:11 167:16 170:23 176:17 193:18 193:21 193:21 193:22 193:23 193:25 194:2 194:2 195:9 195:11 195:13 |
| **indeed**(3) | 40:24 83:20 164:3 |
| **indemnification**(15) | 40:17 53:18 59:22 64:20 60:11 61:5 61:7 61:10 61:22 62:5 89:25 91:16 93:25 94:20 |
| **indemnifications**(1) | 59:15 |
| **indemnified**(1) | 93:23 |
| **indemnify**(1) | 90:6 |
| **indemnifying**(1) | 90:3 |
| **indemnities**(1) | 135:16 |
| **indemnity**(26) | 72:5 73:8 87:3 87:7 90:20 90:24 90:24 93:16 93:18 93:22 94:2 116:25 117:20 120:6 121:6 130:3 143:2 144:23 147:19 148:3 150:23 152:13 159:1 159:17 160:22 171:23 |
| **indenture**(31) | 84:6 97:5 97:5 97:8 97:18 98:3 98:21 163:10 164:11 164:24 166:19 167:13 168:5 168:7 168:9 168:11 168:22 170:17 173:3 173:4 178:4 178:16 178:22 179:11 179:16 184:14 185:20 186:11 193: 193:12 193:14 |
| **indentured**(2) | 168:10 183:8 |
| **indentures**(1) | 194:1 |
| **independent**(14) | 27:4 42:11 42:12 42:14 55:6 61:10 67:9 67:22 69:7 69:9 70:7 71:9 71:20 72:13 |
| **independently**(1) | 64:18 |
| **indicate**(2) | 35:14 138:25 |
| **indicated**(6) | 16:14 41:4 102:5 137:13 198:12 199:4 |
| **indicating**(1) | 14:15 |
| **indication**(1) | 139:6 |
| **indicative**(1) | 55:13 |
| **indirectly**(2) | 154:10 154:15 |
| **indiscernible**(1) | 194:15 |
| **individual**(20) | 17:11 18:19 18:21 114:6 116:22 120:18 121:4 125:8 125:10 131:25 132:9 132:11 132:14 136:25 144:22 153:1 153:10 158:25 161:4 177:13 |
| **individual's**(1) | 145:4 |
| **individually**(1) | 111:4 |
| **individuals**(6) | 31:24 59:5 63:10 117:1 117:8 117:23 |
| **induce**(2) | 78:13 78:24 |
| **induced**(4) | 60:14 90:22 90:23 91:2 |
| **indulgence**(2) | 79:8 204:4 |
| **ineligible**(2) | 66:4 67:15 |
| **inequitable**(2) | 122:21 189:3 |
| **infer**(1) | 80:14 |
| **infinite**(1) | 209:9 |
| **inform**(1) | 212:17 |
| **information**(4) | 27:15 27:18 27:20 27:25 |
| **informed**(1) | 138:23 |
| **infringe**(2) | 165:1 171:13 |
| **inhibits**(1) | 143:5 |
| **initial**(5) | 31:7 47:18 85:24 88:18 88:18 96:10 151:17 |
| **initially**(1) | 201:3 |
| **initiating**(1) | 130:19 |
| **injunction**(6) | 123:22 124:9 124:19 125:4 125:24 127:20 |
| **injunctions**(2) | 123:22 148:17 |
| **injured**(3) | 23:11 61:21 136:14 |
| **injurious**(1) | 72:25 |
| **inputted**(1) | 27:22 |
| **inquiry**(2) | 86:20 205:3 |
| **insiders**(1) | 67:1 |
| **insisting**(1) | 98:21 |
| **insofar**(7) | 58:10 60:3 60:19 61:25 70:19 72:7 190:22 |
| **insolvency**(4) | 26:6 26:11 27:10 27:19 |
| **instance**(2) | 118:13 120:4 |
| **instances**(2) | 33:17 111:8 |
| **instant**(1) | 19:23 |
| **instead**(8) | 20:21 25:1 25:22 25:25 50:13 69:11 92:14 143:14 |
| **institutional**(1) | 71:18 |
| **instructions**(1) | 148:20 |
| **instrument**(1) | 194:13 |
| **insurance**(4) | 55:20 61:16 61:19 104:19 |
| **insurers**(1) | 61:16 |
| **integral**(2) | 127:15 202:17 |
| **integrity**(1) | 64:8 |
| **intelligible**(1) | 126:6 |
| **intend**(3) | 128:11 156:8 196:9 |
| **intended**(8) | 40:23 45:19 45:20 107:13 107:19 107:24 182:23 200:21 |
| **intending**(1) | 82:1 |
| **intent**(2) | 102:19 112:10 |
| **intention**(2) | 166:7 178:21 |
| **intentional**(3) | 48:1 94:1 102:24 |
| **intentionally**(4) | 83:15 88:11 102:25 154:14 |
| **inter**(1) | 133:8 |
| **inter-company**(1) | 176:18 |
| **interest**(37) | 28:21 29:10 53:22 55:14 55:18 63:12 63:24 64:1 64:3 64:4 64:21 65:1 67:11 67:18 67:19 67:24 68:11 68:12 68:23 69:3 69:12 70:7 71:1 71:21 73:23 85:19 95:3 95:7 171:8 177:24 191:17 192:10 194:14 194:14 194:19 194:23 |
| **interested**(1) | 11:28 |
| **interesting**(1) | 87:13 |
| **interests**(11) | 28:20 28:25 29:14 44:20 47:17 59:4 83:4 113:16 113:17 166:1 178:15 |
| **internal**(1) | 86:8 |
| **interplay**(2) | 33:2 107:15 |
| **interposes**(1) | 22:19 |
| **interpret**(1) | 151:6 |
| **interrupt**(1) | 65:6 |
| **interrupted**(1) | 184:3 |
| **interrupting**(2) | 15:2 196:3 |
| **interruption**(1) | 147:1 |
| **intertwined**(1) | 126:12 |
| **intervened**(1) | 188:21 |
| **intervening**(2) | 206:6 206:7 |
| **interviewed**(1) | 62:24 |
| **into**(31) | 17:18 20:24 33:21 48:13 56:8 57:21 63:15 64:23 65:21 66:3 66:16 86:2 94:4 104:24 110:15 110:20 114:14 126:8 127:3 138:20 143:8 151:12 167:7 174:17 182:8 195:14 198:20 201:10 201:10 203:2 205:9 |
| **invention**(1) | 145:23 |
| **investigation**(2) | 62:20 62:25 |
| **investment**(2) | 22:10 22:20 |
| **investor's**(1) | 25:15 |
| **investors**(7) | 12:5 22:8 22:9 25:14 25:18 26:5 26:8 |
| **invitation**(3) | 83:18 99:23 204:7 |
| **invite**(1) | 181:10 |
| **invoke**(2) | 164:8 164:23 |
| **involuntarily**(1) | 135:7 |
| **involuntary**(1) | 132:4 |
| **involve**(4) | 108:4 112:11 138:20 206:11 |
| **involved**(16) | 23:18 26:10 26:23 27:1 27:6 29:9 31:10 31:18 31:24 52:7 59:5 60:10 94:14 104:2 164:16 210:4 |
| **involves**(2) | 194:22 205:3 |
| **involving**(4) | 23:21 23:25 143:4 146:13 |
| **iridium**(1) | 172:9 |
| **irrelevant**(1) | 26:19 |
| **irrevocable**(1) | 184:9 |
| **isaac**(5) | 8:30 128:7 129:3 131:15 190:4 |
| **isn't**(8) | 14:24 52:17 64:11 90:3 92:2 109:11 110:11 115:11 |
| **isn't**(3) | 189:1 194:8 200:24 |
| **issuance**(2) | 38:5 38:5 |
| **issue**(102) | 15:11 16:10 16:15 17:18 20:19 23:8 30:24 35:9 35:10 35:21 38:22 38:25 39:7 40:13 42:8 42:12 42:18 42:18 42:20 43:4 44:18 46:21 46:24 48:25 54:4 54:9 54:18 54:18 54:21 55:9 56:7 56:11 57:12 57:22 59:8 62:2 64:1 64:22 72:8 72:13 73:11 74:16 75:7 75:19 75:23 76:6 76:6 76:13 83:18 84:12 84:14 84:17 98:6 98:11 98:22 99:4 99:6 99:7 99:12 99:16 99:21 101:19 101:23 103:23 109:2 110:10 110:11 111:19 112:16 112:19 119:6 121:23 125:17 125:23 125:24 126:16 132:18 132:20 133:16 136:1 139:4 139:6 145:7 151:20 152:4 163:25 164:9 171:15 180:12 184:14 187:13 188:3 193:11 197:12 197:13 202:12 207:5 208:21 209:8 210:2 |
| **issued**(5) | 101:8 149:3 151:4 151:8 160:7 |
| **issues**(42) | 17:21 18:7 35:5 55:16 62:9 71:16 73:5 73:8 74:2 75:2 81:2 86:10 88:1 98:23 113:8 116:2 119:9 119:14 119:19 124:11 124:18 124:21 126:5 126:21 135:2 139:11 149:19 163:13 163:22 164:8 165:5 166:2 171:3 184:3 184:20 190:11 190:18 196:9 203:7 208:19 210:3 |
| **issuing**(1) | 36:23 |
| **it's**(144) | 15:12 15:21 20:2 24:2 24:3 25:1 28:25 30:8 30:23 31:20 34:15 35:10 38:20 39:20 41:1 41:3 41:5 41:5 43:20 43:25 44:1 44:2 44:14 44:20 44:21 45:20 46:11 47:1 47:2 48:23 51:11 52:13 52:14 54:5 54:21 55:17 57:4 58:19 60:1 61:13 62:22 65:15 67:19 70:19 73:16 73:18 74:21 76:15 77:2 77:6 78:25 81:13 82:20 84:19 85:8 86:16 87:10 88:6 88:7 88:9 91:1 91:7 91:14 94:2 95:17 96:4 96:8 96:8 96:9 96:22 99:17 105:19 106:3 106:17 107:18 108:12 109:24 110:9 110:13 110:16 110:23 111:16 111:16 111:17 111:24 112:15 115:23 118:7 119:20 122:1 122:11 122:15 122:15 122:21 122:21 123:10 123:10 123:18 124:19 125:15 125:18 126:14 126:18 126:20 130:7 131:18 133:1 133:2 134:4 134:20 135:21 137:3 137:11 139:12 142:2 145:23 149:12 149:19 152:1 154:1 155:1 156:5 158:14 159:18 159:19 159:21 160:4 160:15 162:16 164:9 202:16 203:9 205:24 206:2 206:10 207:6 208:2 208:11 208:12 208:17 209:24 209:25 210:20 210:24 |
| **item**(1) | 54:1 |
| **items**(4) | 54:10 93:15 194:7 197:19 |
| **iterations**(1) | 132:16 |
| **its**(46) | 22:21 23:2 24:6 25:5 27:16 28:2 28:3 31:12 39:20 45:12 50:25 55:11 63:23 64:20 66:19 66:20 73:15 76:7 90:8 90:15 95:1 99:5 100:22 110:13 116:12 116:16 119:20 143:16 151:7 151:8 151:24 151:25 152:14 154:17 154:19 155:14 155:20 159:6 159:9 161:9 163:23 167:2 167:23 167:24 204:4 207:22 |
| **itself**(15) | 24:9 52:13 59:8 76:5 76:18 85:8 86:10 101:14 123:21 124:25 141:9 142:1 166:19 173:10 209:22 |
| **it's**(45) | 166:7 166:14 166:19 166:22 167:3 167:23 167:23 169:14 171:10 172:18 173:10 174:2 174:12 174:17 175:12 175:23 179:9 179:10 179:11 179:11 179:21 181:7 181:11 182:2 182:2 182:12 182:21 182:23 183:4 183:17 186:13 186:23 188:8 189:3 191:12 192:13 193:9 193:12 194:9 194:10 194:13 195:11 195:14 196:12 199:5 |
| **i'd**(9) | 166:20 168:14 169:6 169:8 175:19 175:21 179:8 184:18 190:17 |
| **i'll**(7) | 165:16 166:1 167:6 180:7 182:16 183:12 190:9 |
| **i'm**(22) | 164:20 165:14 166:22 168:15 168:19 174:1 174:1 179:9 180:5 181:7 181:16 182:21 190:6 191:13 193:17 193:23 194:4 197:14 197:22 197:23 198:8 198:9 |
| **i've**(3) | 168:17 173:17 200:4 |
| **james**(6) | 1:24 2:15 4:15 4:25 8:16 79:3 |
| **jane**(1) | 10:39 |
| **janet**(1) | 9:10 |
| **january**(6) | 16:20 45:2 83:25 185:5 187:11 187:12 |
| **jason**(4) | 2:37 10:27 185:1 185:3 |
| **jean-marie**(1) | 10:19 |
| **jeffrey**(4) | 4:39 7:25 49:20 157:21 |
| **jenner**(4) | 6:31 11:32 53:9 79:6 |
| **jennifer**(1) | 13:38 |
| **jessica**(1) | 8:8 |
| **jim**(2) | 48:7 176:4 |
| **john**(3) | 7:18 13:11 116:15 |

A518

| Word | Page:Line | Word | Page:Line | Word | Page:Line | Word | Page:Line |
|---|---|---|---|---|---|---|---|
| johnston(22) 2:15 48:7 48:7 175:19 175:25 176:3 176:4 181:1 181:10 195:23 196:1 196:2 196:19 198:23 200:8 200:23 201:16 201:18 201:23 201:25 204:6 204:1 | | kavalis(1) 11:21 | | lantry(20) 1:27 14:5 14:6 14:13 15:4 16:14 17:7 18:6 18:15 18:20 18:25 19:6 20:10 20:16 102:1 102:1 116:11 116:11 200:18 200:20 | | lee(1) 12:39 | |
| | | kaye(2) 10:34 11:12 | | | | left(7) 85:25 85:25 86:1 86:1 163:25 192:11 201:6 | |
| | | keep(7) 43:19 44:2 46:22 47:6 65:17 90:18 165:24 | | | | | |
| join(2) 128:2 128:19 | | | | large(4) 14:15 35:15 36:17 70:20 | | legal(33) 7:4 30:18 53:18 60:1 60:4 61:5 61:7 61:15 65:9 65:10 65:12 65:16 65:21 72:5 77:16 78:25 79:6 79:10 85:12 85:19 86:7 109:23 110:22 115:4 139:25 163:13 165:1 165:2 171:13 201:15 204:1 204:23 205:1 | |
| joinder(1) 201:4 | | keeping(7) 42:20 43:9 43:12 44:19 70:24 71:9 73:25 | | largely(1) 14:8 | | | |
| joinders(1) 108:21 | | | | larger(1) 209:24 | | | |
| joined(3) 128:18 129:19 198:25 | | | | largest(1) 71:11 | | | |
| joining(3) 141:6 196:24 196:24 | | ken(3) 1:26 19:1 19:4 | | larry(1) 16:3 | | | |
| joint(5) 141:24 161:11 161:21 162:13 162:18 | | kenney(2) 6:39 9:11 | | last(19) 15:5 19:17 19:22 65:15 75:18 90:19 93:15 101:7 102:2 108:23 117:15 119:15 161:16 162:9 178:6 180:8 188:8 200:18 212:11 | | legally(5) 46:12 46:12 46:15 46:20 66:4 | |
| | | kept(2) 43:25 44:17 | | | | legislative(12) 25:6 33:11 33:16 33:21 160:12 190:21 191:7 197:1 198:7 198:11 198:16 205:7 | |
| jointly(3) 111:14 148:9 162:2 | | kerp's(1) 39:24 | | | | | |
| jonathan(1) 10:37 | | kevin(7) 1:18 1:27 14:5 18:21 19:7 102:1 116:11 | | | | | |
| jordan(1) 11:12 | | | | late(1) 200:18 | | legitimate(1) 49:3 | |
| joshua(2) 2:14 13:34 | | | | later(22) 32:1 35:9 49:12 54:3 54:6 74:19 81:4 88:24 96:5 98:20 99:17 99:18 101:23 105:6 110:11 112:21 115:12 150:19 176:2 205:6 209:14 209:22 | | lemay(23) 4:13 79:5 82:12 82:13 84:21 84:23 87:24 88:9 89:23 92:5 93:10 93:16 114:18 114:18 204:13 204:13 205:18 205:21 207:8 207:14 208:4 208:8 208:10 | |
| jpmorgan(3) 171:23 172:2 181:14 | | key(2) 58:11 200:8 | | | | | |
| jr.,esq(1) 11:10 | | kick(2) 48:15 88:7 | | | | | |
| judge(23) 1:18 1:19 42:25 70:16 70:21 73:16 88:12 101:9 107:6 122:6 126:11 141:11 144:16 145:6 145:12 149:16 149:1 158:24 160:6 160:6 160:7 173:20 207:13 | | kidding(1) 134:20 | | | | | |
| | | kim(1) 10:9 | | | | | |
| | | kind(14) 27:6 65:22 68:3 69:9 84:24 86:9 107:24 115:24 136:5 172:1 173:19 203:15 206:12 209:9 | | latham(3) 2:36 10:26 185:1 | | lemay's(1) 98:18 | |
| | | | | latter(1) 33:8 | | lender(14) 19:12 47:25 108:2 153:22 154:5 154:17 154:18 154:18 154:19 155:3 155:20 155:21 182:8 199:25 | |
| judges(1) 122:10 | | | | laughter(25) 16:13 32:15 33:9 52:5 74:25 95:23 99:25 100:10 104:8 109:7 128:13 131:5 139:13 140:10 140:13 147:2 147:5 151:14 156:16 158:5 163:5 201:11 201:24 205:19 211:9 | | | |
| judgment(45) 32:2 73:20 124:15 124:15 126:22 129:25 131:19 131:21 132:4 132:2 132:24 133:3 133:7 133:20 133:22 134:2 134:2 134:5 134:9 134:13 134:24 135:4 135:6 135:10 135:13 136:20 136:24 137:16 137:25 138:3 143:10 143:16 143:1 144:12 144:25 145:10 145:25 146:1 155:7 157:12 157:17 157:18 159:19 162:4 | | kinds(3) 101:24 126:7 162:5 | | | | lenders(17) 11:36 26:9 30:2 30:11 44:13 76:23 76:25 77:7 85:21 153:21 154:21 180:10 191:11 191:17 192:8 202:20 209:19 | |
| | | king(5) 3:7 3:24 5:6 6:13 7:6 | | | | | |
| | | kira(1) 8:34 | | | | | |
| | | klauder(1) 3:5 | | launched(1) 86:22 | | | |
| | | klee(3) 160:20 170:1 172:21 | | laundry(1) 145:16 | | length(6) 72:23 116:2 119:12 170:2 179:19 196:7 | |
| | | klehr(2) 5:37 16:1 | | laurie(1) 2:21 | | | |
| | | klingman(2) 105:23 106:2 | | law(90) 12:29 25:9 27:21 42:23 45:8 46:18 63:4 66:13 78:8 85:14 87:13 89:4 92:2 92:3 92:7 92:9 93:21 93:24 102:16 103:4 103:18 104:11 104:17 107:3 107:16 109:25 112:18 113:2 113:13 113:18 113:1 114:9 121:7 123:11 131:25 133:14 138:3 139:4 139:22 141:2 142:1 144:3 146:6 146:9 151:22 152:5 152:9 152:10 153:2 153:15 153:21 154:20 155:21 159:1 159:2 159:24 160:12 160:17 160:18 160:21 160:25 161:20 161:20 162:12 166:24 167:10 168:23 169:21 170:1 170:15 172:8 172:9 172:9 173:14 175:12 175:14 177:16 178:8 179:5 179:12 182:7 183:16 184:23 192:13 193:11 205:8 205:9 205:23 206:11 208:17 | | lengthy(2) 100:15 167:7 | |
| | | knew(7) 26:9 32:12 79:24 109:1 109:2 173:9 200:20 | | | | leonard(3) 1:33 5:26 20:13 | |
| judicata(2) 110:2 111:1 | | | | | | lerner(2) 42:6 42:7 | |
| judicial(2) 90:14 145:23 | | | | | | lesby(1) 42:4 | |
| june(6) 19:17 113:24 199:17 212:13 212:14 212:16 | | knight(2) 7:4 128:17 | | | | less(2) 80:12 177:24 | |
| | | know(76) 15:16 16:22 16:25 18:7 18:11 18:15 18:21 30:19 31:1 31:15 31:16 33:12 34:6 43:16 49:23 51:20 52:24 52:20 53:1 54:16 56:4 65:22 66:5 67:14 67:15 74:12 74:21 74:22 80:6 80:12 84:25 86:6 88:5 89:6 89:8 89:23 92:25 94:7 103:6 104:3 104:6 105:11 107:8 112:20 116:6 121:24 118:22 129:13 130:9 135:22 135:24 139:9 128:10 149:5 150:17 151:13 160:17 163:5 165:15 175:17 179:10 179:25 181:5 187:2 189:5 192:9 194:25 200:23 201:13 201:4 201:15 201:21 207:12 210:16 211:8 212:7 | | | | lesser(1) 192:14 | |
| | | | | | | let(33) 18:23 33:1 35:5 42:4 49:10 65:2 77:20 79:18 87:7 87:23 116:7 119:8 142:1 144:14 145:22 148:11 152:6 153:12 156:18 157:23 165:6 172:15 173:1 174:14 178:8 181:12 195:25 197:25 201:15 202:10 207:9 211:4 212:10 | |
| jurisdiction(26) 76:11 76:15 99:10 111:19 123:9 124:13 124:23 124:25 125:6 127:21 142:3 149:9 149:14 149:18 149:23 150:11 150:13 150:15 150:16 150:18 150:19 151:1 151:9 151:11 160:24 171:25 | | | | | | | |
| | | | | lawrence(3) 5:32 16:7 187:8 | | let's(8) 17:5 49:9 53:7 68:21 74:23 81:15 154:25 156:11 | |
| | | | | laws(2) 38:4 117:3 | | | |
| jurisdictional(1) 124:21 | | | | lawsuit(10) 72:17 72:20 72:25 142:8 153:9 172:16 172:23 174:4 174:7 174:12 | | | |
| jurisdictions(4) 92:3 121:2 122:5 122:9 | | knowledge(1) 27:22 | | | | letter(2) 184:5 211:12 | |
| jurisprudence(1) 206:3 | | knows(8) 26:24 63:15 70:9 94:6 116:17 120:20 122:9 138:23 | | | | letters(1) 211:5 | |
| just(121) 14:13 16:25 17:25 18:6 18:11 18:17 19:1 20:11 33:6 36:11 43:5 44:2 44:5 44:5 46:23 47:8 47:9 47:12 47:13 47:19 48:9 52:17 52:17 54:12 54:20 56:6 86:7 88:4 88:7 89:8 89:16 90:5 90:7 91:11 92:1 92:21 92:22 95:10 96:3 97:23 105:5 107:4 108:12 113:10 114:3 115:5 115:22 119:8 119:12 123:11 128:11 128:1 128:19 131:8 134:4 138:22 139:5 139:6 139:17 140:7 140:9 141:11 141:15 142:12 142:19 142:23 145:23 146:4 146:4 146:5 148:24 150:3 152:6 152:6 152:16 153:12 156:5 156:15 156:18 156:24 157:7 160:2 161:18 172:7 173:1 173:19 175:22 180:12 181:6 181:16 181:23 182:23 184:18 185:8 185:18 186:23 188:3 188:6 189:12 190:9 191:12 192:7 194:15 196:10 196:15 198:2 202:4 202:10 204:19 210:15 210:25 211:1 211:15 212:10 | | | | lawsuits(3) 125:9 151:1 171:15 | | letting(2) 110:10 173:24 | |
| | | korpus(1) 12:31 | | lawyer(2) 43:16 43:17 | | let's(2) 172:15 174:14 | |
| | | krakauer(17) 1:25 35:2 35:3 39:15 40:8 42:7 47:5 47:13 48:11 50:17 50:17 51:11 51:19 51:22 52:8 52:22 115:16 | | lawyers(1) 86:25 | | level(10) 41:22 42:1 50:22 163:24 169:3 173:15 199:21 206:22 206:22 209:21 | |
| | | | | lay(1) 146:12 | | | |
| | | | | lays(1) 176:12 | | levels(1) 122:16 | |
| | | kramer(2) 11:8 11:8 | | layton(1) 3:20 | | leverage(6) 25:19 25:23 26:24 36:21 37:4 173:6 | |
| | | kripke(2) 25:8 25:11 | | lbo(18) 47:21 59:16 60:5 64:12 64:23 66:25 69:6 96:14 96:19 102:23 104:14 105:1 116:20 165:19 172:24 191:11 191:1 202:18 | | | |
| justification(2) 203:16 209:16 | | label(2) 109:23 110:22 | | | | | |
| justified(1) 44:9 | | labor(11) 5:25 5:25 18:12 20:11 20:15 21:5 21:23 24:20 35:4 36:10 36:19 | | | | leveraged(1) 159:13 | |
| justify(3) 43:1 191:10 192:17 | | | | leadership(1) 163:16 | | levers(2) 87:2 87:4 | |
| kl (1) 49:20 | | | | leading(5) 38:1 142:2 142:3 142:4 160:2 | | levied(1) 181:15 | |
| kalenchits(1) 9:4 9:4 | | labor's(1) 15:6 | | leaning(1) 22:23 | | levin(2) 11:8 11:8 | |
| kansa(6) 1:26 19:1 19:4 19:4 20:9 52:24 | | labors(1) 18:8 | | learned(1) 172:22 | | levy(2) 8:38 181:16 | |
| karen(1) 11:19 | | lack(2) 24:15 164:12 | | lease(1) 194:6 | | lewis(1) 11:24 13:41 | |
| kasowitz(1) 12:29 | | lacked(1) 55:21 | | least(23) 15:16 15:19 43:3 55:7 73:21 74:9 82:23 88:5 88:21 108:7 112:9 116:8 117:15 133:4 133:25 146:20 169:22 170:9 183:24 184:7 186:5 192:18 193:19 | | lexi(1) 12:16 | |
| katharine(1) 5:5 | | laid(3) 118:10 176:9 177:5 | | | | lexington(3) 3:16 4:40 | |
| katten(3) 6:25 13:10 129:12 | | lake(1) 86:23 | | | | lexus(1) 144:18 | |
| | | lance(1) 10:5 | | | | liabilities(3) 59:3 97:12 97:14 | |
| | | land(1) 146:12 | | leave(6) 28:25 72:23 73:5 101:7 180:7 203:14 | | liability(30) 23:17 32:5 32:19 32:20 58:14 72:7 85:9 120:13 120:22 124:3 126:17 130:9 133:22 137:19 141:23 141:24 141:25 144:23 148:6 148:8 153:8 153:10 154:12 154:20 160:15 161:11 161:21 162:13 162:19 174:19 | |
| | | landis(3) 4:5 4:7 8:20 | | | | | |
| | | landscaping(1) 104:19 | | | | | |
| | | language(16) 20:22 21:18 33:4 33:13 33:17 33:19 46:4 88:2 88:6 97:7 97:8 135:24 166:2 178:18 203:6 212:4 | | leaves(4) 28:21 83:15 88:2 164:14 | | | |
| | | | | leaving(1) 29:15 | | | |
| | | | | leboeuf(1) 2:13 | | | |
| | | lantico(1) 39:16 | | leboeuf(2) 48:8 176:4 | | | |
| | | | | led(1) 27:10 | | | |

| Word | Page:Line |
|---|---|

**liable**(13) 23:6 23:14 23:20 120:23 130:12 133:19 134:8 134:14 134:18 134:19 134:2 148:9 162:2

**liebentritt**(2) 6:5 64:8

**light**(6) 134:16 151:3 158:1 158:6 184:6 206:2

**like**(54) 14:8 20:24 37:21 39:23 47:12 47:14 47:18 65:6 74:22 90:7 94:3 94:9 99:20 100:7 102:5 103:6 105:13 109:10 113:10 114:1 114:3 115:22 115:23 122:7 126:18 130:23 132:6 135:14 136:11 141:1 142:12 148:22 156:8 158:12 159:4 166:3 168:9 169:24 175:19 175:22 184:18 190:8 190:11 190:18 194:12 199:19 199:20 201: 202:24 203:14 204:6 205:16 210:16 211:19

**likely**(4) 27:19 113:22 203:2 203:5

**likewise**(2) 48:5 93:24

**limit**(4) 31:5 61:6 81:23 198:15

**limitation**(3) 39:3 137:8 148:2

**limitations**(9) 32:19 59:14 103:10 105:25 113:24 158:18 162:10 171:4 172:5

**limited**(21) 23:24 30:16 30:23 31:20 38:3 38:20 40:13 40:15 92:19 131:17 136:25 137:2 137:6 138:1 138:3 139:2 152:4 157:16 177:2 177:9 198:11

**limiting**(1) 94:20

**limits**(1) 24:1

**line**(10) 14:11 15:17 15:18 147:7 147:10 148:16 149:19 154:3 181:20 207:3

**liquidation**(2) 169:2 176:16

**liquidation."**(1) 177:25

**list**(6) 14:23 14:24 15:6 17:18 145:16

**listed**(1) 196:16

**listen**(2) 99:2 100:21

**listened**(1) 171:24

**listening**(2) 65:11 156:3

**listing**(1) 178:6

**litany**(1) 162:14

**literally**(1) 49:11

**litigant**(2) 165:3 171:14

**litigate**(7) 81:5 81:24 173:17 173:21 173:24 175:9 175:10

**litigated**(3) 36:18 92:18 136:1

**litigation**(86) 30:15 30:22 36:1 36:2 48:4 49:24 50:3 52:19 53:23 58:9 58:14 59:6 59:7 59:8 61:12 61:23 62:1 62:3 62:6 62:15 63:10 63:21 65:25 67:25 68:15 68:17 68:17 70:17 70:18 71:8 71:13 73:16 73:18 73:25 80:10 81:9 82:4 82:7 83:3 83:6 86:15 89:13 89:19 89:20 89:25 90:1 90:1 90:2 90:6 90:6 90:8 90:9 90:10 93:3 99:19 108:6 113:22 114:6 116:21 120:9 120:17 120:20 121:4 121:9 123:12 124:6 124:23 125:1 125:14 125:7 127:10 142:22 142:23 143:4 144:8 149:21 165:11 170:22 172:2 175:1 177:23 182:21 183:3 203:8 203:10

**litigations**(1) 189:7

**litigators**(1) 80:11

**little**(16) 74:23 79:10 100:21 102:6 102:17 126:4 136:5 139:8 140:22 142:24 164:16 165:4 169:7 172:22 204:19 209:3

**llc**(2) 3:36 7:4

**llp**(25) 1:23 2:20 2:36 4:12 4:38 5:31 5:38 6:25 7:24 8:5 8:13 8:20 10:4 10:8 10:16 10:26 10:34 11:9 11:24 11:28 11:32 13:10 13:28 13:28 13:41

**loan**(4) 84:24 194:20 195:4 199:20

**loaned**(2) 195:5 195:6

**local**(1) 131:8

**locate**(1) 69:18

**lodge**(2) 7:24 138:12

**lodged**(3) 145:5 158:15 204:20

**loizides**(5) 6:11 6:12 131:7 131:11 131:11

**long**(5) 19:19 64:7 170:1 170:1 173:17

**longer**(8) 60:19 60:19 74:23 95:25 104:16 106:13 188:14 188:16

**look**(29) 33:11 33:15 42:5 43:7 44:6 68:1 71:25 74:9 80:12 83:1 85:15 85:21 97:23 100:16 107:25 108:5 110:23 111:1 111:22 111:6 122:23 159:7 161:7 168:6 186:19 194:9 194:12 194:16 200:15

**looked**(7) 38:22 40:21 40:22 40:25 67:9 85:16 110:23

**looking**(9) 34:8 45:22 67:24 109:22 110:1 110:3 119:19 123:9 197:18

**looks**(4) 64:18 88:17 91:25 206:17

**los**(1) 2:17

**losquadro**(1) 8:26

**loss**(2) 27:6 125:20

**losses**(3) 37:10 37:12 143:2

**lost**(2) 41:2 111:4

**lot**(9) 50:23 65:8 83:19 92:21 112:7 126:4 141:18 163:14 174:9

**lottery**(1) 73:15

**love**(1) 179:8

**low**(1) 121:24

**lower**(3) 29:19 176:15 207:19

**loyalty**(2) 28:3 173:8

**ltd**(1) 7:10

**luck**(1) 122:1

**lugano**(1) 1:39

**lunch**(2) 74:21 101:7

**lynch**(2) 2:20 10:34

**lyondell**(4) 115:21 135:13 136:4 149:17

**macquarie**(2) 13:14 13:14

**made**(67) 24:8 24:22 25:12 27:5 30:11 46:19 47:14 47:25 72:13 73:2 73:20 73:24 75:20 76:21 76:21 76:25 78:7 79:13 81:15 82:18 86:16 90:21 91:23 93:2 93:10 99:3 99:11 101:12 101:13 101:19 102:23 105:3 105:13 109:14 111:21 111:23 112:14 113:12 114:12 115:16 119:14 127:11 128:1 129:21 140:2 140:6 140:15 140:19 141:1 146:4 146:15 148:12 151:16 156:19 159:7 161:14 175:8 180:12 190:8 196:22 196:23 197:9 197:11 197:16 198:13 199:1 204:24

**madlyn**(1) 10:35

**main**(2) 100:13 148:14

**maintain**(1) 106:11

**major**(3) 26:4 32:7 171:11

**make**(50) 24:10 25:2 27:16 30:13 34:16 45:19 45:20 47:2 48:9 48:20 49:13 50:18 60:18 64:24 65:18 67:14 70:12 71:12 74:20 81:10 82:2 82:8 84:15 84:19 84:20 88:20 92:22 93:22 99:8 99:15 100:16 115:11 118:24 120:23 125:4 145:18 147:21 148:5 155:11 156:7 160:11 178:5 187:1 187:23 190:5 197:22 201:14 202:1 206:21 212:15

**maker**(1) 69:8

**makes**(20) 44:6 68:14 74:1 75:15 77:21 77:25 78:1 87:20 90:12 91:10 115:7 115:20 116:9 137:21 140:1 140:4 140:7 169:11 195:10 209:16

**making**(12) 65:7 65:20 71:7 77:14 109:15 111:23 118:21 118:23 181:6 191:22 191:24 198:24

**management**(26) 2:36 5:31 6:11 7:34 8:25 8:25 9:35 9:35 10:4 12:38 12:38 13:19 13:19 13:24 13:24 13:33 13:33 13:37 13:37 16:2 23:2 128:8 131:16 132:18 187:9 190:5

**managers**(2) 23:6 23:10

**mandatory**(2) 44:25 60:11

**manner**(3) 94:25 149:14 149:23

**manufacturer's**(1) 175:14

**manufacturing**(1) 174:15

**many**(7) 18:8 22:4 66:25 67:16 145:24 160:18 162:16

**marathon**(1) 172:5

**marc**(2) 4:19 8:6

**march**(7) 102:14 103:17 103:25 113:8 114:4 172:17 180:10

**marine**(1) 45:2

**marino**(1) 2:30

**markell**(3) 206:15 207:10 207:13

**market**(4) 1:11 2:24 4:8 5:40

**markets**(1) 108:10

**marrero**(1) 8:8

**marries**(1) 166:6

**marry**(1) 182:22

**marsal**(1) 12:19

**martin**(4) 3:29 22:25 98:2 183:7

**material**(3) 205:4 206:19 209:10

**materiality**(3) 207:23 207:24 210:3

**materially**(2) 205:14 207:19

**matter**(21) 15:15 15:23 16:5 16:17 43:19 46:18 51:17 51:23 59:13 72:18 134:10 145:23 161:2 178:1 180:18 183:16 184:22 205:1 209:6 210:19 213:7

**matters**(5) 93:14 149:10 149:11 150:15 204:24

**matthew**(4) 8:21 9:36 12:19 12:20

**maximize**(2) 94:19 94:23

**maximum**(1) 130:9

**maxwell**(1) 70:16

**may**(59) 14:10 15:14 33:18 35:15 47:9 47:22 48:3 49:7 49:12 49:13 50:6 51:23 55:9 60:18 62:21 70:20 86:20 87:5 92:24 97:22 106:4 106:12 111:25 112:21 114:7 115:19 116:25 127:15 131:3 131:12 139:8 142:23 146:6 147:15 150:5 150:18 150:19 150:20 154:13 157:6 159:1 159:3 166:13 166:25 167:1 167:24 168:12 168:12 168:1 168:20 168:23 169:17 172:3 173:18 180:19 182:10 202:2 205:20 212:12

**maybe**(12) 29:21 50:8 56:5 107:17 107:18 107:19 108:13 112:21 115:20 126:3 197:1 211:12

**mayer**(2) 5:5 10:16

**mccambridge**(5) 7:18 116:14 116:15

**mccarter**(1) 5:4

**mccolm**(1) 8:42

**mccormack**(1) 4:17

**mccormick**(4) 6:17 13:8 102:10 129:17

**mcdonald**(1) 8:21

**mcneill**(1) 2:22

**meagher**(1) 9:29

**mean**(20) 26:12 44:10 66:4 86:18 99:15 103:20 107:25 123:5 133:18 148:23 150:1 151:19 174:14 189:13 201:13 202:8 208:5 208:10 208:16 211:23

**meaning**(2) 97:12 166:5

**meaningful**(3) 71:5 92:5 207:6

**meaningfully**(2) 205:13 207:4

**meaningless**(1) 136:2

**means**(6) 90:9 116:2 117:24 122:13 152:16 189:14

**meant**(2) 32:12 92:13

**measure**(2) 88:12 125:16

**measures**(1) 24:21

**meaty**(1) 164:15

**mechanic**(2) 170:19 182:25

**mechanism**(10) 69:17 71:9 86:9 103:11 104:10 104:24 107:4 108:12 111:5 184:1

**med**(2) 38:22 40:1

**media**(5) 29:9 29:13 42:23 42:25 44:6

**meet**(3) 69:2 69:3 73:22

**meisel**(1) 1:32

**member**(1) 95:4

**members**(1) 94:22

**memo**(1) 75:21

**memorandum**(4) 130:10 191:15 194:18 199:4

**memorialize**(1) 198:2

**menachem**(1) 13:42

**mention**(5) 92:14 92:14 108:24 160:2 182:19

**mentioned**(7) 54:13 74:15 92:8 92:11 92:13 151:23 196:5

**merely**(6) 33:3 43:24

**merger**(6) 27:2 27:4 27:9 28:1 186:22 186:22

**merit**(12) 54:15 54:16 55:21 55:23 68:18 69:16 70:2 80:4 80:25 101:9 101:11 101:20

**meritorious**(1) 82:6

**merits**(10) 35:20 56:8 63:15 79:13 80:15 80:22 81:3 81:13 81:24 184:16

**merrill**(2) 2:20 10:34

**mester**(1) 2:14

**met**(2) 85:13 119:2

**metals**(3) 91:9 91:13 92:13

**method**(2) 125:12 143:19

**michael**(5) 3:14 5:39 9:21 10:21 16:1

**michelle**(2) 2:30 11:42

**michigan**(2) 6:6 86:23

**might**(30) 15:15 16:18 25:24 27:16 29:4 30:3 34:9 52:6 54:20 58:6 68:2 76:1 78:6 80:11 83:22 87:16 89:15 99:17 99:18 100:12 105:20 106:22 123:9 123:25 136:1 190:6 202:20 202:21 202:22 210:6

**mike**(1) 10:31

**millen**(6) 18:21 18:24 19:7 19:14 19:21 19:24

**millen's**(1) 19:2

**million**(30) 27:8 61:17 62:24 70:9 75:9 77:2 78:22 85:10 85:18 85:24 85:25 134:9 134:11 165:8 165:20 170:10 170:13 170:21 183:18 183:18 183:19 183:24 184:11 184:12 188:2 188:5 188:18 188:23 189:18 203:19

**millions**(2) 24:7 35:16

**mina**(2) 12:5 12:6

**mind**(2) 68:13 88:15

**minkove**(1) 10:13

**minor**(1) 139:17

**minute**(11) 47:10 49:8 49:11 53:3 91:12 96:3 152:6 156:24 163:8 182:17 211:22

**minutes**(6) 79:9 79:15 141:17 157:6 175:22 202:9

**mirror**(1) 43:16

**mirroring**(1) 44:4

**mischaracterized**(1) 200:6

| Word | Page:Line | Word | Page:Line | Word | Page:Line | Word | Page:Line |
|---|---|---|---|---|---|---|---|
| misclassification(1) 192:25 | | multiparty(2) 141:21 142:23 | | non-bankruptcy(5) 34:1 107:16 117:2 162:12 168:13 | | not(301) 14:16 15:12 15:17 17:3 19:24 23:24 25:19 25:23 26:3 27:4 27:21 28:11 28:16 28:20 29:10 29:21 30:3 30:4 30:15 30:18 30:25 31:1 31:9 31:10 31:15 31:20 31:22 32:24 33:13 33:18 35:20 38:5 38:20 39:10 40:13 40:19 40:19 40:23 40:24 42:15 42:17 42:23 43:4 43:8 43:21 44:1 44:7 44:20 44:23 46:12 46:12 46:21 47:1 47:15 47:19 48:1 49:24 50:2 50:6 50:10 50:10 51:16 53:13 54:18 55:17 55:20 56:3 56:8 56:11 57:8 57:10 57:12 57:25 58:1 58:18 59:3 60:2 60:8 60:11 60:19 61:16 62:7 62:9 62:10 62:16 63:10 64:8 65:10 65:12 65:13 65:16 66:13 68:6 68:14 69:16 69:23 70:25 71:1 71:4 71:21 72:3 73:10 73:15 73:16 73:22 74:14 76:2 76:5 76:5 76:17 77:5 77:8 77:11 77:19 77:19 78:3 78:10 78:21 80:16 80:17 80:23 81:11 81:13 82:1 82:3 82:3 82:4 82:17 82:25 83:14 83:21 84:11 84:20 85:1 85:3 86:7 86:17 88:3 88:7 89:17 90:11 90:12 90:16 91:11 91:17 91:20 91:21 92:1 92:17 93:9 93:19 94:16 95:18 95:21 96:17 96:20 97:4 98:13 98:14 98:15 98:19 98:21 99:1 99:17 99:17 99:18 100:17 101:15 101:20 102:25 104:20 106:3 106:10 106:25 107:19 107:22 108:4 109:20 109:25 110:2 110:12 110:16 111:25 112:13 112:15 113:2 114:15 115:9 115:19 115:19 115:23 117:23 119:13 121:12 121:13 121:18 121:25 122:3 122:12 122:13 122:15 122:25 123:9 123:11 123:12 123:17 123:19 123:19 124:6 124:17 124:19 124:19 124:22 125:15 125:16 125:19 126:3 126:7 126:14 126:19 126:20 127:5 127:8 127:17 127:20 127:21 127:24 128:10 130:1 130:18 131:1 131:4 131:22 131:23 132:12 132:13 133:24 134:4 134:10 134:20 134:22 134:24 134:25 135:1 135:5 135:5 135:18 135:19 136:1 137:8 138:18 140:1 141:6 141:19 142:9 143:11 143:20 144:10 144:14 145:8 145:16 145:23 146:8 146:24 148:24 149:6 149:12 150:5 150:7 150:10 150:20 152:1 152:1 152:10 152:12 152:20 152:21 152:24 152:25 153:1 153:7 153:9 153:9 154:13 154:25 155:12 155:15 155:17 155:20 156:3 156:19 157:14 157:17 157:19 158:19 159:16 159:18 159:19 159:25 160:15 160:21 |
| misconduct(2) 32:7 94:1 | | multiple(11) 17:17 116:20 121:2 121:2 122:16 142:17 143:4 144:9 162:1 162:7 201:14 | | | | | |
| misimpression(1) 201:6 | | | | | | | |
| mismanagement(3) 23:15 23:21 34:18 | | | | non-consensual(5) 117:25 118:11 118:13 118:17 123:17 | | | |
| misrepresentation(1) 94:1 | | multiply(1) 133:21 | | | | | |
| misrepresentations(1) 22:16 | | munford(1) 137:3 | | non-consenting(1) 119:5 | | | |
| miss(1) 56:8 | | murphy(1) 12:10 | | | | | |
| missouri(1) 39:17 | | must(11) 38:16 45:6 59:23 60:23 64:3 67:14 91:24 143:10 174:13 202:7 207:23 | | non-contractual(7) 116:25 117:20 148:3 152:13 159:10 159:17 160:21 | | | |
| misspoken(1) 168:20 | | | | | | | |
| misstates(1) 156:22 | | | | non-contribution(1) 162:19 | | | |
| mistakenly(1) 92:12 | | muster(2) 89:9 209:23 | | non-debtor(3) 31:17 165:3 171:14 | | | |
| misunderstood(2) 156:10 202:7 | | mutual(4) 88:13 88:19 88:20 88:23 | | non-debtors(5) 30:11 117:7 117:8 118:1 118:6 | | | |
| mobile(1) 160:8 | | myers(1) 7:38 | | | | | |
| model(2) 204:21 205:1 | | myrick(1) 9:13 | | | | | |
| modern(3) 143:7 206:11 208:12 | | myself(3) 52:4 89:10 210:7 | | non-derivative(1) 159:15 | | | |
| modifications(1) 47:24 | | naftalis(1) 11:8 | | non-duplicative(1) 17:21 | | | |
| modified(4) 31:5 53:18 158:15 187:21 | | nail(1) 86:4 | | non-evidentiary(1) 204:23 | | | |
| modify(1) 58:22 | | name(5) 42:4 49:19 110:13 112:5 116:15 | | non-guarantor(1) 30:13 | | | |
| moment(8) 65:2 81:15 128:15 129:8 153:13 196:1 198:1 205:15 | | namely(6) 19:24 130:12 131:25 190:12 190:23 190:25 | | non-indemnity(1) 162:19 | | | |
| | | | | non-payment(2) 184:6 188:19 | | | |
| | | | | non-recourse(1) 36:23 | | | |
| monarch(2) 11:4 11:5 | | narrow(3) 76:22 153:14 153:17 | | non-redeeming(1) 188:5 | | | |
| money(18) 44:10 55:19 70:9 71:8 73:10 85:3 85:25 86:1 160:16 162:1 182:8 182:9 194:3 194:9 194:21 195:1 195:5 195:6 | | narrowly(2) 38:3 88:12 | | non-released(1) 147:18 | | | |
| | | national(1) 104:18 | | non-settling(19) 124:3 129:23 136:19 137:5 142:10 143:11 143:15 143:20 144:1 145:1 145:2 145:9 148:9 150:1 155:7 157:10 157:14 159:11 161:12 | | | |
| | | natural(2) 116:23 117:6 | | | | | |
| | | nature(8) 16:17 40:25 138:16 138:19 138:25 160:14 164:4 210:22 | | | | | |
| monies(1) 182:10 | | | | | | | |
| monroe(1) 6:27 | | | | | | | |
| montenegro(1) 12:33 | | naval(1) 86:18 | | none(9) 60:24 69:1 80:4 127:19 141:13 179:25 193:5 195:16 210:15 | | | |
| month(4) 117:15 119:15 184:5 190:8 | | near(1) 19:12 | | | | | |
| months(4) 66:23 134:16 141:11 150:19 | | nearly(1) 156:17 | | | | | |
| moot(2) 62:6 62:11 | | necessarily(2) 92:1 150:11 | | | | | |
| mooted(1) 21:15 | | necessary(12) 23:12 34:21 57:10 97:3 97:23 118:12 118:16 118:18 118:24 130:7 142:16 190:16 | | nor(3) 75:14 181:20 191:22 | | | |
| more(32) 29:12 43:3 48:23 57:9 68:22 74:1 74:16 82:20 85:19 86:8 88:3 90:13 97:24 98:17 99:21 107:14 126:22 129:7 133:9 140:22 141:16 151:7 153:20 160:7 161:7 182:2 187:25 196:6 196:12 206:9 206:14 207:1 | | | | normal(1) 194:4 | | | |
| | | | | norman(1) 1:34 | | | |
| | | neck(1) 160:3 | | north(6) 2:24 3:24 6:6 6:35 7:27 36:15 | | | |
| | | need(16) 14:20 34:22 55:16 56:3 58:1 58:2 62:9 90:19 98:14 98:24 100:25 112:13 116:1 188:2 207:4 207:24 | | northern(1) 160:4 | | | |
| morgan(8) 3:11 10:8 10:12 11:24 13:41 63:4 139:16 155:19 | | | | | | | |
| | | | | | | | |
| | | needed(4) 127:19 178:25 188:10 189:10 | | | | | |
| morning(17) 14:3 14:4 14:5 15:25 16:7 19:4 20:13 35:2 48:10 49:19 53:8 75:5 82:12 113:10 115:16 210:20 211:8 | | needless(2) 73:12 73:13 | | | | | |
| | | needs(7) 30:22 70:23 71:8 71:13 73:19 75:19 163:19 | | | | | |
| | | | | | | | |
| morning's(1) 100:15 | | negligence(2) 32:6 32:7 | | | | | |
| morris(3) 6:19 102:10 129:11 | | negotiated(1) 117:10 | | | | | |
| moskowitz(21) 3:12 139:15 139:16 140:11 140:14 147:14 147:16 150:14 150:21 151:1 156:11 156:17 157:1 157:3 158:10 159:7 172:13 181:1 181:12 181:13 181:14 | | neil(1) 8:26 | | | | | |
| | | neither(4) 60:8 62:13 75:13 75:15 | | | | | |
| | | nemours(1) 7:26 | | | | | |
| | | net(4) 165:20 165:21 165:22 208:25 | | not(98) 161:2 161:3 161:10 161:17 161:25 162:1 162:5 162:16 162:23 163:15 163:17 163:23 163:24 165:8 167:23 167:24 168:16 169:2 169:18 170:4 170:8 170:16 170:22 171:10 172:4 172:14 172:25 173:24 175:18 176:24 177:4 177:12 178:2 178:4 178:15 178:16 178:23 179:6 179:9 179:16 180:1 180:4 180:6 180:17 180:22 181:11 181:25 181:25 182:10 182:12 184:17 185:9 186:23 189:12 189:13 189:18 189:23 190:6 190:13 190:20 191:1 191:2 191:13 191:23 191:24 192:1 192:13 193:17 194:9 194:13 195:2 195:6 195:7 195:11 196:11 196:20 196:21 197:1 197:14 197:22 198:5 198:6 198:24 202:20 203:4 203:9 205:11 205:23 206:11 208:2 208:6 208:17 210:13 210:21 211:13 212:3 212:18 212:22 |
| | | neutral(2) 73:5 81:17 | | | | | |
| moss(1) 13:29 | | never(13) 47:8 74:6 157:7 157:15 178:20 179:1 179:9 182:25 185:16 185:16 186:21 192:16 196:5 | | | | | |
| most(12) 17:24 18:1 52:8 73:14 85:6 140:17 142:3 144:5 144:16 156:6 162:16 171:9 | | | | | | | |
| | | | | | | | |
| | | | | | | | |
| mostly(1) 119:8 | | new(19) 2:32 2:39 3:17 4:21 4:41 5:15 5:34 43:15 44:4 44:10 44:14 44:16 59:19 115:23 149:21 163:6 178:25 181:2 192:16 | | | | | |
| motion(24) 16:22 55:2 55:3 55:4 55:6 55:7 55:12 56:16 57:1 57:2 57:7 57:20 57:21 58:24 71:14 72:21 73:12 74:3 102:15 111:17 115:1 183:10 184:16 185:2 | | | | | | | |
| | | | | | | | |
| | | next(8) 20:10 42:18 52:25 53:11 128:10 128:11 165:21 212:12 | | | | | |
| motions(2) 81:12 115:1 | | | | | | | |
| motivation(2) 69:1 102:20 | | nexus(4) 37:7 38:7 38:13 42:15 | | | | | |
| motives(1) 68:5 | | nicholas(1) 13:25 | | | | | |
| mouth(1) 191:13 | | nick(1) 9:31 | | | | | |
| move(9) 15:7 54:10 94:4 105:8 116:10 148:11 162:25 183:6 211:1 | | night(1) 15:5 | | | | | |
| | | nii(1) 92:14 | | | | | |
| | | ninth(1) 38:24 | | not-discriminate-unfairl(1) 191:6 | | | |
| moved(1) 58:22 | | nobody(12) 68:10 68:12 69:5 69:7 79:25 116:8 141:12 144:19 171:24 173:21 184:20 200:3 | | note(22) 36:23 36:25 58:17 62:4 83:8 98:7 98:13 113:10 115:3 116:8 119:16 119:20 130:6 185:20 186:17 186:18 187:1 192:21 194:12 194:25 195:11 195:16 | | | |
| moving(2) 96:1 151:15 | | | | | | | |
| mtc(1) 149:20 | | | | | | | |
| much(17) 35:10 35:20 83:21 93:21 98:4 115:4 132:2 138:15 158:23 165:5 172:22 174:7 189:5 202:8 209:11 209:24 212:24 | | | | | | | |
| | | | | | | | |
| | | nominator(1) 93:3 | | | | | |
| | | nomura(1) 11:20 11:20 | | noted(5) 19:6 38:11 178:10 178:17 199:7 | | | |
| muchin(3) 6:25 13:10 129:12 | | non(10) 30:9 117:12 117:25 118:3 118:3 118:4 122:17 146:23 147:17 161:19 | | | | | |
| mulhern(1) 10:5 | | | | | | | |

A521

| Word | Page:Line | Word | Page:Line | Word | Page:Line | Word | Page:Line |
|---|---|---|---|---|---|---|---|
| | | | | | | | |

noteholder(26) 17:15 21:3 21:10 21:16 26:13 35:7 35:7 35:9 36:5 36:10 47:11 47:14 48:13 49:2 65:11 75:14 93:8 93:20 96:11 113:6 138:11 139:10 196:24 199:22 200:4 200:9

noteholders(31) 15:7 20:18 85:1 102:15 105:24 106:21 108:1 133:21 134:2 139:12 152:3 165:2 165:10 166:4 168:11 170:10 170:14 170:18 172:12 172:24 183:13 187:16 187:24 189:7 190:23 192:11 196:9 202:14 203:21 204:17 208:25

noteholders'(2) 196:8 199:4

notes(49) 63:25 75:8 75:9 75:15 76:8 82:22 82:23 83:5 83:13 83:13 83:16 83:17 90:20 95:11 95:13 95:14 95:15 95:17 95:19 96:3 96:11 96:12 96:14 96:16 96:17 96:21 96:23 97:3 97:5 97:6 97:9 97:10 97:16 97:16 97:17 97:17 156:18 156:19 182:12 185:10 185:12 185:24 186:5 186:11 188:11 188:14 188:15 188:20 194:1

nothing(21) 22:3 28:22 29:1 36:4 36:8 37:23 55:8 84:9 87:21 97:16 114:2 147:22 147:24 153:20 157:25 169:12 182:1 185:1 189:20 209:12 211:11

notice(5) 185:10 186:3 186:12 210:20 210:21

notices(2) 14:17 188:11
notion(3) 106:22 126:2 200:16
notional(2) 194:21 194:24
notwithstanding(4) 21:2 67:9 175:9 177:21
november(1) 144:19
now(90) 15:21 20:11 21:21 35:8 45:19 46:10 47:25 48:3 51:24 53:1 54:8 62:15 63:11 63:20 65:21 83:18 84:4 86:12 89:12 96:14 98:14 98:16 98:17 98:22 99:9 100:2 102:2 110:10 115:11 116:23 117:1 117:5 117:9 117:11 117:24 119:9 119:23 120:4 120:24 121:4 121:8 123:10 125:22 127:14 128:23 132:6 133:1 134:15 134:19 135:11 139:24 146:15 147:23 148:11 152:11 157:1 161:13 161:17 163:12 163:24 167:2 167:5 169:2 169:16 169:22 177:1 180:7 185:8 189:16 191:7 192:7 192:14 192:21 193:8 193:21 193:23 194:8 195:8 195:19 197:10 198:24 200:4 200:23 203:4 203:5 203:15 207:8 207:13 209:21 212:17

nowhere(2) 175:21 176:9
number(11) 18:11 19:18 44:25 82:15 99:16 118:14 122:4 158:17 186:1 199:6 206:16
numbers(2) 100:23 134:10
numbing(1) 193:5
nutraquest(1) 145:19
o's(1) 40:19
oaktree(12) 2:4 12:37 12:38 48:8 176:5 190:14 192:16 192:18 194:17 199:16 199:24 203:12

object(7) 59:13 72:4 72:6 127:23 138:13 138:24 139:1

objected(7) 31:3 55:4 58:23 135:22 135:25 145:2 200:3

objecting(4) 113:9 113:25 114:13 116:16

objection(95) 15:6 15:8 15:12 18:19 18:21 19:1 19:6 19:7 19:8 19:10 19:11 20:2 20:5 20:7 20:10 20:11 21:21 32:3 35:4 35:7 50:4 51:15 51:18 52:21 54:1 56:21 57:21 57:23 58:1 59:17 62:5 63:6 65:18 74:15 75:17 76:20 76:21 76:22 76:22 77:14 81:14 89:16 89:17 89:21 90:13 90:17 102:7 102:15 104:18 105:4 105:13 108:24 119:16 128:18 131:17 131:19 132:15 132:15 137:5 138:12 138:14 138:19 139:23 139:17 141:4 145:7 157:16 158:9 158:20 159:24 164:3 166:19 171:12 176:11 177:3 178:1 178:8 178:10 178:18 178:24 181:8 181:11 193:9 196:6 196:8 196:18 196:19 196:25 198:2 199:1 199:1 199:3 203:25 204:20 210:5

objections(51) 17:12 17:17 17:19 17:19 47:8 48:12 48:14 52:25 53:2 53:12 53:25 65:10 65:13 65:16 65:21 66:13 74:16 74:18 74:21 77:13 79:10 100:8 100:15 100:20 102:3 116:12 129:19 135:23 145:5 147:21 152:2 158:2 158:7 164:2 178:7 178:17 190:7 196:16 202:6 210:9 210:21 210:23 211:13 212:3

objective(4) 58:19 58:20 64:24 71:20
objector(1) 29:9
objectors(7) 14:8 14:18 17:11 17:17 17:21 49:13 211:13

objects(1) 178:10
obligation(4) 27:14 32:17 32:24 73:15
obligation."(1) 177:18
obligations(11) 28:2 28:4 94:23 97:10 97:11 97:11 97:13 97:15 167:14 193:25 203:3
observation(4) 33:24 48:9 92:15 172:19
observations(3) 91:1 93:1 132:7
obstructionist(1) 29:10
obviated(1) 163:21
obvious(1) 212:8
obviously(12) 27:7 38:1 50:3 64:17 68:10 95:6 113:10 114:12 150:14 154:1 188:20 201:19
occupy(1) 53:11
occurring(1) 201:7
occurs(1) 38:12
ocean(1) 86:24
october(3) 56:14 161:16 203:22
off(7) 20:18 44:11 57:9 84:11 86:11 89:2 91:6

offensive(1) 150:8
offer(1) 107:14
offered(4) 120:4 120:14 191:9 191:10
officer(7) 64:11 67:2 91:8 141:5 145:6 148:13 150:4

officers(10) 7:16 31:10 45:23 53:19 59:15 112:6 128:3 128:18 129:20 140:20

offices(2) 27:17 27:22
official(6) 4:4 8:4 79:4 82:14 114:19 170:
often(1) 88:3
ohio(1) 60:10
okay(39) 16:6 17:6 19:3 28:25 49:14 49:18 52:21 52:22 55:24 57:6 57:17 58:5 66:8 74:13 99:19 100:5 101:1 131:10 140:8 151:15 156:13 157:3 166:10 166:25 167:6 168:19 168:22 183:5 189:22 190:1 193:16 193:21 204:12 208:1 208:9 210:8 210:11 211:4 211:16

oklahoma(1) 122:5
omnibus(1) 58:22

once(16) 17:12 95:13 95:14 104:15 105:25 108:15 108:17 124:12 148:8 154:24 184:21 185:13 188:12 200:11 204:8 204:11

one(116) 1:28 3:23 5:14 7:12 13:4 13:4 15:8 17:9 24:12 25:5 33:17 36:9 42:3 43:12 43:20 45:1 47:9 48:9 48:19 49:7 49:11 51:15 58:11 61:1 71:19 72:1 76:7 77:12 77:13 80:11 80:13 82:7 82:8 82:22 83:8 84:25 86:20 87:9 87:10 88:5 88:17 90:12 90:17 91:11 96:7 97:24 99:6 99:9 105:23 108:23 111:16 112:24 113:11 115: 115:22 117:6 117:15 118:13 118:19 119:7 119:9 119:19 119:22 119:24 121:12 125:25 126:1 126:7 128:15 129:7 132:10 134:1 135:15 136:16 136:17 137:2 137:18 140:1 141:15 147:10 148:7 151:21 156:21 157:8 157:13 157:15 161:7 161:12 161:23 162:1 163:21 163:25 166:21 166:23 172:7 176:14 178:25 181:19 181:23 183:18 185:23 186:19 186:21 187:11 191:7 191:8 193:3 196:1 197:18 198:8 199:20 200:13 202:25 208:14 212:21

one-third(1) 174:24
one-year(1) 172:20
oneal(1) 9:21
ones(5) 44:4 48:3 142:3 164:15 169:18
ongoing(3) 61:9 72:5 91:4
only(50) 17:9 28:14 31:9 31:10 36:22 45:20 46:3 46:15 55:21 56:10 77:3 88:21 88:22 92:15 93:23 94:5 98:8 103:3 110:21 112:25 113:13 113:16 116:7 120:12 120:22 122:16 123:20 126:10 127:8 134:20 147:17 150:15 153:7 153:16 153:19 155:8 159:9 163:4 169:1 170:6 180:14 180:19 185:13 190:11 190:16 191:5 191:6 191:8 200:4 200:7

onto(1) 183:6
open(2) 83:15 84:8
opening(9) 190:8 190:16 192:15 195:21 196:20 196:23 198:1 199:3 203:24

operate(2) 95:20 147:25
operates(1) 47:16
operating(1) 125:10
operation(1) 138:2
operations(1) 31:22
operative(4) 110:3 110:4 111:1 111:10
operator(4) 147:6 147:8 147:11 147:14
opined(1) 55:23
opinion(5) 32:9 32:18 135:18 160:4 207:2
opinions(1) 70:23
opponent(2) 190:15 204:3
opportunities(2) 123:8 201:14
opportunity(5) 24:21 32:22 51:4 163:14 175:9

opposed(4) 26:16 90:2 110:10 199:17
opposing(5) 203:11
optimism(1) 100:21
optimistic(1) 100:19
options(1) 39:25
oral(4) 58:3 196:20 199:2 200:5
orally(1) 196:22
orange(1) 7:27
orchestrated(1) 18:10

order(150) 16:23 17:20 19:17 19:19 20:24 21:4 21:8 21:14 25:4 29:20 30:4 33:11 54:4 56:6 56:18 76:4 76:16 82:17 96:25 97:4 97:21 101:6 110:14 111:18 111:24 114:14 114:15 116:13 116:17 117:9 117:17 117:18 117:25 118:2 119:21 120:2 120:16 121:5 121:8 121:9 121:15 122:3 123:6 123:10 123:15 123:17 123:21 124:1 124:8 124:12 124:14 125:4 125:12 125:23 126:5 126:9 127:17 127:23 129:22 130:6 130:15 130:21 131:17 131:21 135:4 135:9 135:12 135:17 135:21 135:23 136:18 136:21 138:13 138:14 138:16 138:19 138:25 139:3 140:1 140:16 140:20 140:23 140:25 141:4 141:7 141:19 142:10 142:14 142:15 143:6 143:10 143:23 143:25 144:10 145:7 145:8 145:19 146:20 146:22 147:17 147:20 147:24 147:24 148:18 148:21 148:24 148:25 149:1 149:3 149:6 149:8 149:10 149:11 149:15 149:19 149:22 149:24 150:4 150:7 150:11 151:8 151:20 152:4 152:5 152:8 152:11 152:20 153:1 153:10 155:9 155:12 155:18 157:9 157:18 158:8 159:19 159:20 160:25 161:2 161:9 161:16 162:3 162:5 165:4 171:17 171:22 172:21 181:3 181:15 181:19

ordered(1) 90:4
orders(14) 91:12 92:10 92:17 114:13 126:2 140:21 140:23 142:16 143:8 148:23 149:14 149:24 151:3 151:7

ordinarily(3) 24:24 32:21 143:13
ordinary(1) 22:8
organize(2) 140:18 175:22
organized(2) 18:1 139:24
oriented(1) 69:10
original(1) 56:17
originally(2) 45:19 191:7
other(131) 17:9 21:6 24:15 26:4 28:15 30:4 30:20 32:6 37:2 37:15 38:4 40:12 40:24 41:6 41:15 44:2 47:10 48:2 56:22 61:1 62:8 63:16 64:13 67:11 68:7 68:10 70:8 70:22 71:4 74:18 74:20 76:10 77:24 78:23 82:8 82:23 83:10 92:3 93:8 96:24 97:12 97:13 98:23 101:18 102:22 103:1 103:1 106:24 109:17 109:25 110:24 111:18 118:1 121:12 124:5 124:11 125:12 125:22 125:25 126:6 127:22 130:20 130:21 132:5 132:18 133:5 135:7 135:25 137:17 138:23 143:3 143:14 144:1 144:23 145:8 145:17 148:3 149:2 151:23 152:2 152:7 152:22 153:4 153:15 154:12 157:8 157:15 160:14 161:13 164:2 165:5 168:23 169:19 170:7 171:6 173:9 173:12 176:24 177:16 179:10 181:21 185:19 186:21 190:24 190:25 191:20 192:9 192:19 192:23 193:6 194:3 195:5 195:14 199:20 200:2 200:5 202:19 202:21 207:2 208:23 209:13 211:4 211:12 211:14 212:8

others(6) 54:7 104:2 140:3 152:23 158:20 170:7

otherwise(11) 14:24 21:8 29:19 30:3 61:16 64:5 69:2 78:3 87:16 181:3 190:6

ought(5) 81:4 85:3 109:11 126:5 206:9

| Word | Page:Line | Word | Page:Line | Word | Page:Line | Word | Page:Line |
|---|---|---|---|---|---|---|---|

**our**(140) 18:8 21:21 22:20 24:23 25:1 28:13 35:21 39:16 40:9 46:23 47:16 47:21 52:20 53:12 54:5 55:6 57:19 57:21 57:21 57:23 59:16 61:6 62:5 74:15 76:19 84:13 84:21 85:5 88:20 89:16 89:17 91:25 94:2 95:2 95:14 96:3 102:13 102:17 104:18 105:16 106:16 107:1 108:24 108:24 113:15 113:15 115:17 115:21 117:25 118:20 118:23 119:4 119:7 119:16 120:3 120:6 120:12 120:22 120:24 121:5 121:17 122:1 122:14 125:16 126:17 127:17 130:2 131:17 131:19 132:8 132:18 134:2 134:13 138:14 138:19 139:1 139:2 139:6 141:14 143:25 145:17 151:25 152:19 154:5 155:1 155:2 155:3 155:21 157:11 157:13 157:16 159:21 160:23 162:3 162:6 162:16 164:11 165:1 166:12 166:14 166:16 166:1 170:3 170:19 170:22 170:25 171:3 171:1 171:15 171:18 172:16 172:23 172:25 173: 175:15 178:2 178:20 178:20 180:12 180:22 182:7 182:20 183:10 184:15 185:6 185:15 185:23 186:15 187:14 187:19 187:19 188:8 190:7 195:20 196:16 200:2 203:17

**ourselves**(2) 119:13 193:23

**out**(81) 14:17 15:19 17:25 24:21 25:21 29:25 35:5 39:11 39:13 41:6 43:2 44:11 44:23 45:1 45:8 45:18 46:6 46:7 48:19 60:10 67:24 73:17 78:19 82:1 82:9 84:11 85:14 86:19 87:17 93:22 95:2 95:9 96:10 99:8 99:23 105:1 105:6 105:22 110:24 112:9 116:20 117:4 118:10 127:12 134:9 134:11 135:16 137:4 137:13 139:24 143:2 146:12 148:16 150:24 152:24 153:13 158:11 160:3 160:3 172:10 176:9 176:12 177:5 178:20 180:1 187:22 188:8 188:11 188:12 190:20 191:21 193:3 195:24 199:7 199:12 199:21 205:10 206:14 209:13 211: 212:10

**outcome**(1) 175:1
**outcomes**(1) 99:19
**outset**(1) 105:12
**outside**(7) 107:14 109:12 109:20 111:4 112:20 136:13 149:1

**outstanding**(1) 32:20 178:7 188:16
**over**(47) 34:13 47:19 48:15 58:10 65:15 68:25 70:24 78:5 78:15 85:4 85:25 86:1 91:5 95:15 95:18 101:7 119:14 120:19 121:7 124:13 124:23 125:1 125:6 127:21 129:22 134:17 137:4 141:16 149:23 149:2 153:6 157:24 159:14 166:3 167:15 168:2 169:8 170:16 170:23 172:3 174:11 175:4 181:20 184:18 187:11 200:18 206:5

**over-secured**(1) 77:9
**overextends**(2) 170:25 171:4
**overhang**(2) 36:14 36:18
**overlapping**(1) 34:2
**overnight**(2) 14:18 211:15
**overpaid**(2) 199:13 204:1
**overpayment**(2) 190:13 195:21
**override**(1) 29:5
**overruled**(5) 20:8 105:4 105:9 105:14 135:24

**overruling**(1) 57:25
**overseeing**(1) 113:21
**oversell**(2) 208:11 208:16
**owe**(1) 195:1
**own**(22) 35:17 64:20 68:16 78:9 78:9 78:10 90:11 110:13 110:19 110:20 113:13 119:20 130:20 130:22 131:22 131:23 132:14 142:19 151:7 163:23 166:12 167:2

**owned**(3) 27:2 42:21 157:19
**ownership**(2) 41:18 67:19
**o'melveny**(1) 7:38

**p.a**(1) 1:33
**p.m**(5) 101:3 101:3 176:1 176:1 213:2
**pachulski**(56) 8:30 128:5 128:7 128:7 128:14 129:2 129:3 129:4 129:5 129:9 131:3 131:6 131:8 131:12 131:14 131:15 139:5 139:7 140:3 140:6 141:1 143:24 147:3 151:16 152:23 156:1 156:2 156:5 156:13 156:20 156:22 156:24 156:25 157: 157:7 190:3 190:4 193:16 195:24 195:25 196:14 196:21 197:22 198:4 199:2 200:20 200:25 201:4 201:25 202:2 202:4 204:18 204:24 205:23 205:25 209:18

**pachulski's**(8) 139:20 139:21 151:17 152:3 152:25 204:20 205:7 206:8

**pachulski's**(1) 196:4
**pack**(1) 42:25
**page**(20) 142:21 158:14 159:8 165:25 167:4 167:22 167:22 168:7 168:17 168:18 178:9 178:9 182:18 191:15 193:19 193:19 194:18 202:5 203:1 209:2

**pages**(4) 108:8 135:4 143:21 181:20
**pagination**(1) 193:17
**paid**(20) 22:3 36:15 36:16 47:20 78:15 78:24 95:13 95:14 95:19 130:14 153:11 154:7 154:19 155:19 161:24 184:5 184:12 185:16 189:13 189:17

**pamalum**(1) 59:18
**panolam**(1) 92:12
**paper**(1) 199:15
**papers**(7) 28:24 92:14 129:13 129:14 141:13 141:14 198:15

**par**(2) 28:20 29:7
**paragraph**(14) 87:16 117:17 131:20 132:23 158:13 158:16 158:25 159:8 161:8 161:14 176:14 177:6 177:10 177:19

**paragraphing**(1) 194:4
**paragraphs**(1) 177:7
**parallel**(3) 109:21 111:14 206:18
**paraphrase**(4) 165:16 166:2 167:6 193:24
**paraphrasing**(2) 194:5 198:8
**parent**(32) 21:6 28:16 35:13 36:15 41:23 42:2 42:10 42:16 42:21 44:11 44:17 83:11 83:11 86:2 96:14 163:24 169:3 169:12 173:15 190:24 191:1 191:20 192:9 192:19 192:23 193:6 195:15 199:21 200:1 200:2 206:8 209:20

**parental**(1) 194:5
**pari**(4) 96:25 97:14 169:19 170:24
**park**(3) 5:14 8:5 11:29
**parke**(4) 4:12 82:13 114:19 204:14
**parody**(3) 200:1 200:2 203:17
**parse**(1) 130:17
**part**(30) 23:7 26:25 53:16 54:6 55:22 56:25 57:25 68:25 71:19 73:18 81:5 102:23 115:17 115:17 115:22 126:9 126:1 127:16 144:21 154:24 155:1 155:24 165:23 182:14 194:11 195:12 199:23 202:18 202:25 206:20

**parted**(1) 209:19
**partial**(5) 142:17 143:5 143:8 144:8 146:1
**participants**(1) 24:8
**participation**(2) 117:11 202:9
**particular**(16) 58:11 69:11 70:7 77:17 79:11 93:2 109:15 109:18 110:15 140:25 141:3 151:21 158:8 158:24 172:24 177:7

**particularly**(4) 31:2 38:10 72:7 144:1
**particulars**(1) 58:10

**parties**(55) 15:11 16:15 16:16 18:13 21:8 21:10 31:17 56:22 62:13 65:9 65:20 68:8 71:6 71:7 79:20 79:24 87:14 88:14 88:24 89:6 93:23 102:19 105:5 109:11 113:9 113:25 114:3 114:5 114:14 119:18 130:19 130:21 130:23 133:24 144:21 146:19 146:20 147:18 147:19 148:19 152:18 152:21 153:7 154:9 161:23 165:3 168:25 171:14 192:6 201:13 211:1 211:15 211:18 212:18 212:21

**partner**(4) 10:4 19:1 54:8 74:20
**partners**(8) 10:30 10:30 10:42 10:42 12:42 12:42 13:4 13:4

**party**(36) 11:28 14:8 14:17 29:10 39:17 42:10 44:2 67:9 68:3 68:21 72:13 77:23 78:2 78:7 99:9 100:20 102:3 135:2 141:19 145:2 145:9 145:9 145:11 146:17 146:21 146:24 147:22 148:4 152:14 153:7 153:11 155:12 159:14 161:11 161:13 210:9

**party's**(1) 77:24
**parver**(1) 10:39
**pass**(1) 209:23
**passage**(1) 24:6
**passing**(3) 89:9 108:9 145:18
**passu**(3) 96:25 97:14 170:24
**past**(1) 61:3
**pat**(1) 3:6
**patient**(1) 65:6
**patrick**(1) 9:17
**paul**(2) 8:33 11:15
**pause**(7) 65:2 129:8 168:14 196:1 197:25 205:15 207:9

**pay**(14) 30:13 44:12 78:16 120:24 141:22 148:7 155:3 155:5 155:16 184:2 184:12 186:4 186:7 189:15

**pay-over**(1) 177:18
**payable**(3) 36:24 178:12 195:10
**payables**(2) 195:9 195:12
**paying**(3) 29:1 137:11 141:23
**payment**(11) 61:15 83:13 138:5 167:11 176:23 186:17 186:20 188:20 188:21 188:24 194:13

**payments**(13) 30:10 30:13 77:3 102:23 103:6 103:7 104:13 106:16 176:24 177:3 186:25 194:5 194:23

**pays**(1) 28:22
**peace**(3) 130:8 142:25 172:14
**pearlie**(1) 150:23
**peer**(2) 17:18 44:2
**peeter**(1) 13:20
**pejorative**(1) 77:6
**penalty**(4) 24:18 24:20 24:22 150:3
**pending**(4) 55:2 72:23 175:1 185:18
**pennock**(1) 8:40
**pennsylvania**(1) 1:43
**people**(20) 31:10 31:15 69:5 83:22 84:14 94:17 94:18 118:5 119:3 119:5 122:2 123:23 123:24 127:3 127:13 146:6 146:9 184:17 198:12 205:12

**people's**(1) 67:17
**per**(1) 91:7
**percent**(6) 85:10 134:9 165:21 165:22 186:1 207:1

**percentage**(2) 78:17 207:19
**perfectly**(8) 43:21 44:14 44:21 84:13 91:4 115:17 204:19 211:6

**perhaps**(8) 112:20 115:15 116:7 123:20 130:5 152:23 189:4 205:25

**period**(3) 111:11 113:24 119:15

**periodic**(1) 194:22
**permanently**(1) 185:22
**permissible**(2) 46:15 46:20
**permission**(2) 82:16 198:6
**permissive**(1) 60:11
**permit**(3) 49:13 59:2 154:22
**permits**(1) 132:3
**permitted**(9) 53:16 53:20 62:10 69:23 69:23 71:11 87:12 89:3 145:10

**pernick**(1) 1:34
**perpetuity**(1) 106:10
**perplexed**(1) 86:13
**persists**(1) 67:7
**person**(4) 69:18 124:24 144:23 147:25
**personal**(5) 148:2 159:16 180:16 180:24 200:17

**personally**(1) 197:10
**persons**(1) 31:13
**perspective**(3) 112:10 158:11 192:7
**persuade**(1) 71:10
**persuasive**(1) 208:2
**pertain**(1) 61:25
**pertained**(1) 55:10
**pertains**(2) 72:8 167:20
**pertinent**(3) 15:11 35:6 40:11
**perverse**(2) 127:6 133:25
**perversity**(1) 127:1
**pesky**(1) 173:25
**peter**(1) 10:9
**petition**(5) 31:6 45:21 90:24 185:25 186:6
**phase**(1) 51:5
**phil**(4) 5:12 47:10 93:7 113:5
**philosophical**(1) 167:18
**phone**(5) 62:14 76:8 190:24 192:20 200:17
**phones**(86) 15:10 16:15 16:21 53:22 63:19 63:24 64:21 67:19 68:6 68:25 75:16 82:22 83:16 84:1 84:1 84:3 84:4 84:7 95:10 95:15 95:17 96:2 96:6 96:9 96:11 96:18 96:20 96:23 97:2 97:4 97:7 97:16 97:17 97:19 98:4 98:10 98:13 98:25 163:11 163:13 163:25 164:7 164:24 165:2 165:22 166:3 166:8 167:12 168:11 170:13 170:17 172:24 173:3 173:8 176:15 176:17 176:21 176:24 177:5 177:12 177:20 177:23 177:24 178:3 178:4 178:15 178:21 178:22 179:7 179:15 179:16 179:20 182:1 183:6 183:9 183:11 183:17 183:20 183:24 184:11 187:23 188:9 188:19 188:24 189:7 193:13

**phony**(1) 84:17
**php**(2) 115:5 115:7
**pick**(1) 59:25
**picked**(1) 206:16
**pickering**(1) 11:40
**piece**(1) 209:19
**piecemeal**(1) 59:25
**piper**(1) 2:29
**pitch**(1) 210:4
**pitched**(1) 204:25
**place**(10) 43:10 43:13 43:20 43:25 44:3 44:20 70:6 77:16 168:2 172:3

**placed**(3) 109:23 110:22 197:12
**placeholder**(2) 139:12 139:18
**places**(2) 110:14 134:11
**plain**(2) 51:17 174:15
**plainly**(1) 151:6
**plaintiff**(30) 121:20 122:24 123:9 123:14 124:1 124:8 124:9 124:12 124:13 125:10 125:13 126:21 132:5 134:24 135:7 135:8 135:9 135:9 136:17 136:20 136:21 137:9 137:16 137:17 137:18 137:21 137:21 138:1 142:7 142:13

**plaintiff's**(1) 122:23

| Word | Page:Line | Word | Page:Line | Word | Page:Line | Word | Page:Line |
|---|---|---|---|---|---|---|---|
| **plaintiffs**(14) 108:9 121:3 123:23 125:25 127:1 127:4 127:20 127:21 133:25 136:14 136:16 157:13 161:4 163:20 | | **point**(61) 39:21 41:7 42:24 43:2 44:23 45:17 46:23 48:19 49:2 52:18 55:16 57:14 58:1 61:24 70:14 75:20 75:24 82:1 90:16 95:18 96:22 98:24 101:6 103:23 105:22 108:23 112:9 113:12 132:19 132:21 137:1 138:7 138:22 139:8 150:12 150:17 150:18 150:22 151:21 161:7 161:18 171:12 171:2 172:7 177:8 185:7 187:11 188:24 189:9 190:10 195:20 196:25 196:25 200:8 202:3 203:1 203:14 206:18 209:13 209:23 212:7 | | **preemption**(1) 109:1 **preempts**(1) 107:2 **preference**(2) 83:11 94:9 **prejudge**(1) 84:14 **prejudice**(4) 57:3 143:11 147:24 161:3 **prejudiced**(2) 115:20 168:3 **prejudicial**(2) 145:9 166:13 **preliminarily**(2) 192:21 193:8 **preliminary**(2) 132:7 176:14 **premised**(1) 32:18 **prepared**(3) 79:25 98:8 179:9 **present**(5) 18:24 31:14 152:3 197:17 201:3 **presentation**(2) 14:12 151:24 198:6 **presented**(3) 14:9 50:23 151:19 **presenting**(1) 79:11 **presently**(1) 72:16 **preserved**(5) 61:4 73:8 76:16 130:22 **preserving**(1) 144:25 **press**(4) 53:7 95:12 101:15 138:19 **presumably**(2) 119:11 200:10 **presumption**(3) 149:2 207:19 207:21 **pretty**(12) 51:11 70:13 78:8 85:8 86:15 88:11 88:16 90:4 149:25 159:24 185:6 206:10 **prevent**(4) 28:1 114:3 114:4 117:19 **preventing**(1) 22:9 **prevents**(2) 144:10 147:17 **reviewed**(1) 176:13 **previewing**(1) 163:23 **previously**(4) 26:17 66:20 114:22 114:24 **price**(1) 194:3 **primary**(3) 173:5 175:20 188:7 **primofl**(1) 10:35 **principally**(1) 148:13 **principle**(3) 167:3 191:6 198:21 **principles**(2) 23:23 40:22 **print**(1) 84:16 **prior**(12) 19:13 62:18 66:17 67:3 76:17 113:22 132:15 151:4 151:7 151:8 183:23 211:21 **priorities**(1) 191:4 **priority**(33) 15:10 21:7 24:10 24:13 29:19 37:22 37:23 42:22 43:12 43:22 44:8 54:1 54:4 54:9 62:2 74:17 75:8 75:13 76:9 76:20 82:21 83:1 83:16 84:12 96:2 96:6 99:6 99:8 191:22 205:24 206:5 206:13 208:15 **private**(3) 71:6 165:3 171:13 **privately**(1) 151:18 **pro**(7) 16:4 133:15 137:1 165:22 165:23 177:15 185:2 **pro-hoc**(2) 129:13 129:14 **probability**(1) 173:20 **probably**(12) 42:4 84:9 88:3 92:20 95:24 115:11 148:24 149:7 152:1 165:15 169:18 182:2 **problem**(14) 31:19 33:24 75:25 76:1 109:21 120:24 122:1 126:12 147:9 147:12 192:24 201:17 203:9 206:8 **problematic**(1) 109:3 **problematical**(1) 86:8 **problems**(3) 106:18 125:22 209:24 **procedural**(3) 148:12 180:21 204:21 **procedure**(2) 120:9 123:15 **procedures**(4) 117:2 121:18 122:4 122:12 **proceed**(15) 58:24 74:22 82:9 82:17 109:12 109:19 109:20 111:13 124:10 126:23 131:3 131:13 147:15 201:19 205:20 **proceeding**(7) 70:6 81:5 120:11 120:11 171:18 172:16 211:7 **proceedings**(8) 1:17 1:47 66:17 77:23 81:8 121:25 145:14 213:7 | | **proceeds**(7) 138:4 165:21 165:22 177:22 178:12 179:21 180:2 **process**(9) 26:25 61:11 87:3 109:19 145:4 145:12 174:1 174:1 175:2 **produced**(1) 1:48 **product**(1) 117:16 **professional**(3) 58:19 129:6 163:23 **professionals**(5) 23:3 31:12 31:12 59:2 80:22 94:16 206:15 207:11 **professors**(1) 25:8 **profitable**(1) 115:21 **progeny**(1) 206:20 **progress**(2) 17:10 53:11 **progresses**(1) 52:24 **prohibited**(1) 24:18 **prohibiting**(1) 124:12 **promise**(1) 210:24 **promised**(1) 15:19 **promises**(1) 73:1 **promote**(2) 64:20 70:7 **prompt**(1) 106:22 **prong**(1) 204:15 **proof**(2) 186:14 194:11 **proper**(5) 35:11 41:4 91:4 97:21 119:25 **properly**(7) 35:23 105:12 125:5 149:3 164:23 195:15 196:12 **property**(4) 22:18 179:14 179:15 180:4 **proponent**(4) 69:13 190:15 199:24 204:3 **proponents**(58) 14:15 14:25 17:14 17:15 17:22 18:9 22:6 29:8 30:19 31:4 47:11 49:25 60:6 61:2 63:22 65:11 68:14 69:4 69:14 75:18 80:20 81:22 85:20 85:21 93:8 103:10 111:7 112:12 113:7 114:20 116:18 119:21 120:5 120:14 121:20 123:14 123:28 130:10 135:3 135:11 135:15 137:3 138:11 139:10 163:16 163:21 166:7 166:9 169:2 169:9 169:10 176:5 189:22 189:23 191:9 191:14 194:17 200:24 210:14 **proportionate**(30) 120:9 120:10 120:11 120:21 120:24 121:13 121:16 121:18 121:25 122:12 122:18 122:25 123:1 123:4 123:12 124:2 124:8 124:16 125:14 126:16 126:22 127:4 133:18 133:22 137:19 143:19 143:21 143:24 144:4 144:13 **proposal**(10) 46:3 60:24 77:21 120:8 121:22 133:17 203:21 203:22 207:10 212:11 **proposals**(1) 212:2 **propose**(1) 212:14 **proposed**(21) 14:9 16:16 52:1 66:19 81:19 88:2 116:17 117:18 126:5 126:10 131:21 136:11 153:23 154:6 155:24 162:4 171:7 178:19 211:6 211:10 211:24 **proposes**(4) 60:2 117:5 117:9 177:19 **proposing**(4) 46:3 68:11 78:9 207:1 **proposition**(7) 66:11 90:7 92:10 104:18 105:24 149:7 149:13 **prosecuting**(2) 82:4 111:14 **prosecution**(1) 96:1 **protect**(7) 25:16 26:2 31:24 107:24 134:13 155:12 158:25 **protecting**(2) 21:24 59:5 **protection**(3) 25:17 107:18 150:1 **protections**(5) 107:12 112:22 121:7 124:7 155:18 **protects**(2) 88:21 88:22 |
| **plan**(265) 14:15 14:25 15:7 17:13 17:15 17:16 17:22 18:9 19:9 19:12 20:12 21:3 21:11 21:16 21:22 21:24 22:2 22:6 23:8 24:8 26:13 26:13 26:16 28:7 28:21 29:20 30:6 30:15 31:4 31:4 31:7 31:11 31:18 31:21 32:8 34:5 34:14 34:19 35:6 35:7 35:8 35:10 35:21 36:1 36:5 36:9 36:10 36:12 36:15 37:24 46:3 46:25 47:11 47:14 47:15 47:16 47:25 48:13 49:2 49:23 49:25 50:9 50:13 50:20 51:9 51:11 52:20 53:16 57:19 57:21 58:8 59:2 59:6 59:8 59:14 59:25 60:2 60:6 63:2 63:6 63:20 63:22 64:21 65:11 66:20 67:4 68:9 68:11 70:8 73:4 73:18 74:17 75:11 75:12 75:14 75:15 75:17 76:3 76:5 76:17 76:23 76:24 76:24 76:25 77:3 77:7 77:11 77:18 78:9 78:9 78:16 78:18 78:21 80:20 81:16 81:22 82:2 82:8 82:22 82:24 82:24 83:2 84:1 84:21 87:2 87:11 88:11 88:18 88:18 93:8 93:17 93:20 95:2 95:14 96:4 96:1 99:6 99:6 99:11 103:10 104:10 106:18 108:2 110:17 111:6 111:7 111:20 111:24 112:12 113:6 113:15 113:15 113:23 114:2 115:18 115:22 116:12 116:16 117:5 117:18 118:6 118:22 118:24 121:1 121:17 123:11 123:16 124:25 125:16 126:8 126:25 127:5 127:23 129:19 130:4 130:9 130:10 132:13 132:16 135:3 135:11 135:15 137:3 138:11 139:10 140:17 151:2 152:7 152:11 153:12 153:17 153:24 154:6 155:9 155:11 155:15 158:15 158:21 159:9 161:25 162:4 163:21 164:22 164:25 165:8 166:7 166:13 166:14 170:19 170:21 170:25 171:5 171:5 171:12 174:2 174:4 174:11 174:16 175:6 175:11 175:13 175:14 175:15 175:15 176:6 176:1 176:15 176:23 177:3 177:19 178:2 178:7 178:14 178:19 179:4 179:13 180:11 180:1 180:20 180:22 182:14 182:20 184:10 189:22 189:23 190:13 190:14 190:15 190:19 190:22 191:1 191:9 191:14 191:23 193:3 193:3 199:7 199:24 200:24 203:11 204:3 204:3 210:13 | | **points**(10) 18:10 44:19 48:20 79:6 146:15 151:16 159:5 164:3 190:17 201:14 | | | | |
| **plan's**(1) 22:19 **plane**(1) 201:22 **planning**(1) 210:16 **plans**(33) 15:8 15:12 15:12 22:1 24:11 24:14 24:15 24:22 31:25 32:18 35:11 35:24 51:12 52:25 53:17 53:20 54:23 54:25 61:25 81:19 98:15 102:3 102:5 102:21 103:3 103:11 103:14 132:14 180:2 187:21 190:12 206:25 212:5 | | **policies**(2) 55:20 73:13 **polk**(2) 3:11 10:8 **pop**(1) 206:12 **popularity**(1) 158:1 **portion**(8) 85:11 85:18 86:6 120:13 131:16 145:22 170:9 170:13 | | | | |
| **plate**(2) 83:19 98:20 **played**(3) 64:15 72:1 127:15 **plaza**(2) 2:23 4:20 **pleading**(9) 19:8 19:12 19:20 19:23 19:25 151:25 181:21 198:18 198:24 | | **position**(37) 34:15 40:7 40:9 40:11 56:4 62:14 63:19 63:21 63:24 64:22 67:20 68:20 68:25 74:13 76:19 95:16 95:22 99:8 99:19 105:16 107:2 109:5 119:3 119:13 121:17 125:5 134:12 139:10 156:7 156:9 156:23 157:8 157:11 157:15 184:15 196:1 201:1 | | | | |
| **pleadings**(2) 19:13 198:22 **please**(6) 14:2 20:25 53:6 55:24 129:8 168:6 | | **positions**(6) 61:17 69:11 77:4 113:11 183:13 198:22 | | | | |
| **plenty**(1) 147:4 **plus**(2) 184:11 192:10 **podium**(4) 92:23 157:25 162:22 163:7 | | **posner**(3) 70:16 70:21 73:16 **possession**(3) 91:21 116:3 188:13 **possibilities**(1) 122:11 **possibility**(2) 105:21 123:2 **possible**(3) 32:2 123:10 166:9 **possibly**(1) 146:10 **post**(6) 3:15 45:20 49:13 88:19 150:12 192:10 | | | | |
| | | **post-hearing**(1) 211:12 **post-petition**(3) 31:21 88:22 90:22 **potential**(5) 26:11 85:9 106:20 125:24 202:19 | | | | |
| | | **potentially**(3) 35:15 124:18 129:24 **potter**(1) 2:20 **powerful**(1) 169:19 **powers**(1) 90:14 **ppearances**(7) 1:21 2:1 3:1 4:1 5:1 6:1 7:1 **practical**(2) 126:1 161:1 **practically**(1) 157:24 **practice**(1) 73:12 **pre**(2) 88:19 90:23 **pre-existing**(1) 199:1 **pre-lbo**(1) 169:23 **pre-litigate**(1) 81:3 **pre-motion**(1) 114:25 **pre-petition**(9) 31:6 90:24 91:8 91:9 91:16 91:19 91:19 91:22 159:13 | | | | |
| | | **precedent**(5) 93:21 132:3 137:2 144:16 144:16 | | | | |
| | | **precedential**(1) 92:19 **preceding**(1) 173:20 **precisely**(2) 62:12 72:21 **preclude**(4) 53:22 130:18 130:19 147:25 **precluded**(1) 153:10 **precludes**(1) 55:5 **preclusion**(1) 110:2 **predators**(1) 22:10 **preempt**(1) 128:11 **preempted**(1) 107:7 | | | | |

| Word | Page:Line | Word | Page:Line | Word | Page:Line | Word | Page:Line |
|---|---|---|---|---|---|---|---|
| **prove**(1) 83:21 | | **question**(22) 17:5 47:24 73:9 75:8 77:20 85:16 87:6 109:10 110:9 110:19 118:1 118:3 118:4 118:5 118:15 148:21 200:25 205:2 205:9 205:10 205:22 210:18 | | **reasons**(16) 22:4 41:15 62:8 64:19 68:4 72:2 84:10 92:4 101:16 103:15 105:5 127:17 127:22 137:7 162:18 209:25 | | **reflect**(6) 30:22 152:8 157:23 158:4 174:18 188:15 | |
| **provide**(33) 22:4 24:13 32:16 34:20 36:12 43:10 44:1 44:16 46:9 46:14 47:15 51:12 52:10 52:10 58:8 59:14 59:22 60:1 60:4 64:4 78:13 94:21 124:25 126:24 165:8 178:3 178:14 178:16 178:23 186:12 191:1 197:1 198:15 | | | | | | **reflected**(4) 24:16 30:9 63:1 191:4 **reflects**(2) 58:21 66:16 **regain**(1) 106:1 **regard**(13) 44:18 44:19 45:17 45:21 52:18 76:19 76:21 94:19 109:10 110:4 119:10 126:1 163:19 | |
| | | **questioning**(1) 87:5 **questions**(7) 87:8 130:25 162:22 175:17 187:5 189:19 212:23 | | **rebut**(3) 21:14 70:11 207:21 **rebuttal**(3) 47:7 156:8 182:23 **rebuttals**(3) 156:3 156:21 181:6 **rebutted**(1) 207:20 **recall**(9) 40:14 55:9 56:12 56:15 62:18 66:18 99:3 173:18 203:5 | | | |
| **provided**(16) 21:10 24:9 25:14 25:24 26:17 31:7 32:21 50:25 51:7 61:16 76:25 120:1 126:19 178:4 190:22 197:1 | | **quick**(6) 15:14 15:23 16:17 97:23 172:15 173:1 | | | | **regarding**(2) 190:18 196:4 **regardless**(1) 71:11 **regret**(1) 49:12 **rehash**(1) 187:10 **reimbursed**(1) 77:1 **reimbursement**(2) 77:8 78:4 **reissuance**(1) 185:18 **reiterate**(1) 167:18 **reiterating**(1) 163:17 **reject**(1) 60:24 **rejected**(6) 38:2 59:24 60:23 91:25 145:7 206:24 | |
| **provides**(15) 36:2 36:7 37:14 46:11 49:23 50:20 78:4 93:24 97:9 166:1 169:1 171:1 176:15 180:2 182:11 | | **quickly**(2) 86:11 171:20 **quite**(13) 38:1 85:4 88:17 91:1 93:10 96:4 105:12 114:23 151:12 172:18 172:25 198:5 209:4 | | **receive**(14) 36:8 47:17 47:19 47:20 47:23 83:13 83:14 113:17 165:8 167:12 176:16 177:14 177:25 188:21 | | | |
| **providing**(7) 26:18 32:20 60:3 118:21 153:25 177:24 198:11 | | **quotations**(1) 146:17 146:18 **quote**(5) 66:21 106:3 147:23 147:23 202:21 **quoted**(4) 66:20 101:10 145:15 199:10 **quoting**(6) 84:4 142:19 142:20 144:5 147:23 203:7 | | **received**(5) 83:4 103:7 143:17 199:20 **receiving**(3) 164:7 182:1 188:18 **recent**(9) 43:2 59:17 85:6 85:14 88:12 121:1 144:17 144:17 206:2 | | **relate**(4) 39:5 53:25 62:15 148:25 **related**(17) 31:3 37:12 42:12 47:21 54:4 59:13 62:3 64:20 66:25 81:17 88:24 93:18 139:21 143:3 149:11 177:1 191:18 | |
| **provision**(37) 31:4 31:5 31:9 31:16 31:20 31:23 32:4 32:8 32:23 34:19 45:18 45:21 46:1 46:8 58:13 72:6 77:17 94:20 129:25 131:20 142:13 144:25 150:16 150:11 158:1 158:11 158:16 161:15 167:3 168:8 168:9 183:20 187:23 197:5 197:9 199:9 | | | | **recently**(4) 45:1 88:5 107:11 160:7 **recess**(5) 53:5 101:2 101:3 175:20 176:1 **recessionary**(1) 160:15 **recited**(1) 41:12 **reckoning**(1) 173:23 **recognition**(1) 33:13 **recognized**(4) 23:25 25:7 25:11 132:12 **recognizes**(1) 78:19 **recognizing**(1) 60:3 **reconcile**(1) 112:16 **reconciliation**(1) 174:22 | | **relates**(4) 48:12 82:24 139:3 148:24 **relating**(6) 19:15 35:24 37:10 46:5 46:7 144:24 | |
| | | **raise**(7) 15:20 71:16 111:19 135:1 139:19 178:25 200:21 | | | | **relationship**(1) 67:21 **relative**(6) 82:21 83:1 83:15 191:3 191:4 191:4 | |
| **provisions**(39) 31:23 53:17 58:7 59:14 72:5 75:11 76:22 93:17 93:19 93:19 93:20 103:14 109:13 121:13 140:24 145:24 146:1 146:2 150:3 150:6 157:12 157:17 157:18 159:18 159:20 162:4 164:23 168:10 171:6 177:5 177:11 179:7 179:16 179:17 185:11 187:1 191:3 199:6 199:9 | | **raised**(23) 16:10 35:5 65:9 79:6 87:8 108:25 114:1 121:11 158:7 158:20 164:2 164:3 181:2 184:20 187:11 196:19 197:3 197:6 202:13 202:14 204:17 204:18 205:2 | | **record**(25) 18:18 18:23 20:24 47:13 48:14 57:19 58:21 65:13 66:14 66:15 99:7 101:13 101:14 101:18 104:2 129:3 131:15 157:23 163:9 167:8 176:4 181:24 190:4 208:23 209:8 | | **relatively**(3) 86:11 184:20 210:1 **release**(29) 30:5 63:5 79:25 117:25 118:2 118:4 118:9 118:11 118:13 118:17 119:4 119:4 119:7 120:3 122:14 131:24 131:24 132:13 135:2 141:19 146:17 146:21 146:24 153:7 154:19 155:12 155:17 155:19 161:12 | |
| **proviso**(1) 83:7 **prudence**(1) 28:3 **pryor**(2) 13:28 13:28 **publication**(1) 206:14 **published**(2) 19:15 206:15 **purchase**(5) 26:22 27:5 37:15 38:15 194:3 **purchased**(3) 27:1 27:7 64:22 **pure**(1) 205:23 **purely**(1) 205:1 **purport**(4) 82:25 84:14 90:25 131:21 **purported**(5) 35:18 67:17 118:8 120:5 176:23 | | **raising**(1) 15:11 **range**(2) 45:6 209:6 **rank**(1) 97:14 **ranks**(1) 66:24 **rata**(3) 165:22 165:23 177:15 **rate**(2) 194:19 208:20 **rates**(1) 194:23 **rath**(3) 4:5 4:6 8:20 **rather**(6) 26:6 31:6 44:3 100:15 101:23 206:13 | | **recorded**(1) 1:47 **recording**(3) 1:47 147:1 213:6 **records**(2) 174:18 175:4 **recover**(6) 37:11 41:1 102:23 104:13 107:8 154:10 | | **released**(19) 67:3 118:5 118:20 118:23 130:19 130:20 144:24 147:19 148:4 152:11 152:14 152:21 153:9 153:11 153:24 154:3 154:9 155:15 159:14 | |
| | | **rational**(1) 26:3 **reach**(2) 62:9 84:11 **reached**(7) 20:17 33:19 71:3 142:7 144:20 199:17 210:9 | | **recovered**(1) 180:3 **recoveries**(13) 127:10 127:11 155:8 165:11 168:6 168:25 169:2 170:22 170:24 178:4 178:22 179:6 179:12 | | **releases**(2) 71:4 122:18 **releasing**(1) 48:11 **relevant**(5) 27:15 87:10 118:9 118:15 119:25 | |
| **purportedly**(1) 177:13 **purports**(1) 81:23 **purpose**(9) 24:2 26:4 36:13 43:13 44:6 45:12 91:4 96:12 176:21 | | **reaching**(1) 78:14 **read**(22) 20:24 29:23 48:13 58:13 76:7 95:14 97:4 97:7 97:21 98:6 101:8 126:5 126:7 167:7 181:8 181:11 197:5 197:9 197:24 198:25 199:15 202:5 | | **recovering**(2) 43:8 154:23 **recovery**(19) 22:5 45:13 47:15 47:23 71:11 73:2 78:6 84:5 84:5 95:12 123:5 123:8 154:22 154:25 155:2 176:15 191:19 207:19 209:20 | | **reliance**(2) 60:15 61:18 **relief**(11) 19:21 20:1 30:5 110:7 110:12 112:2 114:4 132:19 160:14 173:12 210:23 | |
| **purposefully**(1) 83:15 **purposes**(3) 119:23 146:25 172:19 **pursuant**(5) 19:17 35:25 36:14 130:14 173:15 | | **readily**(1) 117:23 **reading**(5) 41:24 51:18 80:5 96:25 107:21 **reads**(1) 93:13 **ready**(4) 128:23 162:25 183:5 211:2 **real**(5) 30:5 45:15 73:2 80:13 87:20 **really**(40) 15:12 15:16 26:12 45:8 49:2 49:15 50:15 51:25 71:17 73:20 75:19 76:8 76:18 86:8 89:7 89:9 92:3 94:12 94:13 95:10 96:9 96:22 114:24 126:8 126:10 134:8 134:20 136:10 137:20 139:5 164:9 169:4 169:12 173:1 173:20 185:15 185:19 186:16 187:2 187:14 | | **recreate**(1) 43:18 **red**(3) 14:11 96:9 96:22 **redeem**(1) 184:18 **redeemed**(3) 183:21 183:24 184:16 **redeeming**(1) 188:6 **redemption**(2) 183:25 185:12 **reduce**(2) 133:12 133:22 **reduced**(3) 37:5 143:16 203:20 **reduces**(1) 43:13 **reduction**(40) 121:16 129:25 131:20 131:22 132:4 132:24 132:25 133:3 133:7 133:14 133:15 133:18 134:1 134:1 134:24 135:6 135:10 135:13 136:20 136:24 137:1 137:2 137:6 137:18 138:1 138:3 143:10 143:19 143:21 143:24 144:4 144:12 144:25 145:25 146:2 157:12 157:17 157:18 159:19 162:4 | | **rely**(2) 29:8 146:5 **relying**(2) 25:23 65:12 **remain**(5) 31:8 81:7 90:22 91:2 180:18 **remained**(1) 91:3 **remaining**(2) 51:15 182:9 **remains**(2) 91:6 132:20 **remark**(2) 86:16 151:18 **remarkable**(1) 90:7 **remarks**(7) 58:9 114:10 114:21 138:6 140:18 158:10 192:16 | |
| **pursue**(11) 53:15 56:13 63:21 68:15 80:11 82:5 82:7 106:5 106:7 111:4 114:7 | | | | | | **remedial**(3) 24:2 24:3 24:4 **remedies**(2) 168:8 168:8 **remedy**(4) 28:4 37:19 168:9 185:19 | |
| **pursued**(4) 62:17 70:3 72:12 79:12 80:25 81:11 115:9 115:9 115:13 | | **reap**(1) 189:4 **reargue**(1) 116:2 **reason**(20) 20:1 26:18 42:12 47:7 61:14 72:10 83:20 83:23 84:16 84:23 92:19 94:5 105:10 106:24 109:13 111:5 125:21 161:1 212:8 212:22 | | **refer**(2) 102:12 150:22 **reference**(5) 126:8 135:22 145:18 190:9 194:23 | | **remember**(12) 18:18 32:14 40:22 56:6 56:24 57:12 57:14 83:24 121:16 183:22 198:1 208:21 **remind**(2) 188:6 188:8 **remote**(3) 50:7 50:8 149:7 | |
| **pursuing**(3) 70:21 114:5 150:8 **pursuit**(5) 53:13 59:12 61:21 62:1 71:18 **pushing**(2) 35:8 123:23 **put**(25) 15:21 17:25 20:18 50:1 63:2 63:22 64:23 66:23 67:5 68:6 68:20 69:4 73:15 86:22 90:15 93:10 99:12 123:19 132:6 139:23 165:19 192:7 196:10 201:1 201:15 **puts**(2) 87:2 203:23 **putting**(3) 91:18 115:24 191:13 **pws**(6) 32:9 32:9 32:18 45:25 46:2 46:4 **qualify**(1) 193:24 **quarrel**(1) 115:5 **quarreling**(1) 84:9 **quershi**(1) 5:13 | | **reasonable**(3) 58:15 137:12 209:15 **reasonableness**(2) 77:15 138:17 **reasonably**(4) 70:25 80:8 203:2 203:4 **reasoned**(2) 142:16 160:10 **reasoning**(3) 70:22 135:19 207:24 | | **referenced**(1) 127:1 **referred**(2) 89:17 93:17 **referring**(1) 89:18 **refers**(3) 36:9 36:11 133:14 | | **rendered**(2) 40:4 91:17 **renders**(1) 127:18 | |

| Word | Page:Line | Word | Page:Line | Word | Page:Line | Word | Page:Line |
|---|---|---|---|---|---|---|---|
| **rental**(1) 194:13 | | **respond**(13) 17:23 73:2 139:25 140:3 140:6 140:16 145:18 146:15 156:23 180:5 185:8 196:11 204:7 | | **riley**(21) 6:20 102:9 102:10 103:22 104:3 104:7 104:9 105:8 105:11 105:16 105:22 106:24 107:20 107:23 108:15 108:20 108:23 112:7 128:25 129:10 129:10 | | **same**(48) 23:22 24:14 37:21 38:25 41:22 42:1 50:22 51:24 56:3 63:17 70:22 71:3 94:25 104:22 104:25 105:2 105:18 108:24 110:6 110:16 112:8 125:11 126:17 136:15 140:4 140:5 140:5 141:23 141:25 143:15 144:12 148:8 154:11 161:17 167:18 172:22 173:4 175:5 182:25 183:2 187:18 190:7 193:2 195:18 201:22 203:19 207:3 209:21 |
| **reorganization**(8) 19:10 52:9 76:4 118:12 118:17 151:3 174:16 175:15 | | | | | | | |
| | | **responded**(1) 197:5 | | **ripe**(1) 111:25 | | **sanctions**(1) 73:19 | |
| **reorganizations**(1) 52:9 | | **responding**(5) 68:20 74:3 101:15 156:6 200:6 | | **rise**(18) 53:6 56:10 79:8 91:8 91:19 91:20 138:12 139:2 140:14 159:25 160:21 161:2 162:1 162:11 162:13 176:2 183:10 184:19 | | **sanjana**(6) 2:37 10:27 185:1 185:3 185:3 189:23 | |
| **reorganized**(1) 90:15 | | | | | | | |
| **reorganizing**(2) 43:15 91:5 | | **response**(16) 17:14 17:15 17:16 18:4 18:5 18:19 20:6 57:1 60:7 75:17 121:23 146:3 147:21 150:22 181:17 185:23 | | | | **sarah**(1) 184:24 | |
| **repayment**(2) 167:12 167:13 | | | | **risk**(7) 26:6 26:8 137:16 188:19 188:23 189:3 189:11 | | **satisfaction**(1) 21:11 | |
| **repeat**(5) 93:9 130:5 190:6 190:15 210:7 | | | | | | **satisfied**(3) 39:5 85:24 119:24 | |
| **repeatedly**(2) 56:3 146:16 | | **responsible**(2) 89:19 120:12 | | | | **satisfies**(1) 75:14 | |
| **repent**(1) 92:22 | | **responsive**(2) 19:9 28:24 | | **risk/reward**(1) 188:22 | | **satisfy**(3) 75:12 119:22 155:6 | |
| **repetitive**(1) 114:11 | | **rest**(2) 123:13 123:13 | | **risks**(1) 26:10 | | **save**(2) 89:15 115:24 | |
| **replacement**(1) 120:6 | | **restart**(1) 210:17 | | **road**(5) 48:15 73:18 80:15 88:7 116:6 | | **savings**(2) 87:18 88:2 | |
| **reply**(1) 197:4 | | **restrain**(1) 58:9 | | **robert**(9) 2:7 3:21 3:30 6:17 11:6 13:8 102:10 129:17 163:9 | | **say**(70) 17:9 17:16 33:8 41:16 45:11 50:10 50:13 51:16 54:15 55:2 60:6 64:8 66:19 68:16 69:4 70:19 73:17 77:13 78:24 79:18 80:12 83:5 83:7 84:15 91:2 92:2 93:12 93:12 94:13 95:9 95:18 95:25 97:4 97:16 98:4 98:9 104:1 104:9 106:9 112:16 120:14 121:9 123:18 134:19 140:9 143:9 144:2 148:22 149:13 150:2 172:13 181:2 182:2 182:13 182:15 182:23 186:24 188:4 192:22 195:4 198:25 198:25 202:1 203:10 205:4 205:5 205:5 208:4 209:7 209:17 |
| **report**(11) 25:22 27:17 66:22 66:22 80:5 80:6 93:11 93:13 101:8 170:2 173:10 | | **restrained**(1) 152:21 | | | | | |
| | | **restricted**(1) 68:6 | | **rochester**(1) 9:40 | | | |
| **reported**(6) 91:14 132:3 135:6 135:18 160:5 160:8 | | **restrictions**(2) 53:18 158:17 | | **rock**(1) 94:16 | | | |
| | | **restrictive**(1) 109:12 | | **rockefeller**(1) 4:20 | | | |
| | | **restructuring**(2) 64:10 67:2 | | **rodney**(1) 3:23 | | | |
| **reporter**(2) 160:5 160:9 | | **result**(10) 21:15 29:14 41:4 71:8 92:18 133:3 133:7 135:18 182:9 186:9 | | **roitman**(1) 8:6 | | | |
| **reports**(1) 101:15 | | | | **role**(5) 21:23 64:23 67:19 67:25 72:1 | | **saying**(22) 16:23 35:5 43:5 46:2 52:19 54:15 57:12 58:2 64:3 68:21 71:3 90:5 105:9 109:23 114:21 124:14 126:14 144:3 145:23 151:10 184:6 187:15 |
| **represent**(1) 49:21 | | | | **rose-colored**(1) 93:13 | | | |
| **representatives**(2) 184:16 184:17 | | **resulted**(2) 38:17 38:19 | | **rosenberg**(2) 83:25 185:5 | | | |
| **represented**(4) 56:22 62:23 194:1 195:10 | | **resulting**(3) 132:25 133:11 199:8 | | **rosenblatt**(1) 4:18 | | | |
| **representing**(1) 139:16 | | **results**(3) 134:1 134:23 134:23 | | **rosenman**(2) 6:25 13:10 | | | |
| **reputational**(1) 101:24 | | **resume**(1) 106:13 | | **rosner**(1) 12:35 | | **says**(30) 41:20 41:25 43:1 43:7 45:3 50:11 52:15 89:13 96:4 101:9 106:3 113:15 113:15 115:18 116:3 116:7 120:16 121:10 121:23 123:18 146:7 157:25 168:10 169:20 176:14 179:17 185:20 206:8 206:24 207:17 |
| **reputationally**(1) 72:25 | | **retain**(6) 106:10 149:13 149:23 150:15 150:16 151:11 | | **roth**(5) 5:31 11:28 16:3 16:8 187:8 | | | |
| **request**(2) 54:12 55:11 | | | | **rotten**(1) 85:3 | | | |
| **requested**(2) 20:1 210:23 | | | | **rough**(1) 126:15 | | | |
| **require**(3) 75:12 118:8 126:7 | | **retained**(4) 102:16 127:21 149:18 151:9 | | **roughly**(1) 126:25 | | | |
| **required**(6) 25:13 34:3 41:10 67:5 120:23 202:18 | | **retains**(1) 149:9 | | **routinely**(2) 145:14 149:23 | | **scared**(1) 94:16 | |
| | | **retention**(1) 150:10 | | **ruckus**(1) 202:8 | | **scenario**(2) 168:4 169:2 | |
| | | **retiree**(3) 176:17 191:20 195:13 | | **rudnick**(4) 3:28 98:2 163:9 183:7 | | **schaible**(1) 3:13 | |
| **requirement**(6) 85:14 190:12 190:19 191:2 191:23 198:7 | | **retirees**(1) 192:1 | | **rule**(45) 42:22 43:12 43:22 44:8 55:4 55:6 55:7 55:15 58:17 73:18 80:15 82:24 58:25 59:3 59:10 59:11 62:8 69:3 71:2 71:5 71:13 71:14 72:7 72:15 72:21 73:8 73:22 75:13 75:14 76:20 87:17 89:14 90:9 98:12 110:25 114:15 122:25 123:1 123:6 163:3 163:4 171:2 187:20 191:22 204:22 208:14 | | **schedule**(4) 14:8 14:11 21:9 212:1 | |
| | | **retirement**(1) 26:17 | | | | **scheduled**(4) 54:17 57:20 210:19 212:17 | |
| | | **retort**(1) 174:11 | | | | **scholer**(1) 10:34 | |
| **requires**(2) 28:17 73:21 | | **return**(3) 44:16 106:15 177:22 | | | | **schott**(1) 10:31 | |
| **requiring**(1) 33:10 | | **reversed**(2) 23:7 23:22 | | | | **schotz**(1) 1:32 | |
| **res**(2) 110:2 110:25 | | **reversion**(1) 136:7 | | | | **schulte**(5) 5:31 11:28 16:3 16:8 187:8 | |
| **resent**(1) 200:16 | | **revert**(2) 111:12 146:9 | | | | **schuylkill**(1) 1:42 | |
| **reservation**(1) 89:3 | | **reverted**(2) 153:18 169:22 | | **ruled**(3) 23:7 98:12 103:25 | | **scope**(9) 24:1 25:4 25:4 31:14 31:22 33:12 56:17 89:16 89:21 | |
| **reserve**(6) 21:10 21:13 76:6 85:23 174:25 176:19 | | **review**(4) 81:11 156:18 156:18 160:19 | | **rules**(6) 71:25 87:17 124:16 125:14 138:15 206:12 | | | |
| | | **reviewed**(2) 62:24 211:5 | | | | | |
| **reserved**(2) 65:9 165:9 | | **reviews**(1) 80:6 | | | | **scorekeeping**(1) 86:9 | |
| **resolution**(6) 20:19 48:12 55:13 73:5 75:25 76:1 | | **revised**(2) 14:10 50:13 | | **ruling**(8) 23:20 31:15 43:3 71:3 98:22 104:1 104:7 145:21 | | **scott**(2) 12:14 12:26 | |
| | | **revisit**(1) 100:7 | | | | **scrutiny**(1) 118:8 | |
| | | **reward**(3) 189:4 189:5 189:12 | | | | **seaquist**(1) 38:23 | |
| **resolutions**(2) 106:22 178:19 | | **reworking**(1) 19:13 | | | | **seat**(1) 47:6 | |
| **resolve**(7) 76:12 83:1 98:22 98:24 110:9 132:18 211:13 | | **rhetoric**(1) 64:20 | | **rulings**(3) 45:6 114:12 148:17 | | **seated**(2) 14:2 53:6 | |
| | | **rich**(5) 4:39 49:19 49:20 | | **ruminated**(1) 99:13 | | **second**(28) 27:1 29:21 31:19 38:22 42:18 43:2 43:3 59:13 92:21 96:7 97:19 97:24 105:10 114:25 131:20 132:12 132:21 132:23 137:9 158:14 161:9 164:10 164:25 171:11 172:16 176:13 194:2 195:20 | |
| | | **richard**(3) 6:20 102:9 129:10 | | **run**(3) 99:23 122:10 126:18 | | | |
| **resolved**(23) 14:16 14:16 14:20 14:24 15:7 35:8 35:8 48:14 56:21 72:18 72:20 75:19 77:13 81:4 86:5 101:23 125:24 174:21 178:17 178:24 189:18 212:3 212:4 | | **richards**(1) 3:20 | | **rupert**(1) 104:19 | | | |
| | | **rid**(1) 48:25 | | **rushabh**(1) 13:15 | | | |
| | | **rifkind**(2) 8:33 11:15 | | **russano**(1) 3:14 | | | |
| | | **right**(74) 15:3 15:21 18:14 20:7 21:20 34:22 35:1 41:5 42:24 47:4 49:5 52:12 53:3 61:4 61:6 61:9 61:14 66:12 75:1 76:7 76:14 81:2 82:10 84:22 87:6 88:8 88:8 89:9 89:12 89:22 91:2 97:4 98:1 98:16 100:2 105:2 106:5 106:7 106:10 106:11 106:23 108:22 111:4 114:23 123:2 124:19 128:23 131:2 131:12 139:24 143:9 147:9 154:8 154:10 154:15 156:25 157:5 166:11 168:21 175:6 181:4 185:19 188:3 193:2 193:18 201:23 202:2 202:11 203:10 204:12 208:8 208:11 212:23 212:24 | | **saccullo**(2) 7:4 7:5 | | **secret**(2) 84:8 88:14 | |
| **resolves**(1) 180:14 | | | | **sachs**(2) 12:13 12:13 | | **secretary**(6) 21:23 22:17 23:4 27:20 30:24 31:3 | |
| | | | | **sadly**(1) 164:15 | | | |
| **respect**(70) 21:21 23:12 23:17 26:19 28:13 30:9 32:23 33:6 40:1 42:20 48:21 51:15 51:19 52:13 53:23 54:23 56:11 58:17 59:15 69:22 76:5 80:9 81:17 82:21 84:24 92:16 93:2 93:13 94:8 94:9 96:2 96:5 99:5 112:22 114:1 135:17 136:8 137:25 138:22 139:10 139:22 139:25 141:1 141:4 141:25 146:8 146:12 148:8 148:20 149:9 149:14 149:15 149:19 151:20 151:21 154:5 154:11 154:19 156:20 159:22 160:25 161:18 178:9 180:8 181:18 190:19 202:11 204:8 211:6 | | | | **safeguards**(5) 58:8 63:9 71:18 71:19 86:14 | | **secretary's**(13) 20:19 22:1 22:2 22:12 25:2 26:2 28:6 28:8 28:12 28:23 29:2 29:12 33:7 | |
| | | | | **said**(47) 37:3 40:19 40:23 41:11 45:1 46:4 46:10 47:13 67:10 84:3 89:3 91:15 92:5 97:20 98:5 98:8 98:11 99:6 102:18 106:2 106:20 111:20 112:9 112:15 120:25 121:23 127:19 130:6 145:15 161:13 173:20 173:2 173:22 178:13 181:23 184:8 184:19 185:24 190:16 191:16 192:8 192:22 194:15 198:10 200:5 202:6 202:6 | | | |
| | | **rights**(24) 34:5 60:4 73:8 81:17 130:3 130:22 144:25 145:4 146:6 147:25 161:3 165:1 165:2 165:11 165:13 166:4 167:25 168:11 168:23 170:25 171:3 171:13 190:25 190:25 | | | | | |
| **respectfully**(2) 52:4 166:18 | | | | **sailed**(1) 86:23 | | | |
| **respecting**(1) 198:14 | | | | **sale**(5) 22:16 26:22 37:15 186:18 189:17 | | | |
| **respective**(6) 84:12 99:3 183:3 183:13 212:4 212:19 | | | | **sam**(1) 67:1 | | | |
| **respects**(1) 145:5 | | | | | | | |

| Word | Page:Line | Word | Page:Line | Word | Page:Line | Word | Page:Line |
|---|---|---|---|---|---|---|---|
| section(32) 24:17 24:18 24:19 25:6 28:2 28:4 28:9 30:20 30:23 50:13 52:25 75:12 76:22 77:10 77:12 78:6 83:2 87:10 96:9 107:13 158:14 158:25 159:6 159:9 161:15 162:20 165:25 166:6 167:13 173:13 177:6 182:21 | | settled(11) 26:14 85:9 130:13 137:21 152:22 154:6 154:9 155:22 179:13 180:19 182:6 | | show(4) 51:3 80:3 112:13 207:20 showing(4) 51:1 51:6 119:14 207:20 shown(1) 70:11 shows(2) 112:10 164:12 side(7) 64:13 67:12 115:5 138:23 173:23 210:13 211:10 | | some(75) 23:3 27:6 29:18 30:2 30:4 39:7 41:2 42:22 52:16 52:17 54:17 55:16 57:14 62:23 64:12 65:19 65:22 68:23 69:24 70:12 70:24 71:2 71:9 73:15 73:20 74:18 76:10 80:14 81:9 84:7 85:14 86:12 89:15 90:25 93:1 102:13 103:24 108:10 109:12 111:18 114:21 115:25 115:25 118:14 123:25 135:25 136:24 140:24 141:1 142:8 144:9 144:9 145:4 146:3 151:16 158:7 165:5 169:17 170:8 170:12 179:19 180:11 184:3 184:4 184:4 188:24 190:17 192:18 192:22 192:23 192:24 202:22 211:4 212:7 212:20 | | |
| sections(1) 167:17 secured(4) 29:17 77:9 78:5 78:6 securities(19) 11:20 11:20 23:25 26:23 30:14 30:22 35:25 36:1 36:2 36:6 36:8 38:3 49:23 50:3 75:16 76:8 108:3 112:1 142:8 | | settlement(81) 54:2 62:2 63:22 74:18 79:21 79:22 84:24 85:2 85:8 85:8 85:19 85:24 86:3 117:12 117:13 117:16 117:21 118:14 118:16 118:18 118:25 119:11 130:14 132:25 133:1 133:7 133:11 134:3 134:11 135:8 135:10 137:10 137:17 137:2 138:4 138:18 141:21 141:24 142:8 142:9 142:21 142:23 142:25 143:6 143:6 143:8 144:8 144:20 144:24 145:2 146:14 148:7 151:3 153:25 154:7 154:24 155:1 155:2 155:25 165:9 169:13 169:14 169:16 172:8 172:10 172:11 172:12 175:2 179:3 179:6 182:1 182:4 182:13 191:18 199:23 202:22 202:23 209:14 209:15 209:16 209:22 | | sidestep(2) 107:4 109:2 sidley(1) 1:23 9:7 19:5 157:22 siegel(9) 3:29 98:2 98:2 99:20 99:24 100:1 183:7 183:7 183:23 sieger(1) 13:11 sign(1) 56:6 signed(1) 188:10 significant(5) 31:8 31:19 36:18 84:5 silence(1) 190:10 silverstein(1) 2:21 simes(1) 10:21 similar(18) 19:20 19:22 70:18 97:8 99:4 104:21 104:22 107:8 145:4 145:14 145:24 160:7 162:10 162:17 194:1 194:13 203:6 210:6 | | somebody(7) 45:12 52:15 70:10 95:8 125:3 133:6 197:8 somehow(7) 42:22 87:17 123:9 179:3 180:4 201:6 211:19 someone(14) 14:23 15:24 60:17 60:18 69:20 71:9 71:24 134:24 137:14 156:22 192:3 193:11 197:20 211:16 | | |
| security(6) 37:16 41:21 41:22 41:23 189:15 189:17 see(19) 14:25 15:9 25:13 29:25 68:21 76:15 84:5 84:16 84:23 89:10 89:12 92:1 105:14 111:13 114:15 165:18 167:22 171:23 212:21 seeing(1) 155:15 seek(6) 28:4 54:24 61:4 126:22 133:8 188:23 | | | | similarly(5) 26:4 31:14 61:1 195:13 207:2 simple(3) 83:23 174:18 195:2 simply(31) 25:2 26:3 29:10 30:25 34:17 34:19 39:11 42:1 42:13 44:10 46:16 51:1 51:7 77:10 78:20 79:22 92:16 103:11 128:2 132:3 141:8 146:9 148:18 157:11 161:25 185:21 192:12 198:10 204:2 205:2 210:2 | | something(35) 14:21 14:23 17:16 43:9 43:11 47:12 48:10 50:4 52:16 57:9 64:4 77:23 78:19 81:25 105:6 109:24 111:22 113:20 120:17 135:15 141:17 141:20 150:2 156:6 172:10 181:2 183:18 196:12 199:12 201:1 202:7 206:5 211:18 212:16 212:23 | | |
| seeking(5) 19:21 114:3 114:4 124:2 186:9 seeks(2) 19:14 28:7 seem(3) 24:12 90:7 172:22 seemed(1) 187:12 seems(8) 33:22 51:17 85:6 117:22 150:5 156:9 189:3 205:2 | | settlements(3) 142:17 143:7 143:8 settles(4) 136:17 137:18 180:14 192:3 settling(18) 85:17 130:8 130:11 132:5 133:19 133:25 134:24 136:17 136:21 137:1 141:22 142:12 144:9 144:10 147:18 157:10 157:14 191:11 | | sina(1) 13:5 since(6) 15:8 105:16 121:11 161:16 204:20 207:22 | | sometime(2) 32:1 129:25 sometimes(4) 24:2 34:6 88:6 88:7 somewhat(6) 80:8 103:16 107:15 166:13 208:15 210:6 | | |
| seen(4) 64:18 67:16 109:5 136:5 segue(1) 195:20 seife(1) 4:14 seize(1) 64:7 self-contained(1) 126:6 self-dealing(2) 93:25 94:3 self-regulating(1) 87:15 selling(15) 133:19 134:5 134:6 134:13 152:14 152:17 152:19 153:8 155:14 155:11 159:2 159:12 161:5 161:22 161:22 | | several(2) 53:11 160:1 shachar(1) 10:13 shall(8) 21:6 21:7 37:20 49:5 116:10 147:24 152:12 167:15 shamah(1) 7:39 shannon(6) 8:40 141:11 145:6 145:12 149:16 160:7 shannon's(1) 144:17 share(4) 83:10 134:8 170:24 177:15 shareholder(14) 25:21 102:23 103:6 106:15 149:20 152:15 153:5 153:6 154:16 154:17 155:16 159:12 161:5 172:2 | | single(5) 78:23 135:5 135:6 180:1 188:5 sinks(1) 86:19 sir(2) 51:9 116:11 sit(1) 99:2 sitting(4) 16:9 61:14 65:18 145:20 sitting."(1) 174:12 situated(1) 207:2 situation(12) 23:1 42:15 42:21 43:24 45:12 60:18 60:21 70:18 112:14 183:4 186:13 203:25 situations(1) 34:1 six(1) 85:9 size(2) 183:17 210:3 skadden(1) 9:29 skewed(1) 70:19 slain(2) 25:8 25:11 slate(1) 9:29 slater(1) 12:8 slice(3) 134:10 165:23 170:22 slightly(1) 143:23 slippage(1) 100:12 sloan(1) 3:22 small(2) 48:3 186:1 smith(2) 13:37 13:37 sneaks(1) 100:22 soak(1) 189:14 soft(2) 68:18 69:6 sold(1) 189:14 sole(1) 157:16 solely(6) 38:3 64:20 65:12 110:22 152:14 155:13 solve(1) 201:17 | | somewhere(3) 73:17 84:16 166:23 song(1) 64:15 soon(2) 116:19 212:17 sooner(2) 101:23 115:12 sorry(15) 16:19 25:6 32:11 65:5 82:22 85:20 115:13 129:1 129:7 156:13 168:19 182:21 197:23 198:9 206:15 sort(18) 71:5 81:2 89:8 91:11 128:12 146:12 151:16 167:17 168:13 169:5 172:8 172:18 183:14 186:13 202:22 202:25 204:21 209:3 sorted(2) 73:17 105:6 sorts(2) 88:25 106:18 sottile(30) 4:25 8:16 56:9 56:10 56:21 56:25 57:7 57:16 79:3 79:3 79:19 79:18 81:21 82:11 86:16 87:1 93:9 93:10 100:4 100:5 100:6 100:13 100:24 200:17 200:20 203:6 203:7 203:9 210:10 210:13 sought(6) 74:3 107:8 110:7 114:4 160:14 173:11 | | |
| semcrude(4) 141:12 144:17 144:20 149:17 sends(1) 205:9 senior(46) 30:2 30:11 44:13 47:20 75:16 83:8 95:11 95:13 95:14 95:19 96:14 96:18 96:24 96:24 97:2 97:10 97:11 97:19 98:8 133:21 134:2 165:10 166:4 167:11 167:15 170:10 170:23 172:12 187:17 190:23 191:16 192:8 192:11 193:18 193:20 193:2 195:4 195:9 195:13 195:16 199:20 199:29 202:20 203:21 208:25 209:19 | | shareholder's(1) 34:4 shareholders(19) 22:24 23:10 23:16 34:5 34:10 40:15 40:19 48:2 102:22 103:1 103:1 108:5 152:9 153:16 155:15 159:3 161:22 161:23 171:22 shares(1) 27:1 sharing(2) 127:8 127:10 sharon(1) 59:23 shaw(1) 6:39 shaya(1) 9:40 she(1) 107:7 sheffield(1) 12:43 sheron(1) 12:31 shift(1) 143:1 ship(2) 86:19 86:21 shopping(1) 146:10 | | | | sound(4) 1:47 159:16 161:25 213:6 soundly(1) 145:6 south(2) 1:28 22:11 southern(1) 59:19 spaeder(3) 4:24 8:13 79:4 spansion(4) 99:4 118:10 125:18 146:17 speak(4) 15:24 79:8 101:14 133:5 speaking(3) 71:17 80:19 184:25 speaks(1) 186:3 special(3) 9:27 79:4 118:8 specific(16) 53:23 58:7 62:5 69:9 74:14 95:2 96:12 138:22 140:22 140:24 159:11 163:13 190:11 195:11 197:18 200:6 | | |
| seniority(1) 166:5 sense(10) 25:2 68:15 74:1 74:1 90:12 137:21 140:7 160:11 182:3 209:16 sensitive(1) 163:18 sent(1) 184:5 sentence(4) 84:21 115:18 159:8 161:9 separate(4) 59:7 171:18 182:11 182:20 separately(3) 195:15 199:11 199:11 september(2) 19:22 199:23 serengeti(2) 13:23 13:24 serious(1) 101:24 serve(3) 55:4 63:14 69:21 served(2) 61:3 196:16 service(8) 1:41 1:48 55:5 55:7 60:13 60:14 60:15 60:18 | | short(5) 46:22 77:5 210:20 210:21 211:11 shorter(1) 190:6 shortly(1) 66:21 shot(1) 140:1 should(88) 17:4 22:5 24:3 26:14 44:23 51:16 53:17 53:19 55:2 57:8 58:2 60:6 60:24 61:6 61:9 61:14 61:22 62:4 62:14 62:16 63:13 67:25 68:3 69:22 69:23 69:2 70:3 71:1 71:2 71:19 72:3 72:12 72:13 73:8 73:10 73:24 74:5 77:19 78:21 79:12 80:25 81:7 81:11 81:16 81:18 81:19 81:22 82:5 82:7 82:9 82:16 83:17 84:15 86:10 86:17 87:19 88:4 89:5 92:19 100:18 106:9 109:19 112:12 112:19 112:24 113:2 124:9 135:20 136:25 138:1 138:3 142:18 149:2 150:2 153:1 153:6 154:10 154:15 155:20 156:21 164:4 183:15 184:12 184:22 188:7 193:19 200:11 201:5 | | | | specifically(23) 32:16 36:9 39:17 51:14 61:4 62:13 62:16 70:16 70:25 72:4 72:9 78:4 89:18 94:3 120:10 149:15 149:24 150:22 159:21 176:7 182:22 186:12 197:3 | | |
| services(4) 1:41 60:21 91:16 91:17 session(1) 212:25 set(16) 21:3 57:13 104:2 110:3 110:4 110:6 111:1 111:10 123:22 138:14 143:25 145:17 146:12 148:4 187:21 207:18 sets(3) 76:7 87:11 207:16 settle(11) 136:16 137:22 137:23 142:24 151:13 161:24 172:4 175:4 181:25 181:25 182:3 | | shouldn't(6) 33:21 72:17 78:21 111:23 135:20 136:9 shouldn't(1) 187:10 189:11 190:10 | | | | specious(1) 71:12 speculative(1) 129:24 speech(1) 65:7 | | |

| Word | Page:Line | Word | Page:Line | Word | Page:Line | Word | Page:Line |
|---|---|---|---|---|---|---|---|
| | | | | | | | |

spend(4) 54:15 55:19 71:7 140:21

spending(1) 43:16

spent(3) 70:9 73:10 132:8

sperling(1) 12:8

spill(2) 163:4 163:6

spoke(1) 69:14

spotlight(1) 86:17

square(1) 3:23

squarely(2) 99:12 197:12

stacked(2) 165:12 165:18

stafford(2) 184:24 184:24

stage(1) 74:9

stand(3) 90:25 101:2 212:25

standard(8) 39:4 44:15 46:11 46:13 46:17 58:19 151:11 207:16

standards(3) 73:23 73:23 73:23

standing(22) 54:18 55:2 55:10 55:11 56:7 56:11 56:13 57:2 57:3 57:5 57:8 62:8 71:17 72:15 74:3 79:12 94:12 104:10 104:16 106:17 114:1 170:6

stargatt(1) 2:4

stark(27) 3:30 163:2 163:6 163:9 164:19 164:20 166:25 167:2 167:6 168:14 168:16 168:18 168:20 168:22 173:22 175:18 175:20 176:19 177:1 177:4 180:1 181:2 181:5 181:15 181:24 182:16 182:18

stark's(2) 176:8 180:21

start(7) 35:5 66:17 77:15 87:13 116:23 198:13 211:8

started(1) 15:20

starting(6) 43:15 62:21 62:22 70:14 87:12 177:6

state(53) 75:18 101:18 102:16 103:4 103:18 104:11 104:17 106:24 107:3 108:6 112:18 113:2 113:13 113:18 113:19 113:22 114:9 116:23 117:3 117:6 121:2 126:4 126:11 130:10 131:25 139:3 139:22 141:7 146:6 146:9 151:1 151:22 152:5 152:8 152:10 153:2 153:15 153:21 154:20 155:2 159:1 159:22 160:20 160:25 161:20 167:10 167:23 167:24 169:21 177:16 179:12 179:12 182:7

stated(11) 20:16 24:5 25:3 29:13 30:21 85:11 85:12 145:13 151:5 180:13 203:7

statement(9) 47:14 54:13 66:19 67:4 67:6 75:20 98:18 101:19 176:14

statements(1) 19:9

staten(1) 94:24

states(12) 1:1 1:19 3:4 20:14 21:4 24:6 75:21 113:24 145:24 149:3 152:12 166:6

stationary(1) 99:24

statute(10) 24:4 33:18 33:21 40:23 41:25 44:24 50:6 105:25 113:24 162:10

statutory(4) 51:17 121:6 199:6 205:23

stay(7) 55:5 58:22 58:23 72:25 110:12 111:17 112:2

stayed(3) 72:17 81:7 81:7

ste(8) 1:35 2:16 3:7 4:34 5:40 6:21 6:41 7:12

stearn(1) 3:21

steege(16) 6:33 54:8 62:1 64:1 74:20 75:2 75:5 75:6 76:12 76:14 78:1 82:19 109:8 109:9 128:1 128:2

steel(2) 38:24 59:23

steen(5) 157:21 157:22 158:6 158:23

stenger(1) 4:15

step(18) 26:25 26:25 27:1 27:19 37:4 48:2 94:8 94:8 96:13 96:13 96:16 106:12 134:2 159:12 159:12 161:22 161:22 174:10

stephen(1) 2:22

steps(1) 124:14

steven(1) 12:9

still(14) 27:6 35:10 36:17 46:19 60:13 73:9 100:11 100:15 100:18 145:10 171:2 186:2 189:4 195:11

stipulated(1) 175:7

stock(60) 22:17 25:20 25:21 27:5 27:7 27:8 28:19 36:20 36:22 36:23 37:1 37:5 37:8 37:8 37:9 37:10 37:12 37:13 37:21 37:22 37:24 38:7 38:8 38:10 38:12 38:15 39:6 39:7 39:25 41:1 41:2 41:3 41:14 41:18 41:19 41:23 42:1 42:12 42:13 42:14 42:17 43:10 43:13 44:17 45:14 48:25 50:22 50:25 50:25 51:2 51:7 51:12 99:7 134:5 169:6 174:17 174:24 175:1 186:19 186:21

stockholder(6) 152:17 152:18 152:19 152:19 153:8 155:14

stockholders(4) 133:20 134:6 134:13

stocks(1) 38:4

stop(5) 55:24 55:25 124:11 124:11 144:14

stopping(1) 125:14

stops(1) 108:17

story(1) 170:20

straight(1) 200:9

straightforward(1) 41:24

strange(1) 24:12

strauss(3) 5:10 9:39 138:10

street(14) 1:11 1:42 2:9 2:24 3:7 3:24 3:31 3:38 4:8 4:27 5:6 6:13 6:35 7:27

stress(1) 178:3

stricken(1) 53:17

strict(3) 118:8 206:12 208:14

strictly(2) 177:2 177:8

strikingly(1) 97:8

strong(4) 83:20 169:18 170:11 170:11

strong-arm(3) 167:25 170:4 170:11

strong-armed(1) 169:21

structure(6) 26:1 43:16 43:18 43:20 43:24 44:1

structured(1) 125:18

structures(1) 102:4

structuring(1) 173:6

study(1) 142:2

stuff(5) 80:10 181:6 203:8 203:10 203:11

stutman(5) 8:29 128:8 129:5 131:15 190:4

styled(1) 19:8

subject(25) 20:20 38:6 39:10 46:20 55:1 85:12 86:1 86:6 86:25 112:19 124:9 125:2 135:1 135:10 138:5 159:18 159:19 177:4 178:15 179:7 179:15 179:23 181:21 202:1 202:21

subjective(1) 58:18

submission(2) 211:23 212:12

submissions(4) 49:14 211:12 211:21 212:14

submit(9) 69:12 73:9 75:13 77:17 80:10 81:1 99:21 149:25 198:10

submitted(5) 81:22 181:21 183:24 184:4 184:4

submitting(1) 185:21

subordinate(9) 24:15 28:8 28:14 30:20 44:21 63:25 97:10 97:15 178:21

subordinated(51) 22:18 24:23 24:24 28:18 28:20 29:6 30:16 35:23 35:25 36:3 36:6 36:8 37:20 39:14 39:20 39:25 40:3 41:22 42:1 42:9 45:6 47:1 47:15 47:18 47:22 48:5 48:23 49:24 50:6 50:9 50:12 50:14 51:16 52:2 83:16 83:17 84:9 84:12 96:13 98:9 98:13 163:25 165:10 176:21 178:3 179:20 182:12 187:3 187:16 187:18 187:22

subordinates(2) 34:19 38:11

subordinating(9) 26:2 26:5 26:18 28:6 30:18 64:5 176:16 186:17 186:18

subordination(58) 22:1 25:12 28:10 28:18 35:9 37:14 39:10 41:8 44:25 45:7 45:16 48:16 50:21 64:2 76:20 83:12 97:6 97:9 98:11 164:8 164:11 164:23 164:25 165:7 166:8 166:16 167:2 167:19 171:1 171:3 173:15 176:23 177:5 177:11 177:20 178:1 178:15 179:7 179:15 179:17 179:24 186:15 186:25 190:25 191:3 192:21 192:22 193:1 193:7 195:8 195:17 197:3 197:8 197:9 197:12 197:14 199:9 200:7

subs(5) 36:16 37:18 42:21 43:10 44:22

subsequently(2) 134:7 190:21

subset(1) 84:1

subsidiaries(14) 28:9 28:22 29:2 35:13 41:7 41:9 41:15 44:12 44:14 48:18 48:21 49:1 49:4 176:19

subsidiary(9) 27:2 28:14 28:16 30:10 42:8 42:11 42:12 43:18 169:11

substance(2) 20:23 87:20

substantial(10) 47:1 55:19 77:11 78:7 78:12 80:25 98:19 98:25 149:25 189:6

substantially(1) 113:8

substantive(1) 19:11

subtle(1) 206:14

succeed(5) 55:21 80:8 80:9 80:16 82:3

success(5) 47:21 70:20 80:13 99:19 118:12

successful(1) 96:15

successor(4) 115:10 115:14 163:10 188:3

succinctly(1) 93:11

such(28) 20:2 21:13 37:20 41:23 61:17 67:1 68:3 69:18 70:3 85:2 88:2 97:13 101:12 101:13 101:19 101:21 115:18 118:7 121:15 123:25 136:9 137:2 153:9 155:19 159:12 164:4 166:3 211:20

sudden(1) 199:24

suddenly(1) 64:2

sue(7) 68:21 102:25 152:17 154:16 154:17 157:14 171:22

sued(6) 32:1 102:21 120:17 152:17 159:12 171:22

suffer(1) 34:10

suffered(3) 34:9 34:18 208:25

sufficient(4) 21:11 21:14 63:10 121:8

suggest(9) 14:22 60:7 69:17 85:7 87:25 111:18 154:21 156:19 208:5

suggested(5) 39:12 80:2 86:4 150:6 198:1

suggesting(7) 51:25 58:1 77:12 83:22 106:4 110:16 208:17

suggestion(2) 57:1 91:23

suggestions(2) 115:15 212:11

suggests(1) 87:16

suing(8) 69:5 122:2 123:24 124:1 125:13 127:22 136:15 144:11

suitable(1) 212:22

suite(4) 3:38 4:8 4:28 6:13

suits(1) 121:2

sullivan(1) 3:35

sum(1) 45:5

summarize(3) 46:23 72:4 191:10

summation(1) 173:1

summit(4) 59:18 91:9 91:13 92:13

sunk(1) 86:24

superior(1) 25:1

supplement(4) 158:10 198:2 198:6 198:10

supplemental(1) 85:6

support(7) 32:8 33:18 77:3 78:18 78:20 78:21 111:7

supportive(1) 145:19

supports(1) 51:10

suppose(1) 136:13

supposed(7) 25:16 31:24 120:7 168:3 192:3 197:22 205:12

supposedly(1) 120:14

supposing(1) 210:22

supreme(3) 150:24 150:25 151:5

sure(26) 15:17 47:2 56:1 65:3 65:13 88:20 90:11 90:12 90:16 92:22 93:22 95:21 100:16 101:16 103:5 107:6 120:23 121:14 125:4 128:10 158:3 166:22 193:17 205:11 209:21 212:9

surely(1) 67:18

surprise(2) 86:17 200:25

surprising(1) 86:24

surrender(3) 202:16 202:23 203:12

survive(1) 55:15

suspect(1) 91:3

suspected(1) 176:7

suspicion(1) 83:21

sustained(1) 52:21

sutton(1) 186:23

suttonbrook(5) 5:30 7:33 7:33 16:2 187:8

swap(35) 190:14 192:19 193:6 193:23 194:8 194:10 194:17 194:21 194:22 195:2 195:6 195:7 195:19 195:21 196:4 197:7 197:12 197:20 199:12 199:18 199:19 199:25 200:21 201:3 202:6 202:11 202:15 202:16 202:17 203:4 203:13 203:16 203:19 204:1 204:8

sway(1) 151:9

swing(1) 116:4

switch(4) 196:3 200:16 201:7 204:2

table(2) 57:10 86:11

tailored(1) 88:12

take(24) 15:15 26:8 27:25 53:3 57:8 77:4 83:18 87:19 97:23 99:8 123:14 124:14 126:24 133:20 145:10 157:25 159:7 165:6 172:15 172:15 175:24 202:9 204:7 207:21

taken(10) 16:23 20:2 23:9 24:25 31:20 57:22 85:2 157:8 167:25 198:22

takes(7) 95:15 95:17 171:8 171:11 175:6 184:15 188:13

taking(5) 57:9 61:17 115:15 130:2 156:15

talk(17) 15:1 35:21 66:12 90:19 96:3 141:12 152:6 163:12 163:25 164:5 169:17 171:19 204:19 204:23 205:12 209:11 211:22

talked(1) 86:13

talking(7) 40:3 51:14 120:19 132:9 148:6 200:23 203:6

talks(1) 168:2

tanto(2) 133:15 137:1

tar(2) 64:12 67:7

task(1) 85:2

tasked(1) 204:15

tax(3) 24:17 24:23 25:25

taylor(1) 2:5

team(1) 163:16

technologies(1) 149:20

teed(1) 211:20

| Word | Page:Line | Word | Page:Line | Word | Page:Line | Word | Page:Line |
|---|---|---|---|---|---|---|---|

**telegroup**(8) 37:25 38:13 39:4 39:12 39:23 40:5 40:21 40:22

**telephone**(3) 18:24 131:9 147:1

**telephonic**(7) 7:31 8:1 9:1 10:1 11:1 12:2 13:1

**tell**(13) 49:9 52:3 54:16 56:3 96:7 105:12 107:21 117:22 162:15 174:14 202:5 207:3 212:12

**telling**(3) 82:8 123:18 208:1

**tellingly**(1) 168:5

**tells**(2) 157:1 205:7

**ten**(3) 53:3 108:4 151:2

**tend**(2) 74:8 106:23

**tender**(1) 185:12

**tendered**(4) 185:25 186:1 186:6 188:10

**tension**(2) 33:3 33:25

**tentatively**(1) 18:1

**tenth**(1) 38:24

**term**(2) 153:18 193:20

**termination**(1) 203:3

**terms**(17) 15:5 17:9 39:3 45:12 45:22 50:25 52:11 56:7 61:24 97:14 99:5 100:22 125:17 126:15 159:6 159:9 161:2 161:9 164:11 166:13 169:23 179:11 194:4 197:1 200:7 203:17 203:18

**test**(10) 38:13 41:24 69:3 69:3 171:8 177:24 205:14 206:14 206:20 207:24

**testified**(3) 69:15 94:17 208:22

**testify**(1) 63:6

**testimony**(13) 50:23 52:3 65:15 72:11 80:18 98:17 205:11 208:22 208:23 208:24 209:4 209:7 209:8

**testing**(2) 206:3 206:4

**texas**(1) 45:3

**text**(2) 41:25 87:10

**textural**(1) 87:10

**than**(51) 15:1 26:6 28:19 30:20 31:6 32:20 44:3 48:2 56:22 57:9 67:24 68:10 70:8 78:14 80:12 82:20 85:20 85:21 88:3 97:13 98:17 99:21 101:23 107:14 109:24 114:10 124:2 126:22 130:20 132:5 133:9 135:7 141:20 144:1 148:3 152:2 153:5 153:20 159:17 164:7 176:15 176:24 177:25 179:10 188:23 190:6 194:3 200:5 206:4 206:9 211:14

**thank**(83) 17:6 17:7 20:9 21:17 32:13 34:24 35:1 42:7 47:4 47:5 48:6 49:4 49:5 49:17 50:16 52:23 57:16 66:10 75:3 75:4 79:1 79:2 82:10 82:11 89:16 89:22 92:25 93:4 93:5 98:1 100:1 101:25 112:2 112:3 113:3 113:4 114:17 116:9 116:10 127:24 127:25 128:4 128:14 128:21 128:22 129:2 129:15 129:16 131:2 131:6 131:11 131:14 138:8 139:14 140:12 147:13 147:16 157:5 157:20 158:6 158:23 162:24 164:20 167:1 168:21 175:18 175:25 176:3 180:25 182:16 183:5 184:23 187:6 189:21 190:3 200:15 202:1 204:4 204:5 204:11 205:21 210:8 212:24

**thanks**(2) 52:22 57:15

**that**(301) 14:10 14:17 14:20 14:21 14:23 14:24 14:24 15:5 15:6 15:7 15:11 15:13 15:15 15:18 15:19 15:20 15:24 16:4 16:16 16:16 16:16 16:16 16:18 16:23 17:1 17:5 17:7 17:10 17:12 17:25 18:10 18:11 18:11 18:17 18:20 18:25 19:13 19:15 19:18 19:21 20:1 20:1 20:2 20:11 20:22 20:23 21:14 21:25 22:13 22:18 23:8 23:16 23:24 24:2 24:4 24:5 24:6 24:12 24:15 24:19 25:2 25:2 25:4 25:6 25:7 25:15 25:17 25:24 25:25 26:5 26:8 26:8 26:9 26:10 26:17 27:3 27:4 27:5 27:8 27:12 27:15 27:15 27:20 27:24 28:5 28:9 28:10 28:17 28:25 29:3 29:4 29:6 29:8 29:11 29:13 29:13 29:15 29:15 29:23 30:2 30:3 30:8 30:9 30:21 30:23 31:1 31:8 31:15 31:17 32:4 32:6 32:9 32:16 32:19 32:23 32:24 33:5 33:13 33:18 33:19 33:20 33:24 33:25 34:16 34:18 35:15 35:21 36:2 36:7 36:8 36:12 36:13 37:1 37:1 37:2 37:5 37:9 37:10 37:12 37:13 37:19 38:2 38:6 38:7 38:11 38:12 38:16 39:3 39:6 39:7 39:9 39:11 39:12 39:13 39:18 39:20 39:24 40:3 40:4 40:6 40:12 40:14 40:15 40:16 40:24 41:8 41:11 41:11 41:14 41:2 41:21 41:22 41:25 42:11 42:14 42:17 42:21 42:23 43:4 43:5 43:5 43:5 43:11 43:13 43:21 43:21 44:7 44:7 44:16 44:56 44:17 44:23 45:1 45:1 45:1 45:4 45:6 45:14 45:15 46:2 46:4 46:5 46:10 46:10 46:11 46:13 46:13 46:14 46:16 46:16 46:18 46:21 47:7 47:12 47:13 47:14 47:1 47:17 47:22 47:24 48:5 48:10 48:17 48:1 48:19 48:20 48:20 48:22 48:22 49:2 49:1 49:23 49:23 49:25 49:25 50:3 50:5 50:7 50:8 50:10 50:12 50:12 50:13 50:15 51:1 51:3 51:5 51:5 51:6 51:7 51:9 51:1 51:16 51:16 51:18 51:24 52:1 52:4 52:9 52:12 52:15 52:16 53:25 54:2 54:5 54:7 54:10 54:13 54:15 54:16 54:16 54:25 55:55:8 55:8 55:9 55:12 55:16 55:17 55:20 55:22 56:5 56:6 56:6 56:16 56:19 56:24 57:4 57:7 57:11 57:12 57:15 57:19 57:19 57:20 57:22 57:24 58:1

**that**(301) 58:5 58:13 58:17 58:21 58:23 59:1 59:10 59:19 59:23 60:7 60:7 60:18 60:19 61:10 61:12 61:14 61:23 61:24 62:4 62:7 62:15 62:18 62:23 62:25 62:25 63:2 63:2 63:6 63:6 63:14 63:14 63:17 63:20 63:20 64:1 64:4 64:6 64:7 64:11 64:13 64:15 64:16 64:17 64:19 64:22 64:24 65:8 65:12 65:14 65:15 65:21 65:25 66:3 66:3 66:18 67:3 67:4 67:5 67:5 67:9 67:10 67:11 67:14 67:19 67:20 67:23 68:14 69:2 69:10 69:15 69:16 69:20 69:2 70:1 70:17 70:23 70:24 70:24 70:25 71:1 71:2 71:3 71:6 71:10 71:12 71:15 71:20 71:24 71:25 71:25 72:1 72:1 72:3 72:5 72:8 72:12 72:12 72:13 72:15 72:17 72:2 72:25 73:1 73:3 73:7 73:9 73:11 73:12 73:14 73:16 73:17 73:18 73:19 73:21 73:22 73:22 73:24 74:1 74:5 74:8 74:11 74:18 74:19 75:12 75:13 75:14 75:15 75:18 75:18 75:19 75:21 75:24 75:25 75:25 76:1 76:7 76:13 76:15 76:18 76:19 76:21 76:25 77:5 77:10 77:17 77:17 77:18 77:23 78:2 78:8 78:15 78:23 78:25 79:10 79:10 79:14 79:16 79:20 79:21 80:1 80:2 80:3 80:4 80:7 80:11 80:21 80:24 81:1 81:4 81:5 81:10 81:11 81:16 81:16 81:19 81:20 81:21 81:22 82:4 82:15 82:17 82:2 82:25 83:1 83:5 83:7 83:9 83:10 83:14 83:18 83:21 83:23 83:24 83:24 84:2 84:3 84:4 84:7 84:8 84:13 84:14 84:15 84:17 84:24 84:25 85:1 85:3 85:4 85:6 85:7 85:15 85:15 85:19 85:23 85:24 86:1 86:3 86:6 86:8 86:12 86:16 86:17 86:18 86:25 87:1 87:2 87:3 87:4 87:6 87:8 87:15 87:18 87:18 87:19 87:21 87:22 88:4 88:8 88:14 88:14 88:15 88:16 88:18 88:18 88:20 88:25 88:25 89:2 89:4 89:13 89:23 90:1 90:3 90:5 90:7 90:9 90:10 90:11 90:11 90:12 90:16 90:17 90:21 90:22 90:25 90:25 91:2 91:3 91:7 91:12 91:15 91:23 92:1 92:2 92:2 92:2 92:2 92:5 92:6 92:8 92:12 92:16 92:18 92:19 92:22 93:2 93:9 93:12 93:13 93:13 93:15 93:22 93:24 94:2 94:5 94:6 94:7 94:9

**that**(301) 94:17 94:18 94:19 94:21 94:25 95:3 95:5 95:6 95:9 95:11 95:12 95:17 95:18 95:19 95:22 95:24 95:25 96:4 96:7 96:12 96:21 96:22 96:25 97:3 97:7 97:9 97:14 97:16 97:18 97:20 97:22 98:6 98:7 98:9 98:12 98:14 98:18 98:21 98:23 98:24 98:24 99:3 99:6 99:15 100:14 100:16 100:18 100:19 100:25 101:10 101:11 101:13 101:19 101:19 101:21 102:3 102:4 102:15 102:18 103:6 103:7 103:13 104:1 104:7 104:9 104:15 104:17 104:19 104:20 104:21 105:1 105:2 105:3 105:3 105:4 105:5 105:7 105:13 105:13 105:20 105:20 105:22 105:24 106:1 106:4 106:16 106:19 106:21 106:22 106:23 106:25 107:1 107:2 107:7 107:8 107:12 107:17 108:10 108:12 108:13 108:24 109:1 109:2 109:13 109:15 109:17 109:18 109:25 110:5 110:6 110:8 110:10 110:14 110:17 110:18 110:19 110:20 110:21 110:21 110:22 111:2 111:7 111:10 111:15 111:18 111:19 111:21 111:22 112:9 112:10 112:11 112:13 112:14 112:16 112:16 112:19 112:19 112:20 112:21 112:22 112:24 113:1 113:8 113:10 113:12 113:15 113:15 113:18 113:19 113:25 114:7 114:8 114:8 114:9 114:10 114:11 114:12 114:13 114:13 114:14 114:14 114:21 114:23 114:25 115:3 115:4 115:8 115:9 115:15 115:15 115:18 115:20 115:21 115:24 116:3 116:4 116:5 116:6 116:7 116:8 116:9 116:11 116:24 116:25 117:6 117:9 117:11 117:18 117:21 117:24 118:2 118:3 118:4 118:5 118:7 118:9 118:15 118:20 118:25 118:25 119:2 119:3 119:12 119:14 119:19 119:21 119:23 120:7 120:8 120:10 120:12 120:23 121:7 121:14 121:17 121:19 121:19 121:20 121:24 122:1 122:1 122:6 122:6 122:9 122:12 122:13 122:17 122:19 122:22 122:25 123:3 123:5 123:9 123:20 123:23 123:24 123:25 124:1 124:5 124:10 124:10 124:13 124:22 124:24 125:3 125:4 125:9 125:21 125:23 126:2 126:10 126:19 126:23 127:2 127:7 127:11 127:19 128:2 129:13 129:19 129:21 129:22 129:22 129:23 130:6 130:7 130:8 130:10 130:12 130:13 131:19 131:19 131:21 131:22 131:23 131:23 131:24 132:1 132:3 132:8 132:10 132:12 132:13 132:14 132:21 132:23 133:2 133:10 133:11 133:17 133:18 133:18 133:19 133:20 133:21 133:23 134:1

A529

| Word | Page:Line | Word | Page:Line | Word | Page:Line | Word | Page:Line |
|---|---|---|---|---|---|---|---|
| **that**(301) | 134:7 134:8 134:11 134:14 | **that**(247) | 180:1 180:2 180:2 180:6 180:7 | **that's**(31) | 165:9 165:25 167:4 168:2 168:7 | **the**(301) | 29:14 29:16 29:16 29:17 29:18 |

134:16 134:18 135:15 135:17 135:25 136: 180:8 180:9 180:11 180:11 180:13 180:15 168:24 170:10 171:12 171:17 172:4 174: 29:21 29:21 29:25 30:2 30:2 30:5 30:6
136:5 136:10 136:19 136:19 136:19 180:17 180:21 180:23 180:24 181:3 181:2 175:2 175:15 178:4 181:3 181:9 181:21 30:8 30:9 30:9 30:11 30:14 30:15 30:15
136:21 136:23 136:24 136:24 137:3 137:4 181:23 181:25 182:3 182:4 182:5 182:5 182:15 184:10 185:15 186:2 188:11 189:1 30:17 30:18 30:19 30:21 30:23 30:24
137:6 137:7 137:8 137:8 137:10 137:11 182:5 182:11 182:13 182:19 182:21 183:1 191:5 192:12 193:11 195:1 198:5 198:5 30:24 30:24 30:25 31:3 31:3 31:4 31:4
137:15 137:19 137:20 137:21 137:23 138: 183:20 184:4 184:6 184:9 184:12 184:19 198:16 201:5 31:5 31:6 31:9 31:10 31:10 31:11 31:11
138:6 138:18 138:23 138:23 138:25 139: 184:21 185:9 185:10 185:11 185:20 185:20 31:12 31:16 31:18 31:18 31:19 31:21
139:6 139:9 139:8 139:18 139:18 139:23 185:24 186:2 186:7 186:9 186:9 186:20 **the**(2) 61:2 92:8 31:22 31:22 31:24 32:2 32:3 32:7 32:8
140:5 140:7 140:15 140:19 140:23 141:1 186:24 187:1 187:4 187:10 187:11 187:15 32:8 32:9 32:10 32:12 32:14 32:17 32:18
141:7 141:8 141:12 141:13 141:15 141:20 187:20 187:21 188:1 188:5 188:9 188:9 **the**(301) 1:1 1:2 1:8 2:8 2:31 7:26 14:2 32:19 32:19 32:19 32:22 32:22 32:24 33:1
141:22 141:25 142:16 142:20 142:25 143: 188:15 188:17 188:21 188:22 189:3 189:3 14:21 14:21 14:25 14:25 15:3 15:5 15:6 33:2 33:2 33:4 33:7 33:8 33:8 33:11
143:10 143:12 143:12 143:16 143:19 189:6 189:10 189:11 189:11 189:13 189:1 15:6 15:9 15:10 15:11 15:17 15:17 15:18 33:11 33:13 33:15 33:17 33:18 33:19
143:25 144:1 144:2 144:3 144:7 144:10 189:14 189:16 189:17 190:1 190:8 190:9 15:18 15:20 15:21 15:21 15:22 16:6 16:9 33:20 33:24 33:24 33:25 34:2 34:4 34:4
144:15 145:3 145:4 145:5 145:8 145:9 190:19 190:22 190:24 191:2 191:7 191:9 16:10 16:12 16:14 16:15 16:16 16:17 34:5 34:6 34:6 34:9 34:12 34:13 34:13
145:11 145:13 145:20 145:23 145:24 146: 191:12 191:13 191:17 192:12 192:13 16:20 16:21 16:21 16:21 16:24 16:24 34:13 34:14 34:15 34:18 34:18 34:19
146:3 146:7 146:7 146:10 146:11 146:15 192:18 192:22 192:23 192:25 193:1 193:5 16:24 17:2 17:4 17:5 17:10 17:13 17:13 34:21 34:22 35:1 35:3 35:3 35:4 35:4
146:20 146:22 146:23 147:10 147:21 193:5 193:17 194:20 194:24 195:10 195:1 17:14 17:15 17:18 17:19 17:19 17:22 35:5 35:6 35:6 35:6 35:7 35:7 35:9 35:9
147:22 147:24 148:5 148:7 148:8 148:9 195:20 195:24 196:4 196:9 196:12 196:15 17:24 18:1 18:3 18:5 18:7 18:8 18:9 35:11 35:11 35:11 35:12 35:13 35:13
148:12 148:14 148:15 148:15 148:16 196:16 196:23 197:1 197:2 197:2 197:4 18:12 18:14 18:17 18:18 18:20 18:22 35:18 35:19 35:20 35:21 35:21 35:24 36:1
148:19 148:22 148:25 149:2 149:5 149:8 197:6 197:7 197:8 197:13 197:15 197:16 18:23 18:23 18:24 18:24 19:1 19:3 19:5 36:5 36:9 36:9 36:10 36:10 36:12 36:12
149:12 149:13 149:15 149:22 149:25 198:1 198:3 198:8 198:10 198:10 198:11 19:6 19:6 19:8 19:9 19:9 19:9 19:10 36:13 36:13 36:14 36:14 36:15 36:15
149:25 150:1 150:2 150:3 150:5 150:5 198:13 198:15 198:17 198:18 198:21 19:11 19:12 19:13 19:15 19:23 19:23 36:16 36:19 36:20 36:21 36:21 36:21
150:6 150:6 150:10 150:10 150:12 150:14 198:23 198:23 199:1 199:4 199:7 199:7 19:25 19:25 19:25 20:2 20:4 20:7 20:10 36:22 36:22 36:22 36:23 36:25 36:25
150:22 151:3 151:9 151:10 151:16 151:20 199:10 199:12 199:12 199:13 199:16 20:11 20:12 20:14 20:16 20:17 20:18 36:25 37:1 37:2 37:3 37:4 37:5 37:7 37:7
152:1 152:2 152:3 152:6 152:8 152:18 199:17 199:22 200:6 200:16 200:20 200:2 20:18 20:19 20:19 20:23 20:24 21:1 21:2 37:8 37:8 37:9 37:11 37:12 37:14 37:15
152:19 152:20 152:20 152:24 153:4 153:6 201:1 201:6 201:17 201:17 202:14 202:1 21:3 21:4 21:4 21:5 21:8 21:9 21:9 21:10 37:15 37:16 37:16 37:16 37:17 37:18
153:7 153:9 153:12 153:20 153:25 154:2 202:19 202:20 202:21 203:1 203:2 203:2 21:10 21:11 21:12 21:14 21:15 21:15 37:18 37:19 37:20 37:21 37:22 37:23
154:3 154:5 154:11 154:12 154:14 154:17 203:3 203:8 203:10 203:10 203:11 203:14 21:17 21:18 21:18 21:20 21:22 21:23 37:23 37:24 37:25 37:25 38:2 38:4 38:4
154:18 154:20 154:21 154:25 155:1 155:7 203:15 203:20 204:3 204:22 204:22 205:1 21:23 21:24 21:25 22:1 22:2 22:2 22:5 38:5 38:6 38:8 38:8 38:10 38:10 38:10
155:8 155:8 155:9 155:12 155:14 155:17 205:2 205:4 205:5 205:5 205:5 205:9 22:6 22:6 22:7 22:8 22:8 22:10 22:12 38:12 38:13 38:14 38:14 38:15 38:15
155:18 155:23 155:24 156:7 156:19 157:8 205:13 205:13 205:24 206:3 206:8 206:11 22:13 22:13 22:15 22:15 22:16 22:16 38:15 38:16 38:20 38:22 38:23 38:23
157:11 157:16 157:19 157:23 157:23 158: 206:11 206:12 206:15 206:15 206:19 22:17 22:17 22:17 22:21 22:21 22:21 38:24 38:25 38:25 39:4 39:4 39:4 39:5
158:7 158:15 158:16 158:16 158:17 206:20 206:21 206:24 206:24 207:4 207:5 22:24 22:24 23:1 23:2 23:4 23:4 23:5 39:5 39:7 39:8 39:9 39:9 39:13 39:17 39:19
158:18 158:21 158:24 159:3 159:13 159:1 207:6 207:12 207:15 207:18 207:20 207:2 23:5 23:6 23:6 23:8 23:9 23:9 23:9 23:11 39:22 40:4 40:6 40:11 40:13 40:13 40:14
159:15 159:15 159:16 159:17 159:20 207:23 207:24 207:25 208:2 208:5 208:1 23:13 23:11 23:14 23:15 23:16 23:16 40:18 40:21 40:23 40:23 40:25 40:25 41:2
159:22 159:23 159:25 160:1 160:11 160:1 207:18 208:18 208:20 208:21 208:24 209: 23:17 23:18 23:19 23:19 23:19 23:19 41:2 41:3 41:4 41:6 41:7 41:9 41:9 41:10
160:24 161:1 161:9 161:15 161:15 161:19 209:5 209:7 209:10 209:11 209:13 209:1 23:21 24:1 24:1 24:6 24:9 24:13 24:14 41:12 41:14 41:14 41:15 41:18 41:19
161:23 162:3 162:5 162:8 162:15 162:16 209:14 209:15 209:17 209:18 209:19 24:16 24:16 24:17 24:20 24:20 24:21 41:21 41:22 41:23 41:23 41:24 41:25
163:3 163:19 163:22 164:2 164:3 164:13 209:22 209:23 209:23 210:1 210:18 210:1 24:22 24:23 24:24 25:1 25:3 25:4 25:4 41:25 42:1 42:1 42:3 42:4 42:9 42:10
164:14 164:20 164:24 165:5 165:12 166:6 210:19 210:23 210:25 210:25 211:2 211:8 25:5 25:8 25:9 25:13 25:14 25:18 25:19 42:11 42:11 42:12 42:13 42:13 42:14
166:13 166:16 167:12 167:22 168:23 169: 211:11 211:15 211:16 211:20 211:23 212: 25:19 25:20 25:20 25:21 25:22 25:22 42:15 42:15 42:16 42:16 42:16 42:18
169:10 169:10 169:13 169:16 169:17 212:12 212:8 212:16 212:18 212:19 212:2 25:24 25:24 25:25 25:25 26:1 26:2 26:4 42:18 42:20 42:20 42:21 42:22 42:24 43:1
169:21 169:22 170:3 170:12 170:13 170:1 213:5 26:6 26:9 26:10 26:11 26:12 26:13 43:2 43:3 43:4 43:7 43:9 43:10 43:10
171:11 172:1 172:6 172:7 172:9 173:7 26:13 26:13 26:15 26:16 26:16 26:19 43:11 43:12 43:14 43:18 43:21
173:9 173:11 173:11 173:13 173:22 173:24 26:21 26:22 26:24 26:25 26:25 27:1 27:1 43:24 43:24 44:3 44:6 44:7 44:11 44:13
174:4 174:5 174:6 174:14 175:10 175:13 **that'd**(1) 14:12 27:10 27:10 27:11 27:11 27:13 27:14 44:14 44:17
175:14 176:8 176:9 176:14 176:19 176:21 **that's**(175) 15:1 15:3 15:8 17:22 17:24 27:15 27:17 27:17 27:18 27:19 27:19
176:23 177:1 177:2 177:8 177:21 178:1 18:17 21:18 25:19 26:12 28:20 30:5 30:5 27:20 27:21 27:21 27:22 28:1 28:1 28:2
178:2 178:6 178:10 178:13 178:14 178:16 31:19 31:22 33:23 33:23 34:7 34:24 36:1 28:6 28:7 28:7 28:8 28:8 28:12 28:13
178:16 178:17 178:17 178:19 178:19 38:21 39:7 40:23 40:24 41:4 41:18 42:15 28:14 28:15 28:15 28:16 28:18 28:20
178:20 178:22 178:24 178:25 179:3 179:5 43:3 43:4 43:12 43:23 43:23 44:11 44:11 28:21 28:21 28:22 28:24 28:25 29:1 29:1
179:6 179:8 179:10 179:13 179:21 179:25 54:11 54:12 54:18 55:3 55:4 55:12 56:7 29:2 29:4 29:8 29:8 29:9 29:11 29:12
60:2 63:25 64:25 66:5 66:7 68:2 69:8 29:13
70:5 70:11 70:13 71:23 72:17 72:21 73:16
73:20 73:24 74:7 76:17 77:9 77:9 77:11
77:15 78:14 78:25 80:10 80:13 80:15
84:17 85:14 87:9 87:21 88:23 89:11 89:23
89:24 90:4 90:16 90:21 92:1 92:6 94:11
94:16 94:20 95:16 97:8 97:24 98:19 99:1
103:23 104:16 105:5 105:9 107:19 107:21
107:24 108:3 109:23 109:25 111:5 111:15
111:25 112:25 113:14 114:3 114:16 115:8
115:20 117:4 117:17 117:17 117:21 118:19
118:22 118:24 119:7 119:7 119:17 119:24
120:13 120:13 120:15 121:9 122:8 122:8
122:15 122:20 123:7 123:17 124:4 124:15
125:13 126:3 126:5 126:12 126:12 126:17
126:19 127:6 130:5 130:14 130:24 135:24
136:22 137:12 138:5 140:16 142:18 143:2
151:21 153:16 153:17 154:7 157:3 157:19
160:5 164:5 201:18 204:21 205:5 205:5
205:22 208:4 208:8 209:2 209:5 209:8
210:4 210:23

TRIBUNE.4.13.11.DOC

| Word | Page:Line |
|---|---|

**the**(301) 44:17 44:21 44:22 44:24 45:3 45:8 45:9 45:9 45:10 45:13 45:17 45:18 45:21 45:22 45:23 45:25 46:3 46:3 46:6 46:7 46:8 46:14 46:15 46:15 46:17 46:17 46:18 46:19 46:20 46:23 46:24 47:4 47:6 47:6 47:10 47:13 47:14 47:14 47:14 47:16 47:21 47:21 47:24 47:25 47:25 48:1 48:2 48:10 48:12 48:12 48:13 48:13 48:15 48:15 48:16 48:17 48:17 48:17 48:18 48:19 48:21 48:21 48:22 48:24 48:24 48:24 49:1 49:1 49:1 49:1 49:1 49:2 49:3 49:3 49:5 49:9 49:12 49:13 49:14 49:15 49:18 49:20 49:21 49:23 49:25 49:25 49:25 50:5 50:7 50:9 50:13 50:15 50:16 50:18 50:19 50:21 50:21 50:24 50:25 51:4 51:9 51:14 51:15 51:20 51:23 51:24 52:2 52:6 52:8 52:11 52:13 52:18 52:21 52:21 52:24 53:1 53:3 53:6 53:7 53:11 53:12 53:13 53:16 53:18 53:22 54:1 54:2 54:3 54:3 54:4 54:4 54:8 54:11 54:11 54:12 54:13 54:17 54:18 54:22 54:23 54:25 54:25 55:1 55:3 55:5 55:5 55:5 55:8 55:9 55:10 55:14 55:14 55:17 55:19 55:20 55:24 56:2 56:3 56:5 56:8 56:10 56:12 56:12 56:13 56:14 56:15 56:15 56:16 56:17 56:17 56:17 56:19 56:24 57:1 57:1 57:2 57:4 57:4 57:6 57:7 57:8 57:8 57:9 57:11 57:12 57:14 57:17 57:19 57:23 57:25 58:5 58:7 58:10 58:11 58:12 58:12 58:18 58:20 58:21 58:21 58:22 58:22 58:22 58:23 58:23 59:1 59:4 59:5 59:6 59:6 59:7 59:9 59:8 59:9 59:10 59:11 59:12 59:13 59:14 59:16 59:16 59:17 59:18 59:18 59:19 59:22 59:24 60:2 60:3 60:5 60:6 60:9 60:12 60:15 60:18 60:18 60:22 60:22 61:1 61:1 61:2 61:2 61:3 61:3 61:4 61:8 61:8 61:10 61:12 61:15 61:16 61:20 61:21 61:22 61:22 61:24 61:25 61:25 62:2 62:2 62:3 62:3 62:6 62:6 62:8 62:9 62:10 62:12 62:13 62:14 62:18 62:19 62:21 62:21 62:23 63:1 63:3 63:10 63:12 63:15 63:16 63:16 63:17 63:18 63:22 63:23 63:25 64:1 64:6 64:6 64:7 64:9 64:10 64:12 64:13 64:14 64:16 64:20 64:21 64:21 64:23

**the**(301) 64:25 65:2 65:4 65:8 65:10 65:10 65:13 65:15 65:15 65:19 65:20 65:23 65:24 66:1 66:2 66:2 66:5 66:8 66:11 66:13 66:15 66:17 66:17 66:18 66:20 66:21 66:22 67:3 67:6 67:7 67:11 67:12 67:18 67:19 67:24 68:2 68:3 68:4 68:6 68:9 68:10 68:12 68:12 68:12 68:13 68:14 68:20 68:24 68:25 69:2 69:3 69:4 69:6 69:11 69:13 69:13 69:13 69:14 69:14 69:14 69:17 69:20 69:21 69:22 69:25 69:25 70:5 70:6 70:8 70:10 70:12 70:13 70:14 70:14 70:16 70:18 70:21 70:22 70:23 70:25 71:1 71:3 71:3 71:4 71:6 71:6 71:11 71:11 71:12 71:17 71:18 71:21 71:24 72:1 72:1 72:2 72:4 72:6 72:8 72:10 72:14 72:16 72:17 72:18 72:20 73:3 73:4 73:4 73:6 73:9 73:13 73:17 73:22 73:25 74:3 74:5 74:5 74:8 74:9 74:12 74:16 74:16 74:17 74:17 74:19 74:21 74:23 75:3 75:6 75:7 75:8 75:8 75:9 75:10 75:10 75:11 75:11 75:12 75:13 75:14 75:15 75:16 75:17 75:18 75:19 75:21 75:23 75:25 76:1 76:4 76:5 76:6 76:7 76:7 76:8 76:10 76:13 76:19 76:20 76:22 76:23 76:23 76:24 76:25 76:25 77:2 77:3 77:4 77:7 77:7 77:14 77:16 77:17 77:20 77:20 77:24 78:2 78:3 78:3 78:8 78:10 78:15 78:18 78:21 78:23 79:2 79:4 79:6 79:8 79:10 79:13 79:14 79:17 79:20 79:23 79:24 79:24 80:1 80:1 80:2 80:5 80:6 80:6 80:7 80:10 80:11 80:12 80:14 80:15 80:15 80:19 80:20 80:22 80:23 80:23 80:24 81:1 81:3 81:3 81:4 81:6 81:7 81:7 81:9 81:11 81:13 81:13 81:15 81:15 81:16 81:18 81:19 81:22 81:22 81:23 81:24 82:4 82:4 82:6 82:7 82:8 82:8 82:10 82:13 82:14 82:16 82:17 82:18 82:19 82:21 82:22 82:22 82:22 82:23 82:24 82:24 83:1 83:2 83:3 83:4 83:5 83:7 83:8 83:9 83:10 83:11 83:12 83:12 83:13 83:13 83:15 83:16 83:22 83:25 84:1 84:1 84:2 84:3 84:4 84:6 84:6 84:8 84:10 84:12 84:15 84:19 84:22 84:24 84:25 85:1 85:2 85:7 85:10

**the**(301) 85:12 85:13 85:14 85:15 85:15 85:18 85:20 85:20 85:21 85:21 85:22 85:23 85:23 85:23 86:2 86:2 86:4 86:4 86:5 86:9 86:11 86:12 86:14 86:24 86:24 86:25 87:2 87:4 87:7 87:9 87:10 87:11 87:12 87:12 87:14 87:17 87:19 87:20 87:22 87:22 87:23 87:25 88:1 88:4 88:7 88:7 88:7 88:8 88:9 88:10 88:13 88:14 88:17 88:18 88:20 88:22 88:24 88:25 88:25 89:2 89:3 89:5 89:6 89:7 89:8 89:11 89:12 89:16 89:19 89:20 89:21 89:21 89:22 89:25 89:25 90:1 90:1 90:2 90:2 90:3 90:5 90:6 90:8 90:9 90:10 90:15 90:15 90:19 90:21 91:4 91:5 91:5 91:6 91:6 91:11 91:14 91:18 91:18 91:21 91:22 91:23 91:23 91:25 92:1 92:2 92:2 92:3 92:7 92:7 92:7 92:10 92:13 92:15 92:18 92:23 92:24 93:1 93:5 93:6 93:7 93:9 93:11 93:15 93:16 93:16 93:17 93:17 93:18 93:19 93:20 93:22 93:22 93:23 94:2 94:4 94:5 94:6 94:9 94:9 94:10 94:15 94:16 94:17 94:19 94:20 94:21 94:21 94:22 94:22 94:23 94:24 94:24 94:25 95:4 95:7 95:10 95:11 95:12 95:13 95:14 95:15 95:16 95:17 95:21 95:25 96:2 96:2 96:6 96:7 96:9 96:10 96:10 96:11 96:11 96:12 96:13 96:14 96:14 96:15 96:17 96:18 96:19 96:20 96:20 96:23 96:23 97:2 97:2 97:2 97:3 97:4 97:4 97:5 97:6 97:6 97:7 97:8 97:9 97:9 97:12 97:15 97:15 97:16 97:17 97:17 97:17 97:18 98:10 98:11 98:13 98:14 98:14 98:15 98:16 98:21 98:23 98:25 99:2 99:2 99:4 99:6 99:6 99:7 99:10 99:11 99:12 99:14 99:16 99:16 99:19 99:19 99:19 99:23 100:2 100:5 100:7 100:11 100:20 100:21 101:1 101:4 101:7 101:10 101:13 101:14 101:14 101:18 101:19 101:19 101:20 102:2 102:2 102:4 102:6 102:6 102:8 102:10 102:11 102:12 102:13 102:14 102:15 102:19 102:19 102:20 102:21 102:21 102:21 102:23 102:24 102:25 103:1 103:3 103:5 103:6 103:7 103:9 103:10 103:10 103:11 103:12 103:13 103:13

**the**(301) 103:14 103:15 103:17 103:17 103:20 103:21 103:22 104:1 104:1 104:6 104:9 104:10 104:11 104:12 104:13 104:14 104:15 104:16 104:16 104:17 104:18 104:20 104:21 104:22 104:22 104:25 105:2 105:2 105:4 105:5 105:9 105:9 105:11 105:12 105:13 105:14 105:16 105:17 105:18 105:18 105:20 105:23 105:24 105:24 105:24 105:25 105:25 106:1 106:2 106:4 106:5 106:6 106:6 106:7 106:7 106:8 106:9 106:11 106:12 106:13 106:14 106:15 106:15 106:18 106:19 106:19 106:21 106:24 106:25 107:2 107:2 107:3 107:5 107:10 107:11 107:12 107:15 107:18 107:21 107:22 107:24 108:1 108:1 108:5 108:6 108:7 108:7 108:10 108:13 108:17 108:19 108:22 108:25 108:25 109:4 109:4 109:5 109:13 109:13 109:14 109:16 109:17 109:19 109:20 109:21 109:23 109:23 109:25 110:3 110:3 110:4 110:5 110:5 110:6 110:8 110:9 110:11 110:11 110:12 110:13 110:19 110:22 110:22 110:23 111:1 111:2 111:4 111:5 111:6 111:7 111:8 111:8 111:9 111:11 111:15 111:15 111:16 111:20 111:20 111:21 111:22 111:23 111:24 112:2 112:3 112:6 112:8 112:12 112:13 112:15 112:16 112:17 112:17 112:19 112:22 112:25 113:4 113:6 113:8 113:9 113:12 113:17 113:21 113:21 113:28 113:25 113:25 114:1 114:2 114:8 114:11 114:11 114:11 114:15 114:17 114:19 114:20 114:20 114:22 114:24 114:25 115:1 115:5 115:5 115:6 115:7 115:8 115:9 115:10 115:10 115:12 115:13 115:14 115:14 115:14 115:15 115:15 115:17 115:18 115:21 115:24 116:1 116:2 116:3 116:3 116:6 116:8 116:10 116:12 116:12 116:16 116:18 116:18 116:20 116:23 117:5 117:5 117:6 117:9 117:11 117:11 117:13 117:15 117:17 117:18 117:18 117:24 118:2 118:5 118:7 118:11 118:12 118:12 118:13 118:13 118:15 118:16 118:17 118:19 118:21 118:22 118:24 118:25 119:1 119:3 119:3 119:4 119:4 119:5 119:6 119:7 119:9 119:10 119:10 119:12 119:14 119:14 119:18 119:19 119:21 119:23 119:25 120:2 120:3 120:4 120:5 120:5 120:8 120:9 120:14 120:15 120:16 120:17 120:18 120:19 120:21 120:22 120:24 120:25 121:3 121:5 121:6 121:7 121:8 121:8 121:12 121:15 121:15 121:15 121:18 121:19 121:19 121:22 121:25 122:2 122:3 122:7 122:11

A531

| Word | Page:Line | Word | Page:Line | Word | Page:Line | Word | Page:Line |
|---|---|---|---|---|---|---|---|

**the(301)** 122:12 122:14 122:16 122:19
122:22 122:23 122:24 122:24 123:1 123:2
123:3 123:11 123:12 123:13 123:14 123:1
123:15 123:19 123:20 123:21 123:22
123:23 123:23 123:24 123:25 124:2 124:3
124:4 124:4 124:7 124:8 124:8 124:9
124:16 124:18 124:23 124:24 125:1 125:1
125:5 125:6 125:6 125:9 125:10 125:13
125:14 125:16 125:18 125:20 125:22
125:23 125:23 125:24 126:1 126:2 126:5
126:8 126:9 126:9 126:10 126:12 126:13
126:13 126:15 126:16 126:19 126:21
126:23 126:24 127:1 127:1 127:3 127:4
127:4 127:5 127:6 127:10 127:10 127:14
127:19 127:20 127:21 127:23 127:23
127:25 128:2 128:2 128:4 128:6 128:9
128:14 128:18 128:18 128:19 128:21
128:23 129:1 129:3 129:4 129:7 129:11
129:12 129:15 129:17 129:18 129:19
129:19 129:20 129:22 129:23 129:23
129:25 130:1 130:2 130:2 130:3 130:6
130:7 130:8 130:8 130:9 130:10 130:11
130:13 130:13 130:14 130:15 130:21
130:21 130:24 130:25 131:1 131:4 131:8
131:10 131:12 131:14 131:17 131:19
131:20 131:20 131:22 131:23 131:24
131:25 132:2 132:4 132:8 132:10 132:11
132:11 132:13 132:13 132:14 132:15
132:15 132:16 132:17 132:17 132:19
132:19 132:21 132:24 133:1 133:2 133:2
133:4 133:10 133:14 133:15 133:16 133:1
133:19 133:19 133:20 133:20 133:21
133:22 134:1 134:1 134:2 134:3 134:4
134:7 134:8 134:10 134:11 134:14 134:15
134:18 134:19 134:23 134:25 135:1 135:3
135:3 135:8 135:8 135:9 135:9 135:11
135:11 135:12 135:15 135:15 135:16
135:18 135:19 135:19 135:25 136:1 136:4
136:6 136:11 136:11 136:12 136:13 136:1
136:16 136:17 136:17 136:19 136:19
136:21 136:21 136:25 137:2 137:3 137:3
137:4 137:5 137:5 137:9 137:10 137:11
137:13 137:13 137:15 137:16 137:17
137:18 137:19 137:20 137:20 138:3 138:3
138:4 138:4 138:5 138:5 138:8 138:10
138:11 138:13 138:14 138:15 138:15
138:15 138:16 138:17 138:18 138:19
138:19 138:21 138:22 138:23 138:24
138:25 138:25 139:2 139:3 139:4 139:5
139:9 139:9 139:12 139:12 139:14 139:18
139:22 139:25 140:1 140:1 140:4 140:4
140:5 140:8 140:12 140:15 140:16 140:16
140:17 140:17 140:18 140:19 140:20
140:20 140:22 140:23 140:24 141:1

**the(301)** 141:2 141:3 141:4 141:5 141:9
141:9 141:10 141:13 141:14 141:15 141:2
141:21 141:23 142:1 142:2 142:3 142:3
142:5 142:7 142:9 142:9 142:10 142:11
142:12 142:13 142:14 142:14 142:15
142:15 142:15 142:19 142:20 142:21
142:22 143:3 143:9 143:9 143:11 143:12
143:14 143:15 143:15 143:16 143:18
143:19 143:20 143:24 143:25 144:2 144:3
144:4 144:4 144:4 144:5 144:5 144:12
144:13 144:15 144:15 144:20 144:21
144:24 144:24 145:1 145:2 145:3 145:3
145:5 145:5 145:7 145:8 145:9 145:10
145:11 145:12 145:13 145:17 145:18
145:20 145:21 146:2 146:3 146:12 146:12
146:13 146:15 146:16 146:19 146:19
146:20 146:20 146:21 146:22 146:22 147:
147:6 147:6 147:9 147:9 147:11 147:13
147:15 147:17 147:20 147:21 147:24
147:25 148:7 148:11 148:11 148:13 148:1
148:15 148:17 148:17 148:18 148:19
148:20 148:21 148:22 148:23 148:25 149:
149:2 149:3 149:5 149:6 149:7 149:8
149:8 149:10 149:11 149:11 149:16 149:1
149:19 149:20 149:21 149:22 150:1 150:
150:3 150:4 150:9 150:15 150:17 150:17
150:25 151:2 151:5 151:5 151:6 151:7
151:12 151:13 151:16 151:19 151:19
151:21 151:21 151:22 151:23 152:8 152:
152:2 152:4 152:4 152:5 152:7 152:7
152:8 152:10 152:11 152:11 152:19 153:
153:10 153:11 153:12 153:15 153:16
153:16 153:17 153:18 153:19 153:21
153:22 153:24 153:25 154:2 154:3 154:3
154:4 154:6 154:6 154:9 154:15 154:21
154:24 154:24 155:4 155:4 155:5 155:5
155:6 155:9 155:9 155:9 155:11 155:12
155:12 155:15 155:16 155:17 155:18
155:22 155:23 155:24 155:24 156:2 156:3
156:15 156:24 157:1 157:5 157:8 157:8
157:12 157:12 157:15 157:16 157:17
157:17 157:18 157:18 157:19 157:20
157:25 158:1 158:2 158:3 158:3 158:7
158:7 158:8 158:8 158:9 158:10 158:11
158:13 158:13 158:14 158:15 158:20
158:22 158:24 158:24 159:8 159:8 159:9
159:13 159:18 159:18 159:19 159:22
159:23 159:24 159:24 160:2 160:3 160:3
160:4 160:6 160:8 160:12 160:13 160:14
160:14 160:15 160:16 160:17 160:20
160:20 160:23 160:25 161:2 161:3 161:3
161:4 161:5 161:8

**the(301)** 161:9 161:12 161:12 161:12
161:13 161:14 161:16 161:17 161:18
161:20 161:22 161:22 161:23 161:23
161:25 162:3 162:3 162:4 162:4 162:6
162:6 162:7 162:8 162:8 162:9 162:9
162:14 162:16 162:17 162:17 162:18
162:22 162:23 162:25 163:4 163:4 163:9
163:10 163:11 163:12 163:15 163:16
163:17 163:20 163:21 164:2 164:6 164:7
164:22 164:23 164:24 164:25 164:25 165:
165:4 165:8 165:8 165:9 165:10 165:13
165:18 165:18 165:20 165:21 165:21
165:22 165:22 165:23 165:25 166:3 166:5
166:6 166:8 166:8 166:13 166:18 166:19
166:22 167:1 167:3 167:5 167:7 167:8
167:9 167:13 167:13 167:14 167:17 167:1
167:21 167:21 167:21 167:22 168:1 168:2
168:5 168:7 168:7 168:8 168:10 168:14
168:17 168:19 168:21 168:22 168:23 169:
169:3 169:4 169:6 169:7 169:9 169:9
169:10 169:10 169:11 169:12 169:14
169:15 169:15 169:16 169:18 169:18
169:19 169:20 169:21 169:24 170:1 170:1
170:2 170:4 170:5 170:6 170:8 170:9
170:11 170:11 170:12 170:13 170:14
170:16 170:17 170:21 170:21 171:1 171:2
171:4 171:5 171:5 171:6 171:8 171:12
171:16 171:17 171:19 171:21 171:21
171:22 172:1 172:6 172:8 172:8
172:9 172:9 172:12 172:12 172:13 172:15
172:17 172:20 172:22 172:23 172:24 173:
173:4 173:5 173:6 173:6 173:7 173:7
173:8 173:9 173:10 173:13 173:15 173:20
173:23 173:25 174:2 174:3 174:9 174:10
174:11 174:13 174:17 174:21 174:24
174:24 174:25 175:1 175:3 175:3 175:4
175:5 175:5 175:6 175:7 175:8 175:8
175:9 175:10 175:11 175:13 175:18 175:2
176:2 176:3 176:6 176:6 176:9 176:11
176:13 176:13 176:13 176:14 176:15
176:16 176:21 176:21 176:22 176:23
176:23 177:3 177:3 177:4 177:6 177:7
177:8 177:9 177:11 177:11 177:12 177:13
177:15 177:17 177:19 177:20 177:21
177:21 177:23 177:24 178:2 178:3 178:4
178:5 178:6 178:7 178:7 178:8 178:8 178:10
178:11 178:14 178:14 178:15 178:16
178:17 178:22 178:22 178:22 179:2 179:3
179:4 179:6 179:7 179:11 179:11 179:12
179:12 179:12 179:13 179:15 179:16
179:17 179:18 179:19 179:19 179:20
179:22 179:23 179:25 180:4 180:4 180:5
180:8 180:13

**the(301)** 180:13 180:15 180:15 180:19
180:20 180:23 180:24 180:25 181:2 181:3
181:4 181:7 181:8 181:11 181:11 181:12
181:15 181:18 181:20 181:21 181:24
181:25 182:1 182:3 182:3 182:4 182:5
182:6 182:8 182:8 182:9 182:12 182:14
182:16 182:18 182:19 182:19 182:20
182:20 182:24 182:25 182:25 183:1 183:2
183:2 183:2 183:3 183:3 183:3 183:5 183:6
183:9 183:11 183:13 183:13 183:14 183:14 183:17
183:17 183:19 183:19 183:20 183:22
183:23 183:25 184:2 184:3 184:6 184:9
184:10 184:10 184:12 184:13 184:15
184:15 184:19 184:19 184:22 185:7 185:9
185:10 185:11 185:12 185:12 185:13
185:15 185:17 185:19 185:20 185:20
185:20 185:24 185:24 185:25 186:2 186:2
186:3 186:4 186:5 186:6 186:7 186:8
186:9 186:11 186:11 186:15 186:18 186:19
186:21 186:21 186:23 186:24 187:6
187:15 187:18 187:21 187:22 187:23
187:25 188:1 188:2 188:4 188:6 188:7
188:8 188:9 188:10 188:11 188:13 188:13
188:15 188:17 188:17 188:19 188:19
188:20 188:21 188:23 188:24 188:24 189:1
189:3 189:4 189:7 189:7 189:9 189:9
189:12 189:13 189:13 189:15 189:15
189:16 189:17 189:17 189:18 189:18
189:21 189:22 189:23 190:1 190:4 190:7
190:7 190:7 190:12 190:12 190:12 190:13
190:13 190:16 190:18 190:19 190:20
190:22 190:23 190:23 190:24 190:25 191:1
191:1 191:2 191:4 191:4 191:5 191:5
191:7 191:8 191:9 191:9 191:11 191:14
191:15 191:16 191:18 191:19 191:21
191:23 191:23 192:1 192:4 192:4 192:4
192:5 192:8 192:9 192:10 192:11 192:13
192:15 192:15 192:18 192:19 192:19
192:20 192:20 192:23 193:1 193:2 193:5
193:6 193:6 193:7 193:7 193:8 193:8
193:12 193:12 193:13 193:13 193:15
193:16 193:17 193:18 193:20 193:23
193:25 194:2 194:3 194:5 194:6 194:7
194:9 194:16 194:16 194:17 194:18 194:20
194:21 194:21 194:22 195:1 195:4 195:5
195:5 195:7 195:7 195:8 195:9 195:12
195:17 195:18 195:19 195:21 195:21
195:21 195:25 196:4 196:7 196:8 196:9
196:12 196:14 196:15 196:17 196:20
196:21 196:22 196:23 196:24 196:24
196:25 197:2 197:3 197:5 197:6 197:6
197:7 197:9 197:10 197:12 197:12 197:13
197:14 197:14 197:15 197:15 197:18
197:21 197:25 198:1 198:6 198:9

A532

| Word | Page:Line | Word | Page:Line | Word | Page:Line | Word | Page:Line |
|---|---|---|---|---|---|---|---|

**the**(231) 19:14 19:14 19:15 19:16 19:18 19:20 19:22 19:22 19:24 19:25 19:7 19:8 19:8 19:9 19:11 19:12 19:18 19:18 19:18 19:19 19:21 19:22 19:23 19:23 19:25 20:3 20:4 20:4 20:6 20:7 20:8 20:9 20:12 20:14 20:16 20:21 20:21 20:24 20:1 20:13 20:14 20:15 20:16 20:18 20:19 20:12 20:12 20:13 20:18 20:20 20:21 20:22 20:21 20:22 20:24 20:1 20:3 20:3 20:3 20:4 20:6 20:8 20:9 20:10 20:11 20:11 20:13 20:14 20:14 20:16 20:19 20:19 20:20 20:20 20:21 20:22 20:23 20:25 20:4 20:5 20:8 20:10 20:12 20:14 20:15 20:1 20:17 20:22 20:25 20:3 20:5 20:5 20:6 20:10 20:14 20:15 20:17 20:5 20:21 20:24 20:1 20:2 20:6 20:8 20:10 20:10 20:11 20:12 20:16 20:16 20:17 20:18 20:20 20:20 20:20 20:22 20:22 20:25 20:3 20:7 20:7 20:9 20:10 20:11 20:12 20:14 20:17 20:16 20:16 20:17 20:17 20:19 20:21 20:21 20:22 20:23 20:24 20:25 20:1 20:8 20:8 20:12 20:8 20:8 20:9 20:11 20:11 20:12 20:12 20:13 20:14 20:18 20:20 20:23 20:24 20:25 20:25 20:1 20:5 20:9 20:9 20:7 20:9 20:8 20:9 20:8 20:9 20:10 20:13 20:14 20:14 20:15

**their**(108) 17:11 17:12 17:21 22:10 22:14 23:14 24:7 24:8 24:10 28:24 30:3 31:7 31:11 32:2 35:14 35:17 48:4 48:20 48:20 50:20 53:14 54:24 55:13 58:16 59:3 60:1 60:17 60:20 60:21 61:14 67:22 68:16 71:7 75:20 76:2 76:24 77:1 77:8 77:12 78:13 78:17 78:17 78:20 85:6 90:11 94:7 95:8 97:14 102:16 113:11 117:21 118:6 120:12 121:17 121:23 122:4 122:10 122:10 123:5 123:7 123:11 123:16 130:9 130:11 130:20 130:22 134:8 135:5 141:6 143:2 148:14 152:25 153:22 161:24 163:16 163:21 164:13 166:7 166:10 169:13 169:16 172:4 174:2 175:5 175:11 175:15 177:13 177:14 183:13 184:9 185:9 185:21 186:10 189:14 191:12 191:14 191:14 191:17 192:8 192:1 195:15 201:14 202:5 202:25 203:1 204:1 209:19 212:18

**them**(60) 23:4 23:5 26:16 26:17 29:15 29:15 36:4 41:16 54:24 60:8 60:25 69:15 66:25 67:21 67:23 67:25 68:8 68:15 69:15 74:10 77:16 80:1 82:5 82:7 82:8 97:21 106:17 108:14 108:16 113:14 123:16 123:19 144:12 152:22 155:3 156:21 163:11 165:6 169:8 169:17 170:7 170:24 171:19 179:14 180:18 184:18 185:6 185:13 185:1 185:21 188:23 193:2 194:19 195:16 195:18 198:22 204:2 204:8 211:7 212:5

**theme**(2) 66:7 210:6

**themselves**(3) 18:18 35:19 130:22

---

**then**(83) 17:13 17:15 17:22 24:23 25:18 32:24 34:15 36:2 41:3 41:20 41:22 44:9 44:23 44:24 45:17 50:14 54:10 56:25 58:5 62:1 62:21 67:13 73:9 74:18 75:23 78:23 81:16 83:7 83:9 83:13 84:19 89:3 89:4 90:9 92:12 96:15 96:19 99:11 99:13 101:10 105:8 109:20 111:12 115:10 115:11 116:5 125:14 127:4 127:13 133:20 140:3 140:4 140:6 140:21 140:25 141:24 142:15 148:7 148:21 152:17 154:17 155:3 155:6 155:23 165:20 174:9 179:18 179:23 184:2 181:18 191:21 192:4 199:17 199:21 201:4 202:1 207:10 207:11 207:17 207:20 208:2 209:20 209:23

**then-indenture**(1) 183:25

**theories**(4) 103:2 104:15 107:8 169:25

**theory**(11) 38:2 102:24 113:3 160:12 173:13 183:2 192:8 192:12 192:17 202:17 203:1

**there**(180) 14:9 15:9 16:14 17:17 17:25 19:18 19:20 19:24 22:4 24:1 24:25 25:11 25:16 26:23 30:10 30:11 30:12 31:7 32:1 33:3 33:3 33:4 34:10 36:3 36:4 39:2 39:11 39:11 39:13 39:13 40:6 40:9 40:14 46:19 48:20 49:2 50:8 50:22 51:3 51:4 51:6 51:9 52:16 52:16 52:17 55:1 55:25 58:20 58:25 59:9 59:10 60:21 60:22 61:4 61:6 61:9 61:13 61:18 61:21 62:19 62:23 62:25 62:25 64:17 64:18 64:23 66:7 67:10 68:5 68:7 68:8 68:9 69:7 69:15 69:24 71:8 71:13 72:24 73:12 73:13 73:15 74:15 74:18 75:22 79:19 79:21 79:22 79:25 81:19 81:25 83:23 86:17 90:3 93:24 94:7 95:3 96:6 96:10 96:18 98:24 99:4 100:12 101:21 101:23 110:21 111:22 113:19 114:3 115:3 115:11 117:4 119:9 122:8 124:21 125:11 125:22 125:25 127:21 129:7 132:2 132:15 133:10 133:13 135:5 135:22 136:10 137:1 137:7 137:15 145:24 148:16 148:16 149:2 149:18 149:1 151:5 151:17 160:1 171:15 180:2 180:8 181:11 182:19 184:16 185:16 185:16 185:17 189:6 189:6 190:10 190:11 191:8 193:24 194:21 200:8 201:6 201:22 207:22 207:25 203:15 203:18 206:6 206:19 207:2 207:5 207:9 207:18 209:1 209:2 210:12 212:23

**there'd**(1) 90:12

**there's**(65) 14:20 20:22 24:22 33:12 33:12 34:2 34:7 37:23 39:15 44:12 44:18 44:25 45:1 45:8 45:15 48:22 50:22 51:12 51:6 51:6 51:13 52:17 61:17 67:11 68:11 72:17 75:18 78:12 78:25 83:9 83:20 83:23 86:19 96:20 97:16 102:18 104:4 107:17 108:21 112:20 114:2 117:12 118:1 118:3 118:4 118:9 119:2 121:24 125:5 127:20 127:21 133:7 134:5 137:25 141:18 142:5 147:4 148:15 148:25 161:11 205:13 206:7 206:23 208:23

**thereafter**(1) 165:21

**therefore**(8) 36:4 68:24 99:9 143:4 143:6 154:10 162:2 209:11

**there'll**(1) 173:23

**there's**(13) 165:12 169:12 175:13 178:18 180:1 180:12 181:5 182:13 185:19 186:7 186:16 190:17 193:20

---

**these**(93) 35:17 40:16 44:3 45:6 47:7 49:16 50:11 50:11 50:13 55:14 57:5 58:10 59:12 61:7 62:4 62:7 65:16 67:17 69:15 69:16 70:23 71:16 71:21 71:21 73:1 74:14 75:23 78:9 80:15 81:2 81:8 83:6 84:12 85:4 92:5 94:14 94:15 94:17 100:8 101:24 101:24 103:4 103:6 104:11 106:2 108:11 108:24 109:15 110:8 110:15 111:3 111:3 112:10 112:17 113:1 113:13 113:23 116:2 117:7 118:24 119:15 119:19 121:12 121:12 124:17 124:18 125:9 125:20 126:2 126:4 126:21 127:2 132:9 136:8 139:11 140:2 143:7 146:11 162:18 169:7 169:23 170:23 180:17 185:18 186:9 186:22 190:18 191:2 194:8 195:14 204:7 208:12 208:18

**they**(234) 14:20 14:23 14:25 15:16 17:12 17:16 18:18 23:13 26:16 27:7 28:9 29:17 29:18 30:21 31:25 32:1 32:17 33:15 33:15 35:18 35:22 36:20 40:17 41:16 42:25 42:9 45:7 47:19 50:14 51:4 51:5 52:15 54:16 55:12 55:15 55:17 58:10 58:15 59:23 60:3 61:25 62:11 64:1 64:7 64:24 67:5 68:16 68:17 68:18 73:22 75:18 75:17 75:20 76:8 77:3 77:3 77:10 77:13 78:2 78:20 78:21 79:24 81:7 81:25 82:5 82:9 82:17 83:5 85:5 86:22 86:22 86:22 86:25 88:9 89:10 92:16 92:17 92:21 93:22 94:6 94:7 96:13 96:18 97:19 97:19 97:20 98:8 98:9 98:10 98:11 102:16 105:7 106:9 106:9 106:16 108:16 109:1 109:1 109:2 110:19 111:7 111:11 111:12 112:19 113:13 113:14 113:17 114:9 116:1 116:25 118:7 118:20 119:1 119:21 124:10 127:5 127:8 127:14 127:15 127:15 130:12 132:12 132:18 135:3 136:4 136:5 136:6 136:11 136:12 136:14 136:16 136:25 140:23 142:18 142:25 142:25 146:12 148:14 153:4 154:15 154:15 154:15 154:23 155:1 155:2 155:22 160:10 160:1 162:1 164:13 164:15 165:20 166:14 166:1 168:11 168:12 168:12 169:11 169:25 170:5 170:8 170:15 170:17 171:22 172:3 172:3 172:6 173:10 174:6 174:9 175:4 175:4 177:25 178:16 179:15 179:17 180:1 180:24 182:22 183:20 184:12 185:9 186:19 188:9 188:10 188:10 188:12 188:1 188:21 188:22 189:3 189:9 189:10 189:10 189:11 189:14 189:16 189:16 191:15 192:12 192:13 192:14 195:4 197:9 198:21 199:5 199:5 199:7 199:9 199:12 199:18 199:18 200:22 202:6 202:6 203:1 203:16 203:18 203:20 206:9 207:25 207:25 211:2 212:22

**they'd**(5) 85:7 102:5 127:8 127:9 127:9

**they're**(45) 30:5 32:1 35:23 36:3 36:4 37:8 37:9 37:21 37:22 39:3 41:17 45:7 45:23 54:6 55:15 68:19 68:20 71:10 77:8 78:5 78:5 78:22 83:9 82:19 96:16 96:25 103:8 106:23 108:2 108:22 109:22 109:23 111:12 111:13 118:3 120:18 127:13 134:20 134:23 136:15 136:22 153:4 164:16 211:16 212:18

**they've**(15) 33:19 35:8 37:3 52:2 77:13 104:12 109:17 109:18 112:14 117:10 117:18 122:22 123:7 146:22 163:22

**they're**(7) 167:12 169:13 170:14 170:16 191:25 192:1 192:2

**they've**(1) 199:14

**thing**(22) 17:9 43:12 51:24 56:3 88:8 88:8 88:9 90:19 103:3 111:16 111:17 112:15 125:11 146:5 148:22 153:16 173:25 181:24 194:16 200:4 208:16 209:13

---

**things**(23) 14:14 37:15 40:10 40:12 49:16 63:16 63:18 78:10 82:15 86:12 87:22 112:22 114:14 115:25 123:25 124:5 125:4 127:19 145:8 151:23 185:8 193:24 211:5

**think**(208) 14:19 14:24 15:1 15:3 17:24 18:15 33:10 33:23 34:7 34:12 41:5 43:17 46:22 47:7 48:25 51:25 52:19 54:2 54:16 55:12 57:13 58:8 58:25 66:3 68:15 69:25 71:25 72:9 72:22 73:14 74:1 75:19 77:5 79:10 82:18 83:17 83:23 84:2 84:8 84:13 84:17 85:13 85:15 85:19 85:21 85:25 86:3 86:3 86:7 86:8 86:10 86:15 87:2 87:4 87:9 87:14 87:18 87:20 88:9 88:13 88:16 89:4 89:6 89:10 89:24 90:4 90:12 90:17 90:19 91:1 91:7 91:12 91:25 92:4 92:5 92:6 92:8 92:12 92:18 93:3 93:10 94:5 95:14 96:3 96:8 96:22 96:25 97:20 97:22 98:12 99:4 99:12 100:18 100:23 101:17 101:21 102:18 104:23 106:23 107:23 108:6 108:16 108:20 109:21 110:16 110:23 111:16 111:25 112:13 112:14 112:15 113:7 114:23 114:23 114:25 115:7 122:6 126:1 128:9 128:23 132:21 134:19 137:25 139:18 139:19 140:1 140:7 140:17 140:20 141:8 141:18 142:2 144:15 146:11 146:12 148:13 148:22 149:1 149:5 149:12 150:7 151:19 151:24 152:1 152:23 154:12 154:14 158:18 158:19 158:24 163:7 165:15 166:11 166:16 166:17 171:2 171:11 171:14 174:6 174:6 174:7 174:9 174:14 176:19 180:6 181:9 182:2 182:13 183:13 184:19 184:21 186:15 186:23 187:13 187:14 187:14 187:19 187:25 188:6 188:7 193:9 193:11 193:13 194:16 196:6 199:16 201:5 202:12 204:6 205:8 206:10 207:11 207:14 208:11 208:12 208:18 208:23 209:9 209:24 209:24 210:1 211:11 211:15 211:19 211:23 212:13 212:20

**thinking**(2) 57:11 208:18

**third**(53) 2:38 5:33 14:7 14:17 24:1 25:3 32:9 37:25 38:5 38:20 45:10 65:9 100:20 102:3 103:5 107:11 118:7 124:5 135:2 137:12 137:13 141:9 141:19 142:6 142:15 142:19 143:9 143:18 144:2 144:2 144:6 145:18 145:20 146:16 146:21 146:24 147:22 158:13 158:24 159:8 161:8 161:10 161:1 161:14 165:3 168:25 171:14 194:5 205:3 205:6 205:8 205:9 208:17 210:9

**third-party**(3) 168:6 169:2 170:23

**thirds**(1) 175:1

---

A533

| Word | Page:Line | Word | Page:Line | Word | Page:Line | Word | Page:Line |
|---|---|---|---|---|---|---|---|

**this**(301) 14:22  14:24  15:6  16:4  16:5  16:19  17:9  18:2  19:16  19:22  20:1  20:5  20:7  20:16  21:3  23:23  24:17  26:3  26:9  26:20  26:23  26:24  28:14  28:12  30:1  30:7  33:1  33:7  34:12  36:14  37:24  38:1  38:22  40:21  41:9  41:13  42:21  43:1  43:17  44:9  45:2  45:5  45:12  45:14  46:1  46:13  46:22  46:24  46:25  48:10  49:10  49:12  50:18  50:23  51:5  52:9  52:24  54:10  57:22  58:1  58:21  60:22  61:19  62:12  62:19  63:2  63:18  64:9  65:18  66:3  66:16  66:17  66:20  67:10  67:13  67:18  67:20  67:22  68:9  68:10  68:15  68:16  68:17  68:19  68:24  70:6  70:19  72:2  72:6  72:22  72:23  73:11  73:14  73:19  75:7  76:5  77:5  77:18  77:21  77:25  78:2  78:13  81:2  81:11  82:1  84:8  84:11  85:17  85:22  86:5  87:16  88:10  88:10  88:11  88:16  88:15  89:6  89:7  89:10  90:5  91:10  91:11  91:14  94:11  97:1  97:18  98:22  100:2  100:14  100:22  101:7  101:22  101:22  102:2  102:7  102:17  103:3  103:18  104:14  104:23  106:3  106:10  106:14  108:12  109:2  109:11  109:22  109:24  111:5  111:6  111:7  112:13  112:16  113:9  114:15  114:23  115:5  115:16  115:20  115:22  115:25  116:8  117:9  117:14  118:10  118:11  118:12  119:21  120:4  120:25  121:9  121:16  121:23  122:2  122:22  122:24  123:6  123:6  123:10  123:11  123:15  123:16  123:1  123:20  123:21  124:9  124:13  124:14  124:22  125:1  125:2  125:3  125:4  125:6  125:12  125:17  126:2  126:6  126:8  126:25  127:17  128:7  129:17  129:21  130:4  130:15  132:6  132:17  132:17  132:18  132:2  132:25  133:1  133:11  133:12  133:24  133:25  134:4  134:16  135:1  135:12  135:23  136:1  136:7  136:13  137:12  137:24  138:7  139:5  139:24  140:25  141:18  142:3  142:4  142:4  142:5  142:13  144:8  144:14  145:7  145:22  146:5  146:16  146:25  147:17  147:2  148:17  148:20  148:23  148:24  149:6  151:25  152:16  152:24  152:24  153:24  154:13  156:6  158:1  158:11  159:7  160:1  160:24  161:2  161:8  161:13  163:7  163:12  163:13  165:6  168:7  168:11  168:24  170:24  171:24  173:9  173:17  173:21  173:23  174:1  175:6  177:5  178:9  178:17  180:11  180:12  183:10  183:15  184:22  186:12  187:12  188:  189:4  190:5  191:8  191:10  191:11  191:13  192:7  192:17

**this**(42) 193:9  195:2  195:19  196:3  196:3  196:11  196:11  196:17  196:25  197:7  197:1  197:16  197:19  197:23  198:23  199:1  199:11  199:11  199:14  199:15  200:9  200:1  200:16  200:24  201:2  201:16  202:9  202:2  202:25  203:5  203:9  203:22  203:23  204:15  204:21  207:5  207:10  208:3  209:11  209:18  210:1  210:2

**thomas**(2) 4:17  4:33

**those**(140) 17:17  17:20  19:16  19:19  20:21  22:5  22:18  22:20  23:22  25:17  26:14  28:1  29:2  30:11  30:13  37:19  39:24  40:3  41:25  42:9  42:14  44:19  45:11  48:14  51:7  53:16  53:17  53:20  53:23  54:5  55:16  56:22  64:2  65:22  67:5  70:11  70:11  71:9  72:12  73:5  73:10  74:2  74:20  75:2  75:23  77:3  77:15  79:9  79:25  80:16  80:24  82:3  83:3  83:16  84:10  86:10  87:1  87:4  88:4  89:19  91:8  92:4  92:16  93:20  94:25  96:1  111:4  111:2  112:11  112:21  112:24  114:2  114:3  114:4  114:5  117:3  117:4  117:13  117:16  118:9  118:18  118:18  119:11  119:14  120:20  123:17  127:17  127:22  134:22  139:23  141:3  141:14  141:11  150:8  153:17  153:19  154:2  154:5  154:8  154:23  155:6  155:21  159:3  159:25  160:10  160:18  160:18  161:2  161:4  161:5  161:25  162:5  162:11  162:13  162:  164:14  169:20  169:21  169:22  172:5  177:1  179:23  182:6  182:9  182:10  184:1  184:21  188:1  188:14  188:15  189:18  190:25  195:0  204:17  204:18  207:3  209:25  211:3  212:17  212:21

**though**(9) 23:8  125:2  145:11  150:9  151:25  154:18  168:2  187:25  202:17

**thought**(16) 17:20  17:25  18:1  56:19  65:7  105:3  105:14  139:7  156:13  158:9  178:2  197:4  197:20  202:8  202:11  205:15

**thoughts**(1) 175:22

**thousands**(2) 108:4  108:4

**threads**(1) 206:1

**three**(17) 44:19  59:17  79:9  79:14  92:9  92:16  100:25  100:25  115:4  118:22  119:9  119:10  119:15  119:22  119:24  157:24  194:

**threshold**(3) 69:24  73:11  205:3

**through**(35) 14:14  14:21  18:7  27:9  28:1  36:24  49:16  67:16  68:16  100:8  100:22  110:5  124:7  135:4  140:22  142:25  143:2  144:13  145:16  155:4  156:8  162:14  164:24  165:11  165:14  165:16  166:2  177:7  181:7  183:14  184:1  185:16  186:14  193:4  210:25

**throughout**(1) 67:13

**throw**(1) 212:10

**thrown**(1) 89:8

**thus**(5) 26:7  131:18  132:22  167:19  171:5

**ticket**(1) 73:15

**tied**(1) 66:13

**time**(73) 16:23  20:20  21:9  21:24  24:14  35:21  43:17  43:17  48:10  54:10  54:15  54:17  63:7  63:17  64:7  70:17  72:23  74:4  88:3  89:15  91:5  100:3  100:8  100:21  109:4  110:24  112:17  112:19  115:1  115:21  115:25  116:8  119:15  132:8  132:9  132:15  140:22  144:12  148:23  149:16  149:16  150:12  163:12  172:22  173:4  173:23  178:2  185:9  186:3  188:8  191:8  197:4  198:13  199:2  199:2  199:18  200:3  203:20  207:11  210:16  210:16  210:21  212:21  212:4

**timeframe**(1) 211:24

**timing**(2) 184:3  189:1

**timothy**(2) 7:4  128:17

**tina**(1) 13:29

**tinker**(1) 3:6

**tired**(1) 163:14

**today**(39) 16:3  17:10  35:20  46:21  49:15  49:16  50:10  62:9  65:8  65:20  66:12  71:17  75:20  99:1  100:18  100:20  101:21  110:11  111:23  117:5  129:12  129:14  132:15  140:1  141:18  158:8  177:2  179:1  179:2  179:9  180:1  197:11  197:17  197:23  201:16  204:2  210:12  211:14  212:4

**today's**(1) 212:24

**today's**(2) 197:18  200:19

**told**(5) 80:1  84:2  86:18  88:16  211:15

**tomorrow**(15) 89:7  139:1  139:7  139:19  140:4  196:9  196:13  197:11  200:10  204:9  210:6  210:17  210:20  211:16  211:25

**too**(10) 27:12  33:21  68:21  76:13  78:25  115:4  145:20  165:5  201:5  212:13

**took**(1) 178:1

**tool**(1) 141:20

**tools**(1) 142:16

**topic**(4) 117:14  119:17  119:17  142:4

**topics**(3) 53:11  54:3  92:21

**torres**(1) 12:29

**tort**(5) 133:5  160:11  160:17  160:17  161:25

**tort-feasers**(1) 162:2

**total**(1) 85:10

**totaling**(1) 174:20

**totally**(2) 87:19  89:1

**touch**(4) 40:5  40:12  41:5  165:5

**touched**(1) 93:16

**tough**(1) 122:1

**toussi**(1) 13:5

**toward**(1) 15:21

**towards**(1) 199:5

**track**(3) 100:11  100:14  111:14

**trade**(8) 164:6  176:17  191:19  192:2  194:4  195:9  195:10  195:12

**traditional**(1) 175:14

**train**(1) 202:10

**transaction**(15) 25:20  26:24  27:5  27:9  36:21  37:4  105:1  107:24  127:14  185:14  185:17  186:8  189:12  189:14  202:18

**transactions**(6) 24:19  108:3  108:11  112:11  112:12  164:12

**transcript**(4) 1:17  1:48  198:9  213:6

**transcription**(2) 1:41  1:48

**transfer**(8) 109:16  113:14  159:2  160:12  160:13  160:20  161:1  161:21

**transferred**(2) 113:18  113:20

**trash**(1) 127:14

**travelers**(1) 150:23

**trb**(2) 6:31  96:21

**treat**(5) 20:21  42:19  90:23  193:2  199:19

**treated**(10) 21:6  29:7  37:20  37:22  76:8  136:7  136:9  199:25  200:1  202:15

**treating**(3) 28:19  203:17  203:18

**treatment**(13) 24:16  24:17  35:11  74:17  96:8  152:12  154:7  187:17  190:22  191:10  195:18  207:1

**treatments**(1) 166:12

**trehan**(1) 10:17

**treister**(5) 8:29  128:8  129:5  131:15  190:4

**trend**(1) 208:12

**trial**(6) 65:16  120:22  120:22  126:23  134:17  142:22

**trials**(1) 122:7

**tribune**(54) 1:8  6:4  6:4  6:18  9:7  9:20  21:5  22:13  22:17  25:20  26:1  27:2  27:11  27:13  27:18  27:19  28:2  28:7  28:8  34:12  35:12  36:20  36:22  36:23  36:24  37:8  37:1  37:18  37:22  37:24  39:6  41:18  44:11  48:18  48:24  49:3  52:13  64:10  64:11  67:1  75:10  97:12  101:19  102:1  108:1  112:6  167:23  173:5  176:18  176:18  176:25  184:2  184:6  184:8

**tribune's**(7) 22:15  27:1  27:3  35:18  66:24  122:2  160:3

**tribune's**(2) 9:28  191:19

**tried**(9) 14:14  46:22  65:6  65:14  71:14  72:21  122:9  146:22  148:5

**trier**(1) 126:17

**triggering**(1) 75:11

**triumph**(1) 68:25

**true**(5) 95:24  133:12  144:15  174:6  208:4

**truly**(1) 71:20

**trump**(1) 13:34

**trust**(103) 3:28  11:24  12:29  13:41  15:13  16:22  17:19  47:16  48:4  52:19  54:3  59:6  62:3  62:6  62:15  65:25  70:18  81:9  81:10  82:4  82:7  83:4  83:6  83:11  83:11  89:25  90:2  90:6  90:8  90:9  90:10  93:18  94:18  94:21  94:21  94:22  94:24  95:3  95:5  95:5  97:5  97:17  98:3  102:4  102:20  103:4  103:11  103:13  103:19  104:10  104:23  106:25  107:4  110:8  110:15  110:17  110:18  110:21  111:15  113:14  113:16  113:17  113:19  113:20  114:7  114:8  114:18  115:22  116:21  116:21  135:14  136:5  163:1  163:10  165:11  165:19  166:1  169:24  176:11  176:22  177:3  177:9  177:10  177:11  177:14  177:15  177:18  177:22  178:8  178:10  178:12  178:14  178:18  178:21  178:25  180:9  180:15  180:18  182:24  183:1  183:3  183:3  183:8  184:15

**trust's**(1) 163:22

**trustee**(53) 3:4  3:4  22:13  22:21  27:3  27:12  27:16  49:21  66:2  69:9  70:17  81:10  89:19  90:1  90:6  93:3  95:5  95:15  95:17  98:3  98:21  103:8  104:11  104:21  106:1  106:5  106:7  106:10  106:13  111:8  120:17  120:18  121:4  121:14  124:23  125:1  125:2  125:6  127:10  127:11  163:11  168:10  168:22  168:25  170:7  170:14  173:4  173:5  183:8  183:25  184:14  185:12  188:13

**trustees**(9) 32:17  32:25  53:23  58:14  68:1  84:6  89:13  94:23  106:11

**trusts**(2) 93:20  178:13

**trust's**(2) 165:2  186:14

**truth**(3) 70:8  70:10  148:25

**try**(14) 14:25  17:11  49:22  52:10  58:9  64:22  71:15  71:16  94:13  102:22  103:12  110:24  164:16  212:22

**trying**(20) 37:11  43:18  45:13  63:24  70:8  71:10  101:22  103:17  104:10  107:25  108:1  108:2  108:2  108:10  114:14  123:14  136:22  155:9  173:19  212:18

**turn**(18) 47:19  49:5  58:7  58:18  61:24  86:12  87:7  115:25  139:1  139:6  165:6  166:3  166:18  169:8  171:19  172:15  184:18  193:17

**turned**(3) 167:15  170:16  170:23

**turning**(1) 117:24

**turnover**(2) 167:20  169:1

**turns**(3) 58:19  99:8  205:10

**twelve**(2) 65:15  134:17

**twice**(5) 141:22  148:7  196:11  201:20

**two**(44) 25:12  26:25  33:17  59:17  60:7  63:18  64:2  71:4  75:23  76:7  79:9  79:14  82:18  84:12  93:1  98:17  103:15  105:25  108:8  115:4  118:19  132:10  133:25  136:14  136:15  137:7  142:3  150:18  152:7  155:8  157:6  159:4  164:2  164:15  171:15  174:10  174:25  185:8  190:11  190:18  190:23  200:24  206:4  206:18

**two-year**(1) 111:11

**twoomey**(1) 9:15

**type**(3) 78:13  94:17  159:23

**types**(5) 108:11  112:11  113:1  133:5  162:13

**typical**(1) 63:9

**typically**(3) 33:15  107:16  146:23

| Word | Page:Line | Word | Page:Line | Word | Page:Line | Word | Page:Line |
|---|---|---|---|---|---|---|---|
| u.s.(2) 5:24  5:25 | | unless(7) 21:8  90:20  130:24  142:25  162:21  187:4  189:19 | | version(1) 99:6 | | was(251) 15:8  16:10  16:14  17:3  19:15  19:20  19:21  19:24  23:1  23:2  23:8  23:9  23:11  23:11  23:12  24:6  24:25  25:3  25:9  25:16  25:20  25:22  25:23  26:5  26:15  26:21  26:24  27:8  27:12  27:13  27:15  27:20  29:13  29:15  30:12  32:4  32:8  32:9  32:10  32:11  32:14  32:18  32:20  32:20  32:20  32:24  34:16  34:17  35:19  36:3  36:24  39:17  39:20  40:14  40:14  40:15  41:4  41:10  42:10  43:4  45:19  46:4  46:4  46:5  48:13  51:3  55:10  56:5  56:5  56:19  56:21  57:2  57:8  57:10  57:11  57:12  57:15  57:20  57:21  60:11  62:19  62:20  62:25  62:25  63:2  63:2  65:7  65:8  65:18  67:4  67:4  69:13  69:15  70:9  71:2  72:1  72:2  74:19  79:11  79:20  79:21  79:22  79:25  85:2  85:3  85:23  85:25  86:3  86:13  88:10  88:10  88:11  88:13  88:19  89:2  91:2  91:13  91:13  94:5  97:22  98:4  98:7  99:3  99:4  101:19  101:20  101:21  103:24  104:21  105:2  105:3  105:3  105:4  105:13  105:13  106:20  107:13  107:14  108:9  109:1  111:22  112:1  112:17  114:3  114:23  115:22  119:14  124:4  128:2  130:13  135:13  136:1  136:1  137:6  137:14  137:20  139:10  142:13  144:13  144:20  144:21  145:8  145:9  145:20  149:17  149:20  149:22  151:17  156:3  156:14  156:15  157:11  158:15  172:17  173:3  173:4  173:5  173:10  173:13  173:19  176:8  177:2  178:20  179:3  179:25  179:25  181:19  181:20  182:19  184:9  184:9  185:5  185:9  185:14  185:16  185:16  185:17  186:12  186:19  186:20  186:21  188:22  188:22  189:12  189:13  190:8  191:8  191:10  194:11  195:17  196:5  196:7  196:16  197:1  197:8  197:12  197:16  197:16  197:19  197:20  197:24  198:7  198:10  198:18  199:10  199:11  199:16  199:17  199:22  200:3  200:9  201:6  202:13  202:17  202:18  202:23  203:6  206:15  206:16  207:10  207:14  207:15  208:5  208:6  208:22  208:24  208:25  209:1  209:2  213:2 |
| ucc(1) 62:21 | | | | versus(4) 152:9  172:2  183:3  183:4 | | |
| ufca(1) 160:20 | | unlikely(5) 55:21  80:8  80:8  84:3  210:23 | | very(53) 15:14  26:10  35:10  35:15  35:20  41:24  42:10  44:5  45:10  47:1  47:2  65:7  67:20  68:4  70:19  80:21  84:2  84:3  86:3  87:20  88:20  89:4  89:4  90:7  91:10  102:8  115:3  115:17  118:7  123:18  129:15  131:17  131:18  139:8  140:11  141:17  144:17  146:1  147:17  153:14  158:16  158:18  158:23  171:19  171:20  186:1  204:10  205:25  206:2  206:12  206:21  208:14  212:24 | | |
| ufta(1) 160:20 | | unliquidated(3) 35:12  35:14  36:17 | | | | |
| ultimate(3) 21:7  110:6  138:17 | | unnecessarily(1) 29:3 | | | | |
| ultimately(19) 21:13  25:3  25:10  27:10  55:17  56:25  61:19  61:20  61:21  71:23  81:13  82:3  82:6  83:21  98:19  165:12  182:10  183:1  189:5 | | unnecessary(5) 43:14  57:8  84:11  130:16  130:24 | | | | |
| unacceptable(1) 122:15 | | | | vestige(1) 67:18 | | |
| unambiguous(1) 193:10 | | unprecedented(1) 59:3 | | viable(4) 64:17  64:18  106:13  106:15 | | |
| unaware(1) 56:5 | | unquantifiable(1) 170:9 | | vicinity(1) 209:1 | | |
| unclean(1) 173:13 | | unrebutted(1) 208:22 | | vie(1) 106:4 | | |
| unclear(1) 103:24 | | unredeemed(1) 184:11 | | view(20) 18:3  33:18  38:16  46:23  51:10  57:4  80:23  82:19  89:9  114:13  125:16  152:25  153:1  153:12  159:21  159:22  160:2  162:3  188:8  206:18 | | |
| under(134) 22:11  22:2  22:7  22:14  22:18  23:13  23:20  24:13  24:17  24:19  24:25  25:12  26:19  27:21  28:2  28:4  28:18  29:16  30:16  30:17  30:18  30:23  30:25  32:21  35:23  37:19  38:13  39:4  39:10  41:24  45:5  45:7  46:24  50:9  50:21  52:20  54:3  59:23  67:3  74:17  77:2  77:10  77:12  78:3  78:6  78:7  78:15  79:23  85:18  86:19  86:25  87:11  93:20  95:2  96:10  97:15  102:20  102:24  103:1  103:2  103:8  103:8  103:11  104:10  104:14  104:14  105:25  107:1  107:8  110:25  112:22  112:23  113:2  120:8  122:3  122:3  123:11  125:18  127:18  134:3  146:6  146:22  152:5  152:19  153:2  153:11  153:17  153:22  153:24  153:25  154:6  155:2  155:15  160:20  161:5  161:19  161:24  162:3  162:12  164:11  166:15  167:10  167:12  168:11  169:21  169:25  170:15  170:16  171:3  171:9  173:12  173:14  177:3  179:11  179:12  179:13  180:1  182:1  183:21  186:17  186:25  187:1  188:19  188:24  190:24  191:3  192:7  192:11  194:5  194:14  194:14  197:19  206:11  206:20 | | unrelated(1) 63:12 | | | | |
| | | unresolved(2) 56:20  202:5 | | | | |
| | | unsay(1) 84:7 | | | | |
| | | unsecured(13) 4:5  8:5  61:8  79:5  82:14  114:19  163:24  165:23  174:17  174:19  174:19  206:9  209:20 | | | | |
| | | | | viewed(2) 26:24  45:10 | | |
| | | unsecureds(2) 165:19  169:4 | | viewing(1) 206:21 | | |
| | | unsuccessful(2) 61:13  96:19 | | views(2) 80:21  80:22 | | |
| | | unsuccessfully(1) 103:20 | | vigilance(1) 71:2 | | |
| | | until(15) 47:20  81:7  83:7  91:5  99:17  99:18  101:2  110:10  138:20  156:11  157:1  174:21  199:15  201:3  210:21 | | vigor(2) 158:1  158:7 | | |
| | | | | viking(1) 12:5 | | |
| | | | | vindicated(1) 80:2 | | |
| | | | | vindicates(1) 63:17 | | |
| | | unusual(1) 107:15 | | vindicating(1) 66:22 | | |
| underbrush(2) 82:20  82:21 | | unveil(1) 196:5 | | vinson(1) 10:4 | | |
| undergo(1) 136:20 | | unwind(3) 108:3  108:14  108:16 | | violate(4) 42:22  103:14  106:25  172:8 | | |
| underlying(1) 143:3 | | unwound(2) 107:25  108:11 | | violated(4) 28:2  37:2  37:5  173:7 | | |
| undermined(1) 21:25 | | upheld(1) 23:19 | | violates(8) 32:4  116:17  170:25  171:3  171:5  171:6  171:8  191:1 | | |
| understand(21) 23:24  25:4  52:18  56:12  58:4  58:6  65:24  66:1  74:12  101:16  117:1  119:19  125:1  125:5  130:17  132:22  136:12  166:10  179:3  187:15  204:22 | | upon(32) 20:23  21:9  24:18  24:18  25:23  26:7  26:16  29:8  37:8  37:9  42:24  60:15  65:7  65:14  65:22  68:9  91:23  93:25  99:14  99:19  138:16  150:20  160:16  164:6  165:1  165:5  166:14  167:8  168:1  170:20  198:22  212:21 | | | | |
| | | | | violating(2) 44:7  90:8 | | |
| | | | | violation(10) 22:14  22:21  34:3  34:4  39:19  39:19  122:21  173:11  190:12  192:13 | | |
| understanding(5) 54:5  57:21  58:15  138:15  212:6 | | upset(2) 113:2  117:5 | | | | |
| | | urge(1) 84:10 | | violations(12) 22:13  22:25  23:6  23:18  28:5  34:11  35:19  40:18  58:25  59:10  59:11  89:14 | | |
| understands(2) 22:17  30:24 | | urgencies(1) 212:19 | | | | |
| understood(4) 48:13  57:23  141:3  150:21 | | usa(2) 13:14  13:14 | | | | |
| undertook(1) 188:22 | | usc(1) 24:5 | | violative(5) 43:11  43:21  44:20  171:7  199:8 | | |
| undisputed(3) 183:15  183:17  184:20 | | use(9) 86:20  90:14  115:21  120:8  123:4  146:13  146:23  153:18  159:11 | | violators(1) 24:22 | | |
| undue(2) 87:2  87:4 | | | | virtually(2) 25:21  175:10 | | |
| unencumbered(2) 46:25  177:15 | | | | virtue(4) 43:9  50:5  130:3  179:14 | | |
| unenforceable(1) 129:25 | | used(5) 25:9  108:14  127:5  127:24  155:6 | | visteon(1) 107:11 | | |
| unequal(1) 190:24 | | useful(1) 158:9 | | vociferously(1) 134:18 | | |
| unfair(18) 26:7  122:20  200:21  202:6  202:12  204:15  204:16  204:25  205:2  205:2  206:3  206:17  206:21  206:25  208:13  208:15  210:2  210:4 | | using(2) 43:10  116:8 | | void(1) 189:14 | | |
| | | usual(3) 71:6  174:10  174:24 | | vonnegut(1) 3:15 | | |
| | | usually(1) 86:19 | | vora(1) 13:15 | | |
| | | utterly(1) 122:15 | | voted(1) 75:10 | | |
| | | vague(1) 135:22 | | wacker(1) 7:20 | | |
| | | vail(1) 11:33 | | wackerly(1) 9:17 | | |
| | | valid(6) 89:5  94:7  113:13  113:18  113:19  114:8 | | wait(4) 114:15  138:24  156:11  156:24 | | |
| unfairly(4) 190:13  190:20  191:2  191:24 | | | | waiver(1) 190:10 | | |
| unfairness(1) 172:3 | | | | waker(1) 7:12 | | |
| unfortunately(1) 101:22 | | valuating(1) 71:20 | | walk(4) 164:24  165:14  181:7  183:14 | | |
| unfounded(2) 72:24  101:25 | | valuation(5) 52:3  99:14  164:6  164:6  164:9 | | walrath(1) 107:16 | | |
| unhappy(1) 212:18 | | value(33) 27:8  29:13  30:8  30:12  37:5  38:12  38:19  41:2  44:1  44:10  44:12  44:14  44:16  45:14  51:2  51:4  51:6  51:13  52:17  55:23  68:17  69:14  69:15  80:20  92:19  94:19  94:24  96:20  169:5  169:12  185:21  186:10  203:19 | | walrath's(1) 88:12 | | |
| uniform(1) 117:3 | | | | want(42) 15:17  25:13  41:8  49:15  53:1  56:8  68:18  76:15  78:24  80:21  92:22  94:13  94:14  94:17  99:22  112:9  116:23  136:16  139:9  141:17  146:18  154:16  156:5  171:21  173:20  181:23  183:14  184:7  186:14  187:1  191:11  192:9  196:10  198:12  198:18  200:25  201:2  201:8  201:9  201:20  201:21  205:11 | | |
| unimpaired(3) 28:22  29:1  29:15 | | | | | | |
| unintelligibility(1) 126:9 | | | | | | |
| unique(2) 69:10  72:10 | | | | | | |
| united(7) 1:1  1:19  3:4  20:14  21:4  92:7  149:2 | | valued(1) 186:10 | | | | |
| | | values(2) 50:24  50:24 | | | | |
| | | vanilla(1) 174:15 | | | | |
| | | variety(1) 18:13 | | | | |
| universally(1) 25:7 | | various(13) 17:13  37:2  43:25  52:11  52:14  80:7  117:3  117:12  119:10  127:3  135:3  184:22  190:7 | | wanted(20) 15:18  16:10  17:1  18:11  43:1  47:2  48:9  48:18  51:3  54:14  84:7  97:19  98:10  112:7  128:12  139:9  150:4  173:17  178:5  212:20 | | |
| universe(1) 153:14 | | | | | | |
| unjust(1) 107:7 | | | | | | |
| unlawful(1) 46:17 | | vasquez(1) 8:10 | | | | |
| | | vast(1) 117:22 | | wants(13) 15:24  63:21  77:23  78:23  84:15  92:25  135:8  135:9  135:9  136:18  152:17  151:18  211:16 | | |
| | | vehicle(2) 57:24  165:11 | | | | |
| | | ventilated(2) 114:22  114:24 | | | | |
| | | venture(1) 179:24 | | | | |
| | | verbatim(1) 19:12 | | wardwell(2) 3:11  10:8 | | |

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| | | | | vie(1) 106:4 | | washington(6) 4:29  5:28  88:13  88:19  88:19  88:23 |
| | | | | | | wasn't(3) 27:7  48:11  202:23 |
| | | | | | | wasn't(2) 184:5  199:14 |
| | | | | | | waste(2) 53:14  73:13 |
| | | | | | | wastes(1) 90:8 |
| | | | | | | water(1) 163:3 |
| | | | | | | waterfall(1) 199:8 |
| | | | | | | waterstone(4) 2:35  185:1  185:4  185:25 |
| | | | | | | watkins(3) 2:36  10:26  185:1 |
| | | | | | | way(64) 17:22  17:24  18:1  34:8  40:23  43:1  47:16  59:4  69:5  71:5  71:16  72:20  81:2  81:23  82:8  82:25  85:15  85:15  85:21  87:13  87:21  91:18  92:5  92:17  94:24  95:9  98:15  100:22  105:6  106:21  110:23  111:2  112:15  112:25  122:10  122:22  123:5  123:20  125:18  139:24  139:25  140:17  144:5  144:5  157:8  157:15  167:21  174:24  180:11  184:9  187:21  192:14  192:14  201:16  201:18  205:13  205:24  208:11  208:12  208:18  211:19  211:20  212:5  212:13 |
| | | | | | | ways(3) 144:3  151:12  179:19 |
| | | | | | | we'd(3) 99:21  115:17  159:4 |
| | | | | | | we'll(11) 29:25  53:3  54:10  68:21  69:4  94:15  99:7  114:15  164:13  211:22  212:22 |
| | | | | | | we're(35) 40:3  40:19  40:19  46:19  57:24  66:12  69:8  85:17  89:18  94:16  96:16  98:8  98:15  100:11  115:23  116:16  117:15  118:4  119:8  119:13  121:1  121:14  122:17  134:10  134:12  134:13  134:19  138:18  148:9  153:25  155:16  155:17  201:21  210:25  212:7 |

| Word | Page:Line |
|---|---|

we've(31) 20:22 20:23 43:17 45:24 46:14 46:19 51:7 52:12 65:15 70:23 72:21 74:2 76:21 76:21 84:25 85:13 86:15 88:20 98:17 116:6 122:8 132:10 132:16 146:17 146:18 147:20 148:5 155:19 157:15 163:7 202:12

wednesday(1) 14:1
week(6) 66:3 75:18 184:4 200:18 212:14 212:19

weeks(4) 71:15 98:17 112:1 119:15
weigh(3) 40:6 40:11 201:4
weighs(1) 40:9
weight(2) 92:7 94:7
weiss(2) 8:33 11:15
weitman(1) 9:23
welcome(2) 147:14 211:17
well(91) 14:17 14:19 15:22 16:12 26:10 33:1 33:10 33:15 33:16 34:3 34:8 37:9 39:25 40:23 43:6 44:22 61:20 64:3 65:24 67:14 68:2 68:21 69:17 72:16 73:4 74:23 75:25 77:13 77:20 81:15 84:19 86:13 93:18 94:8 94:22 96:15 96:19 97:24 99:2 99:7 102:8 103:22 105:8 105:11 105:16 106:19 107:10 107:23 109:4 118:6 120:15 120:16 122:4 129:15 130:14 139:8 140:11 142:15 145:1 145:19 146:2 149:18 150:10 150:17 156:11 158:4 160:10 166:22 175:2 180:13 181:12 191:20 192:22 194:21 194:24 196:15 196:21 197:3 197:21 197:2 198:20 200:12 201:8 201:9 201:15 202:2 204:10 207:7 207:14 210:11 211:18

well-settled(1) 117:2
well-taken(1) 90:16
wellbeing(1) 24:7
wells(1) 12:25
went(8) 14:17 27:19 79:10 143:9 185:5 187:11 199:25 200:18

were(92) 17:2 19:16 22:15 23:3 23:10 23:13 23:14 25:12 25:23 26:10 26:10 26:15 34:8 34:10 35:22 39:24 40:3 40:16 40:17 42:9 62:23 68:5 73:4 76:24 79:13 79:24 80:7 89:9 90:13 90:15 90:25 93:2 98:6 104:24 108:25 109:1 110:1 120:2 121:18 122:13 124:6 125:24 129:21 133:19 134:7 134:8 134:18 134:20 136:3 136:14 136:23 138:24 139:1 146:4 149:18 150:6 151:3 153:22 154:20 155:15 155:22 155:22 162:8 164:2 164:3 169:21 170:18 178:13 182:24 183:24 184:3 184:4 185:25 186:1 186:16 186:24 187:16 188:11 188:17 189:16 195:15 196:23 196:24 197:7 199:8 199:13 199:19 202:15 203:18 204:1 212:3

weren't(2) 89:8 134:14
west(2) 2:9 6:27
we'll(2) 171:19 175:23
we're(5) 169:4 184:8 196:15 200:10 200:2
we've(4) 165:4 166:12 180:13 182:6
wharton(2) 8:33 11:15

what(196) 14:14 14:16 14:16 14:22 16:10 16:18 17:25 19:23 23:13 23:14 24:16 25:19 25:22 28:21 30:5 32:12 32:20 34:8 37:10 39:7 40:2 40:24 41:4 41:20 42:16 42:16 44:4 45:11 45:14 45:22 45:24 45:25 46:1 46:8 46:14 46:23 48:13 49:9 49:12 50:20 50:24 50:24 50:25 51:25 52:11 52:14 52:19 56:4 59:24 60:2 63:8 63:8 63:17 65:13 65:22 66:1 66:19 69:17 69:22 69:23 70:11 70:14 71:17 72:22 73:4 73:11 74:15 76:3 77:21 77:22 77:25 78:1 79:11 79:13 79:18 79:24 80:14 83:5 84:25 85:17 85:22 85:23 88:4 90:5 90:9 91:13 93:11 93:12 95:7 98:4 100:23 102:17 102:19 103:16 103:24 104:9 107:17 107:19 108:7 108:6 111:20 112:7 112:8 112:15 113:15 114:24 116:2 116:5 116:6 117:5 117:15 117:24 120:1 120:7 121:10 121:10 121:11 121:12 121:13 121:24 123:17 123:18 124:4 130:9 131:18 132:22 133:14 134:16 135:8 136:5 136:10 136:22 138:2 139:9 144:7 145:1 148:11 148:21 150:2 151:7 151:19 152:16 152:23 154:12 154:14 154:15 156:3 158:12 165:7 165:13 165:15 166:13 171:... 173:2 174:14 175:2 175:12 176:7 177:1 178:4 179:1 182:22 183:13 183:14 187:15 190:15 194:15 195:1 195:17 198:2 198:5 198:17 198:23 199:13 199:22 200:5 200:1 201:25 203:12 203:16 205:5 205:16 207:5 208:1 209:17 209:18 210:15 210:16 211:...

what's(9) 30:1 34:3 34:4 70:21 120:13 120:24 123:6 133:17 211:6

whatever(17) 21:12 46:25 69:5 73:11 73:13 96:5 99:7 99:21 119:15 121:20 123:14 146:5 146:9 153:18 166:2 185:18 192:11

whatsoever(1) 48:22
what's(1) 168:3
when(61) 17:17 17:22 24:9 32:10 33:16 33:17 34:5 34:12 41:10 44:6 45:11 51:13 52:10 56:14 57:1 57:14 57:19 60:17 64:23 66:18 69:1 69:15 75:22 76:23 79:12 80:6 83:25 86:4 86:18 87:5 88:15 91:6 91:7 98:7 98:7 98:22 106:13 110:24 110:24 111:1 111:17 112:1 116:3 116:3 112:24 137:15 151:7 155:22 164:5 164:12 176:8 176:23 183:1 191:24 195:1 202:5 203:5 206:5 206:13 210:25

where(46) 23:1 34:1 34:2 34:15 42:25 43:24 45:12 45:23 47:25 52:9 52:20 52:21 61:2 79:19 88:10 94:3 96:4 104:22 105:21 109:11 111:8 111:14 111:25 122:5 132:8 135:6 135:13 135:25 137:21 155:18 173:25 177:10 183:20 188:7 189:9 193:4 200:18 203:25 212:6

whereas(1) 36:10
whereby(1) 185:11
whereupon(1) 213:2
whether(56) 20:19 35:22 38:14 40:25 41:1 42:9 43:8 47:24 48:3 50:2 55:13 55:14 55:15 55:17 58:20 62:7 62:16 64:25 65:19 65:20 70:2 71:7 71:20 72:8 72:12 73:10 73:20 80:16 81:10 82:2 82:3 82:7 96:17 96:23 96:24 99:13 100:11 100:12 101:20 110:1 110:11 110:13 113:19 115:12 115:13 134:22 154:1 157:9 157:13 162:11 162:12 164:5 164:10 200:22 205:3 205:12

which(139) 14:8 16:15 16:16 19:14 19:25 20:22 21:6 23:15 24:24 25:9 26:14 26:16 27:9 28:10 28:13 30:24 33:20 34:9 34:11 34:19 35:25 36:6 36:24 36:25 38:7 38:8 38:17 38:18 39:2 39:16 39:23 40:1 40:2 40:9 40:10 41:25 42:8 42:19 42:23 45:2 45:22 45:23 48:20 52:1 52:19 52:19 53:22 55:11 55:18 58:8 59:14 59:21 63:12 65:22 66:13 67:7 74:16 75:12 75:21 76:25 79:2 81:8 83:4 85:16 87:13 89:17 89:18 91:12 94:11 96:24 97:2 97:3 97:9 99:13 99:14 101:8 101:16 102:11 105:13 105:23 107:6 107:6 107:15 112:24 115:6 116:24 120:17 127:15 127:15 131:20 135:1 135:11 135:18 135:18 136:7 137:14 138:3 140:20 141:3 142:10 144:19 145:19 150:16 150:25 152:17 153:8 153:11 155:23 160:5 160:8 160:17 161:11 162:1 166:6 175:21 177:3 179:1 179:1 179:20 186:3 186:4 186:12 187:13 190:21 193:3 194:10 195:20 195:20 201:10 201:10 202:14 203:12 203:24 203:25 206:14 206:17 206:24 211:25 212:13

while(11) 28:22 29:1 74:23 88:6 107:17 135:22 136:4 150:4 156:18 172:18 172:25

whisks(1) 174:4
white(1) 12:25
whitman(2) 205:11 208:22
whitman's(1) 208:24
whittman(1) 12:22
who(49) 18:15 23:2 23:3 29:9 31:17 40:13 43:8 47:18 52:6 54:8 59:5 60:20 63:11 64:5 64:18 67:9 68:9 68:10 68:11 68:12 68:22 69:4 69:7 69:13 77:19 77:23 90:10 96:6 99:10 99:11 117:7 117:8 122:2 125:10 133:24 135:9 135:24 137:21 142:2 152:21 155:5 159:1 175:3 177:12 177:17 184:17 192:3 195:1 207:10

who's(7) 14:19 52:10 67:1 70:1 75:23 131:8 134:24

whoever(2) 133:13 150:8
whole(18) 24:22 42:15 45:5 59:24 60:23 60:24 60:25 64:16 68:7 68:8 78:11 78:19 108:12 145:16 146:5 152:2 182:21 203:23

wholly(2) 27:2 137:23
whose(4) 31:13 48:25 64:8 211:13
who's(1) 194:25
why(40) 22:4 33:19 34:7 41:16 51:6 53:14 53:15 53:20 54:14 54:21 61:20 62:13 63:9 63:10 68:13 70:5 70:13 72:17 78:25 84:20 88:8 89:5 94:5 101:22 107:21 109:10 110:9 111:5 111:25 112:13 122:25 135:25 139:23 139:23 146:4 146:4 179:19 194:24 195:2 205:4

widget(2) 174:15 175:14
wiebolt's(1) 160:4
wild(1) 13:38

will(112) 15:24 17:10 17:12 18:8 18:10 18:12 18:15 20:23 22:2 34:15 47:8 49:24 50:8 52:3 54:5 54:7 54:8 54:9 56:12 56:15 58:21 62:18 64:1 66:18 69:5 71:14 73:17 74:19 79:5 80:6 80:16 82:3 82:4 83:13 83:21 83:24 90:6 93:24 94:23 95:3 95:12 95:19 95:24 95:25 97:10 98:18 98:24 98:25 100:16 101:2 101:14 101:17 102:17 102:17 104:24 108:6 111:20 113:16 113:21 113:22 114:10 115:3 115:11 119:19 120:10 120:12 120:20 121:9 127:8 130:8 133:2 133:11 133:12 133:13 136:12 138:16 138:20 139:1 139:2 139:6 143:1 143:20 145:18 148:11 148:16 148:18 148:19 149:3 150:3 152:3 152:25 158:3 168:6 172:20 180:18 180:22 181:14 182:8 183:13 189:5 189:6 190:15 193:17 195:1 201:13 202:25 204:4 208:21 211:25 212:12 212:25

willful(2) 32:7 94:1
william(2) 3:37 5:19
willing(3) 85:7 142:24 169:13
wilmer(1) 11:40
wilmington(37) 1:12 1:36 2:10 2:26 3:8 3:25 3:28 3:39 4:9 4:35 5:7 5:21 5:41 6:14 6:22 7:28 14:1 15:13 16:22 98:3 162:25 163:10 163:22 165:1 169:24 176:11 177:10 178:8 178:10 178:18 178:25 180:9 180:15 180:18 183:8 184:15 186:13

wilson(1) 10:23
win(1) 80:11
wind-up(1) 167:9
wiped(1) 25:21
wish(3) 20:4 24:14 93:14
wished(1) 16:15
wisler(1) 7:25

A536

| Word | Page:Line | Word | Page:Line | Word | Page:Line | Word | Page:Line |
|---|---|---|---|---|---|---|---|
| with(290) | | worry(3) 31:25 96:17 96:21 | | you(301) 14:9 15:9 15:20 16:10 16:10 | | your(301) 14:4 14:5 14:7 14:13 15:4 | |

with(290) 14:10 15:14 15:20 15:20 16:1 16:2 17:1 18:20 20:5 21:21 22:16 23:12 23:17 24:21 26:10 26:19 27:4 27:9 27:16 28:1 28:3 28:13 30:9 31:19 32:23 33:6 38:4 38:7 38:8 38:9 39:3 39:8 39:23 40:1 40:18 41:6 41:21 42:8 42:11 42:16 42:20 43:2 43:15 43:16 44:16 44:18 44:19 45:17 45:21 45:24 45:25 46:3 46:13 46:14 48:10 48:21 48:24 49:14 51:2 51:15 51:19 52:4 52:13 52:18 53:1 53:21 53:23 54:8 54:23 56:11 58:17 59:12 59:15 60:8 64:6 64:16 65:8 67:19 67:20 69:22 70:6 70:7 70:8 70:18 71:2 72:18 72:20 74:8 75:25 76:19 76:21 76:24 77:4 78:18 79:19 80:9 81:13 81:13 81:17 82:16 82:16 82:19 82:21 83:7 84:7 84:24 87:12 88:1 88:1 88:10 88:18 88:9 89:18 91:21 91:22 92:15 93:2 93:13 93:14 93:15 93:19 93:21 94:4 94:9 94:10 94:25 96:2 96:5 98:18 99:5 99:5 99:7 99:15 101:8 101:18 102:3 102:14 105:7 106:4 106:16 106:21 108:17 109:10 109:2 110:4 110:7 111:10 111:15 112:2 112:22 113:11 114:1 114:5 116:23 117:3 117:9 117:10 117:12 119:1 120:7 120:25 121:7 122:5 123:21 125:9 125:22 126:1 126:4 126:12 128:9 129:11 129:14 131:8 132:6 132:17 132:17 133:6 135:16 136:7 136:16 136:18 137:1 137:9 137:17 137:24 138:6 138:22 139:5 139:10 139:22 139:25 140:1 141:1 141:4 142:1 142:8 142:17 144:8 144:9 144:14 145:3 146:1 146:8 146:12 147:10 147:22 148:9 148:20 149:9 149:14 149:15 149:19 150:14 151:18 151:20 151:20 151:21 152:4 152:7 153:12 154:5 155:20 156:19 157:12 158:15 159:22 160:25 161:18 163:15 164:14 166:6 166:16 169:14 171:3 172:4 172:9 172:14 174:3 175:11 175:12 175:13 176:15 177:16 177:18 177:24 178:9 180:8 180:20 181:18 181:25 181:25 182:3 182:14 184:20 185:1 186:11 186:13 186:17 186:24 187:4 188:17 190:7 190:14 190:19 192:5 192:16 193:1 193:22 193:25 195:21 196:16 200:2 200:2 200:17 201:6 202:11 203:9 203:12 203:15 203:16 203:17 204:3 204:8 204:15 204:16 206:13 209:19 211:2 211:6 211:6

withdraw(3) 57:9 184:7 185:13
withdrawing(2) 55:11 78:9
withdrawn(1) 185:18
withdrew(4) 55:12 57:2 76:23 77:11
within(8) 56:17 66:24 86:9 88:25 162:18 186:2 186:4 187:18

without(24) 36:14 50:2 56:21 57:3 69:9 73:2 81:16 82:8 117:10 121:5 123:1 123:3 123:3 123:4 133:12 148:1 162:14 174:5 175:8 193:10 198:16 199:3 203:24 205:14

witnesses(1) 62:23
womble(1) 4:32
won't(6) 63:15 96:18 130:5 209:23 210:7 210:24

wondering(1) 65:18
won't(2) 165:4 185:7
woods(1) 160:3
word(2) 93:1 116:8
words(11) 49:25 87:12 130:21 137:17 142:19 143:14 153:4 153:15 154:12 160:1 191:13

work(6) 24:21 72:3 111:6 127:18 127:24 209:23

worker(1) 21:24
workers(2) 24:7 26:15
works(1) 109:25
world(1) 203:23
worlds(1) 209:19

worry(3) 31:25 96:17 96:21
worth(4) 27:7 142:18 183:24 184:11
would(195) 14:22 15:19 16:23 17:9 17:10 17:14 17:20 17:25 18:1 18:25 19:23 22:18 23:15 24:12 24:13 24:16 24:24 24:25 25:17 25:25 26:7 27:6 28:14 29:3 29:3 29:18 30:12 32:5 32:17 33:1 33:5 33:8 37:17 38:14 40:6 41:16 41:17 47:9 47:22 48:5 54:15 57:22 57:23 58:13 59:3 61:24 62:6 62:7 62:11 62:13 64:4 64:8 67:3 69:12 69:17 69:25 70:2 72:5 72:7 72:8 72:14 73:9 74:15 74:20 74:22 75:13 76:7 77:1 77:17 78:2 78:15 81:1 84:10 85:5 88:14 88:25 89:4 95:7 95:21 97:20 98:7 98:12 99:15 99:16 100:15 100:24 101:12 106:16 106:25 106:25 107:5 109:2 110:2 110:8 113:10 115:24 117:19 118:2 118:3 118:15 119:20 121:24 123:13 123:21 124:7 124:1 124:5 124:6 124:21 124:24 125:11 125:15 125:25 126:7 126:11 126:16 126:1 127:19 130:18 130:18 131:21 133:17 133:18 133:20 133:21 136:3 143:13 143:1 145:11 146:10 146:23 148:24 150:2 150:6 150:7 150:9 150:9 150:13 150:22 154:8 154:21 154:22 154:23 155:3 155:4 155:6 155:16 156:19 158:9 162:1 161:3 161:21 162:5 162:10 162:11 162:13 162:18 166:2 169:3 170:19 176:15 177:25 179:24 181:10 182:8 185:10 185:11 185:12 185:1 186:6 186:7 186:10 187:1 187:16 187:17 187:19 188:3 188:4 188:15 189:4 190:11 192:21 197:4 197:17 198:15 198:17 199:2 200:19 201:2 202:9 203:3 204:16 205:17 209:13 212:14

wouldn't(4) 84:17 109:4 207:25 208:10
wrap(2) 34:23 34:24
write(1) 87:17
written(6) 89:2 89:9 98:15 119:16 121:23 211:21

wrong(19) 38:17 38:18 39:11 41:10 64:4 66:6 70:13 79:1 90:20 90:23 122:16 126:11 141:8 146:21 150:2 170:22 179:10 179:11 179:11

wrongdoer(1) 67:8
wrongdoing(1) 66:24
wrongful(1) 160:16
wrongly(1) 176:20
wrote(2) 70:21 184:8
www.diazdata.com(1) 1:45
yards(1) 86:23
yeah(5) 51:22 56:19 99:23 104:3 108:20
year(7) 19:17 19:22 45:2 105:25 150:19 162:9 174:8

yearly(1) 36:24
years(3) 121:7 151:2 151:4
yell(1) 205:17
yelling(1) 205:12
yes(13) 39:15 57:18 65:4 70:4 87:24 100:4 100:6 128:6 147:8 182:24 196:1 200:14 208:4

yesterday(3) 14:9 17:2 88:15
yet(4) 131:4 188:21 207:13 212:17
yield(1) 162:22
yielding(1) 92:22
yields(1) 116:5
york(9) 2:32 2:39 3:17 4:21 4:41 5:15 5:34 59:19 149:21

you(301) 14:9 15:9 15:20 16:10 16:10 17:2 17:4 17:6 17:7 18:6 18:11 18:24 19:2 20:9 21:17 23:7 31:1 31:16 32:12 32:13 33:1 33:2 33:5 33:12 34:6 34:22 34:25 35:1 39:22 39:23 39:25 40:12 40:14 40:22 40:25 41:4 41:20 41:24 42:7 42:18 42:19 43:2 43:7 43:8 43:16 43:23 44:4 44:6 44:7 45:11 47:2 47:4 47:5 48:3 48:6 49:4 49:5 49:9 49:17 49:23 50:16 51:20 52:3 52:3 52:9 52:10 52:10 52:20 52:23 53:1 54:13 54:13 54:16 57:16 58:1 64:15 65:2 66:8 66:10 67:14 67:14 68:3 68:4 68:13 68:24 69:3 69:17 69:20 69:25 70:7 74:12 75:3 75:4 76:12 78:11 79:1 79:2 79:14 80:12 80:13 80:18 81:16 82:10 82:11 83:1 84:25 86:4 86:16 87:1 87:5 87:25 88:16 89:8 89:16 89:22 90:13 91:22 92:24 92:25 93:4 93:5 94:15 94:17 95:7 96:7 96:7 98:1 98:6 98:6 98:7 98:8 98:12 98:14 98:22 98:23 98:23 99:1 99:22 100:1 100:7 100:23 101:13 101:16 101:25 102:13 103:20 104:3 104:23 104:24 105:11 105:11 105:12 107:5 107:8 107:25 108:5 110:1 110:17 110:18 110:18 110:21 110:21 110:24 111:1 111:2 111:6 111:13 111:17 112:12 112:8 112:12 112:15 112:20 112:25 113:3 113:4 114:12 114:17 115:4 115:6 115:6 116:9 116:10 121:23 122:1 122:23 123:20 123:2 124:5 124:14 126:5 126:7 126:19 127:24 127:25 128:4 128:12 128:14 128:21 128:2 129:2 129:15 129:16 131:2 131:6 131:11 131:12 131:14 132:23 133:8 134:13 133:6 136:3 136:6 136:24 137:15 138:7 138:8 139:14 140:12 144:3 144:6 146:23 147:13 147:15 147:16 148:14 148:21 149:5 150:6 150:9 150:9 150:17 152:25 157:5 157:6 157:20 158:6 158:23 162:21 162:24 163:6 163:18 164:21 165:13 166:21 166:2 167:1 167:1 168:14 168:21 172:5 172:7 172:10 173:1 173:18 173:21 174:5 174:11 174:12 174:12 174:14 175:13 175:17 175:18 175:25 176:3 176:9 179:1 179:2 180:25 181:10 182:16 182:16 183:5 184:2 185:11 186:19 186:24 187:4 187:6 187:12 187:16 187:17 187:22 188:2 188:3 188:4 189:21 190:3 191:21 191:21 191:22 192:9 192:10

you(49) 192:24 192:25 193:21 194:9 194:24 194:25 195:2 195:25 197:25 198:1 198:2 198:2 198:3 198:9 198:12 198:12 198:25 198:25 198:25 200:15 201:13 201:14 201:15 201:16 201:20 201:21 202:1 202:2 202:5 204:5 204:7 204:11 205:18 205:20 205:21 207:3 207:4 207:9 207:21 210:5 210:8 210:18 210:24 211:4 211:18 211:15 212:7 212:12 212:24

you'd(4) 99:20 110:2 126:2 205:16
you'll(3) 88:24 92:1 203:5
you're(27) 43:10 43:12 43:19 51:25 52:19 58:5 66:3 78:10 78:16 78:18 78:19 98:9 105:2 105:9 105:17 107:6 110:24 110:25 120:15 120:17 124:17 126:23 137:8 147:1 156:20 206:13 208:1

you've(16) 49:22 56:2 67:13 68:15 83:18 89:6 91:21 125:8 125:25 126:24 132:22 134:16 141:12 156:2 163:14 207:5

young(1) 2:4

your(301) 14:4 14:5 14:7 14:13 15:4 15:10 15:25 16:7 16:22 16:25 17:6 17:7 18:6 18:7 18:20 18:25 19:4 19:7 20:3 20:9 20:10 20:13 21:18 29:23 32:13 33:24 34:24 35:2 40:8 40:10 41:7 43:13 46:22 47:6 47:9 48:6 48:7 49:7 49:19 49:22 50:15 50:17 51:10 52:8 52:23 52:24 53:8 53:11 54:13 54:21 55:9 55:22 56:2 56:4 56:10 57:16 57:18 57:25 58:4 58:6 62:4 62:18 63:5 63:14 64:15 65:5 66:7 66:10 66:18 67:5 67:15 69:19 70:1 70:4 70:5 70:9 70:12 71:15 71:23 71:25 74:2 74:7 74:9 74:11 74:12 74:22 75:4 75:5 76:1 76:3 77:14 78:1 78:9 78:9 78:10 78:18 79:3 79:16 79:18 80:5 80:21 81:1 81:21 82:1 82:12 83:17 83:19 83:24 84:10 84:18 85:15 85:16 86:4 86:6 86:7 86:10 86:15 87:4 87:5 88:15 89:1 89:15 89:24 90:14 90:17 91:10 92:20 93:3 93:8 94:18 95:4 98:4 98:20 98:22 99:20 100:1 100:4 100:6 100:8 100:13 100:19 100:24 101:5 101:10 101:11 101:12 101:17 101:25 102:2 102:9 102:13 102:18 103:5 103:13 103:16 103:22 104:3 104:12 104:17 104:23 105:8 105:22 106:24 107:5 107:20 107:23 108:11 108:20 108:23 109:8 109:10 109:14 112:2 112:4 113:5 114:18 116:1 116:9 116:11 116:14 116:17 120:19 127:23 128:5 128:16 128:19 128:25 129:2 129:10 129:11 129:16 129:18 130:5 130:15 130:18 131:2 131:3 131:7 131:14 131:18 132:2 132:7 133:9 134:21 136:23 137:24 138:9 138:12 138:16 138:23 139:15 140:11 140:14 144:7 147:8 147:16 148:14 150:21 150:22 151:10 151:15 156:1 156:17 157:4 157:21 158:6 158:12 158:16 158:20 159:22 160:1 160:23 161:7 161:17 162:6 162:15 162:21 163:2 163:3 163:12 163:14 163:19 164:15 164:21 165:14 166:3 166:18 166:22 168:6 171:12 171:25 172:4 172:16 172:20 172:21 172:25 173:18 173:21 173:25 175:11 175:16 175:19 176:3 176:6 179:8 181:5 181:8 181:10 181:13 182:15 182:23 183:10 184:21 184:24 185:3 187:7 187:11 187:20 187:20 188:19 189:23 190:3 192:8 192:21 194:8 195:23 196:2 196:10 196:14 197:10 198:2 198:4 199:3 200:8 201:17 201:18 204:6 204:7

yours(2) 56:8 198:24
yourself(2) 166:3 193:2
yurkewicz(3) 5:39 15:25 16:1
zabel(5) 5:31 11:28 16:3 16:8 187:8
zell(48) 6:31 53:2 53:9 53:13 53:21 55:1 56:13 59:2 60:13 62:10 62:16 63:1 63:5 63:11 63:17 64:3 64:12 64:23 66:22 67:1 67:8 67:14 67:21 67:23 68:19 68:22 72:9 79:7 79:22 80:22 80:7 80:9 80:20 80:23 81:17 82:14 86:18 86:21 90:21 91:2 94:10 94:13 101:6 101:9 101:11 109:9 135:17 203:11

zell's(3) 64:7 81:23 203:7
zelmanovitz(1) 13:42
zensky(1) 9:42
zloto(1) 9:36
zuckerman(4) 4:24 8:13 62:22 79:4
*according(1) 177:10
*and(1) 168:22
*assets(2) 167:21 169:17
*judge(1) 174:11
*most(2) 191:16 191:16
*since(1) 177:19

TRIBUNE.4.13.1.DOC

| Word | Page:Line |
|------|-----------|
| "**the**(1) 168:10 | |

A538